

1  MICHAEL G. ALLEN*
   D. SCOTT CHANG #146403
2  JAMIE L. CROOK #245757
   RELMAN, DANE & COLFAX
3  PLLC
   1225 19th St. NW, Suite 600
4  Washington D.C. 20036
   Telephone: (202) 728-1888
5  Facsimile: (202) 728-0848
   schang@relmanlaw.com
6
   * Application for admission
7  *pro hac vice* approved by
   Court order Doc. No. 15
8
   PAULA D. PEARLMAN
9  #109038
   MARIA MICHELLE UZETA
10 #164402
   UMBREEN BHATTI
11 Registered Legal Services
   Attorney #801458
12 DISABILITY RIGHTS
   LEGAL CENTER
13 Loyola Public Interest Law
   Center
14 800 S. Figueroa Street, Suite
   1120
15 Los Angeles, CA 90017
   Telephone: (213) 736-1496
16 Facsimile: (213) 736-1428
   Michelle.Uzeta@lls.edu
17

DAVID GEFFEN #129342
DAVID GEFFEN LAW FIRM
530 Wilshire Blvd., Suite 205
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
Geffenlaw@aol.com

DARA SCHUR #98638
DISABILITY RIGHTS
CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510)267-1201
Dara.Schur@disabilityrightsca
.org

AUTUMN ELLIOTT #230043
KEVIN BAYLEY #218070
DISABILITY RIGHTS
CALIFORNIA
350  S. Bixel Ave., Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disability
rightsca.org

Attorneys for Plaintiffs

FILED
CLERK, U.S. DISTRICT COURT

JUN - 1 2012

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

18
19       UNITED STATES DISTRICT COURT FOR THE
              CENTRAL DISTRICT OF CALIFORNIA
20                  (WESTERN DIVISION)

21 INDEPENDENT LIVING CENTER OF        ) CASE NO. CV 12-
   SOUTHERN CALIFORNIA, a California   ) 0551 SJO (PJW)
22 non-profit corporation; FAIR HOUSING )
   COUNCIL OF SAN FERNANDO            )
23 VALLEY, a California non-profit      ) FIRST AMENDED
   corporation; and  COMMUNITIES       ) COMPLAINT FOR
24 ACTIVELY LIVING INDEPENDENT        ) INJUNCTIVE,
   AND FREE, a California non-profit     ) DECLARATORY,
25 corporation,                         ) AND MONETARY
                                        ) RELIEF; DEMAND
26              Plaintiffs,              ) FOR TRIAL BY
                                        ) JURY
27 vs.                                  )
                                        )
28 CITY OF LOS ANGELES,                 )
   CALIFORNIA, a California municipal    )

1  corporation; COMMUNITY
   REDEVELOPMENT AGENCY OF THE
2  CITY OF LOS ANGELES, a public
   entity; CRA/LA DESIGNATED LOCAL
3  AUTHORITY, a public entity and
   successor agency to the COMMUNITY
4  REDEVELOPMENT AGENCY OF THE
   CITY OF LOS ANGELES; OVERSIGHT
5  BOARD FOR THE CRA/LA
   DESIGNATED LOCAL AUTHORITY, a
6  public entity; 105 EAST "I" STREET,
   L.P., a California limited partnership;
7  12129 EL DORADO AVENUE, L.P., a
   California limited partnership; 4651
8  HUNTINGTON, L.P., a California
   limited partnership; 505 BONNIE BRAE
9  PARTNERS, L.P., a California limited
   partnership; 901 SOUTH BROADWAY
10 STREET LIMITED PARTNERSHIP, a
   California limited partnership; ADAMS
11 935, L.P., a California limited
   partnership; AMCAL MONTECITO
12 FUND, L.P., a California limited
   partnership; AMISTAD PLAZA
13 PARTNERS LIMITED PARTNERSHIP,
   a California limited partnership;
14 ANDALUCIA SENIOR APARTMENTS,
   L.P., a California limited partnership;
15 ARDMORE 959 PARTNERS, L.P., a
   California limited partnership;
16 ASTURIAS SENIOR APARTMENTS,
   L.P., a California limited partnership,
17 B S BROADWAY VILLAGE II, L.P., a
   California limited partnership;
18 BUCKINGHAM SENIOR
   APARTMENTS, L.P., a California
19 limited partnership; CANTABRIA
   SENIOR APARTMENTS, L.P., a
20 California limited partnership;
   CARONDELET COURT PARTNERS,
21 L.P., a California limited partnership;
   CENTRAL VILLAGE APARTMENTS,
22 L.P., a California limited partnership;
   DECRO ORION APARTMENTS, L.P., a
23 California limited partnership; DECRO
   OSBORNE APARTMENTS, L.P., a
24 California limited partnership; EAST LA
   COMMUNITY CORPORATION, a
25 California corporation; EASTSIDE
   VILLAGE, L.P., a California limited
26 partnership; ESPERANZA
   COMMUNITY HOUSING
27 CORPORATION, a California
   corporation; EUGENE HOTEL, L.P., a
28 California limited partnership; FAME

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1  WEST 25'ᴰ STREET, L.P., a California
   limited partnership; FAR EAST
2  BUILDING, L.P., a California limited
   partnership; GRANDVIEW NINE, L.P.,
3  a California limited partnership; HART
   VILLAGE, L.P., a California limited
4  partnership; HEAVENLY VISION
   SENIOR HOUSING, L.P., a California
5  limited partnership; HOBART HEIGHTS
   PARTNERS, L.P., a California limited
6  partnership; HOOVER SENIORS, L.P., a
   California limited partnership; IMANI
7  FE, LP, a California limited partnership;
   KOREAN FAMILY HOUSING
8  CORPORATION, a California
   corporation; LAS MARGARITAS, L.P.,
9  a California limited partnership; LOS
   ANGELES HOUSING PARTNERSHIP,
10 INC., a California corporation; LOS
   CUATRO VIENTOS, L.P., a California
11 limited partnership; MENLO PARK, A
   CALIFORNIA LIMITED
12 PARTNERSHIP, a California limited
   partnership; MORGAN PLACE, L.P., a
13 California limited partnership; NEW
   GENESIS APARTMENTS, L.P., a
14 California limited partnership; NEW
   TIERRA DEL SOL, L.P., a California
15 limited partnership; NOHO SENIOR
   VILLAS, L.P., a California limited
16 partnership; OL HOPE, L.P., a
   California limited partnership; P G
17 HOUSING PARTNERS, L.P., a
   California limited partnership; PALM
18 VILLAGE SENIOR HOUSING CORP., a
   California corporation; PALOMAR
19 APARTMENTS, L.P., a California
   limited partnership; PENNY LANE
20 CENTERS, a California corporation;
   RAMPART APARTMENTS, A
21 CALIFORNIA LIMITED
   PARTNERSHIP, a California limited
22 partnership; REDROCK NOHO
   RESIDENTIAL, LLC, a Delaware
23 limited liability company; RENATO
   APARTMENTS, L.P., a California
24 limited partnership; RITTENHOUSE
   LIMITED PARTNERSHIP, a California
25 limited partnership; SELMA-HUDSON
   COMMUNITY LIMITED
26 PARTNERSHIP, a California limited
   partnership; SEVEN MAPLES, L.P. a
27 California limited partnership; SF NO
   HO LLC, a California limited liability
28 company; SHERMAN VILLAGE

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

1  APARTMENTS, L.P., a California    )
   limited partnership; SHERMAN WAY  )
2  COMMUNITY HOUSING 2, L.P., a      )
   California limited partnership;   )
3  STOVALL HOUSING CORPORATION,      )
   a California corporation; VERMONT )
4  SENIORS, a California corporation; WA )
   COURT, L.P., a California limited )
5  partnership; WATTS/ATHENS         )
   PRESERVATION XVII, L.P., a        )
6  California limited partnership; WEST )
   ANGELES VILLAS, L.P., a California )
7  limited partnership;              )
   WESTERN/CARLTON II, L.P., a       )
8  California limited partnership; and )
   YALE TERRACE APARTMENTS, A        )
9  CALIFORNIA LIMITED                )
   PARTNERSHIP, a California limited )
10 partnership,                      )
                                     )
11                      Defendants.  )
                                     )
12 ─────────────────────────────────

13

14

15              **INTRODUCTION**

16     1.    This civil rights action is brought because public money

17  that was to be used to build and provide affordable, accessible

18  housing was misapplied, denying hundreds of people with

19  disabilities housing over many years. The Plaintiffs are the

20  Independent Living Center of Southern California ("ILCSC"), a

21  non-profit independent living center for people with disabilities,

22  the Fair Housing Council of San Fernando Valley ("FHC"), a non-

23  profit fair housing organization, and Communities Actively Living

24  Independent and Free ("CALIF"), a non-profit independent living

25  center for people with disabilities. Their claims are brought

26  against the Community Redevelopment Agency of the City of Los

27  Angeles ("CRA"), the CRA/LA Designated Local Authority, a

28  public entity ("Local Authority") and successor agency to the

1   Community Redevelopment Agency of the City of Los Angeles;

2   the Oversight Board for the CRA/LA Designated Local Authority

3   ("Oversight Board"), a public entity; and the City of Los Angeles

4   ("City") in its own capacity and in its capacity as a successor

5   housing agency to Defendant CRA.  The claims arise from their

6   collective failure to ensure that housing is accessible and available

7   to people with disabilities as required under federal and state civil

8   rights law.  In this First Amended Complaint ("Complaint"), the

9   City, the CRA, the Local Authority, and the Oversight Board may

10  be referred to collectively as "Government Defendants."  The

11  CRA, the Local Authority, the Oversight Board, and the City in its

12  capacity as successor housing agency may be referred to

13  collectively as the "Redevelopment Defendants."

14      2.    This Complaint alleges that the Government Defendants

15  have engaged in a pattern or practice of discrimination against

16  people with disabilities in violation of Section 504 of the

17  Rehabilitation Act, Title II of the Americans with Disabilities Act

18  (the "ADA"), the Fair Housing Act, and California Government

19  Code § 11135. These Defendants have failed to ensure that

20  housing funded, developed, or significantly assisted by the

21  Redevelopment Defendants as part of their housing programs is

22  accessible to people with disabilities.  These Defendants have also

23  knowingly allocated millions of dollars in federal, state and other

24  funds to finance housing throughout Los Angeles without ensuring

25  that their programs as a whole and the housing they developed,

26  funded, and significantly assisted is accessible and made

27  meaningfully available to people with disabilities.

28

1    3.    Plaintiffs join the Owner Defendants—current owners
2  of 61 housing developments that received federal funds through
3  the Redevelopment Defendants—solely because they may be
4  necessary to effectuate any injunctive relief with respect to access,
5  retrofitting and policy implementation that the Court may order.
6    4.    The Government Defendants' violations of federal and
7  state civil rights laws have thwarted efforts by Congress and the
8  California legislature to eradicate discrimination against people
9  with disabilities, and rendered Defendants' housing programs and
10  housing units unavailable to people with disabilities in direct
11  contravention of their intended purpose.  Enforcement of Section
12  504 of the Rehabilitation Act, Title II of the ADA, the Fair
13  Housing Act, and California Government Code § 11135 against the
14  Government Defendants is necessary because of the extensive
15  nature of the civil rights violations in their housing programs.

16                              **JURISDICTION**

17    5.    This Court has jurisdiction over this action pursuant to
18  28 U.S.C. §§ 1331 and 1367.  Plaintiffs' claims for declaratory
19  and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202
20  and 1343, and by Rules 57 and 65 of the Federal Rules of Civil
21  Procedure.
22    6.    Plaintiffs' claims for violations of California state law
23  concern the same actions and omissions that form the basis of
24  Plaintiffs' claims under federal law such that they are all part of
25  the same case or controversy.  This Court has supplemental
26  jurisdiction over those state law claims pursuant to 28 U.S.C. §
27  1367.

28

1    7.    This action for declaratory and injunctive relief arises

2  in part under Section 504 of the Rehabilitation Act of 1973, 29

3  U.S.C. § 794; Title II of the ADA, 42 U.S.C. § 12132, *et seq.*; and

4  the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

5                                    **VENUE**

6    8.    Venue is proper in the Central District of California

7  pursuant to 28 U.S.C. § 1391(b) because Defendants operate and

8  perform their official duties therein and thus reside there for

9  purposes of venue, and because a substantial part of the events and

10  omissions giving rise to the claims occurred in Los Angeles

11  County, which is in the Central District of California.

12                                   **PARTIES**

13    9.    The Independent Living Center of Southern California

14  ("ILCSC") is an independent living center for people with

15  disabilities and has its principal place of business in Van Nuys.  It

16  is a non-profit, community-based corporation that provides a wide

17  range of services to people with disabilities and seniors in the City

18  of Los Angeles and adjoining areas.  It is governed by a Board of

19  Directors that must always contain at least 51% people with

20  disabilities.

21    10.    ILCSC's mission is to provide services which offer

22  people with disabilities and seniors the opportunity to seek an

23  individual course towards independence, while educating the

24  community.  The vast majority of clients served by ILCSC are

25  poor because their disabilities limit their ability to work, and they

26  therefore rely on public and private programs intended to serve

27  people with low incomes.

28

1    11.   During 2011, ILCSC served approximately 6,000 new

2    clients, with more than half requesting assistance with searching

3    for accessible and/or affordable housing or removing barriers to

4    accessible housing, requiring it to devote 2.5 full-time equivalent

5    employees to assist clients with housing needs.  In addition,

6    ILCSC's Systems Advocacy Coordinator devoted one-quarter of

7    his time to addressing housing accessibility issues, including

8    meetings with elected officials, employees of the Government

9    Defendants and others to alert them to the severe need for

10   accessible affordable housing and noncompliance with federal

11   accessibility requirements in housing funded, developed, or

12   significantly assisted by the Government Defendants.

13   12.   ILCSC seeks to have its clients' needs met by public

14   and private programs that serve residents of the City of Los

15   Angeles, and provides services and supports directly only in

16   circumstances where such programs are not serving them

17   adequately.

18   13.   During 2011, among ILCSC's clients seeking assistance

19   with accessible and/or affordable housing, only 10% have found

20   housing that meets their needs. Since 2009, ILCSC has assisted at

21   least two clients seeking to secure accessible housing in buildings

22   constructed with federal funds granted by or through the

23   Redevelopment Defendants, but was not successful. ILCSC also

24   provides services through the California Community Transitions

25   program.  Through the California Community Transitions program,

26   ILCSC seeks to help people move from skilled nursing facilities

27   and acute care hospitals back into community living.  ILCSC

28   assists clients with locating and obtaining affordable housing,

1   provides security deposits and first month's rent, and assists with
2   home modification and durable medical equipment, among other
3   services.

4       14.   A substantial majority of ILCSC's clients, employees,
5   and community advisory board ("constituents") are people with
6   disabilities, or family of people with disabilities, who have been
7   harmed and continue to be harmed because the Government
8   Defendants have failed and continue to fail to ensure that housing
9   funded, developed, or significantly assisted by the Defendants as
10  part of their housing programs is accessible to people with
11  disabilities.

12      15.   Fair Housing Council of San Fernando Valley ("FHC")
13  is a non-profit fair housing membership organization, incorporated
14  under the laws of the State of California, and serving clients in
15  portions of the City of Los Angeles and adjoining areas.

16      16.   FHC's mission is to eliminate housing discrimination
17  and to expand housing choices for people with disabilities and
18  members of other classes protected under federal and state civil
19  rights and equal opportunity statutes and regulations. FHC assists
20  people with disabilities to file housing discrimination complaints.
21  Between 2008 and 2011, 21% of all such complaints were filed by
22  people with physical disabilities, and a majority of these sought
23  more accessible housing.

24      17.   FHC also responds to inquiries about the availability of
25  housing for people with disabilities.  Between 2008 and 2011, 23%
26  of all of FHC's inquiries were from people with physical
27  disabilities, and a majority of these sought more accessible
28  housing.

18.   In response to a lack of information about accessible affordable housing, from 2008 to the present, FHC expended substantial staff and monetary resources researching which housing projects contained accessible, affordable housing units, and providing that information to people with disabilities, disability advocacy organizations, and the general public, as well as notifying the City about its concerns and findings.

19.   FHC engages in a number of activities to further its mission of promoting equal housing opportunities including, but not limited to: education programs in the community; training programs for real estate professionals and the general public; fair housing counseling; and coaching people with disabilities in strategies to advocate for accessible affordable housing.

20.   FHC constituents, employees, and board of directors include people with disabilities, or family of people with disabilities, who have been harmed and continue to be harmed because the Government Defendants have failed and continue to fail to ensure that housing funded, developed, or significantly assisted by the Defendants as part of their housing programs are accessible to people with disabilities. For instance, a former long-time FHC consultant currently lives in a nursing home because of her inability to find accessible affordable housing in the community.  Furthermore, an elderly FHC member and her adult son who is a wheelchair user continue to live in an inaccessible apartment building because of her inability to find accessible affordable housing in the community.

21.   Communities Actively Living Independent and Free ("CALIF") is an independent living center with its principal place

1   of business in Los Angeles, California.  It is a non-profit,

2   community-based corporation that provides services by and to

3   people with disabilities in the City of Los Angeles.  CALIF seeks

4   to achieve full inclusion, equality, and civil rights for people with

5   disabilities. It is governed by a Board of Directors that must

6   always contain at least 51% people with disabilities.

7       22.   CALIF's mission is 1) To achieve greater input,

8   participation, and control over policies and services especially

9   those for people with disabilities, including those that exclude

10  them; 2) To address discrimination wherever it exists; 3) To

11  encourage the meaningful participation of persons with disabilities

12  in mainstream activities that enhance the positive image and

13  experience of disability; 4) To empower people with disabilities

14  by encouraging ongoing education and a broad knowledge of the

15  history and heritage of the Disability Movement; and 5) To

16  provide the Disability Community with the following core

17  services: Systems Change Advocacy; Housing Advocacy;

18  Individual and Benefits Advocacy; Personal Assistance Services

19  Advocacy; Information and Referral; Peer Counseling;

20  Independent Living Skills Training; and Assistive Technology.

21      23.   The majority of clients served by CALIF are poor

22  because their disabilities limit their ability to work, and therefore

23  they rely on public and private programs intended to serve people

24  with low incomes.

25      24.   CALIF served a significant number of clients

26  requesting assistance with searching for accessible and/or

27  affordable housing or removing barriers to accessible housing,

28

1  requiring it to devote one full-time employee to assist clients with

2  housing needs.

3     25.   CALIF's Housing Programs, administered and

4  implemented by its Housing Advocate, include a Tenant-Landlord

5  Conflict Resolution program and the California Community

6  Transition program.

7     26.   Through the California Community Transitions

8  program, CALIF seeks to help people move from skilled nursing

9  facilities and acute care hospitals back into community living.

10  CALIF assists clients with locating and obtaining affordable

11  housing, provides security deposits and first month's rent, and

12  assists with home modification and durable medical equipment,

13  among other services.

14     27.   In addition, CALIF's Housing Advocate provides

15  clients with assistance with applications for Section 8 and other

16  public housing programs; assistance with reasonable

17  accommodation requests in public housing; and information and

18  referrals to various affordable housing programs in the City and

19  County of Los Angeles.

20     28.   Over the last four years, CALIF has been forced to

21  divert the time and resources of its Housing Advocate from

22  implementing the above-mentioned housing programs and services

23  to inspecting and confirming the accessibility of housing units to

24  which it refers clients who require housing with accessible

25  features – including units within the Government Defendants'

26  Redevelopment Housing Program. CALIF had previously referred

27  clients to such housing units advertised as accessible, only to have

28  those clients return, upset and complaining that the advertised

1   units were not in fact accessible, or that accessible units did not

2   exist.

3       29.   During the time period relevant to the instant

4   Complaint, CALIF's Housing Advocate personally inspected at

5   least three buildings constructed with funds granted by or through

6   the Government Defendants that boasted that they had accessible

7   units.  Barriers discovered at these properties, both in common

8   areas and within the advertised "accessible" units, included

9   doorways that were too narrow to accommodate wheelchairs, and

10  bathrooms and kitchens that lacked accessible features and

11  required clearances. When these barriers have been discovered,

12  CALIF has spent its scarce time and resources counseling

13  frustrated and aggrieved home seekers, and educating housing

14  providers regarding their noncompliance with the law and the

15  housing rights of people with disabilities.

16      30.   A substantial majority of CALIF's clients, employees,

17  and community advisory board ("constituents") are people with

18  disabilities, or family of persons with disabilities, who have been

19  harmed and continue to be harmed because the Government

20  Defendants have failed and continue to fail to ensure that housing

21  funded, developed, or significantly assisted by the Defendants as

22  part of their Redevelopment Housing Program is accessible to

23  people with disabilities.

24      31.   Defendant City of Los Angeles, California is a

25  municipal corporation organized under the laws of the State of

26  California.

27      32.    At all times relevant, the City has been a public entity

28  within the meaning of Title II of the ADA.

1   33.   At all times relevant, the City has received federal
2   financial assistance within the meaning of the Rehabilitation Act.

3   34.   At all times relevant, the City has received state
4   financial assistance within the meaning of California Government
5   Code § 11135.

6   35.   Defendant City of Los Angeles is sued in its own
7   capacity and in its capacity as a successor housing agency to
8   Defendant CRA, as set forth further below.

9   36.   Defendant Community Redevelopment Agency of the
10  City of Los Angeles ("CRA") is a public agency authorized, until
11  February 1, 2012, by the California Community Redevelopment
12  Law to conduct redevelopment and revitalization activities using
13  public and private funds in designated areas of the City of Los
14  Angeles.

15  37.   At all times relevant, the Defendant CRA has been a
16  public entity within the meaning of Title II of the ADA.

17  38.   At all times relevant, the Defendant CRA has received
18  federal financial assistance within the meaning of the
19  Rehabilitation Act.

20  39.   At all times relevant, the Defendant CRA has received
21  state financial assistance within the meaning of California
22  Government Code §11135.

23  40.   At all times relevant up until February 1, 2012, a Board
24  of Commissioners appointed by the Mayor of the City of Los
25  Angeles and confirmed by the Los Angeles City Council has
26  overseen the CRA.

27  41.   Under an "Oversight Ordinance," adopted in 1991,
28  every action of the CRA up until February 1, 2012 has been

1 subject to Los Angeles City Council approval. L.A. Ad. Code

2 § 8.99.01, *et seq.*

3      42.   Pursuant to the same ordinance, the Los Angeles City

4 Attorney has served as General Counsel for the CRA.  L.A. Ad.

5 Code § 8.99.03.

6      43.   On June 28, 2011, the Governor of the State of

7 California approved California Assembly Bill ABx1 26 (2011)

8 ("AB 26"), which was filed with the Secretary of State on June 29,

9 2011, amending California Redevelopment Law, California Health

10 and Safety Code Sections 33500, 33501, 33607.5, and 33607.7,

11 and adding Part 1.8 (commencing with Section 34161) and Part

12 1.85 (commencing with Section 34170), and adding Section 97.401

13 and 98.2 to the California Revenue and Taxation Code.

14      44.   AB 26 fundamentally restructured California

15 Redevelopment Law, dissolving the existing structure of

16 redevelopment agencies and transferring to successor entities all

17 authority, rights, powers, duties and obligations previously vested

18 with the former redevelopment agencies, other than as specified.

19      45.   AB 26 set up a timetable and structure for dissolving

20 redevelopment agencies and transferring their remaining

21 obligations to the successor entities. *See Cal. Redevelopment*

22 *Assoc. v. Matosantos*, 53 Cal.4th 231, 135 Cal.Rptr.3d 683 (Dec.

23 29, 2011) (holding that ABx1 26 ('The Dissolution Act') is

24 constitutional and establishing a dissolution date of February 1,

25 2012 for all agencies.)

26      46.   Pursuant to AB 26, and specifically California Health &

27 Safety Code Section 34173, and as of February 1, 2012, Defendant

28 CRA was dissolved as part of this fundamental restructuring of

1  redevelopment agencies in California and certain of the CRA's

2  functions, obligations, liabilities, and assets were transferred to

3  two successor entities, specifically a Designated Local Authority

4  called the "CRA/LA Designated Local Authority," and the City of

5  Los Angeles.

6       47.   Defendant CRA/LA Designated Local Authority was

7  established on or about February 1, 2012.

8       48.   Defendant CRA/LA Designated Local Authority is a

9  public entity formed pursuant to California Health & Safety Code

10  34173(d).

11       49.   At all times relevant, the Defendant CRA/LA

12  Designated Local Authority has been a public entity within the

13  meaning of Title II of the ADA.

14       50.   At all times relevant, the Defendant CRA/LA

15  Designated Local Authority has received federal financial

16  assistance within the meaning of the Rehabilitation Act.

17       51.   At all times relevant, the Defendant CRA/LA

18  Designated Local Authority has received state financial assistance

19  within the meaning of California Government Code § 11135.

20       52.   Defendant CRA/LA Designated Local Authority is a

21  successor entity to Defendant CRA, assuming statutorily specified

22  functions, assets, and liabilities of Defendant CRA as of February

23  1, 2012, as set out in AB 26.

24       53.   On or about January 25, 2012, Defendant City of Los

25  Angeles passed a resolution whereby it elected, pursuant to

26  California Health & Safety Code § 34176(a), to become the

27  successor housing agency to the CRA, to receive and retain the

28  housing assets of Defendant CRA, to perform the housing

1   functions under the California Community Redevelopment Law

2   previously performed by Defendant CRA, and to accept transfer of

3   all rights, powers, duties and obligations, except as otherwise

4   provided in California Health & Safety Code Part 1.85, of

5   Defendant CRA related to its housing assets and functions. *See*

6   Los Angeles City Council File No. 12-0049.

7      54.   AB 26, and specifically California Health & Safety

8   Code Sections 34179, *et seq.*, requires that an oversight board

9   consisting of seven members be established to approve and/or

10  direct specified activities of the successor agency.

11     55.   On or about May 2, 2012, Defendant Oversight Board

12  for CRA/LA, a Designated Local Authority, was officially

13  constituted to assume the statutorily specified functions; members

14  of Defendant Oversight Board were sworn into office; and the first

15  meeting of Defendant Oversight Board took place.

16     56.   Each of the Government Defendants was the actual or

17  apparent agent, employee, manager, or representative of each of

18  the other Government Defendants.  Each Government Defendant,

19  in doing the acts or omitting to act as alleged in this Complaint,

20  was acting in the course and scope of his, her, or its actual or

21  apparent authority pursuant to such agencies; or the alleged acts or

22  omissions of each Government Defendant as agent were

23  subsequently ratified and adopted by each agent as principal.

24                    **OWNER DEFENDANTS**

25     57.   Defendant 105 East "I" Street, L.P. ("105 East I") is a

26  California limited partnership that does business in California,

27  including in the City and County of Los Angeles.  105 East I

28  currently owns Don Hotel Apartments, a multi-family housing

1  development located at 105 East I Street, Los Angeles, California.

2  Don Hotel Apartments is a CRA-assisted development.

3     58.  Defendant 12129 El Dorado Avenue, L.P. ("El Dorado")

4  is a California limited partnership that does business in California,

5  including in the City and County of Los Angeles.  El Dorado

6  currently owns El Dorado Apartments, a multi-family housing

7  development located at 12129 El Dorado Avenue, Los Angeles,

8  California.  El Dorado Apartments is a CRA-assisted development.

9     59.  Defendant 4651 Huntington, L.P. ("4651 Huntington")

10  is a California limited partnership that does business in California,

11  including in the City and County of Los Angeles.  4651

12  Huntington currently owns Vista Monterey Senior Housing, a

13  multi-family senior housing development located at 4647

14  Huntington Drive North, Los Angeles, California.  Vista Monterey

15  Senior Housing is a CRA-assisted development.

16     60.  Defendant 505 Bonnie Brae Partners, L.P. ("Bonnie

17  Brae") is a California limited partnership that does business in

18  California, including in the City and County of Los Angeles.

19  Bonnie Brae currently owns Bonnie Brae Apartment Homes, a

20  multi-family housing development located at 501-511 South

21  Bonnie Brae Street, Los Angeles, California.  Bonnie Brae

22  Apartment Homes is a CRA-assisted development.

23     61.  Defendant 901 South Broadway Street Limited

24  Partnership ("901 South Broadway") is a California limited

25  partnership that does business in California, including in the City

26  and County of Los Angeles.  901 South Broadway currently owns

27  Broadway Plaza Apartments, a multi-family housing development

28

1  located at 901 South Broadway Street, Los Angeles, California.

2  Broadway Plaza Apartments is a CRA-assisted development.

3      62.   Defendant Adams 935, L.P. ("Adams 935") is a

4  California limited partnership that does business in California,

5  including in the City and County of Los Angeles. Adams 935

6  currently owns Adams and Central, a multi-family housing

7  development located at 1011 Adams Boulevard, Los Angeles,

8  California. Adams and Central is a CRA-assisted development.

9      63.   Defendant Amcal Montecito Fund, L.P. ("Amcal") is a

10  California limited partnership that does business in California,

11  including in the City and County of Los Angeles. Amcal currently

12  owns Montecito Terraces, a multi-family housing development

13  located at 14653-61 and 14726-28 Blythe Street, Los Angeles,

14  California. Montecito Terraces is a CRA-assisted development.

15      64.   Defendant Amistad Plaza Partners Limited Partnership

16  ("Amistad") is a California limited partnership that does business

17  in California, including in the City and County of Los Angeles.

18  Amistad currently owns Amistad Plaza, a multi-family housing

19  development located at 6050-6130 South Western Avenue, Los

20  Angeles, California. Amistad Plaza is a CRA-assisted

21  development.

22      65.   Defendant Andalucia Senior Apartments, L.P.

23  ("Andalucia") is a California limited partnership that does

24  business in California, including in the City and County of Los

25  Angeles. Andalucia currently owns Andalucia Senior Apartments,

26  a multi-family senior housing development located at 15305

27  Lanark Street, Los Angeles, California. Andalucia Senior

28  Apartments is a CRA-assisted development.

1    66.   Defendant Ardmore 959 Partners, L.P. ("Ardmore 959")
2  is a California limited partnership that does business in California,
3  including in the City and County of Los Angeles.  Ardmore 959
4  currently owns The Ardmore, a multi-family housing development
5  located at 959 South Ardmore Avenue, Los Angeles, California.
6  The Ardmore is a CRA-assisted development.

7    67.   Defendant Asturias Senior Apartments, L.P.
8  ("Asturias") is a California limited partnership that does business
9  in California, including in the City and County of Los Angeles.
10  Asturias currently owns Asturias Senior Apartments, a multi-
11  family senior housing development located at 9628 Van Nuys
12  Boulevard, Los Angeles, California.  Asturias Senior Apartments
13  is a CRA-assisted development.

14    68.   Defendant B S Broadway Village II, L.P. ("B S
15  Broadway II") is a California limited partnership that does
16  business in California, including in the City and County of Los
17  Angeles.  B S Broadway II currently owns Broadway Village II, a
18  multi-family housing development located at 5101 South
19  Broadway, Los Angeles, California.  Broadway Village II is a
20  CRA-assisted development.

21    69.   Defendant Buckingham Senior Apartments, L.P.
22  ("Buckingham") is a California limited partnership that does
23  business in California, including in the City and County of Los
24  Angeles.  Buckingham currently owns Buckingham Place Senior
25  Housing, a multi-family senior housing development located at
26  4020 Buckingham Road, Los Angeles, California.  Buckingham
27  Place Senior Housing is a CRA-assisted development.

28

1    70.   Defendant Cantabria Senior Apartments, L.P.

2  ("Cantabria") is a California limited partnership that does business

3  in California, including in the City and County of Los Angeles.

4  Cantabria currently owns Cantabria Senior Citizen Apartments, a

5  multi-family senior housing development located at 9640 Van

6  Nuys Boulevard, Los Angeles, California.  Cantabria Senior

7  Citizen Apartments is a CRA-assisted development.

8    71.   Defendant Carondelet Court Partners, L.P.

9  ("Carondelet") is a California limited partnership that does

10  business in California, including in the City and County of Los

11  Angeles.  Carondelet currently owns Carondelet Court Apartments,

12  a multi-family housing development located at 816 South

13  Carondelet Street, Los Angeles, California.  Carondelet Court

14  Apartments is a CRA-assisted development.

15    72.   Defendant Central Village Apartments, L.P. ("Central

16  Village") is a California limited partnership that does business in

17  California, including in the City and County of Los Angeles.

18  Central Village currently owns Central Village Apartments, a

19  multi-family housing development located at 2000 South Central

20  Avenue, Los Angeles, California.  Central Village Apartments is a

21  CRA-assisted development.

22    73.   Defendant Decro Orion Apartments, L.P. ("Decro

23  Orion") is a California limited partnership that does business in

24  California, including in the City and County of Los Angeles.

25  Decro Orion currently owns Orion Garden Apartments (aka Decro

26  Orion), a multi-family housing development located at 8947-8955

27  North Orion Street, Los Angeles, California.  Orion Garden

28  Apartments (aka Decro Orion) is a CRA-assisted development.

74.   Defendant Decro Osborne Apartments, L.P. ("Decro Osborne") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Decro Osborne currently owns Decro Osborne Apartments (aka Osborne Family), a multi-family housing development located at 12360 Osborne Street, Los Angeles, California.  Decro Osborne Apartments (aka Osborne Family) is a CRA-assisted development.

75.   Defendant East LA Community Corporation ("ELACC") is a California corporation that does business in California, including in the City and County of Los Angeles.  ELACC currently owns Boyle Hotel Apartments, a multi-family housing development located at 101 North Boyle Avenue, Los Angeles, California, and Paseo Del Sol, another multi-family housing development located at 417 North Soto Street, Los Angeles, California.  Boyle Hotel Apartments and Paseo Del Sol are both CRA-assisted developments.

76.   Defendant Eastside Village, L.P. ("Eastside Village") is a California limited partnership that does business in California, including in the City and County of Los Angeles.  Eastside Village currently owns Eastside Village (Lillian Mobley), a multi-family housing development located at 2250 East 111th Street, Los Angeles, California.  Eastside Village (Lillian Mobley) is a CRA-assisted development.

77.   Defendant Esperanza Community Housing Corporation ("Esperanza") is a California corporation that does business in California, including in the City and County of Los Angeles. Esperanza currently owns La Estrella Apartments, a multi-family housing development located at 1979 Estrella Avenue, Los

1  Angeles, California.  La Estrella Apartments is a CRA-assisted
2  development.
3       78.   Defendant Eugene Hotel, L.P. ("Eugene") is a
4  California limited partnership that does business in California,
5  including in the City and County of Los Angeles.  Eugene
6  currently owns Eugene Hotel, a multi-family housing development
7  located at 560 South Stanford Street, Los Angeles, California.
8  Eugene Hotel is a CRA-assisted development.
9       79.   Defendant Fame West 25th Street, L.P. ("Fame West") is
10  a California limited partnership that does business in California,
11  including in the City and County of Los Angeles.  Fame West
12  currently owns FAME West 25th (aka FAME-Western), a multi-
13  family housing development located at 1940 West 25th Street, Los
14  Angeles, California.  FAME West 25th (aka FAME-Western) is a
15  CRA-assisted development.
16       80.   Defendant Far East Building, L.P. ("Far East") is a
17  California limited partnership that does business in California,
18  including in the City and County of Los Angeles.  Far East
19  currently owns Far East Building, a multi-family housing
20  development located at 347-353 East First Street, Los Angeles,
21  California.  Far East Building is a CRA-assisted development.
22       81.   Defendant Grandview Nine, L.P. ("Grandview") is a
23  California limited partnership that does business in California,
24  including in the City and County of Los Angeles.  Grandview
25  currently owns Grandview 9, a multi-family housing development
26  located at 916-920 South Park View Street, Los Angeles,
27  California.  Grandview 9 is a CRA-assisted development.
28

1    82.   Defendant Hart Village, L.P. ("Hart") is a California

2 limited partnership that does business in California, including in

3 the City and County of Los Angeles.  Hart currently owns Hart

4 Village, a multi-family housing development located at 6927-41

5 Owensmouth Avenue/21702-12 Hart Street, Los Angeles,

6 California.  Hart Village is a CRA-assisted development.

7    83.   Defendant Heavenly Vision Senior Housing, L.P.

8 ("Heavenly Vision") is a California limited partnership that does

9 business in California, including in the City and County of Los

10 Angeles.  Heavenly Vision currently owns Heavenly Vision

11 Seniors, a multi-family senior housing development located at

12 9400 South Broadway, Los Angeles, California.  Heavenly Vision

13 Seniors is a CRA-assisted development.

14    84.   Defendant Hobart Heights Partners, L.P. ("Hobart") is a

15 California limited partnership that does business in California,

16 including in the City and County of Los Angeles.  Hobart currently

17 owns The Hobart, a multi-family housing development located at

18 924 South Hobart Boulevard, Los Angeles, California.  The Hobart

19 is a CRA-assisted development.

20    85.   Defendant Hoover Seniors, L.P. ("Hoover") is a

21 California limited partnership that does business in California,

22 including in the City and County of Los Angeles.  Hoover

23 currently owns Hoover Senior, a multi-family senior housing

24 development located at 6200-6214 South Hoover Street, Los

25 Angeles, California.  Hoover Senior is a CRA-assisted

26 development.

27    86.   Defendant Imani Fe, LP ("Imani Fe") is a California

28 limited partnership that does business in California, including in

the City and County of Los Angeles. Imani Fe currently owns Imani Fe (East and West), a multi-family housing development located at 10345 and 10408-10424 South Central Avenue, Los Angeles, California. Imani Fe (East and West) is a CRA-assisted development.

87.    Defendant Korean Family Housing Corporation ("Korean Family Housing") is a California corporation that does business in California, including in the City and County of Los Angeles. Korean Family Housing currently owns Pleasant Hill Homes, a multi-family housing development located at 1315 Pleasant Avenue, Los Angeles, California. Pleasant Hill Homes is a CRA-assisted development.

88.    Defendant Las Margaritas, L.P. is a California limited partnership that does business in California, including in the City and County of Los Angeles. Las Margaritas, L.P. currently owns Las Margaritas, a multi-family housing development located at 115 and 137 North Soto Street and 319 North Cummings Street, Los Angeles, California. Las Margaritas is a CRA-assisted development.

89.    Defendant Los Angeles Housing Partnership, Inc. ("L.A. Housing Partnership") is a California corporation that does business in California, including in the City and County of Los Angeles. L.A. Housing Partnership currently owns Bronson Court, a multi-family housing development located at 1227-39 North Bronson Avenue, Los Angeles, California. Bronson Court is a CRA-assisted development.

90.    Defendant Los Cuatro Vientos, L.P. ("LCV") is a California limited partnership that does business in California,

1  including in the City and County of Los Angeles. LCV currently

2  owns Cuatro Vientos, a multi-family housing development located

3  at 5331 East Huntington Drive, Los Angeles, California. Cuatro

4  Vientos is a CRA-assisted development.

5      91.   Defendant Menlo Park, A California Limited

6  Partnership ("Menlo Park") is a California limited partnership that

7  does business in California, including in the City and County of

8  Los Angeles. Menlo Park currently owns Menlo Park Apartments,

9  a multi-family housing development located at 831 West 70th

10  Street, Los Angeles, California. Menlo Park Apartments is a

11  CRA-assisted development.

12      92.   Defendant Morgan Place, L.P. ("Morgan") is a

13  California limited partnership that does business in California,

14  including in the City and County of Los Angeles. Morgan

15  currently owns Morgan Place Senior Apartments, a multi-family

16  senior housing development located at 7301-15 South Crenshaw

17  Boulevard, Los Angeles, California. Morgan Place Senior

18  Apartments is a CRA-assisted development.

19      93.   Defendant New Genesis Apartments, L.P. ("New

20  Genesis") is a California limited partnership that does business in

21  California, including in the City and County of Los Angeles. New

22  Genesis currently owns New Genesis Apartments, a multi-family

23  housing development located at 452-458 South Main Street, Los

24  Angeles, California. New Genesis Apartments is a CRA-assisted

25  development.

26      94.   Defendant New Tierra del Sol, L.P. ("New Tierra") is a

27  California limited partnership that does business in California,

28  including in the City and County of Los Angeles. New Tierra

1   currently owns Tierra del Sol, a multi-family housing development
2   located at 7500 Alabama Avenue, Los Angeles, California.  Tierra
3   del Sol is a CRA-assisted development.
4         95.   Defendant NoHo Senior Villas, L.P. ("NoHo Senior") is
5   a California limited partnership that does business in California,
6   including in the City and County of Los Angeles.  NoHo Senior
7   currently owns NoHo Senior Villas, a multi-family housing
8   development located at 5526-5532 Klump Avenue, Los Angeles,
9   California.  NoHo Senior Villas is a CRA-assisted development.
10        96.   Defendant Ol Hope, L.P. ("Ol Hope") is a California
11  limited partnership that does business in California, including in
12  the City and County of Los Angeles.  Ol Hope currently owns
13  Hope Manor, a multi-family housing development located at 1031
14  South Hope Street, Los Angeles, California.  Hope Manor is a
15  CRA-assisted development.
16        97.   Defendant P G Housing Partners, L.P. ("P G Housing")
17  is a California limited partnership that does business in California,
18  including in the City and County of Los Angeles.  P G Housing
19  currently owns Pico/Gramercy, a multi-family housing
20  development located at 3201 West Pico Boulevard, Los Angeles,
21  California.  Pico/Gramercy is a CRA-assisted development.
22        98.   Defendant Palm Village Senior Housing Corp. ("Palm
23  Village") is a California corporation that does business in
24  California, including in the City and County of Los Angeles.  Palm
25  Village currently owns Palm Village Senior Citizens, a multi-
26  family senior housing development located at 9040 Laurel Canyon
27  Boulevard, Los Angeles, California.  Palm Village Senior Citizens
28  is a CRA-assisted development.

1    99.   Defendant Palomar Apartments, L.P. ("Palomar") is a

2  California limited partnership that does business in California,

3  including in the City and County of Los Angeles.  Palomar

4  currently owns Palomar Apartments, a multi-family housing

5  development located at 5473 Santa Monica Boulevard, Los

6  Angeles, California.  Palomar Apartments is a CRA-assisted

7  development.

8    100.  Defendant Penny Lane Centers ("Penny Lane") is a

9  California corporation that does business in California, including

10  in the City and County of Los Angeles.  Penny Lane currently

11  owns Columbus Permanent Housing, a multi-family housing

12  development located at 8900-06 Columbus Avenue, Los Angeles,

13  California.  Columbus Permanent Housing is a CRA-assisted

14  development.

15    101.  Defendant Rampart Apartments, A California Limited

16  Partnership ("Rampart") is a California limited partnership that

17  does business in California, including in the City and County of

18  Los Angeles.  Rampart currently owns Casa Rampart, a multi-

19  family housing development located at 401 and 512 South Rampart

20  Boulevard, Los Angeles, California.  Casa Rampart is a CRA-

21  assisted development.

22    102.  Defendant Redrock NoHo Residential, LLC ("Redrock

23  NoHo") is a Delaware limited liability company that does business

24  in California, including in the City and County of Los Angeles.

25  Redrock NoHo currently owns Lofts @ NoHo Commons ("Lofts"),

26  a multi-family housing development located at 11136 Chandler

27  Boulevard, North Hollywood, California.  Lofts is a CRA-assisted

28  development.

103. Defendant Renato Apartments, L.P. ("Renato") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Renato currently owns Renato Apartments, a multi-family housing development located at 527-531 South San Julian, Los Angeles, California. Renato Apartments is a CRA-assisted development.

104. Defendant Rittenhouse Limited Partnership ("Rittenhouse LP") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Rittenhouse LP currently owns Rittenhouse, a multi-family housing development located at 1100 East 33rd Street, Los Angeles, California. Rittenhouse is a CRA-assisted development.

105. Defendant Selma-Hudson Community Limited Partnership ("Selma-Hudson") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Selma-Hudson currently owns Casa Verde, a multi-family housing development located at 1552 Schrader Boulevard, Los Angeles, California. Selma-Hudson is a CRA-assisted development.

106. Defendant Seven Maples, L.P. ("Seven Maples") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Seven Maples currently owns Seven Maples Senior Apartments, a multi-family senior housing development located at 2618-30 West 7th Street, Los Angeles, California. Seven Maples Senior Apartments is a CRA-assisted development.

107. Defendant SF No Ho LLC ("SF No Ho") is a California limited liability company that does business in California,

1   including in the City and County of Los Angeles. SF No Ho

2   currently owns Gallery @ NoHo Commons ("Gallery"), a multi-

3   family housing development located at 5416 Fair Avenue, Los

4   Angeles, California. Gallery is a CRA-assisted development.

5       108. Defendant Sherman Village Apartments, L.P.

6   ("Sherman Village") is a California limited partnership that does

7   business in California, including in the City and County of Los

8   Angeles. Sherman Village currently owns Sherman Village

9   Apartments, a multi-family housing development located at 18900

10  Sherman Way, Los Angeles, California. Sherman Village

11  Apartments is a CRA-assisted development.

12      109. Defendant Sherman Way Community Housing, L.P.

13  ("Sherman Way") is a California limited partnership that does

14  business in California, including in the City and County of Los

15  Angeles. Sherman Way currently owns Three Courtyards

16  Apartments (aka Ivy Terrace), a multi-family housing development

17  located at 13751 Sherman Way, Los Angeles, California. Three

18  Courtyards (aka Ivy Terrace) is a CRA-assisted development.

19      110. Defendant Stovall Housing Corporation ("Stovall

20  Housing") is a California corporation that does business in

21  California, including in the City and County of Los Angeles.

22  Stovall Housing currently owns Stovall Villa, a multi-family

23  housing development located at 535 West 41st Street, Los Angeles,

24  California. Stovall Villa is a CRA-assisted development.

25      111. Defendant Vermont Seniors is a California corporation

26  that does business in California, including in the City and County

27  of Los Angeles. Vermont Seniors currently owns Vermont Seniors

28  (I and II), a multi-family senior housing development located at

1   3901-3925 South Vermont Avenue/1015 West 39th Place, Los
2   Angeles, California.  Vermont Seniors (I and II) is a CRA-assisted
3   development.

4       112.  Defendant WA Court, L.P. ("WA Court") is a California
5   limited partnership that does business in California, including in
6   the City and County of Los Angeles.  WA Court currently owns
7   Washington Court Family Housing, a multi-family housing
8   development located at 1717 East 103rd Street, Los Angeles,
9   California.  Washington Court Family Housing is a CRA-assisted
10  development.

11      113.  Defendant Watts/Athens Preservation XVII, L.P.
12  ("Watts/Athens") is a California limited partnership that does
13  business in California, including in the City and County of Los
14  Angeles.  Watts/Athens currently owns Terre One Apartments, a
15  multi-family housing development located at 5270 South Avalon
16  Boulevard, Los Angeles, California.  Terre One Apartments is a
17  CRA-assisted development.

18      114.  Defendant West Angeles Villas, L.P. ("WAV") is a
19  California limited partnership that does business in California,
20  including in the City and County of Los Angeles.  WAV currently
21  owns West Angeles Villas, a multi-family housing development
22  located at 6030 Crenshaw Boulevard, Los Angeles, California.
23  West Angeles Villas is a CRA-assisted development.

24      115.  Defendant Western/Carlton II, L.P. ("Western/Carlton")
25  is a California limited partnership that does business in California,
26  including in the City and County of Los Angeles.  Western/Carlton
27  currently owns Metro Hollywood Apartments (aka Hollywood
28  Western Apartments/Western-Carlton Phase II) ("Metro

1  Hollywood"), a multi-family housing development located at 1672

2  N. Western Avenue, Los Angeles, California.  Metro Hollywood is

3  a CRA-assisted development.

4      116.  Defendant Yale Terrace Apartments, A California

5  Limited Partnership ("Yale Terrace") is a California limited

6  partnership that does business in California, including in the City

7  and County of Los Angeles.  Yale Terrace currently owns Yale

8  Terrace Apartments, a multi-family housing development located

9  at 716-734 South Yale Street, Los Angeles, California.  Yale

10  Terrace Apartments is a CRA-assisted development.

11  **STATUTORY AND REGULATORY FRAMEWORK**

12  **I.   Section 504 of the Rehabilitation Act**

13      117.  The purpose of the Rehabilitation Act of 1973 is to

14  "maximize employment, economic self-sufficiency, independence,

15  and inclusion and integration into society" of people with

16  disabilities. 29 U.S.C. §701(b)(1). The Rehabilitation Act is based

17  on findings that "individuals with disabilities continually

18  encounter various forms of discrimination in such critical areas as

19  . . . housing" and that "the goals of the Nation properly include the

20  goal of providing individuals with disabilities with the tools

21  necessary to . . . achieve equality of opportunity, full inclusion

22  and integration in society, employment, independent living, and

23  economic and social self-sufficiency." 29 U.S.C. §701(a)(5) and

24  (6)(B).

25      118.   All entities receiving federal financial assistance must

26  comply with the anti-discrimination provisions of Section 504 of

27  the Rehabilitation Act. 29 U.S.C. §794(a). "No otherwise qualified

28  individual with a disability . . . shall, solely by reason of his or

1   her disability, be excluded from participation in, be denied the

2   benefits of, or be subjected to discrimination under any program or

3   activity receiving Federal financial assistance . . ." 29 U.S.C. §

4   794.

5       119.   Section 504 requires covered entities to provide people

6   with disabilities meaningful access to programs, services, and

7   activities. *Alexander v. Choate*, 469 U.S. 287 (1985). The

8   meaningful access requirement applies across the board to all of a

9   covered entity's programs, services, and activities, regardless of

10  whether a particular program, service, or activity itself has direct

11  federal funding.

12      120.   U.S. Department of Housing and Urban Development

13  ("HUD") Regulations implementing Section 504 provide that "[a]

14  recipient, in providing any housing, aid, benefit, or service in a

15  program or activity that receives Federal financial assistance from

16  the Department [of Housing & Urban Development] may not,

17  directly or through contractual, licensing, or other arrangements,

18  solely on the basis of handicap: . . . Aid or perpetuate

19  discrimination against a qualified individual with handicaps by

20  providing significant assistance to an agency, organization, or

21  person that discriminates on the basis of handicap in providing any

22  housing, aid, benefit, or service to beneficiaries in the recipient's

23  federally assisted program or activity"; [or] "Otherwise limit a

24  qualified individual with handicaps in the enjoyment of any right,

25  privilege, advantage, or opportunity enjoyed by other qualified

26  individuals receiving the housing, aid, benefit, or service." 24

27  C.F.R. § 8.4(b)(1).

28

1   121.   The HUD regulations implementing Section 504 also
2   require that "[i]n any program or activity receiving Federal
3   financial assistance from the Department, a recipient may not,
4   directly or through contractual or other arrangements, utilize
5   criteria or methods of administration the purpose or effect of
6   which would: (i) Subject qualified individuals with handicaps to
7   discrimination solely on the basis of handicap; (ii) Defeat or
8   substantially impair the accomplishment of the objectives of the
9   recipient's federally assisted program or activity for qualified
10  individuals with a particular handicap involved in the program or
11  activity, unless the recipient can demonstrate that the criteria or
12  methods of administration are manifestly related to the
13  accomplishment of an objective of a program or activity; or (iii)
14  Perpetuate the discrimination of another recipient if both
15  recipients are subject to common administrative control or are
16  agencies of the same State." 24 C.F.R. § 8.4(b)(4).

17  122.   In addition to general program requirements, HUD
18  Section 504 regulations also describe specific architectural and
19  other requirements that apply to particular housing projects or
20  units receiving federal financial assistance.

21  123.   For example, five percent of the total dwelling units in
22  new multifamily housing projects receiving federal financial
23  assistance must meet the requirements set forth in the Uniform
24  Federal Accessibility Standards ("UFAS") for accessibility for
25  people with mobility impairments, and an additional two percent
26  must be accessible per UFAS requirements for people with hearing
27  or vision impairments. 24 C.F.R. §8.22(a) and (b).

28

124.   Multifamily housing projects receiving federal financial assistance must take steps to ensure that accessible dwelling units in those projects are occupied by people who need the accessibility features of those units, including offering available units first to people who need the accessibility features and taking steps to assure that advertising and other information regarding the availability of accessible units reaches people with disabilities. 24 C.F.R. §8.27.

125.   Accessible units must also be distributed throughout housing projects and sites to the maximum extent feasible and be available in a range of sizes and amenities so that a person with a disability's choice of living arrangements is comparable to that of others.

126.   The regulations regarding these specific requirements provide important guidance regarding what steps may be necessary to ensure that people with physical disabilities have meaningful access to a housing program, and the Court may accept them as authoritative interpretations of the statute by the agency charged with enforcement.

II.   **Title II of the Americans with Disabilities Act**

127.   The Americans with Disabilities Act, which is modeled on Section 504 of the Rehabilitation Act, was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" with "clear, strong, consistent, enforceable standards . . . in order to address the major areas of discrimination faced day-to-day by people with disabilities." 42 U.S.C. §12101(b).

1    128. All public entities, including state and local

2    governments and their departments, agencies, and

3    instrumentalities, must comply with Title II of the Americans with

4    Disabilities Act.

5    129. Title II of the ADA provides that "no qualified

6    individual with a disability shall, by reason of such disability, be

7    excluded from participation in or be denied the benefits of the

8    services, programs, or activities of a public entity, or be subjected

9    to discrimination by such entity." 42 U.S.C. § 12132.

10   130. Like Section 504, Title II of the ADA requires covered

11   entities to provide people with disabilities meaningful access to

12   programs, services, and activities. *Crowder v. Kitagawa*, 81 F.3d

13   1480 (9th Cir. 1996). The meaningful access requirement applies

14   across the board to all of a covered entity's programs, services,

15   and activities, regardless of whether a particular program, service,

16   or activity itself has direct federal funding.

17   131. U.S. Department of Justice Regulations implementing

18   Title II of the ADA clarify that "[a] public entity, in providing any

19   aid, benefit or service, may not, directly or through contractual,

20   licensing or other arrangements, on the basis of disability. . . .

21   [a]id or perpetuate discrimination against a qualified individual

22   with a disability by providing significant assistance to an agency,

23   organization, or person that discriminates on the basis of disability

24   in providing any aid, benefit, or service to beneficiaries of the

25   public entity's program;" [or] "Otherwise limit a qualified

26   individual with a disability in the enjoyment of any right,

27   privilege, advantage, or opportunity enjoyed by others receiving

28   the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).

1    132. Department of Justice Regulations implementing Title

2    II also clarify that "[a] public entity may not, directly or through

3    contractual or other arrangements, utilize criteria or methods of

4    administration: (i) That have the effect of subjecting qualified

5    individuals with disabilities to discrimination on the basis of

6    disability; (ii) That have the purpose or effect of defeating or

7    substantially impairing accomplishment of the objectives of the

8    public entity's program with respect to individuals with

9    disabilities; or (iii) That perpetuate the discrimination of another

10   public entity if both public entities are subject to common

11   administrative control . . ." 28 C.F.R. § 35.130(b)(3).

12   **III.   The Fair Housing Act**

13       133. In 1988, Congress amended the Fair Housing Act to

14   include a number of provisions prohibiting discrimination on the

15   basis of disability, as part of a comprehensive revision of the law.[1]

16   In considering those amendments, Congress stressed that

17   enforcement of civil rights laws is necessary to protect people with

18   disabilities from the "devastating" impact of housing

19   discrimination, including both architectural and attitudinal barriers

20   to full participation by people with disabilities

21       134. The debates and legislative history of the Fair Housing

22   Amendments Act of 1988 reflect Congressional findings that a

23   person using a wheelchair or other mobility aid is just as

24   [1] The Fair Housing Amendments Act ("FHAA") uses the term "handicap"
25   instead of the term "disability." Both terms have the same legal meaning.
     *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of
26   "disability" in the Americans with Disabilities Act is drawn almost
     verbatim "from the definition of 'handicap' contained in the Fair Housing
27   Amendments Act of 1988"). Except when referring to the statutory
     language of the FHAA, this Complaint uses the term "disability," which is
28   more generally accepted.

1  effectively excluded from the opportunity to live in a particular

2  dwelling by steps or thresholds at building or unit entrances and

3  by too narrow doorways as by a posted sign saying "No

4  Handicapped People Allowed."

5      135. As relevant in this litigation, the Fair Housing Act

6  prohibits both intentional discrimination on the basis of disability

7  and many neutral policies and practices that have a

8  disproportionate adverse impact on people with disabilities. 42

9  U.S.C. §§ 3604(f)(1) and 3604(f)(2).

10  **IV.   Section 11135 of the California Government Code**

11      136. All entities receiving financial assistance from the State

12  of California must comply with Section 11135 of the California

13  Government Code, which prohibits discrimination on the basis of

14  disability. Section 11135 incorporates the definitions of

15  discrimination contained in the ADA and its implementing

16  regulations such that a violation of the ADA is also a violation of

17  §11135. California Government Code § 11135(b).

18                    **FACTS**

19  **I.   Lack of Affordable, Accessible Housing in Los Angeles**

20      137. In order to obtain federal housing and community

21  development funds, the City submits a Consolidated Plan to HUD

22  every five years describing the housing market and housing needs

23  within Los Angeles.

24      138. According to the 2008-2013 Consolidated Plan, Los

25  Angeles is home to large numbers of people with disabilities.  In

26  2000, 20.4% of the population of Los Angeles five years old and

27  older had a disability. 2008-2013 Consolidated Plan at 176.

28  Almost 45% of the population of Los Angeles 65 years old and

1   older had a disability in 2000. *Id.* Nearly one-quarter of disabled

2   adults and two-thirds of adults over the age of 65 have physical

3   limitations. *Id.* at 93. In addition, 24% of the people with

4   disabilities living in Los Angeles have vision or hearing

5   limitations. *Id.*

6       139.  The City states in the Consolidated Plan that people

7   with physical limitations require accessible housing and that there

8   is an acute need for accessible housing in Los Angeles. The City

9   found that "[f]inding affordable, accessible units is a challenge" in

10   the City of Los Angeles. *Id.* at 94.

11       140.  The City states that "there are hundreds of thousands of

12   individuals, and families, in Los Angeles, who require accessible,

13   affordable housing and do not have it." *Id.* at 180.

14       141.  The City's Housing Element of its General Plan is the

15   City's "blueprint" for meeting the housing requirements of its

16   residents and "identifies the City's housing conditions and needs."

17   City of Los Angeles Housing Element 2006-2014 at 1.  This

18   Housing Element was adopted pursuant to California laws

19   requiring that the City adopt a General Plan Housing Element with

20   certain specified information. California Government Code

21   §§ 65300, *et seq.*)

22       142.  In its Housing Element, the City recognizes that people

23   "with physical disabilities need affordable, conveniently-located

24   housing which has been specially adapted for wheelchair

25   accessibility, along with other physical needs." City of Los

26   Angeles Housing Element 2006-2014 at 1-16.

27

28

1       143. The City acknowledges that older, more affordable

2   housing units in the City "are not accessible to those with

3   disabilities." *Id.*

4       144. The City reports that "[o]ver one-half of all disabled

5   adults in the City have 'going-outside-home' or other employment

6   limitations which affect the ability to work and earn an income."

7   *Id.* at 1-14.

8       145. As a result, people with disabilities "face unique

9   problems in obtaining affordable and adequate housing" in Los

10  Angeles. *Id.*

11  **II.   Federal and State Financial Assistance to the City and the**

12       **CRA**

13      146. Since at least 1974, the City has received federal

14  housing and community development funds from HUD, as well as

15  federal funds from other federal agencies.

16      147. The City has received federal funds under the

17  Community Development Block Grant ("CDBG") program.

18      148. The City has received federal funds under the HOME

19  Investment Partnership ("HOME") program.

20      149.  The City has received federal funds under the

21  Emergency Shelter Grant ("ESG") program.

22      150. The City has received federal funds under the Housing

23  Opportunities for People with AIDS ("HOPWA") program.

24      151. The City has also benefitted from the proceeds of

25  federal loan guarantees pursuant to Section 108 of the Community

26  Development Act.  42 U.S.C. § 5308.

27      152. The City has directed millions of dollars in CDBG and

28  HOME funds as well as state, local, and private resources to an

1   Affordable Housing Trust Fund for the purposes of developing

2   affordable housing.

3       153. By virtue of this commingling with federal funds, the

4   anti-discrimination requirements of the Rehabilitation Act and the

5   ADA attach to all funds in the Trust Fund.

6       154. As part of its affordable housing program, the City has

7   directed hundreds of millions of dollars in CDBG, HOME,

8   Affordable Housing Trust Funds, state, and other funds to the

9   Redevelopment Defendants.

10      155. The City has also received funds from the State of

11  California.

12      156. The Redevelopment Defendants have received millions

13  of dollars in federal housing and community development funds,

14  as well as federal funds from other federal agencies.

15      157. The Redevelopment Defendants have also received

16  funds from the State of California.

17  **III.   Government Defendants' Redevelopment Housing**

18       **Program**

19      158. The Redevelopment Defendants used these funds and

20  others directly to acquire property eventually developed into

21  housing and/or allocated these and other funds to developers to

22  acquire property, finance, operate, build or substantially alter tens

23  of thousands of housing units.

24      159. The Redevelopment Defendants also used other

25  financing, regulatory, contractual, and governmental methods to

26  support their housing programs and to provide significant

27  assistance to developers, owners, and operators of housing.

28

1        160. Pursuant to a staff report presented to the Local
2    Authority at an April 19, 2012 Special Meeting, entitled "Report
3    to the Governing Board on Status of Housing Functions and
4    Transfer of Housing Assets, Functions, and Obligations to the Los
5    Angeles Housing Department (LAHD)" ("April 19, 2012 Housing
6    Report"), there were over 29,000 units of housing, including
7    23,000 affordable units, in the Redevelopment Defendants'
8    portfolio as of April 19, 2012.

9        161. Pursuant to the April 19, 2012 Housing Report, as of
10   April 19, 2012, there were nearly 4,500 additional units in the
11   Redevelopment Defendants' development "pipeline," i.e.
12   somewhere in the process of development.

13       162. There were thousands of additional units funded,
14   developed or significantly assisted by the Redevelopment
15   Defendants that are no longer in its existing portfolio.

16       163. All of these units were constructed as part of the
17   Government Defendants' program, service, or activity of
18   increasing the availability of housing, including affordable
19   housing, in the City of Los Angeles.

20       164. The inventory of housing built or rehabilitated with
21   funds, land, or other assistance provided by or through the
22   Redevelopment Defendants, including projects not yet completed,
23   is hereinafter referred to as the "Redevelopment Housing
24   Program."

25
26
27
28

IV.   **Defendants' Failure to Ensure that People with Physical Disabilities Have Meaningful Access to the CRA Housing Program**

165.  By virtue of accepting federal funds to support the Redevelopment Housing Program, the Government Defendants are bound to comply with the obligations of Section 504 of the Rehabilitation Act, which prohibits recipients from operating programs which exclude people with disabilities from participation in, deny them the benefits of, or subject them to discrimination under any program or activity.

166.  As public entities, the Government Defendants are bound to comply with the obligations of the Americans with Disabilities Act, which prohibits public entities from operating programs which exclude people with disabilities from participation in, deny them the benefits of, or subject them to discrimination under any program or activity.

167.  By virtue of accepting financial assistance from the State of California, the Government Defendants are bound to comply with the obligations of Section 11135 of the California Government Code, which prohibits recipients from operating programs which exclude people with disabilities from participation in, deny them the benefits of, or subject them to discrimination under any program or activity.

168.  However, the Government Defendants failed, and continue to fail, to take steps to ensure that the Redevelopment Housing Program is accessible to people with disabilities or that any accessible units that exist are made available to people with disabilities.

1        169. As a result, people with physical disabilities have been
2    and continue to be denied meaningful access to the Redevelopment
3    Housing Program.
4        170. For example, the Government Defendants failed, and
5    continue to fail, to maintain policies or practices to ensure that the
6    Redevelopment Housing Program contains sufficient units
7    accessible to people with mobility, auditory, or visual
8    impairments.
9        171. The Government Defendants failed, and continue to
10   fail, to maintain policies, practices, or procedures to ensure that
11   accessible units within the Redevelopment Housing Program are
12   made available to and utilized by people with mobility or auditory
13   or visual impairments who need the accessibility features of those
14   units.
15       172. The Government Defendants have failed, and continue
16   to fail, to maintain policies, practices, or procedures to ensure that
17   people with mobility or auditory or visual impairments otherwise
18   have meaningful access to the Redevelopment Housing Program.
19       173. At all relevant times, the Government Defendants could
20   not or would not identify for the public which projects receiving
21   financial or other benefit from the Redevelopment Defendants
22   received federal financial assistance triggering Rehabilitation Act
23   and regulatory obligations.
24       174. At all relevant times, the Government Defendants failed
25   to monitor compliance with the Rehabilitation Act accessibility
26   requirements in the Redevelopment Housing Program.
27
28

175. At all relevant times, the Government Defendants failed to maintain a list of accessible units within the Redevelopment Housing Program.

176. At all relevant times, the Government Defendants failed to produce any list of accessible units within the Redevelopment Housing Program.

177. At all relevant times, the Government Defendants could not or would not identify for the public any wheelchair-accessible or sensory-accessible units.

178. At all relevant times, the Government Defendants could not or would not describe for the public any accessible features in so-called "wheelchair units," "handicapped units," or "sensory accessible units" within the Redevelopment Housing Program.

179. The Government Defendants have failed, and continue to fail, to require that projects within the Redevelopment Housing Program comply with federal accessibility requirements, which has the effect of excluding people with disabilities from such developments.

180. In addition, the Government Defendants failed to ensure that contracts and regulatory agreements with developers, owners, and operators of housing in the Redevelopment Housing Program and other documents pertaining to the Redevelopment Housing Program included accessibility requirements sufficient to comply with the Government Defendants' obligations as recipients of federal funds.

181. The Government Defendants also failed to exercise oversight over developers and owners of housing in the Redevelopment Housing Program in regards to their obligations to

1   comply and their ongoing compliance with disability access

2   provisions of federal law.

3       182. The Government Defendants' failures with regard to

4   ensuring the accessibility of the Redevelopment Housing Program

5   stand in stark contrast to their efforts to enforce other

6   requirements, such as regulatory provisions concerning

7   affordability requirements.

8       183. In addition to their failure to comply with accessibility

9   requirements for the redevelopment project as a whole, the

10  Government Defendants failed to ensure compliance with these

11  requirements in housing where the Government Defendants were

12  providing federal funding to the developer and/or owner for the

13  project.

14      184. For example, Plaintiffs are aware of at least 61

15  multifamily projects, comprising approximately 4,140 units, for

16  which the Redevelopment Defendants provided CDBG, HOME

17  and/or AHTF funds to support new construction or substantial

18  alteration.  The multifamily projects include but are not limited to:

19  Don Hotel Apartments (58 units); El Dorado Apartments (60

20  units); Vista Monterey Senior Housing (48 units); Bonnie Brae

21  Apartment Homes (53 units); Broadway Plaza Apartments (82

22  units); Adams and Central (80 units); Montecito Terraces (98

23  units); Amistad Plaza (56 units); Andalucia Senior Apartments (94

24  units); The Ardmore (48 units); Asturias Senior Apartments (69

25  units); Broadway Village II (50 units); Buckingham Place Senior

26  Housing (71 units); Cantabria Senior Citizen Apartments (81

27  units); Carondelet Court Apartments (32 units); Central Village

28  Apartments (85 units); Orion Garden Apartments (aka Decro

1   Orion) (32 units); Decro Osborne Apartments (aka Osborne
2   Family) (50 units); Boyle Hotel Apartments (51 units); Paseo Del
3   Sol (7 units); Eastside Village (Lillian Mobley) (78 units); La
4   Estrella Apartments (11 units); Eugene Hotel (44 units); FAME
5   West 25th (aka FAME-Western) (12 units); Far East Building (16
6   units); Grandview 9 (62 units); Hart Village (47 units); Heavenly
7   Vision Seniors (46 units); The Hobart (49 units); Hoover Senior
8   (38 units); Imani Fe (East and West) (92 units); Pleasant Hill
9   Homes (24 units); Las Margaritas (42 units); Bronson Court (32
10  units); Cuatro Vientos (25 units); Menlo Park Apartments (48
11  units); Morgan Place Senior Apartments (55 units); New Genesis
12  Apartments (106 units); Tierra del Sol (119 units); NoHo Senior
13  Villas (25 units); Hope Manor (75 units); Pico/Gramercy (71
14  units); Palm Village Senior Citizens (60 units); Palomar
15  Apartments (28 units); Columbus Permanent Housing (6 units);
16  Casa Rampart (69 units); Lofts (292 units); Renato Apartments (97
17  units); Rittenhouse (100 units); Casa Verde (30 units); Seven
18  Maples Senior Apartments (57 units); Gallery (438 units);
19  Sherman Village Apartments (33 units); Three Courtyards
20  Apartments (aka Ivy Terrace) (52 units); Stovall Villa (31 units);
21  Vermont Seniors (I and II) (140 units); Washington Court Family
22  Housing (101 units); Terre One Apartments (15 units); West
23  Angeles Villas (150 units); Metro Hollywood (60 units); and Yale
24  Terrace Apartments (55 units).  The number of units at each
25  project are based upon information and belief.
26       185. None of the 61 federally-funded multifamily projects
27  contains units accessible to people with mobility and/or auditory
28  or visual impairments in sufficient numbers, sizes and locations to

1   provide people with disabilities meaningful access to this program,

2   service, or activity in violation of Section 504 of the

3   Rehabilitation Act, Title II of the ADA, the Fair Housing Act, and

4   Government Code § 11135.

5       186. Moreover, the steps outlined in the Section 504

6   regulations to maximize the utilization of accessible dwelling units

7   by people who need the accessibility features of those units were

8   not taken.

9       187. By letter of January 11, 2012, the HUD Office of Fair

10   Housing and Equal Opportunity notified the City and the CRA of

11   the results of a compliance review, which found that "the City and

12   the CRA are not monitoring the policies and procedures of

13   federally-funded recipients in several key areas, and that the

14   policies in place are not implemented in a manner that ensures that

15   these policies and practices do not discriminate against qualified

16   individuals with disabilities because of their disability. . . . there

17   is no monitoring of Section 504 compliance, and  . . . an overall

18   lack of knowledge as to the duties and responsibilities with respect

19   to Section 504." HUD Letter of Findings of Noncompliance,

20   January 11, 2012, at 7.

21       188. HUD also "found that a large percentage of residents

22   without disabilities currently occupy the designated accessible

23   units in several HUD-funded developments," and that, with no

24   oversight from the CRA, many developments had offered

25   accessible dwelling units to the general population on a lottery or

26   wait-list basis without regard to disability or need for accessibility

27   features. *Id.* at 8.

28

1     189. The City has annually certified its compliance, and the

2   compliance of its subrecipients, including CRA, with federal

3   housing and civil rights laws to HUD and other federal agencies in

4   order to ensure its continuing receipt of federal funds.

5     190. Nonetheless, and in violation of the federal and state

6   civil rights laws referenced above, the Government Defendants

7   failed, and continue to fail, to ensure that housing within the

8   Redevelopment Housing Program complies with applicable law

9   and is accessible to people with disabilities. As a result, people

10  with physical disabilities who require accessible units are denied

11  meaningful access to the Redevelopment Housing Program.

12     191. The Government Defendants' policy of failing to ensure

13  that all of the housing projects within the Redevelopment Housing

14  Program—regardless of affordability status or receipt of federal

15  funds—comply with applicable regulations and are accessible to

16  people with disabilities has a different and disparate impact on

17  people with physical disabilities, who have a particular need for

18  housing with accessibility features, and has the effect of excluding

19  people with physical disabilities.

20     192. A disproportionate percentage of people with

21  disabilities in Los Angeles have low incomes because of the work

22  limitations imposed by their disabilities.

23     193. People with disabilities have a particular need for

24  accessible units because people with low income cannot afford to

25  pay for significant modifications to their housing units.

26     194. People with disabilities have a particular need for

27  affordable, accessible units because people with low income

28  cannot afford more expensive housing units.

1   195. As a result, the Government Defendants' failure to
2   ensure that affordable housing within the Redevelopment Housing
3   Program complies with applicable laws and is accessible to people
4   with disabilities has a different and disparate impact on people
5   with physical and sensory disabilities and has the effect of
6   disproportionately excluding people with physical and sensory
7   disabilities from Redevelopment Housing Program.

8   **V.    Exhaustion of Administrative Remedies**

9   196. On or about January 12, 2012, Plaintiffs presented their
10   claims for money or damages under state law to the City pursuant
11   to California Government Code § 900, *et seq.*

12   197. By correspondence dated February 22, 2012, the City
13   denied Plaintiffs' state law tort claims for money or damages.

14   198. Plaintiffs have met any applicable requirement that they
15   exhaust administrative remedies in order to bring state law damage
16   claims against the City.

17   199. On or about January 12, 2012, Plaintiffs presented their
18   claims for money or damages under state law to the CRA pursuant
19   to California Government Code § 900, *et seq.*

20   200. As of the filing of this First Amended Complaint, none
21   of the Redevelopment Defendants have responded to Plaintiffs
22   regarding Plaintiffs' state law tort claims for money or damages.

23   201. Plaintiffs have met any applicable requirement that they
24   exhaust administrative remedies in order to bring state law damage
25   claims against the Redevelopment Defendants.

26
27
28

# INJURY TO PLAINTIFFS

I.  **Injury to Plaintiff Independent Living Center of Southern California**

202. As a result of the actions described above, ILCSC and its constituents have been directly and substantially injured. These actions have frustrated Plaintiff ILCSC's mission and undermined the effectiveness of the programs and services it provides, including encouraging community integration of people with disabilities, providing assistance to individuals and families searching for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

203. Because the Government Defendants have not complied with their obligations to ensure that their Redevelopment Housing Program met accessibility requirements, and because they have failed to inform the public of the existence of any accessible units, ILCSC has been required to devote substantial staff time and money assisting people with disabilities to locate and secure such accessible housing.

204. As a consequence of the violations by the Government Defendants described herein, ILCSC has had to divert its scarce resources away from its educational and other programs focused on expanding housing choice for its constituents and toward efforts focused on securing compliance with federal accessibility requirements in the Government Defendants' Redevelopment Housing Program.

205. In addition, ILCSC has invested considerable time and effort in educating the City, the Redevelopment Defendants, the housing industry, and the general public about the importance of

1   accessible housing for people with disabilities, in an attempt to

2   secure compliance.

3       206. Each time any of the Government Defendants failed to

4   ensure that housing in the Redevelopment Housing Program was

5   accessible, it frustrated the mission of ILCSC inasmuch as it made

6   it difficult or impossible for people with disabilities to live in that

7   housing.

8       207. The Government Defendants' conduct reduced the

9   effectiveness of outreach and advocacy efforts by ILCSC and

10  required it to provide additional educational programs to

11  counteract the impression left by the Government Defendants'

12  conduct that constructing inaccessible residential housing is

13  permissible.

14      208. The Government Defendants' continuing discriminatory

15  practices have forced ILCSC to divert scarce resources to identify,

16  investigate, and counteract the Government Defendants'

17  discriminatory practices, and such practices have frustrated

18  Plaintiff's other efforts against discrimination, causing Plaintiff to

19  suffer concrete and demonstrable injuries.

20      209. ILCSC has expended resources attempting to counteract

21  the Government Defendants' discriminatory practices including,

22  but not limited to, counseling people with disabilities affected by

23  the Government Defendants' discriminatory practices and

24  conducting outreach to the City and the Redevelopment

25  Defendants about the accessibility requirements under federal law,

26  resulting in the diversion of resources that it would not have had

27  to expend were it not for the Government Defendants' violations.

28

1    210. Until remedied, the Government Defendants' unlawful,
2    discriminatory actions will continue to injure ILCSC by:
3         a. Interfering with efforts and programs intended to
4            bring about equality of opportunity in housing;
5         b. Requiring the commitment of scarce resources,
6            including substantial staff time and funding, to
7            investigate and counteract the Government
8            Defendants' discriminatory conduct, thus diverting
9            those resources from ILCSC's other activities and
10           services, such as education, outreach and counseling;
11           and
12        c. Frustrating the mission and purposes of ILCSC.
13   **II.   Injury to Plaintiff Fair Housing Council of San Fernando**
14        **Valley**
15   211. As a result of the actions described above, FHC and its
16   constituents have been directly and substantially injured.  These
17   actions have frustrated Plaintiff FHC's mission and undermined
18   the effectiveness of the programs and services it provides,
19   including encouraging community integration of people with
20   disabilities, providing assistance to individuals and families
21   searching for housing or affected by discriminatory housing
22   practices, and eliminating discriminatory housing practices.
23   212. Because the Government Defendants have not complied
24   with their obligations to ensure that their Redevelopment Housing
25   Program met accessibility requirements, and because they have
26   failed to inform the public of the existence of any accessible units,
27   FHC has been required to devote substantial staff time and money
28

1   assisting people with disabilities to locate and secure such

2   accessible housing.

3       213.  Between 2008 and 2011, FHC's Deputy Director

4   devoted at least one-third of her time to addressing housing

5   accessibility issues, including meetings with elected officials,

6   employees of the Government Defendants, and others to alert them

7   to the severe need for accessible affordable housing and

8   noncompliance with federal accessibility requirements in buildings

9   funded by or through the Government Defendants.

10      214.  Because the Redevelopment Defendants could not or

11  would not publicly identify the location of any unit in the entire

12  CRA inventory that met the accessibility requirements of the

13  Rehabilitation Act, FHC was required to expend substantial staff

14  time and scarce resources on researching the location of accessible

15  affordable housing and making that information available to its

16  constituents.

17      215.  As a consequence of the violations described herein,

18  FHC has had to divert its scarce resources away from its

19  educational and other programs focused on expanding housing

20  choice for its constituents and toward efforts focused on securing

21  compliance with federal accessibility requirements in the

22  Redevelopment Housing Program.

23      216.  In addition, FHC has invested considerable time and

24  effort in reporting to Government Defendants the extent of

25  noncompliance in federally-funded, CRA-assisted buildings in Los

26  Angeles, and educating the housing industry, and the general

27  public about the importance of accessible housing for people with

28  disabilities, in an attempt to secure compliance.

1    217. Each time any of the Defendants failed to ensure that

2  housing funded in part by federal housing and community

3  development funds was accessible, it frustrated the mission of

4  FHC inasmuch as it made it difficult or impossible for people with

5  disabilities to live in that housing.

6    218. Defendants' conduct reduced the effectiveness of

7  outreach and advocacy efforts by FHC and required it to provide

8  additional educational programs to counteract the impression left

9  by Defendants' conduct that constructing inaccessible residential

10  housing is permissible.

11    219. Defendants' continuing discriminatory practices have

12  forced FHC to divert scarce resources to identify, investigate, and

13  counteract the Defendants' discriminatory practices, and such

14  practices have frustrated FHC's other efforts against

15  discrimination, causing FHC to suffer concrete and demonstrable

16  injuries.

17    220. FHC has expended resources attempting to counteract

18  Defendants' discriminatory practices including, but not limited to,

19  counseling people with disabilities affected by Defendants'

20  discriminatory practices and conducting outreach to the City and

21  the Redevelopment Defendants about the accessibility

22  requirements under federal law, resulting in the diversion of

23  resources that it would not have had to expend were it not for

24  Defendants' violations.

25    221. Until remedied, Defendants' unlawful, discriminatory

26  actions will continue to injure FHC by:

27        a. Interfering with efforts and programs intended to

28          bring about equality of opportunity in housing;

1          b. Requiring the commitment of scarce resources,

2             including substantial staff time and funding, to

3             investigate and counteract Defendants'

4             discriminatory conduct, thus diverting those

5             resources from the Plaintiff's other activities and

6             services, such as education, outreach and counseling;

7             and

8          c. Frustrating the missions and purposes of FHC.

9 **III.  Injury to Plaintiff Communities Actively Living**

10 **Independent and Free**

11      222. As a result of Defendants' actions described above,

12 CALIF and its constituents have been directly and substantially

13 injured.

14      223. Each time any of the Government Defendants failed to

15 ensure that housing funded in part by federal housing and

16 community development funds was accessible, it frustrated the

17 mission of CALIF inasmuch as it made it difficult or impossible

18 for people with disabilities to live at that dwelling, and

19 undermined the effectiveness of the programs and services it

20 provides, including promoting the community integration of

21 people with disabilities, providing assistance to individuals and

22 families searching for housing or affected by discriminatory

23 housing practices, and eliminating discriminatory housing

24 practices.

25      224. Because the Government Defendants have not complied

26 with their obligations to ensure that their Redevelopment Housing

27 Program meets accessibility requirements, and because they have

28 failed to inform the public about the existence of any accessible

1   units, CALIF has been required to devote substantial staff time

2   and money assisting people with disabilities to locate and secure

3   such accessible housing.  CALIF has had to divert its scarce

4   resources away from its housing programs focused on expanding

5   housing choice for its clients as outlined herein, and toward efforts

6   focused on confirming and securing compliance with federal

7   accessibility requirements in the Redevelopment Housing Program.

8       225.  In addition, CALIF has expended resources attempting

9   to counteract the Government Defendants' discriminatory practices

10  including, but not limited to, counseling people with disabilities

11  affected by the Government Defendants' discriminatory practices

12  and educating housing providers and the general public about

13  federal accessibility requirements and the importance of accessible

14  housing to people with disabilities, resulting in the diversion of

15  resources that they would not have had to expend were it not for

16  the Government Defendants' violations.

17      226.  The Government Defendants' continuing discriminatory

18  practices have forced, and will continue to force CALIF to divert

19  scarce resources to identify, investigate, and counteract the

20  Government Defendants' discriminatory practices, and such

21  practices have frustrated Plaintiff's other efforts against

22  discrimination, causing Plaintiff to suffer concrete and

23  demonstrable injuries.

24      227.  Until remedied, the Government Defendants' unlawful,

25  discriminatory actions will continue to injure CALIF by:

26          a.    Interfering with efforts and programs intended to

27                bring about equality of opportunity in housing;

28

1        b.    Requiring the commitment of scarce resources,

2                including substantial staff time and funding, to

3                investigate and counteract the Government

4                Defendants' discriminatory conduct, thus

5                diverting those resources from CALIF's other

6                activities and services, such as education,

7                outreach and counseling; and

8        c.    Frustrating the missions and purposes of CALIF.

9  **IV.**  **<u>Injuries to All Plaintiffs</u>**

10     228. By the actions described above, the Government

11  Defendants have engaged in, and continue to engage in a pattern or

12  practice of discrimination against people with disabilities in

13  violation of the Rehabilitation Act, the Americans with

14  Disabilities Act, the Fair Housing Act, and Government Code §

15  11135. The Government Defendants continue to engage in such a

16  pattern, practice, or policy of discrimination so as to constitute a

17  continuing violation.

18     229. The Government Defendants have acted or failed to act

19  with deliberate indifference. The Government Defendants have

20  known that their acts and omissions create a substantial likelihood

21  of harm to Plaintiffs' federally protected rights, and the

22  Government Defendants have failed to act upon that likelihood.

23     230. There now exists an actual controversy between the

24  parties regarding the Government Defendants' duties under the

25  federal and state civil rights laws. Plaintiffs accordingly are

26  entitled to declaratory relief.

27

28

1    231. The Government Defendants, unless enjoined, will

2    continue to engage in the unlawful acts and the pattern or practice

3    of discrimination and unlawful conduct described above.

4    232. Plaintiffs have no adequate remedy at law.  Plaintiffs

5    now are suffering and will continue to suffer irreparable injury

6    from the Government Defendants' acts and unlawful conduct

7    unless relief is provided by this Court.  Plaintiffs thus are entitled

8    to preliminary and permanent injunctive relief.

9                              **<u>CLAIMS FOR RELIEF</u>**

10                        **<u>FIRST CLAIM FOR RELIEF</u>**

11              **SECTION 504 OF THE REHABILITATION ACT**

12                        **[29 U.S.C. § 794, *et seq.*]**

13                        **[All Plaintiffs Against City;**

14      **Owner Defendants Named as Rule 19 Parties Only]**

15    233. Plaintiffs reallege and incorporate by reference each

16    and every allegation contained in the foregoing paragraphs.

17    234. Defendant City of Los Angeles' discriminated and

18    continues to discriminate on the basis of disability in violation of

19    Section 504 of the Rehabilitation Act by  acting or failing to act in

20    a manner that, among other things:

21            a. Denies meaningful access to the Redevelopment

22               Housing Program to people with mobility

23               impairments and visual and hearing disabilities;

24            b. Has a disparate impact on people with mobility

25               impairments and visual and hearing disabilities;

26            c. Aids or perpetuates discrimination against people

27               with disabilities when such discriminatory conduct is

28               engaged in by the Redevelopment Defendants and

1  others who have received financial or other

2  significant assistance from the City as part of the

3  Redevelopment Housing Program.

4  d. Uses methods of administration that discriminate

5  against people with disabilities, defeating the

6  purpose of the Redevelopment Housing Program,

7  and/or that perpetuate the discrimination of other

8  agencies by failing to ensure that the Redevelopment

9  Housing Program provides accessible housing or

10  otherwise provides meaningful access to people with

11  mobility, visual, or hearing impairments.

12  e. Otherwise limits people with disabilities from

13  enjoying housing or the opportunity to obtain such

14  housing by engaging in the policies, practices, acts,

15  and omissions described above.

16  235. As a result of the discrimination alleged in the previous

17  paragraph, Plaintiffs have sustained the injuries described herein.

18  **SECOND CLAIM FOR RELIEF**

19  **SECTION 504 OF THE REHABILITATION ACT**

20  **[29 U.S.C. § 794, *et seq.*]**

21  **[All Plaintiffs Against Redevelopment Defendants;**

22  **Owner Defendants Named as Rule 19 Parties Only]**

23  236. Plaintiffs reallege and incorporate by reference each

24  and every allegation contained in the foregoing paragraphs.

25  237. The Redevelopment Defendants discriminated and

26  continue to discriminate on the basis of disability in violation of

27  Section 504 of the Rehabilitation Act by acting or failing to act in

28  a manner that, among other things:

a. Denies meaningful access to the Redevelopment Housing Program to people with mobility impairments and visual and hearing disabilities.

b. Has a disparate impact on people with mobility impairments and visual and hearing disabilities.

c. Aids or perpetuates discrimination against people with disabilities when such discriminatory conduct is engaged in by the Redevelopment Defendants and others who have received financial or other significant assistance from the City as part of the Redevelopment Housing Program.

d. Uses methods of administration that discriminate against people with disabilities, defeating the purpose of the Redevelopment Housing Program, and/or that perpetuate the discrimination of other agencies by failing to ensure that the redevelopment housing provides meaningful access to people with mobility, visual, or hearing impairments.

e. Otherwise limits people with disabilities from enjoying housing or the opportunity to obtain such housing by engaging in the policies, practices, acts, and omissions described above.

238. As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

## THIRD CLAIM FOR RELIEF

## AMERICANS WITH DISABILITIES ACT

### [42 U.S.C. § 12131, *et seq.*]

### [All Plaintiffs Against City;

### Owner Defendants Named as Rule 19 Parties Only]

239. Plaintiffs reallege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

240. Defendant City of Los Angeles' discriminated and continues to discriminate on the basis of disability in violation of Title II of the ADA by acting or failing to act in a manner that, among other things:

    a. Denies meaningful access to the Redevelopment Housing Program to people with mobility impairments and visual and hearing disabilities.

    b. Has a disparate impact on people with mobility impairments and visual and hearing disabilities.

    c. Aids or perpetuates discrimination against people with disabilities when such discriminatory conduct is engaged in by the Redevelopment Defendants and others who have received financial or other significant assistance from the City as part of the Redevelopment Housing Program.

    d. Uses methods of administration that discriminate against people with disabilities, defeating the purpose of the Redevelopment Housing Program, and/or that perpetuate the discrimination of other agencies by failing to ensure that the Redevelopment Housing Program provides accessible housing or

1    otherwise provides meaningful access to people with

2    mobility, visual, or hearing impairments.

3    e. Otherwise limits people with disabilities from

4    enjoying housing or the opportunity to obtain such

5    housing by engaging in the policies, practices, acts,

6    and omissions described above.

7    241. As a result of the discrimination alleged in the previous

8    paragraph, Plaintiffs have sustained the injuries described herein.

9    **FOURTH CLAIM FOR RELIEF**

10    **AMERICANS WITH DISABILITIES ACT**

11    **[42 U.S.C. § 12131, *et seq.*]**

12    **[All Plaintiffs Against Redevelopment Defendants;**

13    **Owner Defendants Named as Rule 19 Parties Only]**

14    242. Plaintiffs reallege and incorporate by reference each

15    and every allegation contained in the foregoing paragraphs.

16    243. The Redevelopment Defendants' actions and failures to

17    act discriminate on the basis of disability in violation of Title II of

18    the ADA and its implementing regulations by engaging in the

19    following actions or omissions:

20    a. Denies meaningful access to the Redevelopment

21    Housing Program to people with mobility

22    impairments and visual and hearing disabilities.

23    b. Has a disparate impact on people with mobility

24    impairments and visual and hearing disabilities.

25    c. Aids or perpetuates discrimination against people

26    with disabilities when such discriminatory conduct is

27    engaged in by the Redevelopment Defendants and

28    others who have received financial or other

1    significant assistance from the City as part of the

2    Redevelopment Housing Program.

3        d. Uses methods of administration that discriminate

4            against people with disabilities, defeating the

5            purpose of the Redevelopment Housing Program,

6            and/or that perpetuate the discrimination of other

7            agencies by failing to ensure that the redevelopment

8            housing provides meaningful access to people with

9            mobility, visual, or hearing impairments.

10        e. Otherwise limits people with disabilities from

11           enjoying housing or the opportunity to obtain such

12           housing by engaging in the policies, practices, acts,

13           and omissions described above.

14    244. As a result of the discrimination alleged in the previous

15    paragraph, Plaintiffs have sustained the injuries described herein.

16                    **FIFTH CLAIM FOR RELIEF**

17                       **FAIR HOUSING ACT**

18                    **[42 U.S.C. §3601, *et seq.*]**

19            **[All Plaintiffs Against Government Defendants;**

20            **Owner Defendants Named as Rule 19 Parties Only]**

21    245. Plaintiffs reallege and incorporate by reference each

22    and every allegation contained in the foregoing paragraphs.

23    246. Plaintiffs are aggrieved persons as defined in 42 U.S.C.

24    § 3602(i).

25    247. Government Defendants' policy or practice of failing to

26    act to ensure that housing projects within the Redevelopment

27    Housing Program are physically accessible as required under other

28    laws has a disparate impact on people with disabilities such that

1  Government Defendants injured Plaintiffs in violation of the

2  federal Fair Housing Act and its implementing regulations by

3  committing the following discriminatory housing practices:

4        a. Otherwise making unavailable dwellings because of

5          handicap.

6        b. Discriminating in the terms, conditions, and

7          privileges of the rental of a dwelling because of

8          handicap.

9        c. Discouraging persons from inspecting, purchasing or

10          renting a dwelling because of handicap.

11        d. Limiting the use of privileges, services or facilities

12          associated with a dwelling because of handicap.

13  248. As a result of the discrimination alleged in the previous

14  paragraph, Plaintiffs have sustained the injuries described herein.

15  **SIXTH CLAIM FOR RELIEF**

16  **CALIFORNIA GOVERNMENT CODE § 11135**

17  **[All Plaintiffs Against Government Defendants;**

18  **Owner Defendants Named as Rule 19 Parties Only]**

19  249. Plaintiffs incorporate by reference each and every

20  allegation contained in the foregoing paragraphs.

21  250. Through their acts and omissions described herein,

22  Government Defendants have violated and will continue to violate

23  California Government Code § 11135 by unlawfully denying

24  people with disabilities the benefits of, and unlawfully subjecting

25  people with disabilities to discrimination under, Defendants'

26  programs and activities.

27  251. As a result of the discrimination alleged in the previous

28  paragraph, Plaintiffs have sustained the injuries described herein.

## PRAYER FOR RELIEF

1  WHEREFORE, Plaintiffs pray that this Court enter an order

2  against Defendants, together and individually, as follows:

3      A.   Declare that the Government Defendants' policies,

4  practices, acts, and omissions as set forth above violate:

5                 a.    Section 504 of the Rehabilitation Act,

6                 b.    Title II of the ADA,

7                 c.    Government Code § 11135;

8      B.   Enjoin the Government Defendants, their officers,

9  directors, employees, agents, managers, successors, assigns, and

10  all other persons in active concert or participation with any of

11  them, both temporarily during the pendency of this action, and

12  permanently, from:

13         1.    Providing funds or property or other significant

14              assistance for land or for the development,

15              construction, or rehabilitation of any housing and/or

16              common areas in buildings containing housing units

17              that, in any way, fail to comply with the accessibility

18              requirements of:

19                 a.    Section 504 of the Rehabilitation Act,

20                 b.    Title II of the ADA,

21                 c.    Government Code § 11135;

22         2.    Failing or refusing to bring housing and the public

23              use and common use areas in buildings containing

24              housing units that are part of the Redevelopment

25              Housing Program into compliance with the

26              requirements of:

27                 a. Section 504 of the Rehabilitation Act,

1          b. Title II of the ADA,

2          c. Government Code § 11135; and

3      3.    Failing or refusing to otherwise provide

4      meaningful access for people with mobility impairments

5      and visual and hearing disabilities to the

6      Redevelopment Housing Program.

7   C.    Enjoin the Government Defendants, their officers,

8   directors, employees, agents, managers, successors, assigns, and

9   all other persons in active concert or participation with any of

10  them from failing or refusing to:

11     1.    Survey each and every housing unit in the

12     Redevelopment Housing Program and appurtenant

13     common and public use areas, and assess the

14     compliance of each with the accessibility requirements

15     of Section 504 of the Rehabilitation Act, Title II of the

16     ADA, and Government Code § 11135;

17     2.    Report to the Court the extent of the

18     noncompliance with the accessibility requirements of

19     Section 504 of the Rehabilitation Act, Title II of the

20     ADA, and Government Code § 11135; and

21     3.    Bring each and every such housing unit in the

22     Redevelopment Housing Program and appurtenant

23     common and public use areas into compliance with the

24     requirements of Section 504 of the Rehabilitation Act,

25     Title II of the ADA, and Government Code § 11135.

26     4.    Otherwise provide meaningful access to the

27     Redevelopment Housing Program to people with

28     mobility, visual, or hearing impairments.

5.   Adopt policies and procedures to ensure that newly built or renovated housing meets the accessibility requirements of Section 504 of the Rehabilitation Act, Title II of the ADA, and Government Code § 11135.

6.   Adopt policies and procedures to ensure that the Owner Defendants and any prospective owner or manager of units in the Redevelopment Housing Program comply with the requirements of Section 504 of the Rehabilitation Act, Title II of the ADA, and Government Code § 11135 with respect to assignment of accessible units to residents who need such units because of their disabilities and with respect to reasonable accommodation and reasonable modifications in relation to those units.

D.   Enjoin the Owner Defendants, their officers, directors, employees, agents, managers, successors, assigns, and all other persons in active concert or participation with any of them from failing or refusing to:

1.   Allow access to all housing built or renovated using federal funds and to appurtenant common and public use areas to effectuate the relief described above, including access for any inspections necessary to determine compliance with accessibility standards, and access for any retrofitting or other physical modifications necessary to bring each and every such apartment complex into compliance with the requirements of Section 504 of the Rehabilitation Act, Title II of the ADA, and Government Code § 11135;

2.   Implement any policy change necessary to provide meaningful access to the Redevelopment Housing Program to people with mobility, visual, or hearing impairments as required by Section 504 of the Rehabilitation Act, Title II of the ADA, and Government Code § 11135;

3.   Allowing any other steps necessary to provide meaningful access to the Redevelopment Housing Program to people with mobility, visual, or hearing impairments.

E.   Award the Plaintiffs damages against the Government Defendants for Plaintiffs' injuries resulting from the Government Defendants' discriminatory practices and conduct.

F.   Award the Plaintiffs costs of this action and reasonable attorneys' fees pursuant to: 29 U.S.C. § 794a; 42 U.S.C. §§12133 and 12205; Cal. Civ. Pro. Code § 1021.5 and as otherwise may be allowed by law.

G.   Award such other and further relief as the Court deems to be just and equitable.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

1    Dated: June  1 , 2012

2                                    Respectfully submitted,

3

4                                    /s/
                                     _____
5                                    MICHAEL G. ALLEN*
                                     D. SCOTT CHANG #146403
6                                    JAMIE L. CROOK #245757
                                     RELMAN, DANE & COLFAX
7                                    PLLC
                                     1225 19th St. NW, Suite 600
8                                    Washington D.C. 20036
                                     Telephone: (202) 728-1888
9                                    Facsimile: (202) 728-0848
                                     schang@relmanlaw.com

10                                   * Application for admission pro
                                     hac vice approved by court order
11                                   Doc. No. 15

12                                   Maria Michelle Uzeta
                                     _____
13                                   PAULA D. PEARLMAN #109038
                                     MARIA MICHELLE UZETA
14                                   #164402
                                     UMBREEN BHATTI Registered
15                                   Legal Services Attorney #801458
                                     DISABILITY RIGHTS LEGAL
16                                   CENTER
                                     Loyola Public Interest Law Center
17                                   800 S. Figueroa Street, Suite 1120
                                     Los Angeles, CA 90017
18                                   Telephone: (213) 736-1496
                                     Facsimile: (213) 736-1428
19                                   Michelle.Uzeta@lls.edu

20                                   /s/
                                     _____
21                                   DAVID GEFFEN #129342
                                     DAVID GEFFEN LAW FIRM
22                                   530 Wilshire Blvd., Suite 205
                                     Santa Monica, CA 90401
23                                   Telephone: (310) 434-1111
                                     Facsmilie: (310) 434-1115
24                                   Geffenlaw@aol.com

25

26

27

28

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJW)*
First Amended Complaint

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

/s/
_____
DARA SCHUR #98638
DISABILITY RIGHTS
CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201
Dara.Schur@disabilityrightsca
.org


/s/
_____
AUTUMN ELLIOTT #230043
KEVIN BAYLEY #218070
DISABILITY RIGHTS
CALIFORNIA
350 S. Bixel Ave., Suite 290
Los Angeles, CA 90010-2512
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca
.org

Attorneys for Plaintiffs

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al.,* Case No. CV 12-0551 SJO (PJW)
First Amended Complaint

1

### CERTIFICATE OF SERVICE
### CENTRAL DISTRICT OF CALIFORNIA

2

3       I hereby certify that on this 1st day of June, 2012, I filed the foregoing
First Amended Complaint for Injunctive, Declaratory, and Monetary Relief;
Demand for Trial By Jury and accompanying document in the traditional
4       manner, in hard copy, at the Court's civil intake office.  The Court will enter
these documents via its CM/ECF filing system, which shall serve as notice of
5       such filing on all counsel of record.

6

7

8                                               Maria Michelle Uzeta

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28