MICHAEL G. ALLEN*
D. SCOTT CHANG #146403
JAMIE L. CROOK #245757
RELMAN, DANE & COLFAX
PLLC
1225 19th St. NW, Suite 600
Washington D.C. 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
schang@relmanlaw.com

* Application for admission
*pro hac vice* approved by
Court order Doc. No. 15

PAULA D. PEARLMAN
#109038
MARIA MICHELLE UZETA
#164402
UMBREEN BHATTI
Registered Legal Services
Attorney #801458
DISABILITY RIGHTS
LEGAL CENTER
Loyola Public Interest Law
Center
800 S. Figueroa Street, Suite
1120
Los Angeles, CA 90017
Telephone: (213) 736-1496
Facsimile: (213) 736-1428
Michelle.Uzeta@lls.edu

DAVID GEFFEN #129342
DAVID GEFFEN LAW FIRM
530 Wilshire Blvd., Suite 205
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
Geffenlaw@aol.com

DARA SCHUR #98638
DISABILITY RIGHTS
CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510)267-1201
Dara.Schur@disabilityrightsca
.org

AUTUMN ELLIOTT #230043
KEVIN BAYLEY #218070
DISABILITY RIGHTS
CALIFORNIA
350 S. Bixel Ave., Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disability
rightsca.org

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION)

| | |
|---|---|
| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, a California non-profit corporation; FAIR HOUSING COUNCIL OF SAN FERNANDO VALLEY, a California non-profit corporation; and COMMUNITIES ACTIVELY LIVING INDEPENDENT AND FREE, a California non-profit corporation, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, CALIFORNIA, a California municipal corporation; COMMUNITY REDEVELOPMENT AGENCY OF THE | CASE NO. CV 12-0551 SJO (PJW) <br><br> SECOND AMENDED COMPLAINT FOR INJUNCTIVE, DECLARATORY, AND MONETARY RELIEF; DEMAND FOR TRIAL BY JURY |

FILED
CLERK, U.S. DISTRICT COURT
AUG 2 0 2012
10: 08
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

CITY OF LOS ANGELES, a public
entity; CRA/LA DESIGNATED LOCAL
AUTHORITY, a public entity and
successor agency to the COMMUNITY
REDEVELOPMENT AGENCY OF THE
CITY OF LOS ANGELES; OVERSIGHT
BOARD FOR THE CRA/LA
DESIGNATED LOCAL AUTHORITY, a
public entity; 105 EAST "I" STREET,
L.P., a California limited partnership;
12129 EL DORADO AVENUE, L.P., a
California limited partnership; 4651
HUNTINGTON, L.P., a California
limited partnership; 505 BONNIE BRAE
PARTNERS, L.P., a California limited
partnership; 901 SOUTH BROADWAY
STREET LIMITED PARTNERSHIP, a
California limited partnership; ADAMS
935, L.P., a California limited
partnership; AMCAL MONTECITO
FUND, L.P., a California limited
partnership; AMISTAD PLAZA
PARTNERS LIMITED PARTNERSHIP,
a California limited partnership;
ANDALUCIA SENIOR APARTMENTS,
L.P., a California limited partnership;
ARDMORE 959 PARTNERS, L.P., a
California limited partnership;
ASTURIAS SENIOR APARTMENTS,
L.P., a California limited partnership;
B S BROADWAY VILLAGE II, L.P., a
California limited partnership;
BEHRINGER HARVARD NOHO, LLC,
a Delaware limited liability company;
BUCKINGHAM SENIOR
APARTMENTS, L.P., a California
limited partnership; CANTABRIA
SENIOR APARTMENTS, L.P., a
California limited partnership;
CARONDELET COURT PARTNERS,
L.P., a California limited partnership;
CENTRAL VILLAGE APARTMENTS,
L.P., a California limited partnership;
DECRO ORION APARTMENTS, L.P., a
California limited partnership; DECRO
OSBORNE APARTMENTS, L.P., a
California limited partnership; EAST LA
COMMUNITY CORPORATION, a
California corporation; EASTSIDE
VILLAGE, L.P., a California limited
partnership; ESPERANZA
COMMUNITY HOUSING
CORPORATION, a California
corporation; EUGENE HOTEL, L.P., a
California limited partnership; FAME

| | |
|---|---|
| 1 | WEST 25'ᵗ STREET, L.P., a California |
| | limited partnership; FAR EAST |
| 2 | BUILDING, L.P., a California limited |
| | partnership; GRANDVIEW NINE, L.P., |
| 3 | a California limited partnership; HART |
| | VILLAGE, L.P., a California limited |
| 4 | partnership; HEAVENLY VISION |
| | SENIOR HOUSING, L.P., a California |
| 5 | limited partnership; HOBART HEIGHTS |
| | PARTNERS, L.P., a California limited |
| 6 | partnership; HOOVER SENIORS, L.P., a |
| | California limited partnership; IMANI |
| 7 | FE, LP, a California limited partnership; |
| | KOREAN FAMILY HOUSING |
| 8 | CORPORATION, a California |
| | corporation; LAS MARGARITAS, L.P., |
| 9 | a California limited partnership; LOS |
| | ANGELES HOUSING PARTNERSHIP, |
| 10 | INC., a California corporation; LOS |
| | CUATRO VIENTOS, L.P., a California |
| 11 | limited partnership; MENLO PARK, A |
| | CALIFORNIA LIMITED |
| 12 | PARTNERSHIP, a California limited |
| | partnership; MORGAN PLACE, L.P., a |
| 13 | California limited partnership; NEW |
| | GENESIS APARTMENTS, L.P., a |
| 14 | California limited partnership; NEW |
| | TIERRA DEL SOL, L.P., a California |
| 15 | limited partnership; NOHO SENIOR |
| | VILLAS, L.P., a California limited |
| 16 | partnership; OL HOPE, L.P., a |
| | California limited partnership; P G |
| 17 | HOUSING PARTNERS, L.P., a |
| | California limited partnership; PALM |
| 18 | VILLAGE SENIOR HOUSING CORP., a |
| | California corporation; PALOMAR |
| 19 | APARTMENTS, L.P., a California |
| | limited partnership; PENNY LANE |
| 20 | CENTERS, a California corporation; |
| | RAMPART APARTMENTS, A |
| 21 | CALIFORNIA LIMITED |
| | PARTNERSHIP, a California limited |
| 22 | partnership; REDROCK NOHO |
| | RESIDENTIAL, LLC, a Delaware |
| 23 | limited liability company; RENATO |
| | APARTMENTS, L.P., a California |
| 24 | limited partnership; RITTENHOUSE |
| | LIMITED PARTNERSHIP, a California |
| 25 | limited partnership; SELMA-HUDSON |
| | COMMUNITY LIMITED |
| 26 | PARTNERSHIP, a California limited |
| | partnership; SEVEN MAPLES, L.P. a |
| 27 | California limited partnership; |
| | SHERMAN VILLAGE APARTMENTS, |
| 28 | L.P., a California limited partnership; |

| | |
|---|---|
| 1 | SHERMAN WAY COMMUNITY )
| | HOUSING, L.P., a California limited )
| 2 | partnership; STOVALL HOUSING )
| | CORPORATION, a California )
| 3 | corporation; VERMONT SENIORS, a )
| | California corporation; WA COURT, )
| 4 | L.P., a California limited partnership; )
| | WATTS/ATHENS PRESERVATION )
| 5 | XVII, L.P., a California limited )
| | partnership; WEST ANGELES VILLAS, )
| 6 | L.P., a California limited partnership; )
| | WESTERN/CARLTON II, L.P., a )
| 7 | California limited partnership; and )
| | YALE TERRACE APARTMENTS, A )
| 8 | CALIFORNIA LIMITED )
| | PARTNERSHIP, a California limited )
| 9 | partnership, )
| | )
| 10 | Defendants. )
| | )

11

12

13

14                    **INTRODUCTION**

15        1.    This civil rights action is brought because public money

16    that was to be used to build and provide affordable, accessible

17    housing was misapplied, denying hundreds of people with

18    disabilities housing over many years. The Plaintiffs are the

19    Independent Living Center of Southern California ("ILCSC"), a

20    non-profit independent living center for people with disabilities,

21    the Fair Housing Council of San Fernando Valley ("FHC"), a non-

22    profit fair housing organization, and Communities Actively Living

23    Independent and Free ("CALIF"), a non-profit independent living

24    center for people with disabilities. Their claims are brought

25    against the Community Redevelopment Agency of the City of Los

26    Angeles ("CRA"), the CRA/LA Designated Local Authority, a

27    public entity ("Local Authority") and successor agency to the

28    Community Redevelopment Agency of the City of Los Angeles;

1   the Oversight Board for the CRA/LA Designated Local Authority

2   ("Oversight Board"), a public entity; and the City of Los Angeles

3   ("City") in its own capacity and in its capacity as a successor

4   housing agency to Defendant CRA.  The claims arise from their

5   collective failure to ensure that housing is accessible and available

6   to people with disabilities as required under federal and state civil

7   rights law.  In this Second Amended Complaint ("Complaint"), the

8   City, the CRA, the Local Authority, and the Oversight Board may

9   be referred to collectively as "Government Defendants."  The

10  CRA, the Local Authority, the Oversight Board, and the City in its

11  capacity as successor housing agency may be referred to

12  collectively as the "Redevelopment Defendants."

13        2.    This Complaint alleges that the Government Defendants

14  have engaged in a pattern or practice of discrimination against

15  people with disabilities in violation of Section 504 of the

16  Rehabilitation Act, Title II of the Americans with Disabilities Act

17  (the "ADA"), the Fair Housing Act, and California Government

18  Code § 11135. These Defendants have failed to ensure that

19  housing funded, developed, or significantly assisted by the

20  Redevelopment Defendants as part of their housing programs is

21  accessible to people with disabilities.  These Defendants have also

22  knowingly allocated millions of dollars in federal, state and other

23  funds to finance housing throughout Los Angeles without ensuring

24  that their programs as a whole and the housing they developed,

25  funded, and significantly assisted is accessible and made

26  meaningfully available to people with disabilities.

27        3.    Plaintiffs join the Owner Defendants—current  owners

28  of 61 housing developments that received federal funds through

1  the Redevelopment Defendants—solely because they may be

2  necessary to effectuate any injunctive relief with respect to access,

3  retrofitting and policy implementation that the Court may order.

4      4.    The Government Defendants' violations of federal and

5  state civil rights laws have thwarted efforts by Congress and the

6  California legislature to eradicate discrimination against people

7  with disabilities, and rendered Defendants' housing programs and

8  housing units unavailable to people with disabilities in direct

9  contravention of their intended purpose.  Enforcement of Section

10  504 of the Rehabilitation Act, Title II of the ADA, the Fair

11  Housing Act, and California Government Code § 11135 against the

12  Government Defendants is necessary because of the extensive

13  nature of the civil rights violations in their housing programs.

14                    **JURISDICTION**

15      5.    This Court has jurisdiction over this action pursuant to

16  28 U.S.C. §§ 1331 and 1367.  Plaintiffs' claims for declaratory

17  and injunctive relief are authorized by 28 U.S.C. §§ 2201, 2202

18  and 1343, and by Rules 57 and 65 of the Federal Rules of Civil

19  Procedure.

20      6.    Plaintiffs' claims for violations of California state law

21  concern the same actions and omissions that form the basis of

22  Plaintiffs' claims under federal law such that they are all part of

23  the same case or controversy.  This Court has supplemental

24  jurisdiction over those state law claims pursuant to 28 U.S.C. §

25  1367.

26      7.    This action for declaratory and injunctive relief arises

27  in part under Section 504 of the Rehabilitation Act of 1973, 29

28

1  U.S.C. § 794; Title II of the ADA, 42 U.S.C. § 12132, *et seq.*; and

2  the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

3  **VENUE**

4       8.    Venue is proper in the Central District of California

5  pursuant to 28 U.S.C. § 1391(b) because Defendants operate and

6  perform their official duties therein and thus reside there for

7  purposes of venue, and because a substantial part of the events and

8  omissions giving rise to the claims occurred in Los Angeles

9  County, which is in the Central District of California.

10  **PARTIES**

11       9.    The Independent Living Center of Southern California

12  ("ILCSC") is an independent living center for people with

13  disabilities and has its principal place of business in Van Nuys.  It

14  is a non-profit, community-based corporation that provides a wide

15  range of services to people with disabilities and seniors in the City

16  of Los Angeles and adjoining areas.  It is governed by a Board of

17  Directors that must always contain at least 51% people with

18  disabilities.

19       10.    ILCSC's mission is to provide services which offer

20  people with disabilities and seniors the opportunity to seek an

21  individual course towards independence, while educating the

22  community.  The vast majority of clients served by ILCSC are

23  poor because their disabilities limit their ability to work, and they

24  therefore rely on public and private programs intended to serve

25  people with low incomes.

26       11.    During 2011, ILCSC served approximately 6,000 new

27  clients, with more than half requesting assistance with searching

28  for accessible and/or affordable housing or removing barriers to

1 accessible housing, requiring it to devote 2.5 full-time equivalent
2 employees to assist clients with housing needs.  In addition,
3 ILCSC's Systems Advocacy Coordinator devoted one-quarter of
4 his time to addressing housing accessibility issues, including
5 meetings with elected officials, employees of the Government
6 Defendants and others to alert them to the severe need for
7 accessible affordable housing and noncompliance with federal
8 accessibility requirements in housing funded, developed, or
9 significantly assisted by the Government Defendants.
10      12.   ILCSC seeks to have its clients' needs met by public
11 and private programs that serve residents of the City of Los
12 Angeles, and provides services and supports directly only in
13 circumstances where such programs are not serving them
14 adequately.
15      13.   During 2011, among ILCSC's clients seeking assistance
16 with accessible and/or affordable housing, only 10% have found
17 housing that meets their needs. Since 2009, ILCSC has assisted at
18 least two clients seeking to secure accessible housing in buildings
19 constructed with federal funds granted by or through the
20 Redevelopment Defendants, but was not successful. ILCSC also
21 provides services through the California Community Transitions
22 program.  Through the California Community Transitions program,
23 ILCSC seeks to help people move from skilled nursing facilities
24 and acute care hospitals back into community living.  ILCSC
25 assists clients with locating and obtaining affordable housing,
26 provides security deposits and first month's rent, and assists with
27 home modification and durable medical equipment, among other
28 services.

14.   A substantial majority of ILCSC's clients, employees, and community advisory board ("constituents") are people with disabilities, or family of people with disabilities, who have been harmed and continue to be harmed because the Government Defendants have failed and continue to fail to ensure that housing funded, developed, or significantly assisted by the Defendants as part of their housing programs is accessible to people with disabilities.

15.   Fair Housing Council of San Fernando Valley ("FHC") is a non-profit fair housing membership organization, incorporated under the laws of the State of California, and serving clients in portions of the City of Los Angeles and adjoining areas.

16.   FHC's mission is to eliminate housing discrimination and to expand housing choices for people with disabilities and members of other classes protected under federal and state civil rights and equal opportunity statutes and regulations. FHC assists people with disabilities to file housing discrimination complaints. Between 2008 and 2011, 21% of all such complaints were filed by people with physical disabilities, and a majority of these sought more accessible housing.

17.   FHC also responds to inquiries about the availability of housing for people with disabilities.  Between 2008 and 2011, 23% of all of FHC's inquiries were from people with physical disabilities, and a majority of these sought more accessible housing.

18.   In response to a lack of information about accessible affordable housing, from 2008 to the present, FHC expended substantial staff and monetary resources researching which

1   housing projects contained accessible, affordable housing units,

2   and providing that information to people with disabilities,

3   disability advocacy organizations, and the general public, as well

4   as notifying the City about its concerns and findings.

5       19.    FHC engages in a number of activities to further its

6   mission of promoting equal housing opportunities including, but

7   not limited to: education programs in the community; training

8   programs for real estate professionals and the general public; fair

9   housing counseling; and coaching people with disabilities in

10  strategies to advocate for accessible affordable housing.

11      20.    FHC constituents, employees, and board of directors

12  include people with disabilities, or family of people with

13  disabilities, who have been harmed and continue to be harmed

14  because the Government Defendants have failed and continue to

15  fail to ensure that housing funded, developed, or significantly

16  assisted by the Defendants as part of their housing programs are

17  accessible to people with disabilities. For instance, a former long-

18  time FHC consultant currently lives in a nursing home because of

19  her inability to find accessible affordable housing in the

20  community.  Furthermore, an elderly FHC member and her adult

21  son who is a wheelchair user continue to live in an inaccessible

22  apartment building because of her inability to find accessible

23  affordable housing in the community.

24      21.    Communities Actively Living Independent and Free

25  ("CALIF") is an independent living center with its principal place

26  of business in Los Angeles, California.  It is a non-profit,

27  community-based corporation that provides services by and to

28  people with disabilities in the City of Los Angeles.  CALIF seeks

1   to achieve full inclusion, equality, and civil rights for people with

2   disabilities. It is governed by a Board of Directors that must

3   always contain at least 51% people with disabilities.

4        22.   CALIF's mission is 1) To achieve greater input,

5   participation, and control over policies and services especially

6   those for people with disabilities, including those that exclude

7   them; 2) To address discrimination wherever it exists; 3) To

8   encourage the meaningful participation of persons with disabilities

9   in mainstream activities that enhance the positive image and

10  experience of disability; 4) To empower people with disabilities

11  by encouraging ongoing education and a broad knowledge of the

12  history and heritage of the Disability Movement; and 5) To

13  provide the Disability Community with the following core

14  services: Systems Change Advocacy; Housing Advocacy;

15  Individual and Benefits Advocacy; Personal Assistance Services

16  Advocacy; Information and Referral; Peer Counseling;

17  Independent Living Skills Training; and Assistive Technology.

18       23.   The majority of clients served by CALIF are poor

19  because their disabilities limit their ability to work, and therefore

20  they rely on public and private programs intended to serve people

21  with low incomes.

22       24.   CALIF served a significant number of clients

23  requesting assistance with searching for accessible and/or

24  affordable housing or removing barriers to accessible housing,

25  requiring it to devote one full-time employee to assist clients with

26  housing needs.

27       25.   CALIF's Housing Programs, administered and

28  implemented by its Housing Advocate, include a Tenant-Landlord

1    Conflict Resolution program and the California Community

2    Transition program.

3          26.   Through the California Community Transitions

4    program, CALIF seeks to help people move from skilled nursing

5    facilities and acute care hospitals back into community living.

6    CALIF assists clients with locating and obtaining affordable

7    housing, provides security deposits and first month's rent, and

8    assists with home modification and durable medical equipment,

9    among other services.

10         27.   In addition, CALIF's Housing Advocate provides

11   clients with assistance with applications for Section 8 and other

12   public housing programs; assistance with reasonable

13   accommodation requests in public housing; and information and

14   referrals to various affordable housing programs in the City and

15   County of Los Angeles.

16         28.   Over the last four years, CALIF has been forced to

17   divert the time and resources of its Housing Advocate from

18   implementing the above-mentioned housing programs and services

19   to inspecting and confirming the accessibility of housing units to

20   which it refers clients who require housing with accessible

21   features – including units within the Government Defendants'

22   Redevelopment Housing Program. CALIF had previously referred

23   clients to such housing units advertised as accessible, only to have

24   those clients return, upset and complaining that the advertised

25   units were not in fact accessible, or that accessible units did not

26   exist.

27         29.   During the time period relevant to the instant

28   Complaint, CALIF's Housing Advocate personally inspected at

1   least three buildings constructed with funds granted by or through

2   the Government Defendants that boasted that they had accessible

3   units.  Barriers discovered at these properties, both in common

4   areas and within the advertised "accessible" units, included

5   doorways that were too narrow to accommodate wheelchairs, and

6   bathrooms and kitchens that lacked accessible features and

7   required clearances. When these barriers have been discovered,

8   CALIF has spent its scarce time and resources counseling

9   frustrated and aggrieved home seekers, and educating housing

10   providers regarding their noncompliance with the law and the

11   housing rights of people with disabilities.

12       30.   A substantial majority of CALIF's clients, employees,

13   and community advisory board ("constituents") are people with

14   disabilities, or family of persons with disabilities, who have been

15   harmed and continue to be harmed because the Government

16   Defendants have failed and continue to fail to ensure that housing

17   funded, developed, or significantly assisted by the Defendants as

18   part of their Redevelopment Housing Program is accessible to

19   people with disabilities.

20       31.   Defendant City of Los Angeles, California is a

21   municipal corporation organized under the laws of the State of

22   California.

23       32.   At all times relevant, the City has been a public entity

24   within the meaning of Title II of the ADA.

25       33.   At all times relevant, the City has received federal

26   financial assistance within the meaning of the Rehabilitation Act.

27

28

1      34.   At all times relevant, the City has received state
2  financial assistance within the meaning of California Government
3  Code § 11135.

4      35.   Defendant City of Los Angeles is sued in its own
5  capacity and in its capacity as a successor housing agency to
6  Defendant CRA, as set forth further below.

7      36.   Defendant Community Redevelopment Agency of the
8  City of Los Angeles ("CRA") is a public agency authorized, until
9  February 1, 2012, by the California Community Redevelopment
10  Law to conduct redevelopment and revitalization activities using
11  public and private funds in designated areas of the City of Los
12  Angeles.

13      37.   At all times relevant, the Defendant CRA has been a
14  public entity within the meaning of Title II of the ADA.

15      38.   At all times relevant, the Defendant CRA has received
16  federal financial assistance within the meaning of the
17  Rehabilitation Act.

18      39.   At all times relevant, the Defendant CRA has received
19  state financial assistance within the meaning of California
20  Government Code §11135.

21      40.   At all times relevant up until February 1, 2012, a Board
22  of Commissioners appointed by the Mayor of the City of Los
23  Angeles and confirmed by the Los Angeles City Council has
24  overseen the CRA.

25      41.   Under an "Oversight Ordinance," adopted in 1991,
26  every action of the CRA up until February 1, 2012 has been
27  subject to Los Angeles City Council approval. L.A. Ad. Code
28  § 8.99.01, *et seq.*

1    42.   Pursuant to the same ordinance, the Los Angeles City

2  Attorney has served as General Counsel for the CRA.  L.A. Ad.

3  Code § 8.99.03.

4    43.   On June 28, 2011, the Governor of the State of

5  California approved California Assembly Bill ABx1 26 (2011)

6  ("AB 26"), which was filed with the Secretary of State on June 29,

7  2011, amending California Redevelopment Law, California Health

8  and Safety Code Sections 33500, 33501, 33607.5, and 33607.7,

9  and adding Part 1.8 (commencing with Section 34161) and Part

10  1.85 (commencing with Section 34170), and adding Section 97.401

11  and 98.2 to the California Revenue and Taxation Code.

12    44.   AB 26 fundamentally restructured California

13  Redevelopment Law, dissolving the existing structure of

14  redevelopment agencies and transferring to successor entities all

15  authority, rights, powers, duties and obligations previously vested

16  with the former redevelopment agencies, other than as specified.

17    45.   AB 26 set up a timetable and structure for dissolving

18  redevelopment agencies and transferring their remaining

19  obligations to the successor entities. *See Cal. Redevelopment*

20  *Assoc. v. Matosantos*, 53 Cal.4th 231, 135 Cal.Rptr.3d 683 (Dec.

21  29, 2011) (holding that ABx1 26 ('The Dissolution Act') is

22  constitutional and establishing a dissolution date of February 1,

23  2012 for all agencies.)

24    46.   Pursuant to AB 26, and specifically California Health &

25  Safety Code Section 34173, and as of February 1, 2012, Defendant

26  CRA was dissolved as part of this fundamental restructuring of

27  redevelopment agencies in California and certain of the CRA's

28  functions, obligations, liabilities, and assets were transferred to

1   two successor entities, specifically a Designated Local Authority

2   called the "CRA/LA Designated Local Authority," and the City of

3   Los Angeles.

4       47.   Defendant CRA/LA Designated Local Authority was

5   established on or about February 1, 2012.

6       48.   Defendant CRA/LA Designated Local Authority is a

7   public entity formed pursuant to California Health & Safety Code

8   34173(d).

9       49.   At all times relevant, the Defendant CRA/LA

10  Designated Local Authority has been a public entity within the

11  meaning of Title II of the ADA.

12      50.   At all times relevant, the Defendant CRA/LA

13  Designated Local Authority has received federal financial

14  assistance within the meaning of the Rehabilitation Act.

15      51.   At all times relevant, the Defendant CRA/LA

16  Designated Local Authority has received state financial assistance

17  within the meaning of California Government Code § 11135.

18      52.   Defendant CRA/LA Designated Local Authority is a

19  successor entity to Defendant CRA, assuming statutorily specified

20  functions, assets, and liabilities of Defendant CRA as of February

21  1, 2012, as set out in AB 26.

22      53.   On or about January 25, 2012, Defendant City of Los

23  Angeles passed a resolution whereby it elected, pursuant to

24  California Health & Safety Code § 34176(a), to become the

25  successor housing agency to the CRA, to receive and retain the

26  housing assets of Defendant CRA, to perform the housing

27  functions under the California Community Redevelopment Law

28  previously performed by Defendant CRA, and to accept transfer of

1   all rights, powers, duties and obligations, except as otherwise

2   provided in California Health & Safety Code Part 1.85, of

3   Defendant CRA related to its housing assets and functions. *See*

4   Los Angeles City Council File No. 12-0049.

5       54.   AB 26, and specifically California Health & Safety

6   Code Sections 34179, *et seq.,* requires that an oversight board

7   consisting of seven members be established to approve and/or

8   direct specified activities of the successor agency.

9       55.   On or about May 2, 2012, Defendant Oversight Board

10  for CRA/LA, a Designated Local Authority, was officially

11  constituted to assume the statutorily specified functions; members

12  of Defendant Oversight Board were sworn into office; and the first

13  meeting of Defendant Oversight Board took place.

14      56.   Each of the Government Defendants was the actual or

15  apparent agent, employee, manager, or representative of each of

16  the other Government Defendants.  Each Government Defendant,

17  in doing the acts or omitting to act as alleged in this Complaint,

18  was acting in the course and scope of his, her, or its actual or

19  apparent authority pursuant to such agencies; or the alleged acts or

20  omissions of each Government Defendant as agent were

21  subsequently ratified and adopted by each agent as principal.

22                      **OWNER DEFENDANTS**

23      57.   Defendant 105 East "I" Street, L.P. ("105 East I") is a

24  California limited partnership that does business in California,

25  including in the City and County of Los Angeles.  105 East I

26  currently owns Don Hotel Apartments, a multi-family housing

27  development located at 105 East I Street, Los Angeles, California.

28  Don Hotel Apartments is a CRA-assisted development.

1    58.   Defendant 12129 El Dorado Avenue, L.P. ("El Dorado")
2  is a California limited partnership that does business in California,
3  including in the City and County of Los Angeles.  El Dorado
4  currently owns El Dorado Apartments, a multi-family housing
5  development located at 12129 El Dorado Avenue, Los Angeles,
6  California.  El Dorado Apartments is a CRA-assisted development.
7    59.   Defendant 4651 Huntington, L.P. ("4651 Huntington")
8  is a California limited partnership that does business in California,
9  including in the City and County of Los Angeles.  4651
10  Huntington currently owns Vista Monterey Senior Housing, a
11  multi-family senior housing development located at 4647
12  Huntington Drive North, Los Angeles, California.  Vista Monterey
13  Senior Housing is a CRA-assisted development.
14    60.   Defendant 505 Bonnie Brae Partners, L.P. ("Bonnie
15  Brae") is a California limited partnership that does business in
16  California, including in the City and County of Los Angeles.
17  Bonnie Brae currently owns Bonnie Brae Apartment Homes, a
18  multi-family housing development located at 501-511 South
19  Bonnie Brae Street, Los Angeles, California.  Bonnie Brae
20  Apartment Homes is a CRA-assisted development.
21    61.   Defendant 901 South Broadway Street Limited
22  Partnership ("901 South Broadway") is a California limited
23  partnership that does business in California, including in the City
24  and County of Los Angeles.  901 South Broadway currently owns
25  Broadway Plaza Apartments, a multi-family housing development
26  located at 901 South Broadway Street, Los Angeles, California.
27  Broadway Plaza Apartments is a CRA-assisted development.
28

62.   Defendant Adams 935, L.P. ("Adams 935") is a California limited partnership that does business in California, including in the City and County of Los Angeles.  Adams 935 currently owns Adams and Central, a multi-family housing development located at 1011 Adams Boulevard, Los Angeles, California.  Adams and Central is a CRA-assisted development.

63.   Defendant Amcal Montecito Fund, L.P. ("Amcal") is a California limited partnership that does business in California, including in the City and County of Los Angeles.  Amcal currently owns Montecito Terraces, a multi-family housing development located at 14653-61 and 14726-28 Blythe Street, Los Angeles, California.  Montecito Terraces is a CRA-assisted development.

64.   Defendant Amistad Plaza Partners Limited Partnership ("Amistad") is a California limited partnership that does business in California, including in the City and County of Los Angeles. Amistad currently owns Amistad Plaza, a multi-family housing development located at 6050-6130 South Western Avenue, Los Angeles, California.  Amistad Plaza is a CRA-assisted development.

65.   Defendant Andalucia Senior Apartments, L.P. ("Andalucia") is a California limited partnership that does business in California, including in the City and County of Los Angeles.  Andalucia currently owns Andalucia Senior Apartments, a multi-family senior housing development located at 15305 Lanark Street, Los Angeles, California.  Andalucia Senior Apartments is a CRA-assisted development.

66.   Defendant Ardmore 959 Partners, L.P. ("Ardmore 959") is a California limited partnership that does business in California,

1   including in the City and County of Los Angeles.  Ardmore 959

2   currently owns The Ardmore, a multi-family housing development

3   located at 959 South Ardmore Avenue, Los Angeles, California.

4   The Ardmore is a CRA-assisted development.

5           67.    Defendant Asturias Senior Apartments, L.P.

6   ("Asturias") is a California limited partnership that does business

7   in California, including in the City and County of Los Angeles.

8   Asturias currently owns Asturias Senior Apartments, a multi-

9   family senior housing development located at 9628 Van Nuys

10  Boulevard, Los Angeles, California.  Asturias Senior Apartments

11  is a CRA-assisted development.

12          68.    Defendant B S Broadway Village II, L.P. ("B S

13  Broadway II") is a California limited partnership that does

14  business in California, including in the City and County of Los

15  Angeles.  B S Broadway II currently owns Broadway Village II, a

16  multi-family housing development located at 5101 South

17  Broadway, Los Angeles, California.  Broadway Village II is a

18  CRA-assisted development.

19          69.    Defendant Behringer Harvard NoHo, LLC ("Behringer

20  Harvard") is a Delaware limited liability company that does

21  business in California, including in the City and County of Los

22  Angeles.  Behringer Harvard currently owns Gallery @ NoHo

23  Commons ("Gallery"), a multi-family housing development

24  located at 5416 Fair Avenue, Los Angeles, California.  Gallery is a

25  CRA-assisted development.

26          70.    Defendant Buckingham Senior Apartments, L.P.

27  ("Buckingham") is a California limited partnership that does

28  business in California, including in the City and County of Los

1   Angeles.  Buckingham currently owns Buckingham Place Senior

2   Housing, a multi-family senior housing development located at

3   4020 Buckingham Road, Los Angeles, California.  Buckingham

4   Place Senior Housing is a CRA-assisted development.

5       71.   Defendant Cantabria Senior Apartments, L.P.

6   ("Cantabria") is a California limited partnership that does business

7   in California, including in the City and County of Los Angeles.

8   Cantabria currently owns Cantabria Senior Citizen Apartments, a

9   multi-family senior housing development located at 9640 Van

10  Nuys Boulevard, Los Angeles, California.  Cantabria Senior

11  Citizen Apartments is a CRA-assisted development.

12      72.   Defendant Carondelet Court Partners, L.P.

13  ("Carondelet") is a California limited partnership that does

14  business in California, including in the City and County of Los

15  Angeles.  Carondelet currently owns Carondelet Court Apartments,

16  a multi-family housing development located at 816 South

17  Carondelet Street, Los Angeles, California.  Carondelet Court

18  Apartments is a CRA-assisted development.

19      73.   Defendant Central Village Apartments, L.P. ("Central

20  Village") is a California limited partnership that does business in

21  California, including in the City and County of Los Angeles.

22  Central Village currently owns Central Village Apartments, a

23  multi-family housing development located at 2000 South Central

24  Avenue, Los Angeles, California.  Central Village Apartments is a

25  CRA-assisted development.

26      74.   Defendant Decro Orion Apartments, L.P. ("Decro

27  Orion") is a California limited partnership that does business in

28  California, including in the City and County of Los Angeles.

1    Decro Orion currently owns Orion Garden Apartments (aka Decro
2    Orion), a multi-family housing development located at 8947-8955
3    North Orion Street, Los Angeles, California.  Orion Garden
4    Apartments (aka Decro Orion) is a CRA-assisted development.
5        75.   Defendant Decro Osborne Apartments, L.P. ("Decro
6    Osborne") is a California limited partnership that does business in
7    California, including in the City and County of Los Angeles.
8    Decro Osborne currently owns Decro Osborne Apartments (aka
9    Osborne Family), a multi-family housing development located at
10   12360 Osborne Street, Los Angeles, California.  Decro Osborne
11   Apartments (aka Osborne Family) is a CRA-assisted development.
12       76.   Defendant East LA Community Corporation ("ELACC")
13   is a California corporation that does business in California,
14   including in the City and County of Los Angeles.  ELACC
15   currently owns Boyle Hotel Apartments, a multi-family housing
16   development located at 101 North Boyle Avenue, Los Angeles,
17   California, and Paseo Del Sol, another multi-family housing
18   development located at 417 North Soto Street, Los Angeles,
19   California.  Boyle Hotel Apartments and Paseo Del Sol are both
20   CRA-assisted developments.
21       77.   Defendant Eastside Village, L.P. ("Eastside Village") is
22   a California limited partnership that does business in California,
23   including in the City and County of Los Angeles.  Eastside Village
24   currently owns Eastside Village (Lillian Mobley), a multi-family
25   housing development located at 2250 East 111th Street, Los
26   Angeles, California.  Eastside Village (Lillian Mobley) is a CRA-
27   assisted development.
28

1    78.   Defendant Esperanza Community Housing Corporation

2  ("Esperanza") is a California corporation that does business in

3  California, including in the City and County of Los Angeles.

4  Esperanza currently owns La Estrella Apartments, a multi-family

5  housing development located at 1979 Estrella Avenue, Los

6  Angeles, California.  La Estrella Apartments is a CRA-assisted

7  development.

8    79.   Defendant Eugene Hotel, L.P. ("Eugene") is a

9  California limited partnership that does business in California,

10  including in the City and County of Los Angeles.  Eugene

11  currently owns Eugene Hotel, a multi-family housing development

12  located at 560 South Stanford Street, Los Angeles, California.

13  Eugene Hotel is a CRA-assisted development.

14    80.   Defendant Fame West 25th Street, L.P. ("Fame West") is

15  a California limited partnership that does business in California,

16  including in the City and County of Los Angeles.  Fame West

17  currently owns FAME West 25th (aka FAME-Western), a multi-

18  family housing development located at 1940 West 25th Street, Los

19  Angeles, California.  FAME West 25th (aka FAME-Western) is a

20  CRA-assisted development.

21    81.   Defendant Far East Building, L.P. ("Far East") is a

22  California limited partnership that does business in California,

23  including in the City and County of Los Angeles.  Far East

24  currently owns Far East Building, a multi-family housing

25  development located at 347-353 East First Street, Los Angeles,

26  California.  Far East Building is a CRA-assisted development.

27    82.   Defendant Grandview Nine, L.P. ("Grandview") is a

28  California limited partnership that does business in California,

1  including in the City and County of Los Angeles.  Grandview

2  currently owns Grandview 9, a multi-family housing development

3  located at 916-920 South Park View Street, Los Angeles,

4  California.  Grandview 9 is a CRA-assisted development.

5      83.  Defendant Hart Village, L.P. ("Hart") is a California

6  limited partnership that does business in California, including in

7  the City and County of Los Angeles.  Hart currently owns Hart

8  Village, a multi-family housing development located at 6927-41

9  Owensmouth Avenue/21702-12 Hart Street, Los Angeles,

10  California.  Hart Village is a CRA-assisted development.

11      84.  Defendant Heavenly Vision Senior Housing, L.P.

12  ("Heavenly Vision") is a California limited partnership that does

13  business in California, including in the City and County of Los

14  Angeles.  Heavenly Vision currently owns Heavenly Vision

15  Seniors, a multi-family senior housing development located at

16  9400 South Broadway, Los Angeles, California.  Heavenly Vision

17  Seniors is a CRA-assisted development.

18      85.  Defendant Hobart Heights Partners, L.P. ("Hobart") is a

19  California limited partnership that does business in California,

20  including in the City and County of Los Angeles.  Hobart currently

21  owns The Hobart, a multi-family housing development located at

22  924 South Hobart Boulevard, Los Angeles, California.  The Hobart

23  is a CRA-assisted development.

24      86.  Defendant Hoover Seniors, L.P. ("Hoover") is a

25  California limited partnership that does business in California,

26  including in the City and County of Los Angeles.  Hoover

27  currently owns Hoover Senior, a multi-family senior housing

28  development located at 6200-6214 South Hoover Street, Los

1   Angeles, California.  Hoover Senior is a CRA-assisted

2   development.

3       87.   Defendant Imani Fe, LP ("Imani Fe") is a California

4   limited partnership that does business in California, including in

5   the City and County of Los Angeles.  Imani Fe currently owns

6   Imani Fe (East and West), a multi-family housing development

7   located at 10345 and 10408-10424 South Central Avenue, Los

8   Angeles, California.  Imani Fe (East and West) is a CRA-assisted

9   development.

10      88.   Defendant Korean Family Housing Corporation

11  ("Korean Family Housing") is a California corporation that does

12  business in California, including in the City and County of Los

13  Angeles.  Korean Family Housing currently owns Pleasant Hill

14  Homes, a multi-family housing development located at 1315

15  Pleasant Avenue, Los Angeles, California.  Pleasant Hill Homes is

16  a CRA-assisted development.

17      89.   Defendant Las Margaritas, L.P. is a California limited

18  partnership that does business in California, including in the City

19  and County of Los Angeles.  Las Margaritas, L.P. currently owns

20  Las Margaritas, a multi-family housing development located at 115

21  and 137 North Soto Street and 319 North Cummings Street, Los

22  Angeles, California.  Las Margaritas is a CRA-assisted

23  development.

24      90.   Defendant Los Angeles Housing Partnership, Inc.

25  ("L.A. Housing Partnership") is a California corporation that does

26  business in California, including in the City and County of Los

27  Angeles.  L.A. Housing Partnership currently owns Bronson Court,

28  a multi-family housing development located at 1227-39 North

1    Bronson Avenue, Los Angeles, California.  Bronson Court is a

2    CRA-assisted development.

3         91.   Defendant Los Cuatro Vientos, L.P. ("LCV") is a

4    California limited partnership that does business in California,

5    including in the City and County of Los Angeles.  LCV currently

6    owns Cuatro Vientos, a multi-family housing development located

7    at 5331 East Huntington Drive, Los Angeles, California.  Cuatro

8    Vientos is a CRA-assisted development.

9         92.   Defendant Menlo Park, A California Limited

10   Partnership ("Menlo Park") is a California limited partnership that

11   does business in California, including in the City and County of

12   Los Angeles.  Menlo Park currently owns Menlo Park Apartments,

13   a multi-family housing development located at 831 West 70th

14   Street, Los Angeles, California.  Menlo Park Apartments is a

15   CRA-assisted development.

16        93.   Defendant Morgan Place, L.P. ("Morgan") is a

17   California limited partnership that does business in California,

18   including in the City and County of Los Angeles.  Morgan

19   currently owns Morgan Place Senior Apartments, a multi-family

20   senior housing development located at 7301-15 South Crenshaw

21   Boulevard, Los Angeles, California.  Morgan Place Senior

22   Apartments is a CRA-assisted development.

23        94.   Defendant New Genesis Apartments, L.P. ("New

24   Genesis") is a California limited partnership that does business in

25   California, including in the City and County of Los Angeles.  New

26   Genesis currently owns New Genesis Apartments, a multi-family

27   housing development located at 452-458 South Main Street, Los

28

1  Angeles, California.  New Genesis Apartments is a CRA-assisted

2  development.

3      95.  Defendant New Tierra del Sol, L.P. ("New Tierra") is a

4  California limited partnership that does business in California,

5  including in the City and County of Los Angeles.  New Tierra

6  currently owns Tierra del Sol, a multi-family housing development

7  located at 7500 Alabama Avenue, Los Angeles, California.  Tierra

8  del Sol is a CRA-assisted development.

9      96.  Defendant NoHo Senior Villas, L.P. ("NoHo Senior") is

10  a California limited partnership that does business in California,

11  including in the City and County of Los Angeles.  NoHo Senior

12  currently owns NoHo Senior Villas, a multi-family housing

13  development located at 5526-5532 Klump Avenue, Los Angeles,

14  California.  NoHo Senior Villas is a CRA-assisted development.

15      97.  Defendant Ol Hope, L.P. ("Ol Hope") is a California

16  limited partnership that does business in California, including in

17  the City and County of Los Angeles.  Ol Hope currently owns

18  Hope Manor, a multi-family housing development located at 1031

19  South Hope Street, Los Angeles, California.  Hope Manor is a

20  CRA-assisted development.

21      98.  Defendant P G Housing Partners, L.P. ("P G Housing")

22  is a California limited partnership that does business in California,

23  including in the City and County of Los Angeles.  P G Housing

24  currently owns Pico/Gramercy, a multi-family housing

25  development located at 3201 West Pico Boulevard, Los Angeles,

26  California.  Pico/Gramercy is a CRA-assisted development.

27      99.  Defendant Palm Village Senior Housing Corp. ("Palm

28  Village") is a California corporation that does business in

1  California, including in the City and County of Los Angeles.  Palm

2  Village currently owns Palm Village Senior Citizens, a multi-

3  family senior housing development located at 9040 Laurel Canyon

4  Boulevard, Los Angeles, California.  Palm Village Senior Citizens

5  is a CRA-assisted development.

6      100. Defendant Palomar Apartments, L.P. ("Palomar") is a

7  California limited partnership that does business in California,

8  including in the City and County of Los Angeles.  Palomar

9  currently owns Palomar Apartments, a multi-family housing

10  development located at 5473 Santa Monica Boulevard, Los

11  Angeles, California.  Palomar Apartments is a CRA-assisted

12  development.

13      101. Defendant Penny Lane Centers ("Penny Lane") is a

14  California corporation that does business in California, including

15  in the City and County of Los Angeles.  Penny Lane currently

16  owns Columbus Permanent Housing, a multi-family housing

17  development located at 8900-06 Columbus Avenue, Los Angeles,

18  California.  Columbus Permanent Housing is a CRA-assisted

19  development.

20      102. Defendant Rampart Apartments, A California Limited

21  Partnership ("Rampart") is a California limited partnership that

22  does business in California, including in the City and County of

23  Los Angeles.  Rampart currently owns Casa Rampart, a multi-

24  family housing development located at 401 and 512 South Rampart

25  Boulevard, Los Angeles, California.  Casa Rampart is a CRA-

26  assisted development.

27      103. Defendant Redrock NoHo Residential, LLC ("Redrock

28  NoHo") is a Delaware limited liability company that does business

1   in California, including in the City and County of Los Angeles.

2   Redrock NoHo currently owns Lofts @ NoHo Commons ("Lofts"),

3   a multi-family housing development located at 11136 Chandler

4   Boulevard, North Hollywood, California.  Lofts is a CRA-assisted

5   development.

6       104. Defendant Renato Apartments, L.P. ("Renato") is a

7   California limited partnership that does business in California,

8   including in the City and County of Los Angeles.  Renato

9   currently owns Renato Apartments, a multi-family housing

10  development located at 527-531 South San Julian, Los Angeles,

11  California.  Renato Apartments is a CRA-assisted development.

12      105. Defendant Rittenhouse Limited Partnership

13  ("Rittenhouse LP") is a California limited partnership that does

14  business in California, including in the City and County of Los

15  Angeles.  Rittenhouse LP currently owns Rittenhouse, a multi-

16  family housing development located at 1100 East 33rd Street, Los

17  Angeles, California.  Rittenhouse is a CRA-assisted development.

18      106. Defendant Selma-Hudson Community Limited

19  Partnership ("Selma-Hudson") is a California limited partnership

20  that does business in California, including in the City and County

21  of Los Angeles.  Selma-Hudson currently owns Casa Verde, a

22  multi-family housing development located at 1552 Schrader

23  Boulevard, Los Angeles, California.  Selma-Hudson is a CRA-

24  assisted development.

25      107. Defendant Seven Maples, L.P. ("Seven Maples") is a

26  California limited partnership that does business in California,

27  including in the City and County of Los Angeles.  Seven Maples

28  currently owns Seven Maples Senior Apartments, a multi-family

1   senior housing development located at 2618-30 West 7th Street,

2   Los Angeles, California.  Seven Maples Senior Apartments is a

3   CRA-assisted development.

4        108. Defendant Sherman Village Apartments, L.P.

5   ("Sherman Village") is a California limited partnership that does

6   business in California, including in the City and County of Los

7   Angeles.  Sherman Village currently owns Sherman Village

8   Apartments, a multi-family housing development located at 18900

9   Sherman Way, Los Angeles, California.  Sherman Village

10  Apartments is a CRA-assisted development.

11       109. Defendant Sherman Way Community Housing, L.P.

12  ("Sherman Way") is a California limited partnership that does

13  business in California, including in the City and County of Los

14  Angeles.  Sherman Way currently owns Three Courtyards

15  Apartments (aka Ivy Terrace), a multi-family housing development

16  located at 13751 Sherman Way, Los Angeles, California.  Three

17  Courtyards (aka Ivy Terrace) is a CRA-assisted development.

18       110. Defendant Stovall Housing Corporation ("Stovall

19  Housing") is a California corporation that does business in

20  California, including in the City and County of Los Angeles.

21  Stovall Housing currently owns Stovall Villa, a multi-family

22  housing development located at 535 West 41st Street, Los Angeles,

23  California.  Stovall Villa is a CRA-assisted development.

24       111. Defendant Vermont Seniors is a California corporation

25  that does business in California, including in the City and County

26  of Los Angeles.  Vermont Seniors currently owns Vermont Seniors

27  (I and II), a multi-family senior housing development located at

28  3901-3925 South Vermont Avenue/1015 West 39th Place, Los

1  Angeles, California.  Vermont Seniors (I and II) is a CRA-assisted
2  development.
3      112.  Defendant WA Court, L.P. ("WA Court") is a California
4  limited partnership that does business in California, including in
5  the City and County of Los Angeles.  WA Court currently owns
6  Washington Court Family Housing, a multi-family housing
7  development located at 1717 East 103rd Street, Los Angeles,
8  California.  Washington Court Family Housing is a CRA-assisted
9  development.
10     113.  Defendant Watts/Athens Preservation XVII, L.P.
11  ("Watts/Athens") is a California limited partnership that does
12  business in California, including in the City and County of Los
13  Angeles.  Watts/Athens currently owns Terre One Apartments, a
14  multi-family housing development located at 5270 South Avalon
15  Boulevard, Los Angeles, California.  Terre One Apartments is a
16  CRA-assisted development.
17     114.  Defendant West Angeles Villas, L.P. ("WAV") is a
18  California limited partnership that does business in California,
19  including in the City and County of Los Angeles.  WAV currently
20  owns West Angeles Villas, a multi-family housing development
21  located at 6030 Crenshaw Boulevard, Los Angeles, California.
22  West Angeles Villas is a CRA-assisted development.
23     115.  Defendant Western/Carlton II, L.P. ("Western/Carlton")
24  is a California limited partnership that does business in California,
25  including in the City and County of Los Angeles.  Western/Carlton
26  currently owns Metro Hollywood Apartments (aka Hollywood
27  Western Apartments/Western-Carlton Phase II) ("Metro
28  Hollywood"), a multi-family housing development located at 1672

1  N. Western Avenue, Los Angeles, California.  Metro Hollywood is

2  a CRA-assisted development.

3       116. Defendant Yale Terrace Apartments, A California

4  Limited Partnership ("Yale Terrace") is a California limited

5  partnership that does business in California, including in the City

6  and County of Los Angeles.  Yale Terrace currently owns Yale

7  Terrace Apartments, a multi-family housing development located

8  at 716-734 South Yale Street, Los Angeles, California.  Yale

9  Terrace Apartments is a CRA-assisted development.

10       **STATUTORY AND REGULATORY FRAMEWORK**

11  **I.      Section 504 of the Rehabilitation Act**

12       117. The purpose of the Rehabilitation Act of 1973 is to

13  "maximize employment, economic self-sufficiency, independence,

14  and inclusion and integration into society" of people with

15  disabilities. 29 U.S.C. §701(b)(1). The Rehabilitation Act is based

16  on findings that "individuals with disabilities continually

17  encounter various forms of discrimination in such critical areas as

18  . . . housing" and that "the goals of the Nation properly include the

19  goal of providing individuals with disabilities with the tools

20  necessary to . . . achieve equality of opportunity, full inclusion

21  and integration in society, employment, independent living, and

22  economic and social self-sufficiency." 29 U.S.C. §701(a)(5) and

23  (6)(B).

24       118.   All entities receiving federal financial assistance must

25  comply with the anti-discrimination provisions of Section 504 of

26  the Rehabilitation Act. 29 U.S.C. §794(a). "No otherwise qualified

27  individual with a disability . . . shall, solely by reason of his or

28  her disability, be excluded from participation in, be denied the

1   benefits of, or be subjected to discrimination under any program or

2   activity receiving Federal financial assistance . . ." 29 U.S.C. §

3   794.

4       119.   Section 504 requires covered entities to provide people

5   with disabilities meaningful access to programs, services, and

6   activities. *Alexander v. Choate*, 469 U.S. 287 (1985). The

7   meaningful access requirement applies across the board to all of a

8   covered entity's programs, services, and activities, regardless of

9   whether a particular program, service, or activity itself has direct

10  federal funding.

11      120.   U.S. Department of Housing and Urban Development

12  ("HUD") Regulations implementing Section 504 provide that "[a]

13  recipient, in providing any housing, aid, benefit, or service in a

14  program or activity that receives Federal financial assistance from

15  the Department [of Housing & Urban Development] may not,

16  directly or through contractual, licensing, or other arrangements,

17  solely on the basis of handicap: . . . Aid or perpetuate

18  discrimination against a qualified individual with handicaps by

19  providing significant assistance to an agency, organization, or

20  person that discriminates on the basis of handicap in providing any

21  housing, aid, benefit, or service to beneficiaries in the recipient's

22  federally assisted program or activity"; [or] "Otherwise limit a

23  qualified individual with handicaps in the enjoyment of any right,

24  privilege, advantage, or opportunity enjoyed by other qualified

25  individuals receiving the housing, aid, benefit, or service." 24

26  C.F.R. § 8.4(b)(1).

27      121.   The HUD regulations implementing Section 504 also

28  require that "[i]n any program or activity receiving Federal

1    financial assistance from the Department, a recipient may not,

2    directly or through contractual or other arrangements, utilize

3    criteria or methods of administration the purpose or effect of

4    which would: (i) Subject qualified individuals with handicaps to

5    discrimination solely on the basis of handicap; (ii) Defeat or

6    substantially impair the accomplishment of the objectives of the

7    recipient's federally assisted program or activity for qualified

8    individuals with a particular handicap involved in the program or

9    activity, unless the recipient can demonstrate that the criteria or

10   methods of administration are manifestly related to the

11   accomplishment of an objective of a program or activity; or (iii)

12   Perpetuate the discrimination of another recipient if both

13   recipients are subject to common administrative control or are

14   agencies of the same State." 24 C.F.R. § 8.4(b)(4).

15       122.   In addition to general program requirements, HUD

16   Section 504 regulations also describe specific architectural and

17   other requirements that apply to particular housing projects or

18   units receiving federal financial assistance.

19       123.   For example, five percent of the total dwelling units in

20   new multifamily housing projects receiving federal financial

21   assistance must meet the requirements set forth in the Uniform

22   Federal Accessibility Standards ("UFAS") for accessibility for

23   people with mobility impairments, and an additional two percent

24   must be accessible per UFAS requirements for people with hearing

25   or vision impairments. 24 C.F.R. §8.22(a) and (b).

26       124.   Multifamily housing projects receiving federal financial

27   assistance must take steps to ensure that accessible dwelling units

28   in those projects are occupied by people who need the accessibility

1 features of those units, including offering available units first to

2 people who need the accessibility features and taking steps to

3 assure that advertising and other information regarding the

4 availability of accessible units reaches people with disabilities. 24

5 C.F.R. §8.27.

6     125.   Accessible units must also be distributed throughout

7 housing projects and sites to the maximum extent feasible and be

8 available in a range of sizes and amenities so that a person with a

9 disability's choice of living arrangements is comparable to that of

10 others.

11     126.   The regulations regarding these specific requirements

12 provide important guidance regarding what steps may be necessary

13 to ensure that people with physical disabilities have meaningful

14 access to a housing program, and the Court may accept them as

15 authoritative interpretations of the statute by the agency charged

16 with enforcement.

17 **II.**    **<u>Title II of the Americans with Disabilities Act</u>**

18     127.  The Americans with Disabilities Act, which is modeled

19 on Section 504 of the Rehabilitation Act, was enacted "to provide

20 a clear and comprehensive national mandate for the elimination of

21 discrimination against individuals with disabilities" with "clear,

22 strong, consistent, enforceable standards . . . in order to address

23 the major areas of discrimination faced day-to-day by people with

24 disabilities." 42 U.S.C. §12101(b).

25     128. All public entities, including state and local

26 governments and their departments, agencies, and

27 instrumentalities, must comply with Title II of the Americans with

28 Disabilities Act.

129. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity."  42 U.S.C. § 12132.

130. Like Section 504, Title II of the ADA requires covered entities to provide people with disabilities meaningful access to programs, services, and activities. *Crowder v. Kitagawa*, 81 F.3d 1480 (9th Cir. 1996). The meaningful access requirement applies across the board to all of a covered entity's programs, services, and activities, regardless of whether a particular program, service, or activity itself has direct federal funding.

131. U.S. Department of Justice Regulations implementing Title II of the ADA clarify that "[a] public entity, in providing any aid, benefit or service, may not, directly or through contractual, licensing or other arrangements, on the basis of disability. . . . [a]id or perpetuate discrimination against a qualified individual with a disability by providing significant assistance to an agency, organization, or person that discriminates on the basis of disability in providing any aid, benefit, or service to beneficiaries of the public entity's program;" [or] "Otherwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service." 28 C.F.R. § 35.130(b)(1).

132. Department of Justice Regulations implementing Title II also clarify that "[a] public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration: (i) That have the effect of subjecting qualified

1   individuals with disabilities to discrimination on the basis of

2   disability; (ii) That have the purpose or effect of defeating or

3   substantially impairing accomplishment of the objectives of the

4   public entity's program with respect to individuals with

5   disabilities; or (iii) That perpetuate the discrimination of another

6   public entity if both public entities are subject to common

7   administrative control . . ." 28 C.F.R. § 35.130(b)(3).

8   **III.   The Fair Housing Act**

9          133. In 1988, Congress amended the Fair Housing Act to

10  include a number of provisions prohibiting discrimination on the

11  basis of disability, as part of a comprehensive revision of the law.[1]

12  In considering those amendments, Congress stressed that

13  enforcement of civil rights laws is necessary to protect people with

14  disabilities from the "devastating" impact of housing

15  discrimination, including both architectural and attitudinal barriers

16  to full participation by people with disabilities

17         134. The debates and legislative history of the Fair Housing

18  Amendments Act of 1988 reflect Congressional findings that a

19  person using a wheelchair or other mobility aid is just as

20  effectively excluded from the opportunity to live in a particular

21  dwelling by steps or thresholds at building or unit entrances and

22  by too narrow doorways as by a posted sign saying "No

23  Handicapped People Allowed."

24

25  [1] The Fair Housing Amendments Act ("FHAA") uses the term "handicap" instead of the term "disability." Both terms have the same legal meaning. *See Bragdon v. Abbott*, 524 U.S. 624, 631 (1998) (noting that definition of "disability" in the Americans with Disabilities Act is drawn almost verbatim "from the definition of 'handicap' contained in the Fair Housing Amendments Act of 1988"). Except when referring to the statutory language of the FHAA, this Complaint uses the term "disability," which is more generally accepted.

26

27

28

1    135. As relevant in this litigation, the Fair Housing Act
2    prohibits both intentional discrimination on the basis of disability
3    and many neutral policies and practices that have a
4    disproportionate adverse impact on people with disabilities. 42
5    U.S.C. §§ 3604(f)(1) and 3604(f)(2).
6    **IV.   Section 11135 of the California Government Code**
7        136. All entities receiving financial assistance from the State
8    of California must comply with Section 11135 of the California
9    Government Code, which prohibits discrimination on the basis of
10   disability. Section 11135 incorporates the definitions of
11   discrimination contained in the ADA and its implementing
12   regulations such that a violation of the ADA is also a violation of
13   §11135. California Government Code § 11135(b).
14                              **FACTS**
15   **I.    Lack of Affordable, Accessible Housing in Los Angeles**
16       137. In order to obtain federal housing and community
17   development funds, the City submits a Consolidated Plan to HUD
18   every five years describing the housing market and housing needs
19   within Los Angeles.
20       138. According to the 2008-2013 Consolidated Plan, Los
21   Angeles is home to large numbers of people with disabilities. In
22   2000, 20.4% of the population of Los Angeles five years old and
23   older had a disability. 2008-2013 Consolidated Plan at 176.
24   Almost 45% of the population of Los Angeles 65 years old and
25   older had a disability in 2000. *Id*. Nearly one-quarter of disabled
26   adults and two-thirds of adults over the age of 65 have physical
27   limitations. *Id*. at 93. In addition, 24% of the people with
28

1   disabilities living in Los Angeles have vision or hearing

2   limitations. *Id.*

3        139. The City states in the Consolidated Plan that people

4   with physical limitations require accessible housing and that there

5   is an acute need for accessible housing in Los Angeles. The City

6   found that "[f]inding affordable, accessible units is a challenge" in

7   the City of Los Angeles. *Id.* at 94.

8        140. The City states that "there are hundreds of thousands of

9   individuals, and families, in Los Angeles, who require accessible,

10  affordable housing and do not have it." *Id.* at 180.

11       141. The City's Housing Element of its General Plan is the

12  City's "blueprint" for meeting the housing requirements of its

13  residents and "identifies the City's housing conditions and needs."

14  City of Los Angeles Housing Element 2006-2014 at 1.  This

15  Housing Element was adopted pursuant to California laws

16  requiring that the City adopt a General Plan Housing Element with

17  certain specified information. California Government Code

18  §§ 65300, *et seq.*)

19       142. In its Housing Element, the City recognizes that people

20  "with physical disabilities need affordable, conveniently-located

21  housing which has been specially adapted for wheelchair

22  accessibility, along with other physical needs." City of Los

23  Angeles Housing Element 2006-2014 at 1-16.

24       143. The City acknowledges that older, more affordable

25  housing units in the City "are not accessible to those with

26  disabilities." *Id.*

27       144. The City reports that "[o]ver one-half of all disabled

28  adults in the City have 'going-outside-home' or other employment

1   limitations which affect the ability to work and earn an income."

2   *Id.* at 1-14.

3       145. As a result, people with disabilities "face unique

4   problems in obtaining affordable and adequate housing" in Los

5   Angeles. *Id.*

6   **II.   Federal and State Financial Assistance to the City and the**

7   **CRA**

8       146. Since at least 1974, the City has received federal

9   housing and community development funds from HUD, as well as

10  federal funds from other federal agencies.

11      147. The City has received federal funds under the

12  Community Development Block Grant ("CDBG") program.

13      148. The City has received federal funds under the HOME

14  Investment Partnership ("HOME") program.

15      149.  The City has received federal funds under the

16  Emergency Shelter Grant ("ESG") program.

17      150. The City has received federal funds under the Housing

18  Opportunities for People with AIDS ("HOPWA") program.

19      151. The City has also benefitted from the proceeds of

20  federal loan guarantees pursuant to Section 108 of the Community

21  Development Act.  42 U.S.C. § 5308.

22      152. The City has directed millions of dollars in CDBG and

23  HOME funds as well as state, local, and private resources to an

24  Affordable Housing Trust Fund for the purposes of developing

25  affordable housing.

26      153. By virtue of this commingling with federal funds, the

27  anti-discrimination requirements of the Rehabilitation Act and the

28  ADA attach to all funds in the Trust Fund.

1   154. As part of its affordable housing program, the City has

2   directed hundreds of millions of dollars in CDBG, HOME,

3   Affordable Housing Trust Funds, state, and other funds to the

4   Redevelopment Defendants.

5   155. The City has also received funds from the State of

6   California.

7   156. The Redevelopment Defendants have received millions

8   of dollars in federal housing and community development funds,

9   as well as federal funds from other federal agencies.

10   157. The Redevelopment Defendants have also received

11   funds from the State of California.

12   **III.   Government Defendants' Redevelopment Housing**
       **Program**
13

14   158. The Redevelopment Defendants used these funds and

15   others directly to acquire property eventually developed into

16   housing and/or allocated these and other funds to developers to

17   acquire property, finance, operate, build or substantially alter tens

18   of thousands of housing units.

19   159. The Redevelopment Defendants also used other

20   financing, regulatory, contractual, and governmental methods to

21   support their housing programs and to provide significant

22   assistance to developers, owners, and operators of housing.

23   160. Pursuant to a staff report presented to the Local

24   Authority at an April 19, 2012 Special Meeting, entitled "Report

25   to the Governing Board on Status of Housing Functions and

26   Transfer of Housing Assets, Functions, and Obligations to the Los

27   Angeles Housing Department (LAHD)" ("April 19, 2012 Housing

28   Report"), there were over 29,000 units of housing, including

1   23,000 affordable units, in the Redevelopment Defendants'

2   portfolio as of April 19, 2012.

3       161. Pursuant to the April 19, 2012 Housing Report, as of

4   April 19, 2012, there were nearly 4,500 additional units in the

5   Redevelopment Defendants' development "pipeline," i.e.

6   somewhere in the process of development.

7       162. There were thousands of additional units funded,

8   developed or significantly assisted by the Redevelopment

9   Defendants that are no longer in its existing portfolio.

10      163. All of these units were constructed as part of the

11  Government Defendants' program, service, or activity of

12  increasing the availability of housing, including affordable

13  housing, in the City of Los Angeles.

14      164. The inventory of housing built or rehabilitated with

15  funds, land, or other assistance provided by or through the

16  Redevelopment Defendants, including projects not yet completed,

17  is hereinafter referred to as the "Redevelopment Housing

18  Program."

19  **IV.   Defendants' Failure to Ensure that People with Physical
        Disabilities Have Meaningful Access to the CRA Housing**
20      **Program**

21      165. By virtue of accepting federal funds to support the

22  Redevelopment Housing Program, the Government Defendants are

23  bound to comply with the obligations of Section 504 of the

24  Rehabilitation Act, which prohibits recipients from operating

25  programs which exclude people with disabilities from participation

26  in, deny them the benefits of, or subject them to discrimination

27  under any program or activity.

28

1     166. As public entities, the Government Defendants are

2  bound to comply with the obligations of the Americans with

3  Disabilities Act, which prohibits public entities from operating

4  programs which exclude people with disabilities from participation

5  in, deny them the benefits of, or subject them to discrimination

6  under any program or activity.

7     167. By virtue of accepting financial assistance from the

8  State of California, the Government Defendants are bound to

9  comply with the obligations of Section 11135 of the California

10  Government Code, which prohibits recipients from operating

11  programs which exclude people with disabilities from participation

12  in, deny them the benefits of, or subject them to discrimination

13  under any program or activity.

14     168. However, the Government Defendants failed, and

15  continue to fail, to take steps to ensure that the Redevelopment

16  Housing Program is accessible to people with disabilities or that

17  any accessible units that exist are made available to people with

18  disabilities.

19     169. As a result, people with physical disabilities have been

20  and continue to be denied meaningful access to the Redevelopment

21  Housing Program.

22     170. For example, the Government Defendants failed, and

23  continue to fail, to maintain policies or practices to ensure that the

24  Redevelopment Housing Program contains sufficient units

25  accessible to people with mobility, auditory, or visual

26  impairments.

27     171. The Government Defendants failed, and continue to

28  fail, to maintain policies, practices, or procedures to ensure that

1    accessible units within the Redevelopment Housing Program are
2    made available to and utilized by people with mobility or auditory
3    or visual impairments who need the accessibility features of those
4    units.

5        172.  The Government Defendants have failed, and continue
6    to fail, to maintain policies, practices, or procedures to ensure that
7    people with mobility or auditory or visual impairments otherwise
8    have meaningful access to the Redevelopment Housing Program.

9        173.  At all relevant times, the Government Defendants could
10   not or would not identify for the public which projects receiving
11   financial or other benefit from the Redevelopment Defendants
12   received federal financial assistance triggering Rehabilitation Act
13   and regulatory obligations.

14       174.  At all relevant times, the Government Defendants failed
15   to monitor compliance with the Rehabilitation Act accessibility
16   requirements in the Redevelopment Housing Program.

17       175.  At all relevant times, the Government Defendants failed
18   to maintain a list of accessible units within the Redevelopment
19   Housing Program.

20       176.  At all relevant times, the Government Defendants failed
21   to produce any list of accessible units within the Redevelopment
22   Housing Program.

23       177.  At all relevant times, the Government Defendants
24   could not or would not identify for the public any wheelchair-
25   accessible or sensory-accessible units.

26       178.  At all relevant times, the Government Defendants could
27   not or would not describe for the public any accessible features in
28

1  so-called "wheelchair units," "handicapped units," or "sensory

2  accessible units" within the Redevelopment Housing Program.

3      179. The Government Defendants have failed, and continue

4  to fail, to require that projects within the Redevelopment Housing

5  Program comply with federal accessibility requirements, which has

6  the effect of excluding people with disabilities from such

7  developments.

8      180. In addition, the Government Defendants failed to ensure

9  that contracts and regulatory agreements with developers, owners,

10  and operators of housing in the Redevelopment Housing Program

11  and other documents pertaining to the Redevelopment Housing

12  Program included accessibility requirements sufficient to comply

13  with the Government Defendants' obligations as recipients of

14  federal funds.

15      181. The Government Defendants also failed to exercise

16  oversight over developers and owners of housing in the

17  Redevelopment Housing Program in regards to their obligations to

18  comply and their ongoing compliance with disability access

19  provisions of federal law.

20      182. The Government Defendants' failures with regard to

21  ensuring the accessibility of the Redevelopment Housing Program

22  stand in stark contrast to their efforts to enforce other

23  requirements, such as regulatory provisions concerning

24  affordability requirements.

25      183. In addition to their failure to comply with accessibility

26  requirements for the redevelopment project as a whole, the

27  Government Defendants failed to ensure compliance with these

28  requirements in housing where the Government Defendants were

1    providing federal funding to the developer and/or owner for the
2    project.

3        184.  For example, Plaintiffs are aware of at least 61
4    multifamily projects, comprising approximately 4,140 units, for
5    which the Redevelopment Defendants provided CDBG, HOME
6    and/or AHTF funds to support new construction or substantial
7    alteration.  The multifamily projects include but are not limited to:
8    Don Hotel Apartments (58 units); El Dorado Apartments (60
9    units); Vista Monterey Senior Housing (48 units); Bonnie Brae
10   Apartment Homes (53 units); Broadway Plaza Apartments (82
11   units); Adams and Central (80 units); Montecito Terraces (98
12   units); Amistad Plaza (56 units); Andalucia Senior Apartments (94
13   units); The Ardmore (48 units); Asturias Senior Apartments (69
14   units); Broadway Village II (50 units); Buckingham Place Senior
15   Housing (71 units); Cantabria Senior Citizen Apartments (81
16   units); Carondelet Court Apartments (32 units); Central Village
17   Apartments (85 units); Orion Garden Apartments (aka Decro
18   Orion) (32 units); Decro Osborne Apartments (aka Osborne
19   Family) (50 units); Boyle Hotel Apartments (51 units); Paseo Del
20   Sol (7 units); Eastside Village (Lillian Mobley) (78 units); La
21   Estrella Apartments (11 units); Eugene Hotel (44 units); FAME
22   West 25th (aka FAME-Western) (12 units); Far East Building (16
23   units); Grandview 9 (62 units); Hart Village (47 units); Heavenly
24   Vision Seniors (46 units); The Hobart (49 units); Hoover Senior
25   (38 units); Imani Fe (East and West) (92 units); Pleasant Hill
26   Homes (24 units); Las Margaritas (42 units); Bronson Court (32
27   units); Cuatro Vientos (25 units); Menlo Park Apartments (48
28   units); Morgan Place Senior Apartments (55 units); New Genesis

1   Apartments (106 units); Tierra del Sol (119 units); NoHo Senior

2   Villas (25 units); Hope Manor (75 units); Pico/Gramercy (71

3   units); Palm Village Senior Citizens (60 units); Palomar

4   Apartments (28 units); Columbus Permanent Housing (6 units);

5   Casa Rampart (69 units); Lofts (292 units); Renato Apartments (97

6   units); Rittenhouse (100 units); Casa Verde (30 units); Seven

7   Maples Senior Apartments (57 units); Gallery (438 units);

8   Sherman Village Apartments (33 units); Three Courtyards

9   Apartments (aka Ivy Terrace) (52 units); Stovall Villa (31 units);

10   Vermont Seniors (I and II) (140 units); Washington Court Family

11   Housing (101 units); Terre One Apartments (15 units); West

12   Angeles Villas (150 units); Metro Hollywood (60 units); and Yale

13   Terrace Apartments (55 units).  The number of units at each

14   project are based upon information and belief.

15       185.  None of the 61 federally-funded multifamily projects

16   contains units accessible to people with mobility and/or auditory

17   or visual impairments in sufficient numbers, sizes and locations to

18   provide people with disabilities meaningful access to this program,

19   service, or activity in violation of Section 504 of the

20   Rehabilitation Act, Title II of the ADA, the Fair Housing Act, and

21   Government Code § 11135.

22       186.  Moreover, the steps outlined in the Section 504

23   regulations to maximize the utilization of accessible dwelling units

24   by people who need the accessibility features of those units were

25   not taken.

26       187.  By letter of January 11, 2012, the HUD Office of Fair

27   Housing and Equal Opportunity notified the City and the CRA of

28   the results of a compliance review, which found that "the City and

1   the CRA are not monitoring the policies and procedures of

2   federally-funded recipients in several key areas, and that the

3   policies in place are not implemented in a manner that ensures that

4   these policies and practices do not discriminate against qualified

5   individuals with disabilities because of their disability. . . . there

6   is no monitoring of Section 504 compliance, and  . . . an overall

7   lack of knowledge as to the duties and responsibilities with respect

8   to Section 504." HUD Letter of Findings of Noncompliance,

9   January 11, 2012, at 7.

10      188. HUD also "found that a large percentage of residents

11   without disabilities currently occupy the designated accessible

12   units in several HUD-funded developments," and that, with no

13   oversight from the CRA, many developments had offered

14   accessible dwelling units to the general population on a lottery or

15   wait-list basis without regard to disability or need for accessibility

16   features. *Id.* at 8.

17      189. The City has annually certified its compliance, and the

18   compliance of its subrecipients, including CRA, with federal

19   housing and civil rights laws to HUD and other federal agencies in

20   order to ensure its continuing receipt of federal funds.

21      190. Nonetheless, and in violation of the federal and state

22   civil rights laws referenced above, the Government Defendants

23   failed, and continue to fail, to ensure that housing within the

24   Redevelopment Housing Program complies with applicable law

25   and is accessible to people with disabilities. As a result, people

26   with physical disabilities who require accessible units are denied

27   meaningful access to the Redevelopment Housing Program.

28

1    191.  The Government Defendants' policy of failing to ensure
2    that all of the housing projects within the Redevelopment Housing
3    Program—regardless of affordability status or receipt of federal
4    funds—comply with applicable regulations and are accessible to
5    people with disabilities has a different and disparate impact on
6    people with physical disabilities, who have a particular need for
7    housing with accessibility features, and has the effect of excluding
8    people with physical disabilities.

9    192.  A disproportionate percentage of people with
10   disabilities in Los Angeles have low incomes because of the work
11   limitations imposed by their disabilities.

12   193.  People with disabilities have a particular need for
13   accessible units because people with low income cannot afford to
14   pay for significant modifications to their housing units.

15   194.  People with disabilities have a particular need for
16   affordable, accessible units because people with low income
17   cannot afford more expensive housing units.

18   195.  As a result, the Government Defendants' failure to
19   ensure that affordable housing within the Redevelopment Housing
20   Program complies with applicable laws and is accessible to people
21   with disabilities has a different and disparate impact on people
22   with physical and sensory disabilities and has the effect of
23   disproportionately excluding people with physical and sensory
24   disabilities from Redevelopment Housing Program.

25   **V.    Exhaustion of Administrative Remedies**

26   196.  On or about January 12, 2012, Plaintiffs presented their
27   claims for money or damages under state law to the City pursuant
28   to California Government Code § 900, *et seq.*

1    197. By correspondence dated February 22, 2012, the City

2    denied Plaintiffs' state law tort claims for money or damages.

3    198. Plaintiffs have met any applicable requirement that they

4    exhaust administrative remedies in order to bring state law damage

5    claims against the City.

6    199. On or about January 12, 2012, Plaintiffs presented their

7    claims for money or damages under state law to the CRA pursuant

8    to California Government Code § 900, *et seq.*

9    200. As of the filing of this Second Amended Complaint,

10   none of the Redevelopment Defendants have responded to

11   Plaintiffs regarding Plaintiffs' state law tort claims for money or

12   damages.

13   201. Plaintiffs have met any applicable requirement that they

14   exhaust administrative remedies in order to bring state law damage

15   claims against the Redevelopment Defendants.

16                       **INJURY TO PLAINTIFFS**

17   I.    **Injury to Plaintiff Independent Living Center of Southern**
          **California**
18

19   202. As a result of the actions described above, ILCSC and

20   its constituents have been directly and substantially injured.

21   These actions have frustrated Plaintiff ILCSC's mission and

22   undermined the effectiveness of the programs and services it

23   provides, including encouraging community integration of people

24   with disabilities, providing assistance to individuals and families

25   searching for housing or affected by discriminatory housing

26   practices, and eliminating discriminatory housing practices.

27   203. Because the Government Defendants have not complied

28   with their obligations to ensure that their Redevelopment Housing

1   Program met accessibility requirements, and because they have

2   failed to inform the public of the existence of any accessible units,

3   ILCSC has been required to devote substantial staff time and

4   money assisting people with disabilities to locate and secure such

5   accessible housing.

6       204. As a consequence of the violations by the Government

7   Defendants described herein, ILCSC has had to divert its scarce

8   resources away from its educational and other programs focused

9   on expanding housing choice for its constituents and toward

10  efforts focused on securing compliance with federal accessibility

11  requirements in the Government Defendants' Redevelopment

12  Housing Program.

13      205. In addition, ILCSC has invested considerable time and

14  effort in educating the City, the Redevelopment Defendants, the

15  housing industry, and the general public about the importance of

16  accessible housing for people with disabilities, in an attempt to

17  secure compliance.

18      206. Each time any of the Government Defendants failed to

19  ensure that housing in the Redevelopment Housing Program was

20  accessible, it frustrated the mission of ILCSC inasmuch as it made

21  it difficult or impossible for people with disabilities to live in that

22  housing.

23      207. The Government Defendants' conduct reduced the

24  effectiveness of outreach and advocacy efforts by ILCSC and

25  required it to provide additional educational programs to

26  counteract the impression left by the Government Defendants'

27  conduct that constructing inaccessible residential housing is

28  permissible.

208.  The Government Defendants' continuing discriminatory practices have forced ILCSC to divert scarce resources to identify, investigate, and counteract the Government Defendants' discriminatory practices, and such practices have frustrated Plaintiff's other efforts against discrimination, causing Plaintiff to suffer concrete and demonstrable injuries.

209.  ILCSC has expended resources attempting to counteract the Government Defendants' discriminatory practices including, but not limited to, counseling people with disabilities affected by the Government Defendants' discriminatory practices and conducting outreach to the City and the Redevelopment Defendants about the accessibility requirements under federal law, resulting in the diversion of resources that it would not have had to expend were it not for the Government Defendants' violations.

210.  Until remedied, the Government Defendants' unlawful, discriminatory actions will continue to injure ILCSC by:

   a. Interfering with efforts and programs intended to bring about equality of opportunity in housing;

   b. Requiring the commitment of scarce resources, including substantial staff time and funding, to investigate and counteract the Government Defendants' discriminatory conduct, thus diverting those resources from ILCSC's other activities and services, such as education, outreach and counseling; and

   c. Frustrating the mission and purposes of ILCSC.

1 **II.    Injury to Plaintiff Fair Housing Council of San Fernando**
**Valley**

2

3       211. As a result of the actions described above, FHC and its

4 constituents have been directly and substantially injured.  These

5 actions have frustrated Plaintiff FHC's mission and undermined

6 the effectiveness of the programs and services it provides,

7 including encouraging community integration of people with

8 disabilities, providing assistance to individuals and families

9 searching for housing or affected by discriminatory housing

10 practices, and eliminating discriminatory housing practices.

11       212. Because the Government Defendants have not complied

12 with their obligations to ensure that their Redevelopment Housing

13 Program met accessibility requirements, and because they have

14 failed to inform the public of the existence of any accessible units,

15 FHC has been required to devote substantial staff time and money

16 assisting people with disabilities to locate and secure such

17 accessible housing.

18       213. Between 2008 and 2011, FHC's Deputy Director

19 devoted at least one-third of her time to addressing housing

20 accessibility issues, including meetings with elected officials,

21 employees of the Government Defendants, and others to alert them

22 to the severe need for accessible affordable housing and

23 noncompliance with federal accessibility requirements in buildings

24 funded by or through the Government Defendants.

25       214. Because the Redevelopment Defendants could not or

26 would not publicly identify the location of any unit in the entire

27 CRA inventory that met the accessibility requirements of the

28 Rehabilitation Act, FHC was required to expend substantial staff

1    time and scarce resources on researching the location of accessible

2    affordable housing and making that information available to its

3    constituents.

4          215. As a consequence of the violations described herein,

5    FHC has had to divert its scarce resources away from its

6    educational and other programs focused on expanding housing

7    choice for its constituents and toward efforts focused on securing

8    compliance with federal accessibility requirements in the

9    Redevelopment Housing Program.

10         216. In addition, FHC has invested considerable time and

11   effort in reporting to Government Defendants the extent of

12   noncompliance in federally-funded, CRA-assisted buildings in Los

13   Angeles, and educating the housing industry, and the general

14   public about the importance of accessible housing for people with

15   disabilities, in an attempt to secure compliance.

16         217. Each time any of the Defendants failed to ensure that

17   housing funded in part by federal housing and community

18   development funds was accessible, it frustrated the mission of

19   FHC inasmuch as it made it difficult or impossible for people with

20   disabilities to live in that housing.

21         218. Defendants' conduct reduced the effectiveness of

22   outreach and advocacy efforts by FHC and required it to provide

23   additional educational programs to counteract the impression left

24   by Defendants' conduct that constructing inaccessible residential

25   housing is permissible.

26         219. Defendants' continuing discriminatory practices have

27   forced FHC to divert scarce resources to identify, investigate, and

28   counteract the Defendants' discriminatory practices, and such

1    practices have frustrated FHC's other efforts against

2    discrimination, causing FHC to suffer concrete and demonstrable

3    injuries.

4          220. FHC has expended resources attempting to counteract

5    Defendants' discriminatory practices including, but not limited to,

6    counseling people with disabilities affected by Defendants'

7    discriminatory practices and conducting outreach to the City and

8    the Redevelopment Defendants about the accessibility

9    requirements under federal law, resulting in the diversion of

10   resources that it would not have had to expend were it not for

11   Defendants' violations.

12         221. Until remedied, Defendants' unlawful, discriminatory

13   actions will continue to injure FHC by:

14                a. Interfering with efforts and programs intended to

15                   bring about equality of opportunity in housing;

16                b. Requiring the commitment of scarce resources,

17                   including substantial staff time and funding, to

18                   investigate and counteract Defendants'

19                   discriminatory conduct, thus diverting those

20                   resources from the Plaintiff's other activities and

21                   services, such as education, outreach and counseling;

22                   and

23                c. Frustrating the missions and purposes of FHC.

24   III.  **Injury to Plaintiff Communities Actively Living**
         **Independent and Free**
25

26         222. As a result of Defendants' actions described above,

27   CALIF and its constituents have been directly and substantially

28   injured.

223. Each time any of the Government Defendants failed to ensure that housing funded in part by federal housing and community development funds was accessible, it frustrated the mission of CALIF inasmuch as it made it difficult or impossible for people with disabilities to live at that dwelling, and undermined the effectiveness of the programs and services it provides, including promoting the community integration of people with disabilities, providing assistance to individuals and families searching for housing or affected by discriminatory housing practices, and eliminating discriminatory housing practices.

224. Because the Government Defendants have not complied with their obligations to ensure that their Redevelopment Housing Program meets accessibility requirements, and because they have failed to inform the public about the existence of any accessible units, CALIF has been required to devote substantial staff time and money assisting people with disabilities to locate and secure such accessible housing.  CALIF has had to divert its scarce resources away from its housing programs focused on expanding housing choice for its clients as outlined herein, and toward efforts focused on confirming and securing compliance with federal accessibility requirements in the Redevelopment Housing Program.

225. In addition, CALIF has expended resources attempting to counteract the Government Defendants' discriminatory practices including, but not limited to, counseling people with disabilities affected by the Government Defendants' discriminatory practices and educating housing providers and the general public about federal accessibility requirements and the importance of accessible

1   housing to people with disabilities, resulting in the diversion of

2   resources that they would not have had to expend were it not for

3   the Government Defendants' violations.

4       226. The Government Defendants' continuing discriminatory

5   practices have forced, and will continue to force CALIF to divert

6   scarce resources to identify, investigate, and counteract the

7   Government Defendants' discriminatory practices, and such

8   practices have frustrated Plaintiff's other efforts against

9   discrimination, causing Plaintiff to suffer concrete and

10   demonstrable injuries.

11       227. Until remedied, the Government Defendants' unlawful,

12   discriminatory actions will continue to injure CALIF by:

13         a.    Interfering with efforts and programs intended to

14                bring about equality of opportunity in housing;

15         b.    Requiring the commitment of scarce resources,

16                including substantial staff time and funding, to

17                investigate and counteract the Government

18                Defendants' discriminatory conduct, thus

19                diverting those resources from CALIF's other

20                activities and services, such as education,

21                outreach and counseling; and

22         c.    Frustrating the missions and purposes of CALIF.

23 **IV.**   **Injuries to All Plaintiffs**

24       228. By the actions described above, the Government

25   Defendants have engaged in, and continue to engage in a pattern or

26   practice of discrimination against people with disabilities in

27   violation of the Rehabilitation Act, the Americans with

28   Disabilities Act, the Fair Housing Act, and Government Code §

1 11135.  The Government Defendants continue to engage in such a

2 pattern, practice, or policy of discrimination so as to constitute a

3 continuing violation.

4     229.  The Government Defendants have acted or failed to act

5 with deliberate indifference.  The Government Defendants have

6 known that their acts and omissions create a substantial likelihood

7 of harm to Plaintiffs' federally protected rights, and the

8 Government Defendants have failed to act upon that likelihood.

9     230.  There now exists an actual controversy between the

10 parties regarding the Government Defendants' duties under the

11 federal and state civil rights laws. Plaintiffs accordingly are

12 entitled to declaratory relief.

13     231.  The Government Defendants, unless enjoined, will

14 continue to engage in the unlawful acts and the pattern or practice

15 of discrimination and unlawful conduct described above.

16     232.  Plaintiffs have no adequate remedy at law.  Plaintiffs

17 now are suffering and will continue to suffer irreparable injury

18 from the Government Defendants' acts and unlawful conduct

19 unless relief is provided by this Court.  Plaintiffs thus are entitled

20 to preliminary and permanent injunctive relief.

21                    **CLAIMS FOR RELIEF**

22                    **FIRST CLAIM FOR RELIEF**

23        **SECTION 504 OF THE REHABILITATION ACT**

24                    **[29 U.S.C. § 794, *et seq.*]**

25                    **[All Plaintiffs Against City;**

26        **Owner Defendants Named as Rule 19 Parties Only]**

27     233.  Plaintiffs reallege and incorporate by reference each

28 and every allegation contained in the foregoing paragraphs.

234. Defendant City of Los Angeles' discriminated and continues to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by acting or failing to act in a manner that, among other things:

    a. Denies meaningful access to the Redevelopment Housing Program to people with mobility impairments and visual and hearing disabilities;

    b. Has a disparate impact on people with mobility impairments and visual and hearing disabilities;

    c. Aids or perpetuates discrimination against people with disabilities when such discriminatory conduct is engaged in by the Redevelopment Defendants and others who have received financial or other significant assistance from the City as part of the Redevelopment Housing Program.

    d. Uses methods of administration that discriminate against people with disabilities, defeating the purpose of the Redevelopment Housing Program, and/or that perpetuate the discrimination of other agencies by failing to ensure that the Redevelopment Housing Program provides accessible housing or otherwise provides meaningful access to people with mobility, visual, or hearing impairments.

    e. Otherwise limits people with disabilities from enjoying housing or the opportunity to obtain such housing by engaging in the policies, practices, acts, and omissions described above.

235. As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

**SECOND CLAIM FOR RELIEF**

**SECTION 504 OF THE REHABILITATION ACT**

**[29 U.S.C. § 794, *et seq.*]**

**[All Plaintiffs Against Redevelopment Defendants;**

**Owner Defendants Named as Rule 19 Parties Only]**

236. Plaintiffs reallege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

237. The Redevelopment Defendants discriminated and continue to discriminate on the basis of disability in violation of Section 504 of the Rehabilitation Act by acting or failing to act in a manner that, among other things:

    a. Denies meaningful access to the Redevelopment Housing Program to people with mobility impairments and visual and hearing disabilities.

    b. Has a disparate impact on people with mobility impairments and visual and hearing disabilities.

    c. Aids or perpetuates discrimination against people with disabilities when such discriminatory conduct is engaged in by the Redevelopment Defendants and others who have received financial or other significant assistance from the City as part of the Redevelopment Housing Program.

    d. Uses methods of administration that discriminate against people with disabilities, defeating the purpose of the Redevelopment Housing Program, and/or that perpetuate the discrimination of other

1        agencies by failing to ensure that the redevelopment

2        housing provides meaningful access to people with

3        mobility, visual, or hearing impairments.

4     e. Otherwise limits people with disabilities from

5        enjoying housing or the opportunity to obtain such

6        housing by engaging in the policies, practices, acts,

7        and omissions described above.

8     238. As a result of the discrimination alleged in the previous

9   paragraph, Plaintiffs have sustained the injuries described herein.

10                    **THIRD CLAIM FOR RELIEF**

11              **AMERICANS WITH DISABILITIES ACT**

12                    **[42 U.S.C. § 12131, *et seq.*]**

13                    **[All Plaintiffs Against City;**

14       **Owner Defendants Named as Rule 19 Parties Only]**

15     239. Plaintiffs reallege and incorporate by reference each

16   and every allegation contained in the foregoing paragraphs.

17     240. Defendant City of Los Angeles' discriminated and

18   continues to discriminate on the basis of disability in violation of

19   Title II of the ADA by acting or failing to act in a manner that,

20   among other things:

21     a. Denies meaningful access to the Redevelopment

22        Housing Program to people with mobility

23        impairments and visual and hearing disabilities.

24     b. Has a disparate impact on people with mobility

25        impairments and visual and hearing disabilities.

26     c. Aids or perpetuates discrimination against people

27        with disabilities when such discriminatory conduct is

28        engaged in by the Redevelopment Defendants and

1           others who have received financial or other
2           significant assistance from the City as part of the
3           Redevelopment Housing Program.
4       d. Uses methods of administration that discriminate
5           against people with disabilities, defeating the
6           purpose of the Redevelopment Housing Program,
7           and/or that perpetuate the discrimination of other
8           agencies by failing to ensure that the Redevelopment
9           Housing Program provides accessible housing or
10          otherwise provides meaningful access to people with
11          mobility, visual, or hearing impairments.
12      e. Otherwise limits people with disabilities from
13          enjoying housing or the opportunity to obtain such
14          housing by engaging in the policies, practices, acts,
15          and omissions described above.
16  241. As a result of the discrimination alleged in the previous
17  paragraph, Plaintiffs have sustained the injuries described herein.
18              **FOURTH CLAIM FOR RELIEF**
19          **AMERICANS WITH DISABILITIES ACT**
20              **[42 U.S.C. § 12131, *et seq.*]**
21      **[All Plaintiffs Against Redevelopment Defendants;**
22      **Owner Defendants Named as Rule 19 Parties Only]**
23  242. Plaintiffs reallege and incorporate by reference each
24  and every allegation contained in the foregoing paragraphs.
25  243. The Redevelopment Defendants' actions and failures to
26  act discriminate on the basis of disability in violation of Title II of
27  the ADA and its implementing regulations by engaging in the
28  following actions or omissions:

a. Denies meaningful access to the Redevelopment Housing Program to people with mobility impairments and visual and hearing disabilities.

b. Has a disparate impact on people with mobility impairments and visual and hearing disabilities.

c. Aids or perpetuates discrimination against people with disabilities when such discriminatory conduct is engaged in by the Redevelopment Defendants and others who have received financial or other significant assistance from the City as part of the Redevelopment Housing Program.

d. Uses methods of administration that discriminate against people with disabilities, defeating the purpose of the Redevelopment Housing Program, and/or that perpetuate the discrimination of other agencies by failing to ensure that the redevelopment housing provides meaningful access to people with mobility, visual, or hearing impairments.

e. Otherwise limits people with disabilities from enjoying housing or the opportunity to obtain such housing by engaging in the policies, practices, acts, and omissions described above.

244. As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

# FIFTH CLAIM FOR RELIEF

## FAIR HOUSING ACT

### [42 U.S.C. §3601, *et seq.*]

**[All Plaintiffs Against Government Defendants;**

**Owner Defendants Named as Rule 19 Parties Only]**

245. Plaintiffs reallege and incorporate by reference each and every allegation contained in the foregoing paragraphs.

246. Plaintiffs are aggrieved persons as defined in 42 U.S.C. § 3602(i).

247. Government Defendants' policy or practice of failing to act to ensure that housing projects within the Redevelopment Housing Program are physically accessible as required under other laws has a disparate impact on people with disabilities such that Government Defendants injured Plaintiffs in violation of the federal Fair Housing Act and its implementing regulations by committing the following discriminatory housing practices:

    a. Otherwise making unavailable dwellings because of handicap.

    b. Discriminating in the terms, conditions, and privileges of the rental of a dwelling because of handicap.

    c. Discouraging persons from inspecting, purchasing or renting a dwelling because of handicap.

    d. Limiting the use of privileges, services or facilities associated with a dwelling because of handicap.

248. As a result of the discrimination alleged in the previous paragraph, Plaintiffs have sustained the injuries described herein.

1      **SIXTH CLAIM FOR RELIEF**

2      **CALIFORNIA GOVERNMENT CODE § 11135**

3      **[All Plaintiffs Against Government Defendants;**

4      **Owner Defendants Named as Rule 19 Parties Only]**

5          249. Plaintiffs incorporate by reference each and every

6      allegation contained in the foregoing paragraphs.

7          250. Through their acts and omissions described herein,

8      Government Defendants have violated and will continue to violate

9      California Government Code § 11135 by unlawfully denying

10     people with disabilities the benefits of, and unlawfully subjecting

11     people with disabilities to discrimination under, Defendants'

12     programs and activities.

13         251. As a result of the discrimination alleged in the previous

14     paragraph, Plaintiffs have sustained the injuries described herein.

15                    **PRAYER FOR RELIEF**

16         WHEREFORE, Plaintiffs pray that this Court enter an order

17     against Defendants, together and individually, as follows:

18         A.    Declare that the Government Defendants' policies,

19     practices, acts, and omissions as set forth above violate:

20                    a.    Section 504 of the Rehabilitation Act,

21                    b.    Title II of the ADA,

22                    c.    Government Code § 11135;

23         B.    Enjoin the Government Defendants, their officers,

24     directors, employees, agents, managers, successors, assigns, and

25     all other persons in active concert or participation with any of

26     them, both temporarily during the pendency of this action, and

27     permanently, from:

28

1.    Providing funds or property or other significant assistance for land or for the development, construction, or rehabilitation of any housing and/or common areas in buildings containing housing units that, in any way, fail to comply with the accessibility requirements of:

a.    Section 504 of the Rehabilitation Act,

b.    Title II of the ADA,

c.    Government Code § 11135;

2.    Failing or refusing to bring housing and the public use and common use areas in buildings containing housing units that are part of the Redevelopment Housing Program into compliance with the requirements of:

a. Section 504 of the Rehabilitation Act,

b. Title II of the ADA,

c. Government Code § 11135; and

3.    Failing or refusing to otherwise provide meaningful access for people with mobility impairments and visual and hearing disabilities to the Redevelopment Housing Program.

C.    Enjoin the Government Defendants, their officers, directors, employees, agents, managers, successors, assigns, and all other persons in active concert or participation with any of them from failing or refusing to:

1.    Survey each and every housing unit in the Redevelopment Housing Program and appurtenant common and public use areas, and assess the

1    compliance of each with the accessibility requirements

2    of Section 504 of the Rehabilitation Act, Title II of the

3    ADA, and Government Code § 11135;

4    2.    Report to the Court the extent of the

5    noncompliance with the accessibility requirements of

6    Section 504 of the Rehabilitation Act, Title II of the

7    ADA, and Government Code § 11135; and

8    3.    Bring each and every such housing unit in the

9    Redevelopment Housing Program and appurtenant

10   common and public use areas into compliance with the

11   requirements of Section 504 of the Rehabilitation Act,

12   Title II of the ADA, and Government Code § 11135.

13   4.    Otherwise provide meaningful access to the

14   Redevelopment Housing Program to people with

15   mobility, visual, or hearing impairments.

16   5.    Adopt policies and procedures to ensure that

17   newly built or renovated housing meets the accessibility

18   requirements of Section 504 of the Rehabilitation Act,

19   Title II of the ADA, and Government Code § 11135.

20   6.    Adopt policies and procedures to ensure that the

21   Owner Defendants and any prospective owner or

22   manager of units in the Redevelopment Housing

23   Program comply with the requirements of Section 504

24   of the Rehabilitation Act, Title II of the ADA, and

25   Government Code § 11135 with respect to assignment

26   of accessible units to residents who need such units

27   because of their disabilities and with respect to

28

1    reasonable accommodation and reasonable

2    modifications in relation to those units.

3    D.    Enjoin the Owner Defendants, their officers, directors,

4  employees, agents, managers, successors, assigns, and all other

5  persons in active concert or participation with any of them from

6  failing or refusing to:

7        1.    Allow access to all housing built or renovated

8        using federal funds and to appurtenant common and

9        public use areas to effectuate the relief described

10       above, including access for any inspections necessary

11       to determine compliance with accessibility standards,

12       and access for any retrofitting or other physical

13       modifications necessary to bring each and every such

14       apartment complex into compliance with the

15       requirements of Section 504 of the Rehabilitation Act,

16       Title II of the ADA, and Government Code § 11135;

17       2.    Implement any policy change necessary to provide

18       meaningful access to the Redevelopment Housing

19       Program to people with mobility, visual, or hearing

20       impairments as required by Section 504 of the

21       Rehabilitation Act, Title II of the ADA, and

22       Government Code § 11135;

23       3.    Allowing any other steps necessary to provide

24       meaningful access to the Redevelopment Housing

25       Program to people with mobility, visual, or hearing

26       impairments.

27    E.    Award the Plaintiffs damages against the Government

28  Defendants for Plaintiffs' injuries resulting from the Government

1  Defendants' discriminatory practices and conduct.

2      F.    Award the Plaintiffs costs of this action and reasonable

3  attorneys' fees pursuant to: 29 U.S.C. § 794a; 42 U.S.C. §§12133

4  and 12205; Cal. Civ. Pro. Code § 1021.5 and as otherwise may be

5  allowed by law.

6      G.    Award such other and further relief as the Court deems

7  to be just and equitable.

8                    **<u>JURY DEMAND</u>**

9      Plaintiffs demand a trial by jury on all issues so triable.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Dated: August 15 , 2012

2                                      Respectfully submitted,

3

4                                      _D. Scott Chang_____

5                                      MICHAEL G. ALLEN*
                                       D. SCOTT CHANG #146403
6                                      JAMIE L. CROOK #245757
                                       RELMAN, DANE & COLFAX
7                                      PLLC
                                       1225 19th St. NW, Suite 600
8                                      Washington D.C. 20036
                                       Telephone: (202) 728-1888
9                                      Facsimile: (202) 728-0848
                                       schang@relmanlaw.com

10                                     * Application for admission pro
                                       hac vice approved by court order
11                                     Doc. No. 15

12                                     _Paula Pearlma_____/MB-C
13                                     PAULA D. PEARLMAN #109038
                                       MARIA MICHELLE UZETA
14                                     #164402
                                       UMBREEN BHATTI Registered
15                                     Legal Services Attorney #801458
                                       DISABILITY RIGHTS LEGAL
16                                     CENTER
                                       Loyola Public Interest Law Center
17                                     800 S. Figueroa Street, Suite 1120
                                       Los Angeles, CA 90017
18                                     Telephone: (213) 736-1496
                                       Facsimile: (213) 736-1428
19                                     Michelle.Uzeta@lls.edu

20                                     _David Geffen_____/MB-C
21                                     DAVID GEFFEN #129342
                                       DAVID GEFFEN LAW FIRM
22                                     530 Wilshire Blvd., Suite 205
                                       Santa Monica, CA 90401
23                                     Telephone: (310) 434-1111
                                       Facsimilie: (310) 434-1115
24                                     Geffenlaw@aol.com

25

26

27

28

1

2   *Dara Schur /MB-C*
DARA SCHUR #98638
DISABILITY RIGHTS
3   CALIFORNIA
1330 Broadway, Suite 500
4   Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510)267-1201
5   Dara.Schur@disabilityrightsca
.org
6

7   *Autumn Elliott /MB-C*
AUTUMN ELLIOTT #230043
8   KEVIN BAYLEY #218070
DISABILITY RIGHTS
9   CALIFORNIA
350 S. Bixel Ave., Suite 290
10  Los Angeles, CA 90010-2512
Telephone: (213) 213-8000
11  Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca
12  .org

13  Attorneys for Plaintiffs

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**
**CENTRAL DISTRICT OF CALIFORNIA**

I hereby certify that on this 20th day of August, 2012, I filed the foregoing Second Amended Complaint for Injunctive, Declaratory, and Monetary Relief; Demand for Trial By Jury and accompanying document in the traditional manner, in hard copy, at the Court.  The Court will enter these documents via its CM/ECF filing system, which shall serve as notice of such filing on all counsel of record.


_Michael Allen_ /MB-C
Michael Allen

Michael G. Allen*
D. Scott Chang #146403
Jamie L. Crook #245757
RELMAN, DANE & COLFAX PLLC
1225 19th St. NW, Suite 600
Washington, DC 20036
202-728-1888**
*Application for admission pro hac vice approved by court
order Doc. No. 15
**See attachment for additional attorneys

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, a California non-profit corporation, et al. (see attachment)<br><br>PLAINTIFF(S)<br><br>v.<br><br>CITY OF LOS ANGELES, CALIFORNIA, a California municipal corporation, et al. (see attachment)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>2:12-cv-00551-SJO-PJW<br><br><br><br><br>SUMMONS |
| --- | --- |

TO:   DEFENDANT(S): <u>See attachment</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☑ __second__ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Michael G. Allen</u>, whose address is <u>Relman, Dane & Colfax PLLC, 1225 19th Street NW, Suite 600, Washington, DC 20036</u>.   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.   You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: _____8-20 2012_____          By: _____

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.   Allowed 60 days by Rule 12(a)(3)].*

1   MICHAEL G. ALLEN*
    D. SCOTT CHANG #146403
2   JAMIE L. CROOK #245757
    RELMAN, DANE & COLFAX
3   PLLC
    1225 19th St. NW, Suite 600
4   Washington D.C. 20036
    Telephone: (202) 728-1888
5   Facsimile: (202) 728-0848
    schang@relmanlaw.com
6
    * Application for admission
7   pro hac vice approved by
    Court order Doc. No. 15
8
    PAULA D. PEARLMAN
9   #109038
    MARIA MICHELLE UZETA
10  #164402
    UMBREEN BHATTI
11  Registered Legal Services
    Attorney #801458
12  DISABILITY RIGHTS
    LEGAL CENTER
13  Loyola Public Interest Law
    Center
14  800 S. Figueroa Street, Suite
    1120
15  Los Angeles, CA 90017
    Telephone: (213) 736-1496
16  Facsimile: (213) 736-1428
    Michelle.Uzeta@lls.edu
17

    DAVID GEFFEN #129342
    DAVID GEFFEN LAW FIRM
    530 Wilshire Blvd., Suite 205
    Santa Monica, CA 90401
    Telephone: (310) 434-1111
    Facsimile: (310) 434-1115
    Geffenlaw@aol.com

    DARA SCHUR #98638
    DISABILITY RIGHTS
    CALIFORNIA
    1330 Broadway, Suite 500
    Oakland, CA 94612
    Telephone: (510) 267-1200
    Facsimile: (510)267-1201
    Dara.Schur@disabilityrightsca
    .org

    AUTUMN ELLIOTT #230043
    KEVIN BAYLEY #218070
    DISABILITY RIGHTS
    CALIFORNIA
    350 S. Bixel Ave., Suite 290
    Los Angeles, CA 90017
    Telephone: (213) 213-8000
    Facsimile: (213) 213-8001
    Autumn.Elliott@disability
    rightsca.org

    Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION)

| | |
|---|---|
| 19 | |
| 20 INDEPENDENT LIVING CENTER OF<br>SOUTHERN CALIFORNIA, a California<br>non-profit corporation; FAIR HOUSING<br>21 COUNCIL OF SAN FERNANDO<br>VALLEY, a California non-profit<br>22 corporation; and COMMUNITIES<br>ACTIVELY LIVING INDEPENDENT<br>23 AND FREE, a California non-profit<br>corporation,<br>24<br>25                 Plaintiffs,<br>26 vs.<br>27 CITY OF LOS ANGELES,<br>CALIFORNIA, a California municipal<br>28 corporation; COMMUNITY<br>REDEVELOPMENT AGENCY OF THE | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  CASE NO. CV 12-<br>0551 SJO (PJW)<br><br>SUMMONS<br>ATTACHMENT |

CITY OF LOS ANGELES, a public
entity; CRA/LA DESIGNATED LOCAL
AUTHORITY, a public entity and
successor agency to the COMMUNITY
REDEVELOPMENT AGENCY OF THE
CITY OF LOS ANGELES; OVERSIGHT
BOARD FOR THE CRA/LA
DESIGNATED LOCAL AUTHORITY, a
public entity; 105 EAST "I" STREET,
L.P., a California limited partnership;
12129 EL DORADO AVENUE, L.P., a
California limited partnership; 4651
HUNTINGTON, L.P., a California
limited partnership; 505 BONNIE BRAE
PARTNERS, L.P., a California limited
partnership; 901 SOUTH BROADWAY
STREET LIMITED PARTNERSHIP, a
California limited partnership; ADAMS
935, L.P., a California limited
partnership; AMCAL MONTECITO
FUND, L.P., a California limited
partnership; AMISTAD PLAZA
PARTNERS LIMITED PARTNERSHIP,
a California limited partnership;
ANDALUCIA SENIOR APARTMENTS,
L.P., a California limited partnership;
ARDMORE 959 PARTNERS, L.P., a
California limited partnership;
ASTURIAS SENIOR APARTMENTS,
L.P., a California limited partnership,
B S BROADWAY VILLAGE II, L.P., a
California limited partnership;
BEHRINGER HARVARD NOHO, LLC,
a Delaware limited liability company;
BUCKINGHAM SENIOR
APARTMENTS, L.P., a California
limited partnership; CANTABRIA
SENIOR APARTMENTS, L.P., a
California limited partnership;
CARONDELET COURT PARTNERS,
L.P., a California limited partnership;
CENTRAL VILLAGE APARTMENTS,
L.P., a California limited partnership;
DECRO ORION APARTMENTS, L.P., a
California limited partnership; DECRO
OSBORNE APARTMENTS, L.P., a
California limited partnership; EAST LA
COMMUNITY CORPORATION, a
California corporation; EASTSIDE
VILLAGE, L.P., a California limited
partnership; ESPERANZA
COMMUNITY HOUSING
CORPORATION, a California
corporation; EUGENE HOTEL, L.P., a
California limited partnership; FAME

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

WEST 25TH STREET, L.P., a California limited partnership; FAR EAST BUILDING, L.P., a California limited partnership; GRANDVIEW NINE, L.P., a California limited partnership; HART VILLAGE, L.P., a California limited partnership; HEAVENLY VISION SENIOR HOUSING, L.P., a California limited partnership; HOBART HEIGHTS PARTNERS, L.P., a California limited partnership; HOOVER SENIORS, L.P., a California limited partnership; IMANI FE, LP, a California limited partnership; KOREAN FAMILY HOUSING CORPORATION, a California corporation; LAS MARGARITAS, L.P., a California limited partnership; LOS ANGELES HOUSING PARTNERSHIP, INC., a California corporation; LOS CUATRO VIENTOS, L.P., a California limited partnership; MENLO PARK, A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership; MORGAN PLACE, L.P., a California limited partnership; NEW GENESIS APARTMENTS, L.P., a California limited partnership; NEW TIERRA DEL SOL, L.P., a California limited partnership; NOHO SENIOR VILLAS, L.P., a California limited partnership; OL HOPE, L.P., a California limited partnership; P G HOUSING PARTNERS, L.P., a California limited partnership; PALM VILLAGE SENIOR HOUSING CORP., a California corporation; PALOMAR APARTMENTS, L.P., a California limited partnership; PENNY LANE CENTERS, a California corporation; RAMPART APARTMENTS, A CALIFORNIA LIMITED PARTNERSHIP, a California limited partnership; REDROCK NOHO RESIDENTIAL, LLC, a Delaware limited liability company; RENATO APARTMENTS, L.P., a California limited partnership; RITTENHOUSE LIMITED PARTNERSHIP, a California limited partnership; SELMA-HUDSON COMMUNITY LIMITED PARTNERSHIP, a California limited partnership; SEVEN MAPLES, L.P. a California limited partnership; SHERMAN VILLAGE APARTMENTS, L.P., a California limited partnership;

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

| | |
|---|---|
| 1 | SHERMAN WAY COMMUNITY )<br>HOUSING, L.P., a California limited )<br>partnership; STOVALL HOUSING )<br>CORPORATION, a California )<br>corporation; VERMONT SENIORS, a )<br>California corporation; WA COURT, )<br>L.P., a California limited partnership; )<br>WATTS/ATHENS PRESERVATION )<br>XVII, L.P., a California limited )<br>partnership; WEST ANGELES VILLAS, )<br>L.P., a California limited partnership; )<br>WESTERN/CARLTON II, L.P., a )<br>California limited partnership; and )<br>YALE TERRACE APARTMENTS, A )<br>CALIFORNIA LIMITED )<br>PARTNERSHIP, a California limited )<br>partnership )<br><br>                        Defendants. )<br>_____ ) |

1  SHERMAN WAY COMMUNITY
   HOUSING, L.P., a California limited
2  partnership; STOVALL HOUSING
   CORPORATION, a California
3  corporation; VERMONT SENIORS, a
   California corporation; WA COURT,
4  L.P., a California limited partnership;
   WATTS/ATHENS PRESERVATION
5  XVII, L.P., a California limited
   partnership; WEST ANGELES VILLAS,
6  L.P., a California limited partnership;
   WESTERN/CARLTON II, L.P., a
7  California limited partnership; and
   YALE TERRACE APARTMENTS, A
8  CALIFORNIA LIMITED
   PARTNERSHIP, a California limited
9  partnership

10                        Defendants.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Michael G. Allen*
D. Scott Chang #146403
Jamie L. Crook #245757
RELMAN, DANE & COLFAX PLLC
1225 19th St. NW, Suite 600
Washington, DC 20036
202-728-1888**
*Application for admission pro hac vice approved by court
order Doc. No. 15
**See attachment for additional attorneys

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, a California non-profit corporation, et al. (see attachment)<br><br>PLAINTIFF(S)<br><br>v.<br><br>CITY OF LOS ANGELES, CALIFORNIA, a California municipal corporation, et al. (see attachment)<br><br>DEFENDANT(S). | CASE NUMBER<br><br>2:12-cv-00551-SJO-PJW<br><br><br><br>**SUMMONS** |
| --- | --- |

TO:   DEFENDANT(S): <u>See attachment</u>

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☐ complaint ☑ ___second___ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.   The answer or motion must be served on the plaintiff's attorney, <u>Michael G. Allen</u>, whose address is <u>Relman, Dane & Colfax PLLC, 1225 19th Street NW, Suite 600, Washington, DC 20036</u>.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: ___8-20-2012___

By: _L. Raymond_
Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

| | | |
|---|---|---|
| 1 | MICHAEL G. ALLEN* | DAVID GEFFEN #129342 |
| 2 | D. SCOTT CHANG #146403 JAMIE L. CROOK #245757 | DAVID GEFFEN LAW FIRM 530 Wilshire Blvd., Suite 205 |
| 3 | RELMAN, DANE & COLFAX PLLC | Santa Monica, CA 90401 Telephone: (310) 434-1111 |
| 4 | 1225 19th St. NW, Suite 600 Washington D.C. 20036 | Facsimile: (310) 434-1115 Geffenlaw@aol.com |
| 5 | Telephone: (202) 728-1888 Facsimile: (202) 728-0848 | DARA SCHUR #98638 |
| 6 | schang@relmanlaw.com | DISABILITY RIGHTS CALIFORNIA |
| 7 | * Application for admission pro hac vice approved by | 1330 Broadway, Suite 500 Oakland, CA 94612 |
| 8 | Court order Doc. No. 15 | Telephone: (510) 267-1200 Facsimile: (510)267-1201 |
| 9 | PAULA D. PEARLMAN #109038 | Dara.Schur@disabilityrightsca .org |
| 10 | MARIA MICHELLE UZETA #164402 | AUTUMN ELLIOTT #230043 |
| 11 | UMBREEN BHATTI Registered Legal Services | KEVIN BAYLEY #218070 DISABILITY RIGHTS |
| 12 | Attorney #801458 DISABILITY RIGHTS | CALIFORNIA 350 S. Bixel Ave., Suite 290 |
| 13 | LEGAL CENTER Loyola Public Interest Law | Los Angeles, CA 90017 Telephone: (213) 213-8000 |
| 14 | Center 800 S. Figueroa Street, Suite | Facsimile: (213) 213-8001 Autumn.Elliott@disability |
| 15 | 1120 Los Angeles, CA 90017 | rightsca.org |
| 16 | Telephone: (213) 736-1496 Facsimile: (213) 736-1428 | Attorneys for Plaintiffs |
| 17 | Michelle.Uzeta@lls.edu | |

18  UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION)

| | | |
|---|---|---|
| 19 | | |
| 20 | INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, a California | ) CASE NO. CV 12-0551 SJO (PJW) |
| 21 | non-profit corporation; FAIR HOUSING COUNCIL OF SAN FERNANDO | ) ) |
| 22 | VALLEY, a California non-profit corporation; and COMMUNITIES | ) SUMMONS ) ATTACHMENT |
| 23 | ACTIVELY LIVING INDEPENDENT AND FREE, a California non-profit | ) ) |
| 24 | corporation, | ) ) |
| 25 | Plaintiffs, | ) ) |
| 26 | vs. | ) ) |
| 27 | CITY OF LOS ANGELES, CALIFORNIA, a California municipal | ) ) |
| 28 | corporation; COMMUNITY REDEVELOPMENT AGENCY OF THE | ) ) |

- 1 -
*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJW)*
Summons Attachment

| | |
|---|---|
| 1 | CITY OF LOS ANGELES, a public |
| | entity; CRA/LA DESIGNATED LOCAL |
| 2 | AUTHORITY, a public entity and |
| | successor agency to the COMMUNITY |
| 3 | REDEVELOPMENT AGENCY OF THE |
| | CITY OF LOS ANGELES; OVERSIGHT |
| 4 | BOARD FOR THE CRA/LA |
| | DESIGNATED LOCAL AUTHORITY, a |
| 5 | public entity; 105 EAST "I" STREET, |
| | L.P., a California limited partnership; |
| 6 | 12129 EL DORADO AVENUE, L.P., a |
| | California limited partnership; 4651 |
| 7 | HUNTINGTON, L.P., a California |
| | limited partnership; 505 BONNIE BRAE |
| 8 | PARTNERS, L.P., a California limited |
| | partnership; 901 SOUTH BROADWAY |
| 9 | STREET LIMITED PARTNERSHIP, a |
| | California limited partnership; ADAMS |
| 10 | 935, L.P., a California limited |
| | partnership; AMCAL MONTECITO |
| 11 | FUND, L.P., a California limited |
| | partnership; AMISTAD PLAZA |
| 12 | PARTNERS LIMITED PARTNERSHIP, |
| | a California limited partnership; |
| 13 | ANDALUCIA SENIOR APARTMENTS, |
| | L.P., a California limited partnership; |
| 14 | ARDMORE 959 PARTNERS, L.P., a |
| | California limited partnership; |
| 15 | ASTURIAS SENIOR APARTMENTS, |
| | L.P., a California limited partnership, |
| 16 | B S BROADWAY VILLAGE II, L.P., a |
| | California limited partnership; |
| 17 | BEHRINGER HARVARD NOHO, LLC, |
| | a Delaware limited liability company; |
| 18 | BUCKINGHAM SENIOR |
| | APARTMENTS, L.P., a California |
| 19 | limited partnership; CANTABRIA |
| | SENIOR APARTMENTS, L.P., a |
| 20 | California limited partnership; |
| | CARONDELET COURT PARTNERS, |
| 21 | L.P., a California limited partnership; |
| | CENTRAL VILLAGE APARTMENTS, |
| 22 | L.P., a California limited partnership; |
| | DECRO ORION APARTMENTS, L.P., a |
| 23 | California limited partnership; DECRO |
| | OSBORNE APARTMENTS, L.P., a |
| 24 | California limited partnership; EAST LA |
| | COMMUNITY CORPORATION, a |
| 25 | California corporation; EASTSIDE |
| | VILLAGE, L.P., a California limited |
| 26 | partnership; ESPERANZA |
| | COMMUNITY HOUSING |
| 27 | CORPORATION, a California |
| | corporation; EUGENE HOTEL, L.P., a |
| 28 | California limited partnership; FAME |

```
 1   WEST 25ᵗᴴ STREET, L.P., a California      )
     limited partnership; FAR EAST              )
 2   BUILDING, L.P., a California limited        )
     partnership; GRANDVIEW NINE, L.P.,          )
 3   a California limited partnership; HART      )
     VILLAGE, L.P., a California limited          )
 4   partnership; HEAVENLY VISION                )
     SENIOR HOUSING, L.P., a California          )
 5   limited partnership; HOBART HEIGHTS         )
     PARTNERS, L.P., a California limited         )
 6   partnership; HOOVER SENIORS, L.P., a        )
     California limited partnership; IMANI        )
 7   FE, LP, a California limited partnership;    )
     KOREAN FAMILY HOUSING                        )
 8   CORPORATION, a California                    )
     corporation; LAS MARGARITAS, L.P.,          )
 9   a California limited partnership; LOS        )
     ANGELES HOUSING PARTNERSHIP,                )
10   INC., a California corporation; LOS          )
     CUATRO VIENTOS, L.P., a California          )
11   limited partnership; MENLO PARK, A          )
     CALIFORNIA LIMITED                           )
12   PARTNERSHIP, a California limited            )
     partnership; MORGAN PLACE, L.P., a          )
13   California limited partnership; NEW          )
     GENESIS APARTMENTS, L.P., a                 )
14   California limited partnership; NEW          )
     TIERRA DEL SOL, L.P., a California          )
15   limited partnership; NOHO SENIOR            )
     VILLAS, L.P., a California limited           )
16   partnership; OL HOPE, L.P., a               )
     California limited partnership; P G         )
17   HOUSING PARTNERS, L.P., a                    )
     California limited partnership; PALM         )
18   VILLAGE SENIOR HOUSING CORP., a             )
     California corporation; PALOMAR              )
19   APARTMENTS, L.P., a California              )
     limited partnership; PENNY LANE             )
20   CENTERS, a California corporation;          )
     RAMPART APARTMENTS, A                        )
21   CALIFORNIA LIMITED                           )
     PARTNERSHIP, a California limited            )
22   partnership; REDROCK NOHO                    )
     RESIDENTIAL, LLC, a Delaware                 )
23   limited liability company; RENATO           )
     APARTMENTS, L.P., a California              )
24   limited partnership; RITTENHOUSE            )
     LIMITED PARTNERSHIP, a California           )
25   limited partnership; SELMA-HUDSON           )
     COMMUNITY LIMITED                            )
26   PARTNERSHIP, a California limited            )
     partnership; SEVEN MAPLES, L.P. a           )
27   California limited partnership;              )
     SHERMAN VILLAGE APARTMENTS,                 )
28   L.P., a California limited partnership;      )
```

1  SHERMAN WAY COMMUNITY      )
   HOUSING, L.P., a California limited  )
2  partnership; STOVALL HOUSING  )
   CORPORATION, a California  )
3  corporation; VERMONT SENIORS, a  )
   California corporation; WA COURT,  )
4  L.P., a California limited partnership;  )
   WATTS/ATHENS PRESERVATION  )
5  XVII, L.P., a California limited  )
   partnership; WEST ANGELES VILLAS,  )
6  L.P., a California limited partnership;  )
   WESTERN/CARLTON II, L.P., a  )
7  California limited partnership; and  )
   YALE TERRACE APARTMENTS, A  )
8  CALIFORNIA LIMITED  )
   PARTNERSHIP, a California limited  )
9  partnership  )
                                          )
10                          Defendants.   )
                                          )
11 _____

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28