# EXHIBIT 1
# to M. Allen Declaration

## RELMAN, DANE & COLFAX PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON, DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

January 8, 2013

**VIA E-MAIL**

Mark A. Byrne
Jennifer L. Derwin
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
markbyrne@byrnenixon.com
jenniferderwin@byrnenixon.com

> Re:    *Independent Living Center of Southern California, et al. v. City of Los Angeles, California, et al.*, Case No. CV 12-00551 (SJO)

Dear Counsel:

In preparation for our telephone meet and confer this Friday, January 11, 2013, we have summarized Plaintiffs' position on the discovery-related issues that Plaintiffs have identified to date below.  Similarly, if there is any authority upon which Defendant relies in support of its objections, Plaintiffs request that Defendant provide that authority in advance of our discussion on Friday.

## I.    Confirmation of Parties' Agreement at December 17, 2012 Meet and Confer

At our meet and confer session on December 17, 2012, we had a lengthy discussion about the City's obligation to respond to the discovery we had propounded rather than redefining and responding to narrowed requests.  As outlined in my letter of December 6, 2012, the main point of contention was the use, in Interrogatory Nos. 2-10, 12-16, and 19-20, Requests for Production of Documents Nos. 3, 4, 8, 13, 14, 19, 24, 27, 30, 35, and 36, and Requests for Admission Nos. 44 and 52, of the term "Redevelopment Housing Program," which we defined as "the inventory of housing built or rehabilitated with funds, land, or other assistance provided by or through the CRA/LA or the City in its capacity as successor housing agency, including projects not yet completed."

While the City may wish to limit its discovery responses to instances where it entered into a Cooperation Agreement with the Community Redevelopment Agency ("CRA/LA") to

1

RELMAN, DANE & COLFAX PLLC

support the development of individual housing complexes, its production obligation clearly does not end there. There are any number of other ways in which the City has provided federal funds to the CRA/LA to support housing development, including but not limited to long-term loans to the CRA/LA (reported in the City's Consolidated Annual Performance and Evaluation Reports to HUD; *see, e.g.,* LAC0005380, LAC0005583, LAC0006240, and LAC0006514); streetscape, gateway, and infrastructure grants; funding for community centers; and Brownfields redevelopment. Plaintiff is entitled to complete responses to Interrogatories Nos. 2-10, 12-16, and 19-20, Requests for Production Nos. 3, 4, 8, 13, 14, 19, 24, 27, 30, 35, and 36, and Requests for Admission Nos. 44 and 52.

On December 17, you committed to amending and supplementing your responses and production by January 18, 2013. We look forward to receiving your materials.

## II. The City's Responses to Plaintiff Fair Housing Council of San Fernando Valley's ("FHCSFV") Requests for Production of Documents

The City's responses to Plaintiff FHCSFV's requests for production of documents are substantially deficient.

### A. The City's Responses Do Not Allow Plaintiff to Determine What Documents the City Is Producing or Withholding

The City responds to the majority of FHCSFV's requests for production of documents by stating "[i]n response to the Requests, the City will produce the documents listed in Attachment A." The City, however, did not provide Plaintiff with an Attachment A to its written responses. The City's written responses are unacceptable because its responses do not allow Plaintiff to determine whether the City withheld documents based on an objection or whether the City was producing all documents requested. Plaintiff requests that the City amend its responses to state either that the City is producing all documents responsive to the request or to specifically identify the particular documents that will be produced. To the extent that the City objects to the production of documents, the City should identify the specific documents requested for which an objection is made and the grounds for the objection.

Furthermore, the responsive documents provided to Plaintiff on the CD were not provided in a manner that would allow Plaintiff to determine which documents were produced in response to specific requests. Rule 34(b)(2)(E) of the Federal Rules of Civil Procedure requires that "[a] party must produce documents as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the request." Fed. R. Civ. P. 34(b)(2)(E). The purpose of this provision of the Federal Rules of Civil Procedure is "to prevent a party from obscuring the significance of documents by giving some structure to the production." *City of Colton v. Am. Promotional Events, Inc.*, 277 F.R.D. 578, 584 (C.D. Cal. 2011) (quoting *Consolidated Rail Corp. v. Grand Trunk Western R.R. Co.*, No. 09-CV-10179, 2009 WL 5151745 at *3 (E.D. Mich. 2009). Please organize and label the documents already produced, and any supplemental productions, to correspond to the categories of documents requested.

RELMAN, DANE & COLFAX PLLC

Because Plaintiff cannot determine if the City is withholding documents on the basis of
objections, Plaintiff reserves the right to further meet and confer after the City has amended or
supplemented its written responses and production of documents.

## B. Responsive Documents Have Not Been Produced For Those Categories of
Documents for Which the City Agreed to Produce Documents

The City responded to the majority of the requests by responding that the City will
produce documents listed in Attachment A, but did not provide Attachment A. If the failure to
provide Plaintiff with Attachment A was in error, please provide it immediately.

Plaintiff assumed that the documents produced on the CD were the documents that the
City intended to list in Attachment A, and we have reviewed the documents produced on the CD
to determine whether responsive documents were produced in response to Plaintiff's requests.
Our review of the documents contained on the CD indicates that the City has not produced
documents responsive to the following requests for production of documents, even though
Defendant's written response indicates that the documents would be produced: 4, 7-17, 19, 21,
23-27, 29, 30, 32, 33, 42, 43, and 46. Please amend your responses to these requests for
production of documents as discussed above, produce responsive documents immediately, and
organize and label them to correspond to the categories in the request.

## C. All Responsive Documents in Categories of Documents Requested Do Not
Appear to Have Been Produced

Even for those categories of documents for which the City has produced documents, the
City does not appear to have conducted a search and produced all responsive documents.

For example, several of Plaintiff's requests for production relate to policies and practices
regarding the use of federal funds and the oversight and monitoring of recipients and
subrecipients of federal funds. (*See* Req. for Produc. of Docs. 3, 5, 6). While the City's initial
production contains some documents responsive to these requests, all responsive documents have
not been produced. Plaintiff's requests encompass both policies and procedures used to monitor
recipients and subrecipients and specific documents reflecting monitoring the CRA/LA and other
subrecipients in the Redevelopment Housing Program. Examples of the documents (referred to
in the reports produced to Plaintiff) that are responsive to Plaintiff's requests but have not been
produced include: (1) ESI in native format from the Integrated Services and Information System
database and the Integrated Disbursement Information Systems (IDIS) database; (2) the
Subrecipient HOME Monitoring Manual for the Community Redevelopment Agency of Los
Angeles; and (3) Greensheets and Transmittal Sheets related to funding for any of developments
in the Redevelopment Housing Program. Plaintiff notes that a HOME monitoring checklist was
produced by the City, but similar checklists for monitoring of HOPWA and CDBG recipients
and subrecipients have not been produced. Similarly, an LAHD Disbursement Manual for the
HOPWA program has been produced but similar manuals have not been produced for the HOME
or CDBG programs. This is just one example of relevant and responsive documents that should
have been produced in response to one set of related categories of documents requested by
Plaintiff but were not produced.

3

RELMAN, DANE & COLFAX PLLC

Please conduct a further search for responsive documents for all categories of documents requested by Plaintiff and produce all responsive documents.

### D. The City's Objection that Documents Are Equally Available to Plaintiffs Is Improper

The City objects to FHCSFV's Requests for Production of Documents Nos. 1, 2, and 36-40 on the grounds that responsive documents are equally available to Plaintiff, even though the responsive documents identified are within the custody and possession of the City. The City's objection is improper. *National Academy of Recording Arts & Sciences, Inc. v. On Point Express, LP*, 255 F.R.D. 678, 682 (C.D. Cal. 2009) (collecting cases). Please produce all documents responsive to Requests Nos. 1, 2, and 36-40.

### E. Documents Reflecting an Assessment of Which Units in the Redevelopment Housing Program Met or Meet UFAS Requirements Must Be Produced

FHCSFV's Request for Production of Documents No. 35 requested "[a]ny and all documents . . . reflecting an assessment of which units within the Redevelopment Housing Program met or meet the requirements of the Uniform Federal Accessibility Standards ("UFAS")." Plaintiff's request also described examples of documents that might be responsive to this request including survey and audit reports, checklists, and documents reflecting communications with inspectors about compliance reports.

The City objected to FHCSFV's requests by asserting general objections and refused to produce responsive documents. The City's general objections are improper objections. *See United States ex re. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 649 (C.D. Cal. 2007) (collecting cases holding that general objections are improper).

Even if the City's general objections were proper, they do not justify refusing to produce documents responsive to Plaintiff's request. First, nothing about FHCSFV's request is vague and ambiguous. FHCSFV requested documents reflecting an assessment of which units in the Redevelopment Housing Program meet the UFAS standard and provided examples of documents that might be responsive to Plaintiff's request such as survey or audit report or checklists. Second, responsive documents to FHCSFV's request are highly relevant and outweigh any burdensomeness objection. Even if a burdensomeness objection were proper, the City must produce those documents for which a burdensomeness objection does not apply. *See* Fed. R. Civ. P. 34(b)(2)(C). Third, the City's objection that the documents are equally available to Plaintiffs is improper. *See Nat'l Academy of Recording Art & Sciences, Inc.*, 255 F.R.D. at 682. Fourth, Plaintiff has separately met and conferred with the City regarding its objection regarding Plaintiff's definition of the Redevelopment Housing Program. Please amend your response to Request No. 35 and produce responsive documents immediately.

RELMAN, DANE & COLFAX PLLC

### F.   The City's General Objections to Requests Nos. 44, 45, and 47 Are Improper

The City objected to FHCSFV's Requests for Production of Documents Nos. 44, 45, and 47 by asserting general objections and refusing to produce responsive documents. The City's general objections to these requests are improper. *See id.* The City's objections that responsive documents are equally available to Plaintiff are similarly improper. *See Nat'l Academy of Recording Art & Sciences, Inc.*, 255 F.R.D. at 682.  To the extent that the City contends that some responsive documents are protected by a privilege or third party privacy, the City must identify the responsive documents, produce responsive documents not covered by a privilege or privacy, and provide a privilege log.  Please amend the City's responses to Requests Nos. 44, 45, and 47 and produce responsive documents and a privilege log immediately.

### III.   The City's Responses to FHCSFV's First Set of Interrogatories

#### A.   Interrogatory No. 1

Interrogatory No. 1 asked Defendant to identify the policies and/ or procedures the City has implemented to ensure compliance with the specified Federal and State antidiscrimination laws by specific entities involved in the Redevelopment Housing Program.  While Defendant lodges a number of objections in response to Interrogatory No. 1, in responding to this Interrogatory, Defendant does not appear to be withholding otherwise responsive information on the basis of the listed objections.  Defendant's response to Interrogatory No. 1, however, is facially deficient; namely, Defendant's response to this Interrogatory is overly general and fails to provide fully the information requested by Plaintiff.  For example, Defendant represents in its response that "the City has implemented many broad programs and policies to ensure compliance with State and Federal Fair Housing Laws, which contain antidiscrimination provisions."  The City provides a single example of the "many broad programs" to which it alludes in its response to Interrogatory No. 1.  If there are additional "broad programs" (or any other policies or procedures) that the City has implemented to ensure compliance with accessibility laws that are responsive to Plaintiff's Interrogatory No. 1, Defendant must provide that information to Plaintiff.  As such, Plaintiff requests that Defendant supplement its answer to Interrogatory No. 1.  On the other hand, if Defendant contends that it has provided a complete response to Interrogatory No. 1 (namely, that it has specifically identified all of the City's policies and procedures that are responsive to Interrogatory No. 1), Plaintiff requests that Defendant make a representation to that effect in advance of the scheduled meet and confer.

#### B.   Improper Reference to Interrogatory No. 1 in Response to Interrogatories Nos. 2-8

Defendant provides one substantive response to Plaintiff FHCSFV's Interrogatories—a response to Interrogatory No. 1.  In response to Interrogatories Nos. 2-8, Defendant merely directs Plaintiff to its response to Interrogatory No. 1, despite the fact that Interrogatories Nos. 2-8 do not seek information that is identical to the information that Plaintiff requested in Interrogatory No. 1.  Defendant's reference to Interrogatory No. 1 in response to Interrogatories Nos. 2-8 is improper under Rule 33, which clearly requires that a party answer each interrogatory "separately and fully."  *See, e.g.,* Fed. R. Civ. P. 33(b)(3); *United States ex rel. O'Connell v.*

5

RELMAN, DANE & COLFAX PLLC

*Chapman University*, 245 F.R.D. 646, 650 (C.D. Cal. 2007) (citing *Scaife v. Boenne*, 191 F.R.D. 590, 594 (N.D. Ind. 2000) ("It is well established that an answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories....")). Defendant's reference to Interrogatory No. 1 in response to Interrogatories Nos. 2-8 makes it impossible for Plaintiff to determine whether Defendant's responses to Interrogatories Nos. 2-8 are adequate without conducting a detailed comparison of answers; the caselaw is clear that a Plaintiff is not required to conduct such an exercise in an effort to ascertain the sufficiency of Defendant's responses. *See id.* As such, Plaintiff requests that Defendant supplement its responses.

### C. Failure to Respond to Interrogatories Nos. 9-25.

The City repeatedly objects that the phrase "identify any and all policies and/or procedures" is compound and consists of four subparts. On the basis of this objection, the City counts any Interrogatory containing this phrase as four separate interrogatories. Specifically, Defendant appears to take the position that "any," "all," "policies," and "procedures" are distinct subparts and takes the aggressive position that it is not obligated to provide substantive responses to Interrogatories Nos. 9-25. Defendant's position is without merit. The phrase that Defendant has identified, in fact, does not consist of any subparts. In requesting that Defendant "identify any and all" information responsive to Plaintiff's Interrogatories, Plaintiff is simply asking that Defendant identify the entirety of responsive information in its possession, custody, or control. The phrase "any and all" does not require Defendant to provide separate and discrete answers. Further, Defendant did not object that the phrase "any and all" consisted of discrete subparts in its objections to Plaintiff's Interrogatories Nos. 3 and 4 (which ask Defendant to "[i]dentify any and all actions"). Defendant's inconsistent approach with respect to its treatment of the phrase "any and all" makes it difficult for Plaintiff to understand Defendant's position that Plaintiff's Interrogatories are compound. For the same reasons, the phrase "policies and/or procedures" cannot credibly be considered two, separate interrogatories. Even if Plaintiff were to agree that "policies" and "procedures" are subparts (which it does not), the caselaw makes clear that subparts relating to a common theme should be treated as a single interrogatory. *See, e.g., Paananen v. Cellco Partnership*, No. CO8-1042 RSM, 2009 WL 3327227 at *2 (W.D. Wa. 2009); *see also Trevino v. ACB Am., Inc.* 232 F.R.D. 612, 614 (N.D. Cal. 2006).

Perhaps the strongest support for Plaintiff's position that the phrase "any and all policies and/or procedures" does not constitute four, separate interrogatories is Defendant's response to Plaintiff's Interrogatory No. 1. Interrogatory No. 1 contains the phrase at issue that Defendant contends is compound. Nonetheless, Defendant provides a singular, narrative response to Plaintiff's Interrogatory—not four, distinct responses that correspond to the individual words in the phrase that Defendant finds objectionable. Specifically, Defendant's response to Interrogatory No. 1 seems to recognize that the words "policies" and "procedures" can be used interchangeably and draws no distinction whatsoever between Plaintiff's request for "any" responsive information versus the request for "all" responsive information.

6

RELMAN, DANE & COLFAX PLLC

It is improper for Defendant to withhold responses to over half of Plaintiff's interrogatories on the basis of its stated objection. If the parties are unable to resolve this issue at the upcoming meet and confer, Plaintiff will file a motion to compel Defendant's responses to Interrogatories Nos. 9-25.

## D. Improper Reliance on "Boilerplate" Objections

Because Defendant did not provide complete responses to Interrogatories Nos. 2-8, it is impossible for Plaintiff to ascertain whether Defendant is withholding responsive information on the basis of the objections that it interposed in response to these interrogatories. Additionally, while it appears that the only basis upon which Defendant has withheld information in response to Interrogatories Nos. 9-25 is on the ground that it contends that Plaintiff has exceeded the numerical limit for interrogatories, it is not completely clear whether Defendant is also withholding responsive information on the basis of any other objection that it has interposed. During our meet and confer, Plaintiff will seek clarification from Defendant on this issue.

Defendant interposed a number of general objections in response to a number of Plaintiff's interrogatories "to the extent that" the interrogatories were, for example, vague, ambiguous, or overbroad; or seek information that is not relevant to the litigation. The caselaw is abundantly clear that boilerplate objections, such as those that Defendant lodged in response to each of Plaintiff's interrogatories, are improper. *See, e.g., United States ex rel. O'Connell*, 245 F.R.D. at 649; *Paulsen v. Case Corp.,* 168 F.R.D. 285, 289 (C.D.Cal.1996). Defendant's rote objections do not provide sufficient grounds upon which Defendant can refuse to disclose the requested information (in the event that Defendant is withholding responsive information on the grounds of any of these objections), nor do they provide Plaintiff with a sufficient explanation of Defendant's position such that Plaintiff can address Defendant's objections.

Defendant interposes additional boilerplate objections in response to a number of Plaintiff's Interrogatories. For example, for a number of interrogatories, Defendant objects, in part, "to the extent that [the Interrogatory] seeks information pertaining to third-parties, including personnel records and financial records, the disclosure of which would constitute an unwarranted invasion of the affected parties' constitutional, statutory, and/or common law rights to personal privacy and confidentiality." Again, because Defendant has failed to provide substantive responses to Plaintiff's Interrogatories Nos. 2-25, Plaintiff is unable to ascertain whether Defendant is withholding any responsive information on this ground. In any event, however, Defendant's unsupported contention that responsive documents could potentially contain private or confidential information is not a basis for withholding otherwise responsive documents. If Defendant is concerned about producing certain confidential information, the parties can jointly negotiate a protective order to govern the production and treatment of sensitive information in discovery.

Finally, in response to a number of interrogatories, Defendant objects to the extent that the interrogatories seek "information that is already in Plaintiff's possession, is publicly available or is obtainable from other sources that are more convenient or less burdensome or equally available to Plaintiff." Defendant does not provide any specificity supporting the boilerplate objection; as such, Defendant's objections are not valid. Further, that the requested documents

RELMAN, DANE & COLFAX PLLC

are equally available from the requesting party's own records is not a ground for objection. *See, e.g., Bretana v. International Collection Corp.*, No. Co7-05934 JF, 2008 WL 4334710 at *5 (N.D. Cal. Sept. 22, 2008).

### E. Privilege Objections (and Interrogatory No. 24)

Defendant also interposed objections to Plaintiff's interrogatories to the extent that the interrogatories seek information protected by the attorney-client privilege and/or attorney work product doctrine, or any other applicable privilege." As written, it is unclear whether Defendant is also withholding any responsive information on the ground of privilege. Please clarify so that we may address this objection appropriately.

Interrogatory No. 24 asked Defendant to identify each person who assisted or participated in answering Plaintiff's Interrogatories. In response, Defendant interposes a privilege objection. Plaintiff does not intend to infringe on any privilege and is not seeking confidential communications or otherwise privileged information. Rather, Plaintiff's Interrogatory No. 24 simply asks Defendant to provide the names of individuals that assisted or participated in answering Plaintiff's Interrogatories. During a previous meet and confer between the parties (on October 26, 2012) regarding Defendant's responses to discovery propounded by Plaintiff Independent Living Center of Southern California ("ILCSC"), Defendant acknowledged that an Interrogatory requesting this information was appropriate.

### F. Objection on the Ground that Interrogatory Seeks Information from the CRA/LA

In addition to the general objections addressed above, in response to Interrogatory No. 16, Defendant objects "to the extent [the Interrogatory] seeks information from the CRA/LA." After reviewing Defendant's objection to Plaintiff's Interrogatory No. 16, Plaintiff will agree to amend the Interrogatory as follows: "Identify any person who worked in a supervisory capacity for *the City* who—during his or her tenure—you considered most knowledgeable about the accessibility requirements in the Redevelopment Housing Program related to the receipt of State or Federal housing and community development funds." The Interrogatory as revised resolves Defendant's objection, and Plaintiff requests that Defendant supplements its response to this Interrogatory accordingly.

Defendant lodges a similar objection in response to Interrogatories Nos. 21-23 and 25 (namely, the City objects to the extent that the interrogatories seek information from the CRA/LA). Plaintiff does not understand Defendant's objection to these interrogatories. Interrogatories Nos. 21-23 specifically request answers regarding contacts that *You* have had with specified entities regarding certain matters. It is unclear how Defendant could interpret questions specifically aimed at contacts the City has had as seeking information from the CRA/LA. Similarly, Interrogatory No. 25 asks the City to identify the individuals who possess information that concerns the facts and allegations set forth in Defendant's Answer. Again, on its face, the Interrogatory specifically requests information known to Defendant and makes no reference whatsoever to any other entity or party. Defendant's objection in response to

8

RELMAN, DANE & COLFAX PLLC

Interrogatories Nos. 21-23 and 25 are misplaced and Plaintiff requests that this objection be withdrawn.

### G. Failure to Provide Required Verifications

Additionally, no verifications were produced; Defendant's interrogatory responses bear only the signature of counsel. Rule 33(b) requires that each interrogatory be answered under oath and that the answers be signed by the person making them, in addition to being signed by counsel. Fed. R. Civ. P. 33(b)(1), (5); *see also, United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 646, 650 (C.D. Cal. 2007). Please provide the appropriate verifications. Plaintiffs also note that Plaintiffs' counsel have still not received the required, signed verifications in connection with Defendant's August 3, 2012 responses to Plaintiff ILCSC's First Set of Interrogatories.

### IV.   The City's Responses to FHCSFV's First Set of Requests for Admission

During the meet and confer, Plaintiff plans to raise deficiencies in Defendant's responses to Plaintiff's Requests for Admission.[1]

Plaintiff's Requests for Admission Nos. 20-42 seek an admission that the documents by which the City awarded Federal housing and community development funds to CRA/LA (for the years 1990 to 2012) do not contain specific reference to CRA/LA's obligation to comply with the Rehabilitation Act and its implementing regulations at 24. C.F.R. Part 8. The City unilaterally narrows the scope of Plaintiff's requests from "documents" to "Cooperation Agreements by which City awarded funds to CRA for development of specific multifamily housing projects." Based upon the City's revision to Plaintiff's requests, the City does not admit or deny Requests for Admission Nos. 20-23; rather the City's response is "not applicable." Plaintiff's requests are not limited to Cooperation Agreements; rather Plaintiff's requests specifically and unambiguously refer to any document awarding Federal housing and community development funds for the year specified. Plaintiff requests that Defendant supplement its responses accordingly.

Additionally, in response to Requests for Admission Nos. 45-46, 60-180, 185, 190, and 198, Defendant interposed an objection on the ground that these requests seek information from the CRA/LA, not the City, and that the City is not in a position to admit or deny on behalf of the CRA/LA. Accordingly, Defendant did not provide responses to over 100 of Plaintiff's Requests for Admission. Plaintiff's requests are directed to Defendant City of Los Angeles and do not ask the City to admit or deny anything *on behalf of* the CRA/LA. Rather, due to the City's relationship with the CRA/LA, it is Plaintiff's position that Defendant should possess information which would enable it to respond to Plaintiff's requests; Plaintiff's Requests for Admission seek answers that are both known and

---

[1] Defendant has objected to the scope of Plaintiff's Requests for Admission and has narrowed the applicable time-period in a number of its answers. While Plaintiff maintains that the time-period of its requests are appropriate in the instant case, in an effort to compromise, Plaintiff is considering the time-period proposed by Defendant. Plaintiff will be prepared to discuss this issue with Defendant during the meet and confer.

RELMAN, DANE & COLFAX PLLC

"readily obtainable" by Defendant. *See* Fed. R. Civ. P. 36; *see also A. Farber & Partners, Inc. v. Garber*, 237 F.R.D. 250, 253-54 (C.D. Cal. 2006) (discussing Rule 36's requirement that a party responding to requests for admission must make a reasonable inquiry and effort to secure information that is readily obtainable by it).

In its amended cross-claim (Dkt. 220 ¶¶5-64), the City has represented to the Court that it "is informed and believes that [each of the Owner Defendants] received funds from the CRA for the development of a housing project." In that same document, the City advises the Court that it "is informed and believes that [42 of the Owner Defendants] entered into an agreement to receive funds from the CITY." (*Id.* ¶¶7-9, 10, 13, 14-16, 18-23, 26-28, 30, 32-34, 36-42, 45-46, 48, 51-52, 54, 56, 57-62, 64). In order to make these allegations consistent with Fed. R. Civ. P. 11, the City must have reviewed funding documents for each of the 61 properties named in the Second Amended Complaint. The City must therefore either admit or deny Requests for Admission Nos. 60-119 as written.

Plaintiff finds no merit whatsoever in Defendant's position with respect to Requests for Admission Nos. 120-180 and maintain that Defendant must respond to Plaintiff's requests. The City has a due diligence obligation to inform itself of the contents by which CRA/LA awarded Federal housing and community development funds to the Owner Defendants referenced in Plaintiff's Requests for Admission Nos. 120-180. Specifically, the Court's ruling on Defendant's Motion to Dismiss speaks directly to the City's "duty to supervise actions taken by other parties." (Dkt. 209 at 10). As such, it is not objectionable for Plaintiff to seek admissions regarding Defendant's duties and obligations. Further, in its Amended Cross Claim (Dkt. 220), the City alleges that each of the 61 properties referenced in Plaintiffs' Second Amended Complaint received money from the CRA/LA; presumably the City's representations in pleadings filed with the Court were made in good faith and based upon information known to the City. If the City can make these allegations offensively in this litigation, it seems disingenuous for the City to contend that the admissions sought in response to Requests for Admission Nos. 120-180 are certainly known or readily obtainable by Defendant. As such, Defendant is obligated to provide a response. *See, e.g., A. Farber & Partners, Inc.*, 237 F.R.D. at 253-54.

Given that the information sought by Plaintiff's Requests for Admission Nos. 20-23, 45-46, 60-180, 185, 190, and 198 is either known or readily obtainable by Defendant, Plaintiff requests that Defendant supplement its responses. Plaintiff is attempting to resolve this issue with Defendant without court intervention; however, if the parties are unable to resolve this dispute, Plaintiff will seek an order from the Court that Defendant's responses to the above-referenced requests be deemed admitted. *See, e.g., Asea, Inc. v. Southern Pac. Transp. Co*, 669 F.2d 1242, 1245 (9th Cir. 1981) ("a district court may…order admitted matters which an answering party has failed to admit or deny, where the information known or readily obtainable after reasonably inquiry was sufficient to enable the answering party to admit or deny").

10

RELMAN, DANE & COLFAX PLLC

Additionally, in a number of its responses, Defendant indicated that it was "continuing to investigate" certain information in order to respond to Plaintiff's requests fully (Response Nos. 25-30, 32-35). To date, Plaintiff has received no information from Defendant regarding the status of Defendant's investigation.

Sincerely,

Michael Allen

# EXHIBIT 2
# to M. Allen Declaration

RELMAN, DANE & COLFAX PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON, DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

January 11, 2013

**VIA E-MAIL ONLY**

Mark A. Byrne
Komal Mehta
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA 90017
markbyrne@byrnenixon.com
komalmehta@byrnenixon.com

      Re:    *Independent Living Center of Southern California, et al. v. City of Los Angeles, California, et al.*, Case No. CV 12-00551 (SJO)

Dear Mark and Komal:

       This letter will confirm that we will hold an additional meet and confer session on Wednesday, January 16, 2013, at 10 a.m. Pacific time, to address the City's discovery deficiencies identified in my letter of January 8, 2013. Autumn Elliott has offered to host you at the offices of Disability Rights California (350 South Bixel Street, Suite 290) and I can call in. I will also have my paralegal, Allison Pincus, circulate information for a conference call, in the event you prefer not to meet at Autumn's office.

       While we believe that our letters of December 6, 2012 and January 8, 2013, comply with the requirements of Local Rule 37-1 and provide legal authority we view as dispositive of each dispute over discovery, I write to provide more detail about the terms of a discovery order we would seek from the Court in the event our meet and confer does not resolve what we consider to be discovery deficiencies.

       If the substantive matters outlined in the above-referenced letters cannot be resolved, we would seek a discovery order compelling the City, within five (5) days to:

1. Respond to the following discovery of the Fair Housing Council of San Fernando Valley ("FHC") as written and not pursuant to the City's narrowing response: Interrogatory Nos. 2-10, 12-16 and 19-20; Requests for Production Nos. 3, 4, 8, 13, 14, 19, 24, 27, 30, 35 and 36; and Requests for Admission Nos. 44 and 52.

1

RELMAN, DANE & COLFAX PLLC

2. Respond to Interrogatory Nos. 1-25 by stating whether it is withholding responsive information on the basis of its stated objections.

3. Clarify whether its response to Interrogatory No. 1 specifically identifies all responsive City policies and procedures.

4. Respond to Interrogatory Nos. 2-8 in compliance with Fed. R. Civ. P. 33, and not by reference to other Interrogatory Responses.

5. Respond to Interrogatory Nos. 9-25, and withdraw its objections (1) that previous Interrogatories contain subparts that cause the number of Interrogatories to exceed the limit prescribed by the Rules; and (2) related to "privacy and confidentiality" and concerning documents allegedly in FHC's possession.

6. Respond to Interrogatory No. 24 to the extent the information is not protected by privilege, and identify the source of the privilege with respect to any information being withheld.

7. Respond to Interrogatory Nos. 16, 21-23 and 25 and withdraw the objection that they seek information from another party.

8. Provide verifications with respect to Interrogatory responses to FHC and to previous responses to Interrogatories propounded by Independent Living Center of Southern California.

9. Respond to Request for Admission Nos. 20-23, 45-46, 60-180, 185, 190 and 198, or have them deemed admitted.

10. Respond to Request for Admission Nos. 25-30 and 32-35 by admitting or denying same, or have them deemed admitted.

To the extent you remain unclear about the scope of the discovery order we would seek, please advise me in advance of the January 16, 2013, meet and confer session.

Sincerely,

Michael Allen

# EXHIBIT 3
# to M. Allen Declaration

# BYRNE & NIXON | LLP

### Lawyers

888 West Sixth Street, Suite 1100
Los Angeles, California 90017
Tel: 213-620-8003
Fax: 213-620-8012
www.byrnenixon.com

markbyrne@byrnenixon.com

January 24, 2013

**VIA ELECTRONIC MAIL**

Mr. Michael Allen, Esq.
Relman, Dane & Colfax PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036-2456

Re: _Independent Living Center of Southern California, et al. v. City of Los Angeles, et al.,_
_Case No. 12-0551-SJO_

Dear Michael:

We have reviewed your letter dated January 8, 2012 regarding Plaintiff Fair Housing Council of San Fernando Valley's (FHCSFV) position on the City of Los Angeles' Responses to discovery propounded by FHCSFV on October 23 and 26, 2012. The parties met and conferred by telephone on January 16, 2013, and we agreed that we would send this letter to you summarizing the City's response to the issues raised by FHCSFV. We will address the points raised in your letter in the same order your letter raises them.

    I.    The City's Responses to Plaintiff FHCSFV's Requests for Production of Documents (Set 1) ("Document Requests")

The City does not believe that its responses to Plaintiff FHCSFV's Requests for Production of Documents are deficient. FHCSFV's Document Requests seek forty-seven broad categories of documents based upon thirty extremely broad definitions. On November 27, 2012, the City produced 8759 pages of documents in response to the requests and on January 16, 2013 provided 10,630 pages of additional documents, consisting of loan agreements and CRA Co-operation agreements for properties involved in the litigation. Notwithstanding its objections to the Documents Requests, the City continues in good faith to search for additional documents responsive to the requests and will supplement its responses as appropriate.

        A.    The City's Responses Allow Plaintiff to Determine What Documents the City is Producing.

In response to the Document Requests, the City indicated that it would produce the documents identified on Attachment A. On November 27, 2012, the City produced a CD with copies of the documents. In your January 8th letter, you indicated for the first time that you did not receive a copy

BYRNE & NIXON | LLP
Lawyers

Michael Allen
January 24, 2013
Page 2 of 13

of Attachment A with the responses.  Per your request, we have emailed a copy of Attachment A to you.  Please confirm that you have received it.

Plaintiff complains that the City failed to identify which documents are responsive to each document request.  Attachment A & B specifically list the documents produced in response to Plaintiff's Document Requests

In your January 8, 2013 letter, you state that the documents provided by the City on CD were not provided in a manner that would allow the Plaintiff to determine which documents were produced in response to the specific requests.  In support of this position, you cite Federal Rule of Civil Procedure 34(b)(2)(E).  As Plaintiff noted, the rule provides that a party may provide the documents either "as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the request."  The City has chosen to provide the documents as they are kept in the ordinary course of business and Attachment A & B list the documents produced in response to the requests in a clear manner.  Plaintiff also cited *City of Colton v. Am. Promotional Events, Inc.* 277, F.R.D. 578 (C.D. Cal. 2011), however, *City of Colton* clearly states, "Rule 34 does not obligate a party to *per se* organize and label usable documents for the requesting party's convenience..." (*City of Colton*, at 585).

Following the January 16, 2013 telephonic meet and confer, it is the City's understanding that the concerns Plaintiff raised have been addressed and the City will not be reproducing and categorizing its Responses to the Document Requests.

> B.      Responsive Documents Have Been Produced For Those Categories of Documents Listed in the January 8, 2013 Letter.

Plaintiff asserts that the City has not provided documents for requests 4, 7-17, 19, 21, 23-27, 29, 30, 32, 33, 42, 43, and 46.  The City believes that Attachment A provides responsive documents to those requests.

For example, Request No. 21 seeks:
> Any and all documents, including, but not limited to, e-mail correspondences; letters; minutes, logs, and/or notes memorializing any telephone communications; minutes, logs and or/notes memorializing any meetings or in-person conversation, whether formal or informal; grant applications, Consolidated Plans; Consolidated Annual Performance and Evaluation Reports (CAPERs); Annual Action Plans; annual grantee certifications of compliance with civil rights, fair housing, and accessibility obligations, accomplishment reports, performance profile reports; expenditure reports; self-evaluations; needs assessments or transition plans; strategic plans; surveys; housing element plans and reports; reports detailing any analysis of impediments to fair housing choice; and/or compliance reports or documents, including any supporting documents, submitted to or received from HUD, the State of California, or any State agency, and/or any local government or

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 3 of 13

administrative agency concerning accessibility obligations in housing imposed by Section 504
of the Rehabilitation Act, the Americans with Disabilities Act, the Federal Fair Housing Act,
the California Fair Employment and Housing Act, and/or California Government Code §
11135.

Notwithstanding the City's objections as stated in it's response to request number 21, Attachment A
contained specific documents responsive to this request -- *i.e.,* Consolidated Plans, CAPERS, and
Annual Action Plans.

During our January 16th telephonic conference, the City explained that it is unclear as to the basis
upon which Plaintiff asserted that the City had not provided documents for requests numbers 4, 7-
17, 19, 21, 23-27, 29, 30, 32, 33, 42, 43, and 46.  The Plaintiff indicated that it believes that there are
more responsive documents that could be provided.  The City agreed to amend its responses to the
requests to reflect that it is continuing to search for responsive documents.

      C.      The City Continues to Search for Responsive Documents.

The Plaintiff has identified a few specific documents that it believes were omitted.  The City will
attempt to locate those documents and provide them as soon as they are able to do so.  During the
January 16 telephonic conference, Plaintiff stated that they will supplement the list of documents
they believe were omitted, and the City will also attempt to locate those documents once we receive
the list.

During the telephonic conference the Plaintiff also raised the issue of ESI, though this issue was not
part of the Plaintiff's January 8th letter, and the Parties discussed potential issues surrounding ESI.
We agreed that Plaintiff would provide the terms for a proposed ESI blanket order and the parties
would work together to create an agreeable stipulated order.

      D.      The City's Objection that the Documents are Equally Available to Plaintiff is Proper
              Due to the Burdensome Nature of the Plaintiff's Requests.

In support of the contention that the City's objection that the documents are equally available,
Plaintiff cites *National Academy of Recording Arts & Sciences, Inc. v. OnPoint Express LP,* 256 F.R.D. 678,
682 (C.D. Cal. 2009), in which the court briefly stated that interrogatories could not be objected to
on the basis that the information is equally available to Plaintiff.  The City has researched the issue
and believes that due to the overbroad, vague, and ambiguous nature of Document Requests
numbers1, 2, and 36-40, its response was proper.  The burden and expense of searching for and
producing the requested documents outweighs their likely benefit, especially since the documents
requested are available in electronic databases to which the Plaintiff has access.  *See In re Google
AdWords Litigation* 2010 WL 4942516 *3 (N.D.CA. 2010).

BYRNE & NIXON | LLP
Lawyers

Michael Allen
January 24, 2013
Page 4 of 13

For example, Request Number 1 seeks, "Any and all governing documents for the City of Los Angeles, including but not limited to, documents constituting the City's charter, articles of incorporation, and by-laws." Not only is this request vague and ambiguous as to "governing documents," the request is overbroad-seeking information for a period of more than twenty years. Not withstanding the City's objections, the City provided the publically accessible site from which all of these documents can be obtained: http://cityclerk.lacity.org

Plaintiff's Request Number 2 seeks: Any and all documents that reflect the organizational structure of the City, including, but not limited to, organizational charts. This request is also overbroad in that it seeks information for a period of more than twenty years and is vague and ambiguous as to organizational structure. Not withstanding the City's objections it provided the publically accessible site from which all of these documents could be obtained: http://controller.lacity.org

The information sought in these discovery requests can be obtained from a more convenient, less burdensome, and less expensive source and the City has provided the source. During the January 16, 2013 telephonic conference, Plaintiff agreed that the City's responses to Requests No. 1 and 2 were sufficient and it would not seek a supplemental response.

Requests 36-40 seeks over 25 types of documents dealing with the Redevelopment Housing Program, which does not exist. Despite the City's numerous objections, the City responded stating: "Subject to and without waving the foregoing objections, the City responds as follows: The final building plans can be viewed at the Los Angeles Department of Building and Safety."

By making documents available for inspection, the City met its obligation by creating a reasonable place for inspection of the documents in response to these requests. The general rule is that business records should be examined "at the place where they are kept at least where the documents requested are large in number and their production poses some inconvenience." *Superior Communications v. Earhugger, Inc.*, 257 FRD 215, 220 (CDCA 2009). As the City explained during the January 16 teleconference, the documents requested by the Plaintiff are voluminous and their production would be a huge inconvenience due to their large size. In addition the plans are proprietary so they are available for inspection, but cannot be copied. Based upon the foregoing, the plans are available to Plaintiff where they are kept.

Based on the telephonic conference on January 16, 2013, the City agrees that it will supplement its response to say that it is continues in good faith to search for additional documents responsive to the requests. If additional documents become available in another place the City will make them available for inspection. If you have any specific documents that you believe we should specifically search for, please let us know.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 5 of 13

        E.     The City's Response to Plaintiff's Document Request No. 35.

Plaintiff asserts that the City made boilerplate objections in response to the Document Requests. The City does not agree with this characterization. While there may be similarities between the objections, such as objections to scope and time, this is merely because the Requests were so similarly worded that such repetitive objections were to be expected. The City has reviewed the authority cited by Plaintiff and does not feel that it is applicable in this case because it has not used boilerplate objections.

The City lodged numerous objections which Plaintiff asserts are general objections. The City does not agree with this characterization of its objections. Plaintiff cites *United States ex re. O'Connell v. Chapman Univ.*, 245 F.R.F. 646 649 (C.D. CA 2007), in support of this proposition. However, in *O'Connell* the objections that the court found to be general merely read as follows: "Overbroad, unduly burdensome, unduly redundant to other discover, oppressive, calls for narrative…" *Id.* The City's objections are far more specific than this. For example, in objecting to the time and the scope of the Plaintiff's request the City's objection states that it

     objects to the request on the ground that it seeks documents from a time period more than twenty (20) years, it is overbroad as to time and scope, would require the City to conduct an unduly burdensome and oppressive investigation and seeks documents that are not relevant to this litigation and not reasonably calculated to lead to the discover of admissible evidence. The City objects to this request to the extent that it is overbroad and unduly burdensome in that it purports to require the City to make an unreasonable and unduly burdensome investigation to identify any and all responsive documents in the possession of any employee or representative of the City, including email correspondence, over a period of more than twenty (20) years during which time the City has employed more tens of thousands of employees.

The City's objections are sufficiently specific to allow the Plaintiff and the Court to ascertain the objectionable character of the discovery request, and therefore are proper in accordance with *O'Connell.*

Plaintiff's Document Request No. 35 seeks: "Any and all documents, including, but not limited to, survey and audit reports, checklists, documents reflecting communications with inspectors or any other person or entity about compliance reports, including, but not limited to scheduling and report status, reflecting an assessment of which units within the Redevelopment Housing Program met or meet the requirements of the Uniform Federal Accessibility Standards ("UFAS")."

Notwithstanding the City's objections, during the January 16th teleconference, the City stated that to the extent such documents exist, are not privileged and are within the scope of control of the City, they will be provided to Plaintiff.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 6 of 13

FHCSFV raised for the first time during the teleconference that it believes that the City has hired a party to inspect for UFAS requirements, and its wants the results of those inspections. As the City stated on the call, This consultant was hired in anticipation of litigation and in accordance with Federal Rule of Civil Procedure 26(b)(4)(B), and any information resulting from the consultant's work constitutes work product as codified in 26(b)(3). Accordingly, any information gathered by the consultant and/or transmitted by the consultant to our Firm it is protected "from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation." *Admiral Ins. Co. v. United States District Court,* 881 F.2d 1486, 1494 (9th Cir.1989).

Any information created by the City's consultants, including any documents or reports, have been created in anticipation of litigation and a party cannot discover documents or tangible things created in anticipation of litigation. Moreover, since this information and these documents are not discoverable in the first place, the City has no obligation to create a privilege log for any such documents. If Plaintiff has authority to the contrary, the City will review it, and meet and confer further on this issue if necessary.

      F.      The City's Objections to Requests Nos. 44, 45, 47 are Proper Because Plaintiff is Seeking Privileged Information.

Document Requests 44, 45 and 47 specifically seek privileged information that is protected from discovery under the Federal Rules of Civil Procedure. FHCSFV's Request for Production No. 44 seeks: "Any and all documents relating to any statements given by any person that relate to this lawsuit in any manner." Request No. 45 seeks: "Any and all documents received from or given to you and/or counsel by any person, other than a party to this lawsuit whom you intend to call, or may call, as a witness in this lawsuit." Request 47 seeks: "Any and all documents relied upon by, received from or provided to your consultants or testifying experts in this matter." As discussed during the January 16 telephonic conference, these requests specifically seek our Firm's attorney work product that we have assembled as part of the defense of the lawsuit. Accordingly, similar to the consultant's inspection reports, since this information is not discoverable in the first place, the City has not duty to create a privilege log with respect to this information / documentation. As set forth in the preceding paragraph, the City will review any authority to the contrary and will meet and confer with Plaintiff on this issue if necessary.

    II.  The City's Response to FHCSFV's First Set of Interrogatories

      A.      The City's Response to Interrogatory No. 1 is Not Facially Deficient.

Plaintiff contends that the City's response to Interrogatory No. 1 is facially deficient and overly general. Interrogatory No. 1 asked the City to identify[1] "Any and all policies and/or procedures you

---

[1] The City's objection to the use of the term "Identify" is discussed further in Section II(C) of this letter, below.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 7 of 13

have implemented, to ensure compliance with Section 504 of the Rehabilitation Act, HUD's
regulations at 24 C.F.R. Part 8, the American with Disabilities Act, the Federal Fair Housing Act,
and the California Fair Employment and Housing Act, and/or California Government Code Section
11135 by the CRA/LA, any owner defendant, or any developers and/or sub-recipient(s) that is
involved in the redevelopment housing program."

As the City made clear in its response, the City has numerous objections, including the broadness (in
scope and time) of this interrogatory. The interrogatory requests information regarding the policies
and procedures regarding the Redevelopment Housing Program. As Plaintiff is aware, the City has
made it abundantly clear that such a program does not exist, nor has it ever existed. However, in a
good faith effort to respond to the Interrogatory, the City attempted to respond by generally
describing its operations and providing Plaintiff an example of one of the programs it implements.

As agreed during the January 16 teleconference, the City will supplement its answer to Interrogatory
No. 1 consistent with our discussion during our teleconference.

      B.      The City's Reference to Interrogatory No. 1 in Response to Interrogatories Nos. 2-8
             is Not Improper.

Plaintiff contends that the City's response to Request for Interrogatories Nos. 2-8 is improper
because, after stating its specific objection to each interrogatory, the City directs Plaintiff to its
response to Interrogatory No. 1. Plaintiff contends that this requires it to conduct a detailed
comparison of the answers. The City does not agree with this contention because the
interrogatories are duplicative and seek the same information.

Interrogatories Nos. 1 & 2 request the exact same set of information:

      INTERROGATORY NO. 1:  Identify any and all policies and/or procedures you have
      implemented, to ensure compliance with Section 504 of the Rehabilitation Act, HUD's
      regulations at 24 C.F.R. Part 8, the Americans with Disabilities Act, the Federal Fair Housing
      Act, and California Fair Employment and Housing Act, and/or California Government
      Code § 11135 by the CRA/LA, any Owner Defendant, or any other developer(s) and/or
      Subrecipient(s) that is involved in the Redevelopment Housing Program.

      INTERROGATORY NO. 2:  Identify any and all policies and/or procedures you have
      implemented, to ensure compliance with Section 504 of the Rehabilitation Act, HUD's
      regulations at 24 C.F.R. Part 8, the Americans with Disabilities Act, the Federal Fair Housing
      Act, and California Fair Employment and Housing Act, and/or California Government
      Code § 11135 by any other developer(s) and/or Subrecipient(s) outside the Redevelopment
      Housing Program.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 8 of 13

The only difference between Interrogatory Nos. 1 and 2 is whether a policy or procedure is applicable to any "Owner Defendant, or any other developer(s) and/or Subrecipient(s) that is involved in the Redevelopment Housing Program" or "outside the redevelopment housing program." The City has made it clear from the beginning of the litigation that there is no "Redevelopment Housing Program." The City provided federal funds to the CRA/LA for the development of multi-family housing projects on a project-by-project basis. In a good faith attempt to respond to Plaintiff's discovery requests, the City will interpret the phrase as referring to those multi-family housing projects for which the City provided federal funds to the CRA/LA for the development of the project. The City's answer in Interrogatory No. 1[2] therefore is completely responsive to the Plaintiff's Interrogatory No. 2.

Although Interrogatories 3 and 4 slightly differ in wording, they request the same set of information as Interrogatories 1 and 2.

> INTERROGATORY NO. 3: Identify any and all *actions* that you have implemented, to ensure compliance with Section 504 of the Rehabilitation Act, HUD's regulations at 24 C.F.R. Part 8, the Americans with Disabilities Act, the Federal Fair Housing Act, and California Fair Employment and Housing Act, and/or California Government Code § 11135 by the CRA/LA, any Owner Defendant, or any other developer(s) and/or Subrecipient(s) that is involved in the Redevelopment Housing Program.

> INTERROGATORY NO. 4: Identify any and all *actions* that you have implemented, to ensure compliance with Section 504 of the Rehabilitation Act, HUD's regulations at 24 C.F.R. Part 8, the Americans with Disabilities Act, the Federal Fair Housing Act, and California Fair Employment and Housing Act, and/or California Government Code § 11135 by any other developer(s) and/or Subrecipient(s) outside the Redevelopment Housing Program.

Plaintiff has not defined "actions" and the City objected to the vagueness of the term in its responses to Interrogatories Nos. 3 and 4. Aside from the use of the term "action," the Interrogatories are identical to request for Interrogatories Nos. 1 and 2.

Interrogatories 4, 5, 6 and 8 seek information that is also sought in Interrogatories 1 and 2:

> INTERROGATORY NO. 5: Identify any and all policies and/or procedures that you have implemented to ensure that the Redevelopment Housing Program contains units accessible to people with disabilities.

---

[2] The City already has agreed to supplement its response to this Interrogatory in Section II (A) of this letter.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 9 of 13

      INTERROGATORY NO. 6:  Identify any and all policies and/or procedures that you have implemented to ensure that housing units supported with Federal housing and community development funds outside the Redevelopment Housing Program contain units accessible to people with disabilities.

      INTERROGATORY NO. 7:  Identify any and all policies and/or procedures that you have implemented to ensure that accessible units in the Redevelopment Housing Program are made available to, and utilized by, people with mobility, visual or auditory impairments.

      INTERROGATORY NO. 8:  Identify any and all policies and/or procedures that you have implemented to ensure that accessible units supported with Federal housing and community development funds outside the Redevelopment Housing Program are made available to, and utilized by, people with mobility, visual or auditory impairments.

The information sought by Plaintiff is a subset of the information sought by Plaintiff in Interrogatories Nos. 1 and 2.  Plaintiff seeks information regarding the protected classes that are codified in Section 504 of the Rehabilitation Act, HUD's regulations at 24 C.F.R. Part 8, the Americans with Disabilities Act, the Federal Fair Housing Act, and California Fair Employment and Housing Act, and/or California Government Code § 11135 by the CRA/LA. Any response to Interrogatories 1 and 2 would be responsive to Interrogatories Requests Nos. 5 through 8.

Notwithstanding the foregoing objections raised in its responses and further clarified in this letter, the City in good faith will also amend its responses to Interrogatories Nos. 2-8 so that the Plaintiff does not have to reference Interrogatory No. 1, and will further supplement its responses.

      C.     The City Was Not Required to Respond to Interrogatories 9-25 Because Plaintiff Exceeded the Number of Interrogatories Allowed under FRCP 33(a)(1).

Plaintiff misstates the basis upon which the City's objection to "identify any and all policies and/or procedures is based. The City objects to the definition of "identify" as put forth in the Plaintiff's definitions that accompany the interrogatories.  FHCSV has defined it as follows: "Identify" when used in reference to a policy or procedure means to state a detailed description of the relevant policy and/or procedure, the date upon which the policy/and or procedure was implemented, the name of any person or entity charged with monitoring and/or oversight with respect to the policy and/ or procedure, the method by which Subrecipents were made aware of the policy and/or procedure, and to identify any documents that contain the policy and procedure."

While the City agrees that the caselaw cited by the Plaintiff makes clear that subparts relating to a common theme should be treated as a single interrogatory, "on the other hand, an interrogatory with subparts inquiring into discrete areas is more likely to be counted as more than one for purposes of the limitation."  *See* 8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2168.1, at 261 (2d ed. 1994).  Interrogatories requesting (1) facts (information about

BYRNE & NIXON | LLP
Lawyers

Michael Allen
January 24, 2013
Page 10 of 13

a certain event), (2) (identify each person who knew), and (3) documents (identify documents in support), have three discrete subparts with different themes. *See Superior Communications v. Earhugger, Inc.,* 257 F.R.D. 215, 218 (C.D.Cal.2009).  Here, as Plaintiff defined "identify," each interrogatory incorporating the definition has four distinct subparts.  FRCP 33(a)(1) limits the number of interrogatories that can be served by the Plaintiff to twenty-five.  Since service of more than twenty-five interrogatories is not permitted, the entire set is improper.  However, in the spirit of cooperation, instead of objecting to the entire set, the City in good faith answered the first twenty-five and set forth its objections to the balance.  *See Capacchione v. Charlotte-Mecklenburg Schools,* 182, FRD 486, 492 fn. 4 (WDNC 1998).

> D.      The City Did Not Improperly Rely on "Boilerplate" Objections.

The City lodged numerous objections which Plaintiff asserts are improper objections.  The City does not agree with this characterization of its objections and reasserts its position as stated in Section I(E) of this letter.  Furthermore, because the FHCSFV has exceeded the allowable number of interrogatories, the City set forth its relevant objections to each of the remaining interrogatories Nos. 9-25.  While there may be similarities between the objections, such as objections to scope and time, this is merely because the interrogatories were so similarly worded that such repetitive objections were to be expected.

> E.      Privilege Objections (and Interrogatory No. 24).

Plaintiff's January 8, 2013 letter seeks to meet and confer regarding Interrogatories No. 24; however, as stated above, no response is required to this Interrogatory because the Plaintiff has exceeded the allowable number of interrogatories.  When and if appropriate, the City will revisit these issues with Plaintiff.

> F.      Objection of the Ground that the Interrogatory Seeks Information from the
>         CRA/LA.

Plaintiff's January 8, 2013 letter seeks to meet and confer regarding Interrogatories No. 16, 21-23, and 25; however, as stated above, no response is required to these Interrogatories because the Plaintiff has exceeded the allowable number of interrogatories.  When and if appropriate, the City will revisit these issues with Plaintiff.

> G.      Verifications.

The City will provide verifications to its Responses to Interrogatories on or before January 31, 2013.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 11 of 13

III. The City's Responses to FHCSFV's First Set of Requests for Admission

The City is concerned by the Plaintiff's opening statement that it intended to raise additional deficiencies during the meet and confer and would like to remind Plaintiff that it must meet its obligations under Local Rule 37-1 with any additional issues it would like to address that were not specifically identified in the January 8, 2013 letter. The City will meet and confer with the Plaintiff regarding any outstanding issues it may have.

    A.    The FHCSFV's Requests for Admissions are Overly Broad.

Plaintiff requests that the City supplement its Responses for Request for Admission Nos. 20-42 because the City has unilaterally narrowed the scope of the Plaintiff's requests from "documents" to "Cooperation Agreements by which the City awarded funds to CRA for the development of specific multifamily housing projects." Plaintiff contends that due to these revisions the City did not admit or deny Requests for Admissions.

The City objected to Plaintiff's Request for Admissions Nos. 20-42 on the grounds that they were overbroad as to time and scope and would require the City to conduct an unduly burdensome investigation. In addition, complete and accurate information may no longer be available or accessible. In order to meet its responsibility to "fairly respond to the substance of the matter" (FRCP 36(a)(4)) and the City's desire to cooperate with the Plaintiff, the City provided an alternate wording that dealt with the overbroad nature of the request. *See Marchand v. Mercy Med. Ctr.* 22 F3d, 933, 938 (9th Cir. 1994), and *S.A. Healy Co./Lodigiani USA, Ltd. v. United States* 37 Fed. Cl. 204, 206 (Fed.Cl. 1997).

The City's attempt to limit the scope of the questions was based on the fact that the request for admission was unclear, the term "documents by which funds are awarded" could be interpreted to include checks or any number of documents. Since the Co-Operation agreements were the specific document by which the City agreed to provide funding to the CRA for a particular multifamily housing project, it was the most appropriate document on which the City could base its responses. The City's clarification was just meant to make it clear the response was based on that interpretation. As stated during the January 16 meeting, if the City find's other documents by which funds were awarded on the basis of which it could respond, it will supplement its responses.

    B.    The FHCSVF's Requests for Admissions Improperly seek Information Properly Obtained from the CRA/LA.

Plaintiff's requests 45-46, 60-180, specifically request that the City admit or deny admissions that seek information from the CRA/LA and not the City. Despite Plaintiff's contention that these requests are directed to the City, a plain face reading of the text indicates otherwise. Plaintiff further argues that due to the City's relationship with the CRA/LA, the City should possess information that would enable it to respond to Plaintiff's requests and cites *A. Farber & Partners, Inc. v. Garber,*

BYRNE & NIXON | LLP
Lawyers

Michael Allen
January 24, 2013
Page 12 of 13

237 F.R.D. 250, 253-54 (C.D.CA. 2006) as support for this contention.  However in *A. Farber* the defendants not only had close personal relationships, but they were also were represented by the same counsel.

The function of the Requests for Admissions is to narrow the scope of the case by removing issues from the case once and for all.  *See* Adv. Comm. Note to 1970 Amendment to FRCP 36.  Furthermore the City's response to such admissions are binding and making them respond to admissions clearly directed at the CRA/LA , also party to this action, is improper and goes beyond the meaning of a reasonable inquiry.

A responding party must make an inquiry of a third party "when there is *some identity of interest manifested,* such as by both being parties to the litigation….and when there is no manifest or potential conflict with the third party."  *Uniden America Corp. v. Ericsson Inc.,* (MD BC 1998).  Here not only are City and the CRA/LA represented by separate council, separate council had to be retained due to conflict issues between the City and the CRA/LA.  Even if such a conflict did not exist, the City is not in control of the documents at this time because the Oversight Board has not approved the transfer of these documents the City.

During the parties' January 16, 2013 call, a potential compromise regarding these requests for admissions was reached.  The parties agreed that if the questions were rewritten to reflect that the requests seek the City's knowledge of the CRA's actions, the City maybe able to respond to the requests.  The City is amenable to responding to amended requests, provided it agrees with the wording supplied by Plaintiff.

     C.      Requests for Admission Nos. 185 & 190 Seek Information From the CRA/LA Regarding the Actions of Its Employee.

Request for Admission No. 185 asks the City to admit or deny that an Assistant City Attorney attended meetings of the DTF and Request No. 190 asks the City to admit or deny that Assistant City Attorney Curt Kidder responded to the aforementioned requests for the location of any and all UFAS-accessible units by suggesting that CRA/LA did not have any obligation to ensure that UFAS-accessible units existed within the Redevelopment Housing Program.

The City objected to both interrogatories on the grounds that they sought "information from the CRA/LA, not the City, and the City is not in a position to admit or deny the request on behalf of the CRA/LA.  On February 1, 2012, the CRA was dissolved pursuant to California Assembly Bill 1X 26 and the CRA/LA Designated Local Authority (not the City) became the successor to the CRA/LA."

As the City explained during the January 16, 2013 teleconference, the City Attorney sat by designation at the CRA/LA and was counsel for the CRA/LA, and therefore the interrogatory should be directed at the CRA/LA.

BYRNE & NIXON | LLP

Lawyers

Michael Allen
January 24, 2013
Page 13 of 13

     D.     Request for Admission No. 198.

Request for Admission No. 198 asks that the City admit or deny that: "CRA/LA never advised the City that CRA/LA was not requiring Owner Defendants to comply with accessibility requirements of Section 504 and its implementing regulations at 24 C.F.R. Part 8."

The City's position is that the question as currently worded asks the CRA/LA to admit that it never advised the City that it was not requiring a particular action.  As stated during the parties January 16 teleconference, the City is amenable responding to this request if it is appropriately reworded.

     E.     Requests for Admissions Nos. 69-112 & 120-180.

Plaintiff contends that because the City has filed a cross-claim it now must be able to answer Requests for Admissions Nos. 69 & 112, which seek information regarding the nature of funds provided, and 120-180, which seek admissions regarding the specific terms of CRA/LA contracts. Notwithstanding the City's objections as stated above to the interrogatories and in its responses, the City does not believe that filing a cross-claim on information and belief necessarily provides it with the requisite knowledge to admit the requests as stated.

We trust that this letter clears up any issues that remain following our January 16 teleconference.  To the extent that we agreed to follow up, we will do so as set forth herein.  If you have any concerns, please let us know so we can attempt to work out any disagreements we may have.

Sincerely,

*Mark A. Byrne*

Mark Byrne
BYRNE & NIXON LLP

# EXHIBIT 4
# to M. Allen Declaration

RELMAN, DANE & COLFAX PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON, DC 20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

February 6, 2013

**VIA E-MAIL AND FIRST-CLASS MAIL**

Mark A. Byrne
Jennifer L. Derwin
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA
markbyrne@byrnenixon.com
jenniferderwin@byrnenixon.com

Re:   *Independent Living Center of Southern California, et al., v. City of Los Angeles, California, et al.*, Case No. CV 12-00551

Dear Counsel:

We have reviewed the City's January 24, 2013 letter responding to Plaintiff Fair Housing Council of San Fernando Valley's January 8, 2013 discovery deficiency letter. In light of the position that the City has advanced in both its letter and during the parties' January 11, 2013 and January 16, 2013 telephonic meet and confer discussions, it is clear to us that the parties are at an impasse with respect to a number of discovery-related issues. As such, we will initiate the drafting of a joint stipulation, pursuant to L.R. 37-2, that outlines the discovery issues in dispute for the Court's consideration.

Specifically, Plaintiff will move the Court to overrule the City's objection that it is not obligated to respond to Plaintiff's Interrogatories Nos. 9-25 on the ground that Plaintiff has exceeded the number of interrogatories allowed and request that the Court compel the City to provide complete responses to each of these requests. Plaintiff will also request that the Court address the dispute between the parties regarding whether the City has impermissibly relied upon "boilerplate" objections in response to Plaintiff's discovery requests. Additionally, in the City's January 24, 2013 letter, the City indicated that it would be supplementing its responses to Plaintiff's Interrogatories Nos. 1-8. To date, the City has not provided any supplemental responses, despite the fact that it indicated it would do so almost two weeks ago. Please provide supplemental responses to Interrogatories Nos. 1-8 no later than the close of business on Friday, February 15, 2013. We must have the City's supplemental responses to these requests in order to ascertain whether we need to include any issues relating to these interrogatories in the joint stipulation that will be filed with the Court.

RELMAN, DANE & COLFAX PLLC

In the joint stipulation, Plaintiff will also request that the Court resolve the dispute between the parties concerning Plaintiff's Requests for Admission Nos. 185 and 190. Although we continue to disagree with the City's position regarding Plaintiff's Requests for Admission Nos. 60-180, in an effort to narrow the issues before the Court, Plaintiff will not move to compel the City's responses to these requests at this time. Additionally, it is Plaintiff's understanding, based upon the parties' January 16, 2013 meet and confer discussion and the City's subsequent letter, that the City would respond to Plaintiff's Requests for Admission Nos. 45, 46, and 198 if Plaintiff amended these requests to make clear that these requests seek information about which the City, as opposed to the CRA, is aware. In order to facilitate the resolution of any issues regarding Plaintiff's Requests for Admission Nos. 45, 46, and 198, Plaintiff amends these requests as follows:

**Request for Admission No. 45**: The City is aware that CRA/LA has never conducted a Section 504 self-evaluation pursuant to 24 C.F.R. § 8.51.

**Request for Admission No. 46**: The City is aware that CRA/LA has never designated a "responsible employee," pursuant to 24 C.F.R. § 8.53, "to coordinate its effort to comply with [24 C.F.R. Part 8]." 24 C.F.R. § 8.53.

**Request for Admission No. 198**: The City was never advised by the CRA/LA that the CRA/LA was not requiring Owner Defendants to comply with accessibility requirements of Section 504 and its implementing regulations at 24 C.F.R. Part 8.

Based upon our prior discussions, we trust that by re-phrasing the above-referenced requests we have sufficiently addressed the City's concerns. Please provide your responses to these amended requests by the close of business on Friday, February 15, 2013. If our understanding is incorrect, and the City does not intend to provide responses to Plaintiff's requests as amended, please inform us of your position in advance of Friday, February 15, 2013. If the parties remain unable to resolve the dispute with respect to Requests for Admission Nos. 45, 46, and 198, Plaintiff will include these requests in the joint stipulation that will be filed with the Court.

Finally, in light of your January 24, 2013 letter, we are again reviewing the City's production of documents to ascertain whether we can further narrow the issues to be brought before the Court regarding the City's responses to Plaintiff's requests for production. We will inform you of the specific issues that we intend to raise in the joint stipulation upon the completion of our review. In the meantime, we await the City's supplemental production of additional documents, which you indicated would be provided to Plaintiff in your January 24, 2013 letter.

RELMAN, DANE & COLFAX PLLC

Sincerely,

Michael Allen
Scott Chang
Jia Cobb

# EXHIBIT 5
# to M. Allen Declaration

# RELMAN, DANE & COLFAX PLLC

1225 19TH STREET NW SUITE 600
WASHINGTON, DC  20036-2456

TEL 202-728-1888
FAX 202-728-0848
WEBSITE WWW.RELMANLAW.COM

February 13, 2013

**VIA E-MAIL AND FIRST-CLASS MAIL**

Mr. Mark A. Byrne
BYRNE & NIXON LLP
888 West Sixth Street, Suite 1100
Los Angeles, CA
markbyrne@byrnenixon.com
jenniferderwin@byrnenixon.com

      Re:    *Independent Living Center of Southern California, et al. v. City of Los Angeles, California, et al.*, Case No. CV 12-00551

Dear Mark:

      We have reviewed the City's January 24, 2013 letter responding to Plaintiff Fair Housing Council of San Fernando Valley's ("FHCSFV") discovery deficiency letter and the documents produced in response to the FHCSFV's request for production of documents on November 30, 2012 and January 18, 2013.  In its letter, the City promises to search for and produce additional documents but it has produced none.  In light of the short time that the Court has provided for discovery, we are compelled to draft a joint stipulation, pursuant to L.R. 37-2, that outlines the discovery issues in dispute for the Court's consideration, including the City's failure to produce responsive documents.  We expect to provide the joint stipulation to you by Friday, February 22, 2013.  Each of the specific categories of documents at issue is discussed specifically below.

      **Document Request Nos. 3, 5 and 6**

      The City has agreed to conduct a further search for documents responsive to these requests including, but not limited to, the categories of documents listed in our January 8, 2013 letter.  We have not received any additional documents responsive to these requests.  Unless we receive additional responsive documents (or a certification that the City has conducted a search and has already provided all such documents) by February 21, 2013, we will seek an order compelling such production.

      **Document Request Nos. 1, 2 and 36-40**

      The City agreed to conduct a further search for documents responsive to these requests. Request Nos. 36-40 seek construction-related documents and plans.   In the meet-and-confer

RELMAN, DANE & COLFAX PLLC

conference, the City requested that Plaintiffs identify departments where responsive documents might be located.  With respect to Request Nos. 36-40, please search for responsive document within the Los Angeles Housing Department ("LAHD") and the Community Development Department ("CDD").  Unless we receive additional responsive documents (or a certification that the City has conducted a search and has already provided all such documents) by February 21, 2013, we will seek an order compelling such production.

### Document Request No. 35

The City has agreed to provide non-privileged documents responsive to this category of documents.  We have not received any additional responsive documents.  Unless we receive additional responsive documents (or a certification that the City has conducted a search and has already provided all such documents) by February 21, 2013, we will seek an order compelling such production.

The City's contention that it is not required to produce a privilege log for documents responsive to request number 35 is addressed below.

### Privilege Log

The City asserts attorney-client privilege or the work product doctrine in response to document request numbers 35, 44, 45 and 47.  The City, invoking circular reasoning, incorrectly contends that it is not required to provide a privilege log because the documents are not discoverable since they are privileged or protected as work product.

Under Rule 26(b)(5) of the Federal Rules of Civil Procedure, a party that "withholds discovery materials because of a claim of privilege or work product protection must notify the other party that it is withholding material." *Ramirez v. County of Los Angeles*, 231 F.R.D. 407, 410 (C.D. Cal. 2005) (*citing* 1993 Notes to Adv. Comm. to Fed. R. Civ. P. 26(b)).  A party withholding information "must provide sufficient information (*i.e.*, a privilege log) to enable the other party to evaluate the applicability of the privilege or protection." *Ramirez*, 231 F.R.D. at 410 (*citing* 1993 Notes to Adv. Comm. to Fed. R. Civ. P. 26(b) and *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).  Providing a privilege log has become "an almost universal method of asserting privilege under the Federal Rules." *Caudle v. District of Columbia*, 263 F.R.D. 29, 35 (D.D.C. 2009).

The City's argument that it is not required to provide a privilege log is nonsensical.  The City must provide a privilege log to properly assert a privilege and allow Plaintiffs to evaluate the applicability of the privilege or the protection.

We will seek an order requiring the City to provide a privilege log if a privilege log is not voluntarily provided by February 21, 2013.

2

RELMAN, DANE & COLFAX PLLC

### Document Request Nos. 4, 7-17, 19, 21, 23-27, 29, 30, 32, 43 and 46

The City agreed to search for additional documents responsive to these requests. We have not received any additional responsive documents. Please produce documents responsive to these requests by February 21, 2013, or certify that a search has been conducted and that all documents responsive to these requests have been produced.

The City's failure to comply with Rule 34(b)(2)(E) has made the task of determining whether documents in response to specific requests for production have been produced more difficult. While the City correctly points out that it may produce documents in the manner in which they are maintained in the ordinary course of business, the City must also provide:

> at least some modicum of information regarding how they are ordinarily kept in order to allow the requesting party to make meaningful use of the documents. At a minimum, that means that the disclosing party should provide information about each document which ideally would include, in some fashion, the identity of the custodian or person from whom the documents were obtained, an indication of whether they are retained in hard copy or digital format, assurance that the documents have been produced in the order in which they are maintained, and a general description of the filing system from which they were recovered.

*Pass & Seymour, Inc. v. Hubbell Inc.*, 255 F.R.D. 331, 337 (N.D.N.Y. 2008). The City has failed to provide any additional information providing context for the documents produced in violation of Rule 34.

After our review of the documents produced by the City, we continue to believe that the City has not produced any documents responsive to several categories of documents. For example, Request Nos. 23-26 seek communications between the City and private advocacy groups concerning the need for accessible housing, the accessibility of the projects receiving funding from the City and included in the CRA's housing inventory, the accessibility obligations imposed by disability laws, and compliance with accessibility requirements. Request Nos. 27-33 request documents related to meetings regarding these same topics. Request Nos. 7 and 9 seek communications between the City and the CRA regarding the need for accessible housing and requests for or receipt of federal and state funds. Request number 12 seeks documents given to or received from any of the Owner Defendants regarding the need for accessible housing. Request No. 19 seeks documents submitted to or received from any governmental agencies regarding the accessibility of housing receiving City funding and included in the CRA's housing inventory. Request No. 27 seeks documents reflecting the City's expenses, revenues and finances of housing projects receiving City money and included in the CRA's housing inventory.

With respect to the remaining requests for production of documents (Request Nos. 4, 8, 10, 11, 13-17 and 21), the City arguably may have produced some documents that are tangentially responsive to these categories of documents. We seek a certification from the City that it has searched for responsive documents and all responsive documents have been produced.

RELMAN, DANE & COLFAX PLLC

We will seek an order requiring the City to conduct a further search for documents responsive to Request Nos. 4, 7-17, 19, 21, 23-27, 29, 30, 32, 43 and 46 and a certification that a search has been conducted and all responsive documents have been produced unless we receive additional responsive documents and the certification by February 21, 2013.   We will also seek an order requiring the City to provide additional information regarding the manner in which it maintains the documents produced to allow us to make meaningful use of the documents.

We await the City's immediate supplemental production of additional documents.  If those documents are not forthcoming, we will move to compel their production.

Very truly yours,

Michael Allen
Scott Chang
Jia Cobb

4

# EXHIBIT 6
# to M. Allen Declaration



Computer ▸ DVD RW Drive (D:) LAC ▸ LAC ▸ LAC ▸          Search LAC

Organize ▾    Burn to disc

## Files Currently on the Disc (35)

Grant Accounting Procedures-Volume I
Grant Accounting Procedures-Volume II
504 Self Evaluation.pdf
Action Plan 28th PY 2002-2003.pdf
Action Plan 29th PY 2003-2004.pdf
Action Plan 30th PY 2004-2005.pdf
Action Plan 31st PY 2005-2006.pdf
Action Plan 32nd PY 2006-2007.pdf
Action Plan 33rd PY 2007-2008.pdf
Action Plan 34th PY 2008-2009.pdf
Action Plan 35th PY 2009-2010.pdf
Action Plan 36th PY 2010-2011.pdf
Action Plan 37th PY 2011-2012.pdf
Action Plan 38th PY 2012-2013 part 1.pdf
Action Plan 38th PY 2012-2013 part 2.pdf
CAPER 28th PY 2002-2003.pdf
CAPER 29th PY 2003-2004.doc
CAPER 30th PY 2004-2005.pdf
CAPER 31st PY 2005-2006.pdf
CAPER 32nd PY 2006-2007.doc
CAPER 33rd PY 2007-2008.pdf

CAPER 34th PY 2008-2009.pdf
Caper 35th PY 2009-2010.pdf
CAPER 36th PY 2010-2011.pdf
Caper 37th PY  2011-2011.pdf
Consolidated Plan 2000-2003.pdf
Consolidated Plan 2003-2008.pdf
Consolidated Plan 2008-2013.pdf
Departmental User Manual-updated-6-5-2008.pdf
Disbursements Procedures Manual - 05 24 2001.pdf
Environmental checklist.doc
HOME Monitoring Checklist 6-A (Fillable) instructions 1107.pdf
HOME Monitoring Checklist 6-A blank (Fillable).pdf
Housing Element.pdf
Project Information Form 1107.doc

35 items



Computer ▸ DVD RW Drive (D:) 1545-005 ILCSC ▸

Search DVD RW Drive (D:) 1545-005 I...

Organize ▾    Burn to disc

### Files Currently on the Disc (61)

| | | |
|---|---|---|
| Amistad C-95508 | Cantabria Sr Apt Loan Agreement | NoHo Sr Villas |
| Don Hotel C-96059 - C-99877 | Carondelet Court Apt Loan Agreement | Orion Gardens Apt Loan Agreement |
| EastSide Paseo del Sol C-95608 | Casa Rampart C-100012 | Palm Village Sr Loan Agreement |
| Eastside Villiage (Lillian Mobley) | Casa Verde CoOp C-92257-2 | Palomar Apts. CoOp C-92257-6 |
| Heavenly Vision C-95508 | Central Village Apt Loan Agreement | Pico Gramercy Apt Loan Agreement |
| Imani Fe | Columbus Permanent Loan Agreement | Renato Apts Loan Agreement |
| Las Estrellas Apts C-99604-C-92257 | Cuatro Vientos Loan Agreement | Rittenhouse Square Loan Agreement |
| Metro Hollywood Apartments (Hollywood Western) | Decro Osborne Family Loan Agreement | Seven Maples Loan Agreement |
| NoHo Commons 108 Documents | El Dorado Family Apt Loan Agreement | Sherman Village Loan Agreement |
| NoHo Commons Contract Documents | Eugene Hotel Loan Agreement | Stovall Villa Loan Agreement |
| Vermont Sr. Loan Agreement & Co-op | Fame West 25th Loan Agreement | Terre One Loan Agreement |
| Vista Monerey Loan and Co-op | Far East Building Loan Agreement | The Gallery @NoHo Commons Cooperation Agreement |
| Yale Terrace Loan & Co-Op | Grand View Nine C-93687 | Tierra del Sol Loan Agreement |
| Adams and Central Loan Agreement | Hart Village Loan Agreement | Washington Court Loan Agreement |
| Andalucia Sr Loan Agreement | Hobart Heights Loan Agreement | West Angeles Villas |
| Ardmore Loan Agreement | Hoover Senior Housing Loan Agreement | |
| Asturias Sr Apt Loan Agreement | Hope Manor CoOp C-92257-1 | |
| Bonnie Brae Apt Loan Document | Ivy Terrace -Three Courtyards | |
| Boyle Hotel Loan Agreement | Las Margaritas Loan Agreement | |
| Broadway Plaza Loan Agreement | Menlo Park Loan Agreement | |
| Broadway Village II Loan Agreement | Montecito Loan Agreement | |
| Bronson Courts Loan Agreement | Morgan Place Sr Apt Loan Agreement | |
| Buckingham Place Co-Op | New Genesis Apt Loan Agreement | |

61 items

DVD-ROM

# EXHIBIT 7
# to M. Allen Declaration

# BYRNE & NIXON | LLP

**Lawyers**

888 West Sixth Street, Suite 1100
Los Angeles, California 90017
Tel: 213-620-8003
Fax: 213-620-8012
www.byrnenixon.com

RECEIVED

FEB 1 9 2013

By_____

markbyrne@byrnenixon.com

February 14, 2013

## VIA U.S. MAIL & ELECTRONIC MAIL

Michael Allen, Esq.
Scott Chang, Esq.
Jia Cobb, Esq.
Relman, Dane & Colfax PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036-2456

Re:   *Independent Living Center of Southern California, et al. v. City of Los Angeles, et al.,*
      *Case No. 12-0551*

Dear Counsel:

We are writing to respond to the issues raised in your letter dated February 6, 2013, regarding the City's responses to the discovery requests propounded by Plaintiff Fair Housing Council of San Fernando Valley ("FHCSFV"). Your letter followed the parties' telephonic meet and confer on January 16, 2013, and the City's letter dated January 24, 2013.

Requests for Admission

In the February 6th letter, FHCSFV amended Requests for Admission Nos. 45, 46 and 48 to clarify that the requests seek information of which the City, rather than the CRA, is aware. The City will respond to these amended requests and will provide its response by Friday, February 22, 2013.

You indicated that FHCSFV will ask the Court to resolve the parties' dispute regarding Requests for Admission Nos. 185 and 190. Those requests ask the City to admit or deny, "An Assistant City Attorney attended meetings of the DTF," and "Assistant City Attorney Curt Kidder responded to the aforementioned requests for location of any and all UFAS-accessible units by suggesting that

BYRNE & NIXON | LLP

Lawyers

Michael Allen, Esq.
Scott Chang, Esq.
Jia Cobb, Esq.
February 14, 2013
Page 2

CRA/LA did not have any obligation to ensure that UFAS-accessible units existed within the
Redevelopment Housing Program." The City objected that the requests sought information from
the CRA, not the City, and the City is not in a position to admit or deny the request on behalf of the
CRA. On January 16, 2013, we explained that the Assistant City Attorney sat by designation at the
CRA and served as counsel for the CRA, so the request should be directed to the CRA, not the City.
If FHCSFV is seeking an admission regarding a specific meeting of the Disability Task Force at
which FHCSFV believes a representative of the City was also present, we will follow-up with the
City and attempt to respond to the requests.

Interrogatories

As indicated in our January 24th letter, notwithstanding its objections, the City will provide
supplemental responses to Interrogatories Nos. 1-8. In your February 6th letter, you requested that
the City provide its responses by tomorrow, a deadline you unilaterally set and to which we had not
agreed. The City is preparing its supplemental responses and will provide them by February 22,
2013.

In the February 6th letter, you indicated that FHCSFV intends to move to compel the City to
respond to Interrogatories Nos. 9-25. We maintain that Interrogatories Nos. 1-8 are compound
based upon FHCSFV's definition of "Identify," causing the total number of interrogatories to
exceed twenty-five. You have not provided any authority in response to the case law we referenced
in our January 24th letter, which we believe clearly supports the City's position. If you have any such
authority, please provide it so that we can consider it.

Document Requests

As we have explained on several occasions, the extremely broad nature of the Document Requests
has made it unnecessarily difficult and burdensome for the City to gather and produce responsive
documents. Notwithstanding its objections to the Documents Requests, the City is acting in good
faith to respond to the requests. To date, the City has produced over 24,000 pages of documents in
this action and intends to produce additional documents next week. During our conversation on
January 16th and in our January 24th letter, we invited you to provide a list of any specific documents
that you believe should be produced, but have not yet been provided. To date, we have not
received your list and renew our invitation so that we can attempt to locate those documents and
expedite their production.

BYRNE & NIXON | LLP

Lawyers

Michael Allen, Esq.
Scott Chang, Esq.
Jia Cobb, Esq.
February 14, 2013
Page 3

Finally, the City is in the process of collecting additional documents that are too voluminous to reproduce and will be made available for inspection.  Please let us know when you will be available to inspect the documents so that we can make the necessary arrangements.

Sincerely,

*Mark Byrne*

Mark Byrne
BYRNE & NIXON LLP

# EXHIBIT 8
# to M. Allen Declaration

**Miriam Becker-Cohen**

| | |
|---|---|
| **From:** | Jia Cobb |
| **Sent:** | Monday, February 25, 2013 7:37 PM |
| **To:** | Mark Byrne; Jennifer Derwin; Komal Mehta |
| **Cc:** | Michael Allen; Scott Chang; Miriam Becker-Cohen; Allison  Pincus |
| **Subject:** | RE: ILCSC v. City of Los Angeles |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Completed |

Dear Counsel:

I am writing regarding the dispute between the parties over Plaintiff FHCSFV's Interrogatories Nos. 9-25.

In a letter dated February 14, 2013, you indicate that Plaintiff has not provided you with any authority in response to the caselaw that you cited in your January 24, 2013 letter regarding your objection that Plaintiff's interrogatories are impermissibly compound.  Your assertion is not accurate.  The caselaw cited in Plaintiff's January 8, 2013 letter is directly responsive to this issue.  Namely, as Plaintiff indicated in its January 8, 2013 letter, it is Plaintiff's position that the "subparts" about which you complain are aimed toward eliciting details about a common theme and therefore should not be treated as separate questions.  *See Paananen v. Cellco P'ship*, CO8-1042 RSM, 2009 WL 3327227, at *2 (W.D. Wa. Oct. 8, 2009); *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N. D. Cal. 2006).  Additional cases upon which Plaintiff relies that are not cited in the January 8, 2013 letter, but that stand for the same proposition, include *Safeco of Am. v. Rawstron*, 181 F.R.D 441, 445 (C.D. Cal. 1998) and *Dang v. Cross*, CV 00 13001 GAF(RZX), 2002 WL 432197 (C.D. Cal. Mar. 18, 2002).

Although Plaintiff disagrees with the City's position with respect to Plaintiff's definition of the term "identify," in a further effort to reach a compromise with the City, Plaintiff is willing to modify its definition by withdrawing the portion of the definition that asks the City to identify documents that contain the policy and/or procedure at issue as part of its response.

As noted in our February 22, 2013 e-mail correspondence, Plaintiff is proceeding with the drafting of our portion of the joint stipulation.  If our proposal to modify the definition of "identify" sufficiently addresses your concerns, please let us know as soon as possible.  If the City maintains its objections, it can provide its position in its response to the draft stipulation.

Thank you,


Jia M. Cobb
(licensed in D.C.)
Relman, Dane & Colfax PLLC
1225 19th Street, NW
Suite 600
Washington, DC 20036
202.728.1888 (o)
202.728.0848 (f)