UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

INDEPENDENT LIVING CENTER OF  ) CASE NO:  2:12-CV-00551-FMO-PJW
SOUTHERN CALIFORNIA, ET AL.,  )
                              )
            Plaintiffs,       )           CIVIL
                              )
    vs.                       )   Los Angeles, California
                              )
CITY OF LOS ANGELES, ET AL.,  )   Thursday, June 26, 2014
                              )   (11:37 a.m. to 12:12 p.m.)
            Defendants.       )

STATUS CONFERENCE RE: QUALITY ASSURANCE IN PREDICTIVE CODING
REGIMEN FOR CITY'S PRODUCTION

BEFORE THE HONORABLE PATRICK J. WALSH,
UNITED STATES MAGISTRATE JUDGE

Appearances:            See Next Page

Court Reporter:         Recorded; XTR

Deputy Clerk:           Jacob Yerke

Transcriber:            Exceptional Reporting Services, Inc.
                        P.O. Box 18668
                        Corpus Christi, TX 78480-8668
                        361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>APPEARANCES FOR:</u>


Plaintiffs:                    TIMOTHY M. SMYTH, ESQ.
                               Relman, Dane, and Colfax, P.L.L.C.
                               1225 Nineteenth Street, N.W.
                               Suite 600
                               Washington, DC 20036


Defendants:                    MARK ANDREW BYRNE, ESQ.
                               JENNIFER L. DERWIN, ESQ.
                               KOMAL JITENDRA MEHTA, ESQ.
                               Byrne and Nixon, L.L.P.
                               888 West Sixth Street, Suite 1100
                               Los Angeles, CA 90017

                               ROBERT MICHAEL COLLINS, ESQ.
                               Lewis, Brisbois, Bisgaard, et al.
                               221 North Figueroa Street, Suite 1200
                               Los Angeles, CA 90012

                               ALICE CHU, ESQ.
                               Greenberg, Traurig, L.L.P.
                               1900 University Avenue, Fifth Floor
                               East Palo Alto, CA 94303


Other Parties Present:   Conor Crowley (phonetic)

                               Scott Cooper

1        **Los Angeles, California; Thursday, June 26, 2014; 11:37 a.m.**

2                **MACHINE:**  Welcome to the conference call.  Please say

3   your name after the tone.

4                **THE CLERK:**  Jake, Judge Walsh's clerk.

5                **MACHINE:**  Jake, Judge Walsh's clerk, is joining the

6   meeting.

7                **THE CLERK:**  Good afternoon, counsel.  Who do we have

8   on the line today?

9                **MR. SMYTH:**  Good afternoon, Jake.  This is Timothy

10  Smyth, Relman, Dane & Colfax.

11               Conor Crowley, our ESI consultant, is also joining

12  us.

13               **THE CLERK:**  Thank you.

14               **MS. DERWIN:**  And good afternoon.  This is Jennifer

15  Derwin at Byrne & Nixon on behalf of the City, with Mark Byrne

16  and Komal Mehta.

17               And we also have Scott Cooper, our ESI consultant, on

18  the line.

19               **MR. COLLINS:**  Good afternoon.  This is Robert Collins

20  for CRA.

21               **MS. CHU:**  Good afternoon.  This is Alice Chu for

22  Redrock NoHo Residential, LLC.

23               **THE CLERK:**  Thank you.  And, counsel, is that

24  everybody we're expecting to be joining us this afternoon?

25               **MR. SMYTH:**  I have not heard from any other counsel,

1   Jake, about this hearing.

2          **THE CLERK:**  Okay.  We're okay to start.

3          Calling Item 1, Civil 12-551, *Independent Living*

4   *Center of Southern California, et al., versus City of Los*

5   *Angeles, California, et al.*

6          **THE COURT:**  Good morning -- or good afternoon,

7   counsel.  Thanks for getting on the phone with me again.

8          Since our last meeting, I appreciate the fact that

9   Mr. Cooper, Mr. Crowley, along with Ms. Derwin -- I don't know

10   who else was on the call -- went back to Equivio and talked

11   with them about these issues.

12          And the questions that were raised -- or the first

13   question, "Will the quality assurance steps, discrepancy

14   analysis, and remainder test impact the rankings?"

15          Mr. Elkoni's answer was, "No, quality assurance

16   happens after ranking."

17          Question Number 2, "Will the quality assurance steps

18   impact the reliability?"

19          Mr. Elkoni's answer:

20          "It depends on the goal.  If the goal is to identify

21          a fixed number of the highest ranking documents, then

22          the goal is to prioritize the documents and the

23          quality assurance steps are not necessary and are

24          redundant.

25          "If the goal is instead to reach a level -- a

1          specific level of recall, then the quality assurance

2          steps are vital."

3          Question Number 3, "Should we use the quality

4   assurance steps?"

5          Mr. Elkoni's answer:

6          "Again, it depends.  If the goal is to identify a

7          fixed number of the highest ranked documents, then

8          no.

9          "If the goal is instead to reach a specific level of

10          recall, then yes."

11          Question 4, "If the quality assurance steps are done,

12   should training and quality assurance be done by the same

13   attorney?"

14          Mr. Elkoni's answer, "Ideally, the quality --

15   ideally, the quality assurance should be done by the same

16   attorney or the same team of attorneys working together."

17          Okay.  So, Mr. Smyth, what I see -- and Mr. Crowley

18   -- is -- and, first of all, what is my goal?

19          My goal was to get you the 10,000 most important

20   documents, knowing that that's probably 10,000 -- that's

21   probably 9,000 more than you need and that you can use if this

22   system works as well as we anticipate it will, but I'm willing

23   to extend it to 10,000 so that you can help assure yourself and

24   your clients that you have what -- the materials that you need.

25          And for that reason, since that is my goal in getting

1   you the top 10,000 documents, I do not think we're going to be

2   employing quality assurance.

3           Mr. Smyth and Mr. Crowley, tell me why you think I'm

4   wrong.

5           **MR. SMYTH:**  Okay.  So, your Honor --

6           **MR. CROWLEY:**  Your Honor, the --

7           **MR. SMYTH:**  The first point -- sorry, Mr. Crowley.

8   Let me just introduce quickly and --

9           **MR. CROWLEY:**  Certainly.

10          **MR. SMYTH:**  -- (indiscernible) over to you.

11          The first point, it was -- it is my understanding

12  that the ESI consultants were going to be on the phone.  I was

13  not on the phone with Equivio.

14          And the answers that you just read are from

15  Ms. Derwin.  They were not circulated to me before they were

16  submitted to the Court, and we do not agree that they're a full

17  accounting of what Mr. Elkoni said.

18          So that's the first principle, your Honor.

19          And we'll be happy to tell you what our understanding

20  of the conversation was.

21          **THE COURT:**  All right.  Let's start with the first --

22  no, let's start with the first question.

23          "Will quality assurance steps, discretionary

24  analysis, and remainder test impact the rankings?"

25          Mr. Elkoni's answer was no.

1          Do you disagree with that, Mr. Smyth or Mr. Crowley?

2    Did he say yes and Ms. Derwin has reported the wrong

3    information?

4          **MR. CROWLEY:**  The response to that is correct, your

5    Honor, but we're looking at that in a vacuum.  We need to look

6    at Question 2 and 3 as well.  And I'm unsure as to why

7    Ms. Derwin characterizes as it did -- as she did, because I

8    reiterated this at the end of the call with Mr. Elkoni for the

9    avoidance of doubt.

10          And Mr. Cooper agreed with my reiteration.

11          And my iteration with respect to Question 2 -- and

12    this is a crucial distinction, your Honor -- is if the goal is

13    solely to identify a fixed number of the highest ranking

14    documents and the goal is to prioritize the documents, the

15    quality assurance steps are not necessary and they're

16    redundant.

17          If the goal is to measure recall, then the quality

18    assurance steps are vital.

19          Now, the protocol that the City drafted, your Honor,

20    provides for the disclosure of the level of recall achieved.

21    In order to disclose it, you have to be able to measure it.

22    And Mr. Elkoni said, and Mr. Cooper agreed with this

23    reiteration, that in order to properly measure recall, quality

24    assurance is vital.

25          So, your Honor, what's going on here is that recall

```
 1    is telling us the percentage of relevant documents actually

 2    retrieved from the total volume of documents.  If we don't know

 3    how many -- what percentage of documents were achieved, we can

 4    have no assurance that the process is actually working properly

 5    to retrieve relevant information.

 6              In a case like this, your Honor, normally you're

 7    looking at 75 to 85 percent recall.  That allows us to

 8    understand that this system is working better than a human

 9    reviewer would, and is finding let's say at most 85 percent of

10    the relevant documents -- that means that Plaintiffs are

11    agreeing that we will never see fifteen out of a hundred of the

12    relevant documents.  But we will know that.

13              If we don't measure it, we don't know that.  We don't

14    know that the system is working.  And the system may well be

15    ranking a small percentage of the retrieved information -- of

16    the relevant information, because that's all it was able to

17    retrieve.

18              We don't know that it's actually properly ranking

19    even 85 percent or 75 percent of the relevant information

20    unless we're measure recall.

21              THE COURT:  How much is it going to cost to do that

22    quality assurance, Mr. Crowley?

23              MR. SMYTH:  It's going to --

24              MR. CROWLEY:  It's de --

25              MR. SMYTH:  -- cost nothing --
```

1          **MR. CROWLEY:**  -- minimis, your Honor.

2          **MR. SMYTH:**  -- (indiscernible) --

3          **MR. CROWLEY:**  We're talking about a small sample at

4     the end.  We're talking about hundreds, not thousands, of

5     documents.

6          **THE COURT:**  All right.  How about if Plaintiffs agree

7     to pay for it?

8          **MR. CROWLEY:**  That's a question for Mr. Smyth, your

9     Honor.

10         **MR. SMYTH:**  So the first part of the quality

11    assurance, your Honor, is the discrepancy analysis.  We're --

12    we've already offered to do that.

13         I don't understand that to cost the City anything.

14         **THE COURT:**  All right.

15         **MR. SMYTH:**  So we're happy to do that review.  We've

16    already -- we've already offered to do that review.

17         **THE COURT:**  All right.  Tell me the second part.

18         **MR. SMYTH:**  The second part -- Mr. Crowley, correct

19    me if I'm wrong, because I'm a little outside my comfort zone

20    here -- by my understanding of the second part, your Honor, is

21    that if the level of recall is not satisfactory, the system has

22    to be slightly retrained.

23         And let me try coming at it just very briefly, your

24    Honor, from a layman's perspective.

25         **THE COURT:**  But let me stop you, because I do think I

10

 1   understand this part.

 2              **MR. SMYTH:**  Okay.

 3              **THE COURT:**  What would be satisfactory for you --

 4              **MR. SMYTH:**  Eighty percent --

 5              **THE COURT:**  -- the percentage of recall?

 6              **MR. SMYTH:**  Seventy-five percent, your Honor.

 7              **THE COURT:**  Seventy-five percent.  Okay.  How about

 8   if we do that?  How about if I impose the -- this quality

 9   assurance, and we're aiming for 75 percent?

10              If we -- if it shows better than that, we have no

11   issues.

12              If it shows less than that, come back to me and talk

13   to me.

14              **MS. DERWIN:**  Your Honor, this is Jennifer Derwin on

15   behalf of the City.  If I could respond to that briefly?

16              **THE COURT:**  Go ahead.

17              **MS. DERWIN:**  I guess with respect to the first issue,

18   the discrepancy analysis, there definitely is a cost to the

19   City, because, remember, the City has to review all of these

20   documents for privilege before we provide them to Plaintiffs'

21   counsel.

22              The second, if I understand what -- what may have

23   just -- the exchange that just occurred is that you're talking

24   about something that's very different than the methodology that

25   the Court has -- has ordered, where we're going to rank these

1    documents, and then based on those rankings, we're going to

2    produce the top 10,000 highest ranked documents.

3            And Plaintiffs have made it very clear that they

4    reserve their right to seek additional documents, and the Court

5    may, at some later point, agree with them that they're entitled

6    to 20,000 documents, or maybe more.

7            But the point being that Equivio has confirmed that

8    it is not necessary -- in order to effectuate the Court's

9    Order, it is not necessary to go through these quality

10   assurance steps.

11           **THE COURT:**  Well, but the -- the issue they're

12   raising, though, is that, yes, this system is going to rank

13   these documents.  And let's say that there are, you know, a

14   million documents.  They're going to rank them in order from

15   the least relevant to the most relevant.  And we're going to

16   put -- pick off the 10,000.

17           But what they're -- what the Plaintiffs are concerned

18   with is that their -- the system is obviously going to miss

19   some relevant documents.  We all agree with that.  We

20   understand, when we use this software, it's not a hundred

21   percent accurate.  There is some room.

22           And what they're trying to do is ensure -- trying to

23   figure out how off we are, how -- what's the margin of error.

24           And they want it to be 75 percent, and they can only

25   determine -- in other words, yes, they'll get -- with this

 1    system, without quality assurance, they're going to get the

 2    10,000 most relevant documents ranked by the -- by the

 3    predictive coding.

 4            The problem is, is they're not going to know what

 5    they're leaving behind.  That's not going to tell us what

 6    they're leaving behind.  They're not going to know, and they

 7    want to do this quality assurance.

 8            Go ahead, Ms. Derwin.

 9            **MS. DERWIN:**  And I guess -- just getting back to my

10    original understanding of the Court's Order is that we -- we

11    use predictive coding to rank these documents, and then -- and

12    then produce them based on the relevancy ranking.

13            I think if the Court feels that it's necessary or

14    appropriate to go through these quality assurance steps,

15    obviously, you know, we're going to follow the Court's Order

16    and do that.  But I don't think it's necessary to completely go

17    off on a tangent, I guess, or kind of shift the methodology

18    that the Court has already (indiscernible), which I think is

19    appropriate.  It's been used in other cases and it's what the

20    Court has ordered in this case.

21            **THE COURT:**  Ms. Derwin, don't you agree, though, that

22    under these -- this protocol that we worked on the other day,

23    that you are going to have to tell them what the level of

24    recall is?

25            **MS. DERWIN:**  There is a requirement -- and my

 1   understanding is that the system will generate a level of

 2   recall and precision based on the work that is done.

 3            **THE COURT:**  All right.

 4            **MR. COOPER:**  Can I step in here, please?

 5            **THE COURT:**  Is that Mr. Cooper?

 6            **MR. COOPER:**  It is.

 7            **THE COURT:**  Go ahead.

 8            **MR. COOPER:**  Thank you, your Honor.

 9            On this specific topic of an estimate of recall, the

10   system generates an estimate of the precision recall without

11   having to go through the QA steps.

12            If Mr. Crowley would like (indiscernible) perfect

13   calculation of the measure of recall beyond an estimate, there

14   is only one way to do that, and that is to look at every single

15   document of the 2 million.

16            So looking at every document will guarantee the exact

17   right number.  Beyond that, it's an estimate.

18            **THE COURT:**  Right, I understand that.  So there's one

19   way to do it exactly.  There's one way to do it considerably

20   less precisely.

21            And what Mr. Crowley and Mr. Smyth are suggesting is

22   let's do the one that's in between those two.  That's what

23   they're --

24            **MR. CROWLEY:**  Your Honor --

25            **THE COURT:**  -- proposing.

1          **MR. CROWLEY:**  -- this is Mr. Crowley.

2          **THE COURT:**  Yeah?

3          **MR. CROWLEY:**  It boils down to the answer to the

4     question that Mr. Elkoni gave.  If we want to properly measure

5     recall in Equivio system -- this was -- Mr. Elkoni said

6     yesterday the use of quality assurance is vital.  That's his

7     word, "vital."

8          **THE COURT:**  What do you say to Mr. Cooper, who says

9     there is going to be an approximation of the level of recall

10    just in the ranking system --

11         **MR. CROWLEY:**  Part of the quality assurance process,

12    your Honor, is ensuring that the information that the system is

13    generating for us is actually accurate, and the QA is part of

14    ensuring the levels of precision and recall that are supporting

15    are accurate.

16         **THE COURT:**  All right.

17         **MR. CROWLEY:**  Mr. Elkoni explained this yesterday,

18    and he said -- and I know I'm repeating myself, your Honor --

19    but he said the QA is a -- is vital for properly measuring

20    recall.

21         **THE COURT:**  So please don't repeat yourself.  Answer

22    my question.

23         Directly respond to Mr. Cooper's statement that the

24    system is going to have a level of recall determination.  It

25    may not be the best one, but it's going to have one.  That's

 1   the answer -- that's the question I want answered, Mr. Crowley.

 2           Are you saying what Mr. Cooper is saying is not true?

 3           **MR. CROWLEY:**  I'm not saying it's not true, your

 4   Honor.  But what we're talking about here is getting some

 5   assurance that the level of recall is dependable, and what's

 6   involved here is reviewing a few hundred extra documents.

 7           **THE COURT:**  How much --

 8           **MR. CROWLEY:**  A few hundred.

 9           **THE COURT:**  How much less dependable is the level of

10   recall figure that's going to be provided without the Q&A than

11   the one with the Q&A?

12           How -- what's the difference?  Statistically, what's

13   the difference?

14           **MR. CROWLEY:**  I cannot give you a statistic on that,

15   your Honor.  I can only go on what Mr. Elkoni said yesterday.

16           **THE COURT:**  All right.  Okay.  So we're back where we

17   always are, in this intractable disagreement between the

18   parties as to, you know, how we're going to proceed, and it's

19   again in my lap.

20           And I'm just a little frustrated by it, because I --

21   you know, three people on the same phone call and they don't

22   even interpret what the guy said the same way.

23           I guess maybe what I should have done was gotten

24   Elkoni on the phone myself.

25           So the -- Mr. Cooper, Mr. Crowley is telling us it's

1   going to -- going to require the review of several hundred

2   documents and not a lot of time.

3           Do you agree with that or disagree?

4           **MR. COOPER:**  I do not agree, your Honor.  And just --

5   just so you're clear, every time in this call, and I think in

6   other calls, when Mr. Crowley represents that I've agreed with

7   him, that's not a correct statement.

8           The things that I said on Tuesday about what the

9   system did is what the system does.  Mr. Elkoni confirmed it

10  yesterday.

11          It is not trivially simple to do this additional

12  measurement.

13          What Mr. Elkoni said is that it's only vital to do

14  the QA if you are trying to achieve a specific measure of

15  recall.

16          If you want to estimate it, it's not necessary --

17  absolutely not necessary and redundant.  It can be done, and it

18  will be done, with the existing capabilities of the system.

19          And --

20          **THE COURT:**  (Indiscernible) let --

21          **MR. COOPER:**  -- the estimate that is used by the

22  system prior to doing this QA step to further estimate it is

23  something that is normally used -- used and useful.

24          But you can always get more.  You can always do more

25  and more work, all the way up to getting the perfect assurance,

```
 1   which means doing all 2 million.

 2             THE COURT:  How many -- we're not going perfect

 3   assurance, so that's off the table.  Let's not discuss that

 4   anymore today, okay?

 5             MR. COOPER:  Yes, sir.

 6             THE COURT:  So we have two possibilities, Q&A or no

 7   Q&A.

 8             Mr. Cooper, how much time is it going to add to do

 9   the Q&A?

10             MR. COOPER:  It's an unknown number, but it's not

11   trivial.  It's the effort to go engage the process, to then

12   gather up the documents, review them for privilege, then review

13   them by Plaintiff -- by Defendants, then review them by

14   Plaintiffs, then code them back in the system, and then get an

15   additional revised estimate.

16             THE COURT:  All right.  I'm going to --

17             MR. COOPER:  And, by the way -- I'm sorry -- it's not

18   -- it may not be just 500.  It's unknown how many it will be.

19             THE COURT:  All right.  Mr. Crowley, anything you

20   want to add before I make my ruling?

21             MR. CROWLEY:  That, your Honor, I reiterated my

22   understanding yesterday at the end of the call with Mr. Elkoni

23   that quality assurance was vital for appropriately measuring

24   recall.  Mr. Cooper did not disagree with me.

25             THE COURT:  Here's my ruling.  Quality assurance is
```

```
 1    going to be employed.  The Plaintiffs are going to pay one half

 2    of Defendants' costs, including attorneys' fees, in doing the

 3    quality assurance.

 4              That's my ruling.

 5              All right?

 6              Mr. Smyth, state your objections on the record.

 7              MR. SMYTH:  I object because the process for shifting

 8    costs has not been followed.

 9              THE COURT:  Okay.

10              MR. SMYTH:  And I object because I do not believe the

11    burden is undue, and the standard set --

12              THE COURT:  What is --

13              MR. SMYTH:  -- forth in (indiscernible) --

14              THE COURT:  -- the burden, Mr. Smyth?

15              MR. SMYTH:  -- has not been met for shifting costs.

16              THE COURT:  What is the burden?  How much is it going

17    to cost the other side?

18              MR. SMYTH:  Talking only about attorney time to

19    review for privilege, as I understand it --

20              THE COURT:  Well, I mean, Mr. Cooper, they're going

21    to be paying Mr. Cooper in this process, too.

22              Exactly.  Tell me how much --

23              MR. SMYTH:  (Indiscernible), your Honor, but the

24    undue burden in discovery is not -- is not a question solely of

25    how much it costs the Defendants.
```

1          THE COURT:  Well, the (indiscernible) --

2          MR. SMYTH:  (Indiscernible) as I understand it --

3          THE COURT:  Here's the --

4          MR. SMYTH:  -- is the cost of --

5          THE COURT:  Here's the --

6          MR. SMYTH:  -- how unreasonable it is to request to

7   begin with, and --

8          THE COURT:  Here's the deal, Mr. Smyth.  They're

9   telling me it's an unnecessary step.  You're telling me it's a

10  necessary step.

11         I sent you guys back to Equivio, and you know what I

12  got back from Equivio?  Ambivalence.  I can't tell what's right

13  and what's wrong.

14         That's where we are.  We are --

15         MR. SMYTH:  Your Honor, may I address that, though?

16         THE COURT:  No, hang on a second --

17         MR. SMYTH:  Your frustration --

18         THE COURT:  No, hang on a second --

19         MR. SMYTH:  -- I assure you, pales in comparison to

20  mine.

21         THE COURT:  Mr. Smyth, (indiscernible) --

22         MR. SMYTH:  I want to remind the Court again --

23         THE COURT:  Mr. Smyth --

24         MR. SMYTH:  -- that we already negotiated this

25  protocol with an adverse party, which included a Q&A.

20

1        **THE COURT:**  Mr. Smyth --

2        **MR. SMYTH:**  And so the idea that we're somehow taking

3   some unreasonable position suggests not only that we're

4   completely unreasonable and want to do work that we don't need

5   to do, but also that we somehow bamboozled the CRA into that --

6        **THE COURT:**  Mr. Smyth --

7        **MR. SMYTH:**  -- which we did not.

8        **THE COURT:**  Mr. Smyth --

9        **MR. SMYTH:**  This is standard practice, as I

10   understand it from my --

11        **THE COURT:**  Mr. Smyth --

12        **MR. SMYTH:**  -- consultant --

13        **THE COURT:**  Mr. Smyth --

14        **MR. SMYTH:**  -- this is standard practice --

15        **THE COURT:**  Mr. Smyth --

16        **MR. SMYTH:**  Yes, your Honor?

17        **THE COURT:**  -- don't interrupt -- do not interrupt me

18   anymore.  Okay?

19        **MR. SMYTH:**  I'm sorry, your Honor.  I

20   (indiscernible) --

21        **THE COURT:**  You've got a private judge on your

22   payroll.  I've been on this case every week, and I want to tell

23   you what my frustration is, okay?

24        You guys got to sit down and agree to something,

25   sometime, somewhere, okay?  That's what you got to do.

1            I want to tell you what I see from your side:  18

2    months and not a single document in your hand.

3            You know what you want to do?  You want to get on the

4    phone with me every week for the next 15 weeks and argue about

5    this.

6            I'm done.  You got it?  I'm finished.

7            You guys cannot agree on the time of day if you're in

8    the same room and the clockman tells you what it is.

9            I'm done.  Okay?

10           You don't know how much it's going to cost.  You have

11   no idea.  Nobody does.

12           I get more questions than I get answers.  We are 18

13   months into this and you've done nothing.

14           Judge Olguin has turned this over to me and I'm

15   taking over.  I'm done with your petty quarrels, okay?  We're

16   finished with that.

17           You're paying half the cost.  If this is really

18   necessary and you really need it, pay for it.

19           If it's -- you're telling me it's going to be

20   nothing.  Mr. Crowley is telling me it's going to be de

21   minimis.  It's not going to be a big problem.  It's not going

22   to cost them anything.

23           I'm going with Mr. Crowley.  He's your expert.  I'm

24   relying on him.  He said it's not going to be that much.  Pay

25   half of it.

1            All right?

2            How -- Mr. Smyth, I want you to respond to this.  How

3   many more months are we going to talk about this?  You tell me.

4            **MR. SMYTH:**  Your Honor, first and foremost, I

5   apologize for interrupting you.  It was unintentional, and I

6   hope you accept my apology.

7            **THE COURT:**  I do.

8            **MR. SMYTH:**  Second of all, your Honor, I am very,

9   very anxious to get this production over with.  And I'm open to

10  any suggestion as to what I can do differently to make that

11  happen.

12           **THE COURT:**  We -- we're -- I -- we're just to the end

13  of this.  We can't have an -- I can't send these guys back to

14  Equivio and get another answer.

15           I want to tell you, Mr. Smyth, put yourself in my

16  shoes.  I got your expert telling me it's absolutely necessary,

17  they're expert telling me it's redundant.

18           I got one side saying it's going to be expensive, one

19  said saying it isn't.

20           And we have -- you know, it's all these generalities.

21  Not a single time, except for the cost of Equivio, has anybody

22  said, "It's going to cost you this much.  It's going to be this

23  long."

24           I have lawyers arguing to me about these important

25  issues and nobody -- nobody ever talks about dollars and cents.

1   Nobody ever tells me how many hours.  Okay?

2           When you throw this stuff in my lap, I got to make

3   the best choice I can.  And I just can't keep going on doing

4   this.  All right?  I just have to -- we have to move on.

5           You know, it's like you guys are spending money --

6   I'm assuming this is costing -- every time we get on the phone,

7   it's costing, what, $5,000 an hour with all of the lawyers,

8   with ten lawyers at 500 an hour?  We're spending $5,000 an

9   hour.  We have probably spent -- I don't know -- 10, 20 hours

10   on these discussions.

11          So we've spent between 50 and $100,000 figuring out

12   how we're going to turn over discovery, and we're 18 months

13   down the road and we haven't turned over a document.

14          I got to look at the bigger picture.  And I -- you

15   know, I thought I could resolve this by sending the experts

16   back to the Equivio and they would come back hand in hand, and

17   that -- if you -- you can tell me I'm wrong, Mr. Smyth.  But

18   I'll tell you what I think.

19          I think that you guys are saying the exact opposite

20   things.  Mr. Crowley is saying it's absolutely necessary.

21   Mr. Cooper is saying it's not.

22          You're saying it's not going to cost the City that

23   much.  Mr. Cooper and Ms. Derwin are telling me it's going to

24   cost a lot.

25          How does a judge make a decision in this?

24

1              Go ahead, Mr. Smyth.

2         **MR. SMYTH:**  I was -- I think I've attempted to state

3    my objections for the record, your Honor.  I think the

4    arguments have been made.  I totally agree with your Honor that

5    we need to move forward, and I respectfully, you know, accept

6    the Court's ruling as to how it decides to shift costs.

7         **THE COURT:**  All right.  Here's what we're going to

8    do.  The language is going to include the Q&A -- the quality

9    assurance, both parts.

10             And I'm sorry.  I don't have it in front of me.

11             But --

12        **MR. CROWLEY:**  Discrepancy analysis and the remainder

13   test, your Honor.

14        **THE COURT:**  Okay.  And, Mr. Smyth, I owe you an

15   apology.  I jumped on you.  I lost my tempter.  I shouldn't

16   have.  And I'm sorry I did.  And it's not -- and I'm not just

17   upset and angry with you, believe me.

18             I'm just -- I'm just kind of frustrated in that, you

19   know, I have -- we have 15,000 civil cases in this courthouse,

20   and for the life of me I can't figure why this one can't move

21   along.  I just -- I don't get it.

22             I mean, you know, we got experienced lawyers on each

23   side.  We -- you guys have gone to the trouble of going and

24   hiring computer experts on both sides.  And every time we get

25   on the phone, it seems like there's another issue we can't

25

 1   resolve.

 2            And so I have to -- you know, the first and foremost

 3   rule of Federal Rules of Civil Procedure is Rule 1, which is to

 4   speed these -- to be efficient and inexpensive, and move them

 5   along.  And we are breaking that rule along with all the other

 6   rules that are going on, in that we have this open-ended

 7   discovery that never moves past today.

 8            All right.  So I hope, Mr. Smyth, you'll accept my

 9   apology.  And the other lawyers on the phone, I don't like to

10   lose my temper, but I'm just kind of frustrated, as you can

11   tell.

12            All right.  Here's the deal.  The quality assurance,

13   both phases, are going on.  Ms. Derwin, you're in charge of

14   keeping track of your hours and Mr. Cooper's hours for that

15   phase.  And at the end of that phase, you submit a bill to

16   Mr. Smyth.  Tell him that you want half of it.

17            Mr. Smyth, I'm sure, is going to disagree that it

18   costs that much.

19            If you cannot work it out, you come and see me and

20   I'll work it out.

21            All right, Ms. Derwin?

22            **MS. DERWIN:**  Yes, your Honor.

23            **THE COURT:**  All right.  And that's over -- so I'm

24   going over both objections -- your objection that we are using

25   the quality assurance, because you don't think it's necessary,

1   and Mr. Smyth's objection that I haven't gone through the steps

2   to shift the burden in this case -- I mean to shift the cost

3   from the Defendant to the City -- to the Plaintiff.

4            What I am doing is I am dividing the cost, because

5   Mr. Cooper has told me that it's not necessary; Mr. Crowley

6   said it absolutely is.  I can't figure out from all of the

7   meetings and things we've had what the answer is.

8            So I'm going to let it go forward.  That way, the

9   Plaintiffs ensure their reliability is -- they can figure out

10   the reliability.  But at the same time, I'm going to share the

11   cost in doing that step.

12            All right.  The last part is the exception documents,

13   which we're going to deal with down the road.  So the exception

14   documents, I don't care, Mr. Smyth, what language you use in

15   there -- that the Court has reserved ruling on this, or this

16   will be addressed at a later time, or whatever.

17            But we are not excluding exception documents.  I

18   think that's the language that was used in that agreement.  And

19   we're not excluding exception documents.  We're going to deal

20   with those later when Ms. Derwin has a better handle for how

21   much -- how many documents there are and what they look like.

22            All right.  Mr. Smyth, your turn.  Anything else I

23   need to address?

24            **MR. SMYTH:**  Nothing further from the Plaintiffs, your

25   Honor.

```
 1              THE COURT:  All right.  Ms. Derwin?

 2              MS. DERWIN:  No, your Honor.  Thank you.

 3              THE COURT:  All right.  I see that you guys are

 4   probably reluctant to raise anything else with me after I

 5   yelled at you.  And, again, I'm sorry.  I wish I hadn't done

 6   that, but at least now -- so here's the deal.

 7              The document is going to be finalized, Mr. Smyth.

 8   Who is going to finalize the -- Ms. Derwin, you going to

 9   finalize the document?

10              MS. DERWIN:  Your Honor, I can finalize the -- I

11   think the draft that we were working off of during the last

12   Status Conference was the one that we submitted, and I have

13   notes on the changes that the Court made during our last Status

14   Conference, so I can do that and circulate it to Mr. Smyth.

15              THE COURT:  All right.  Can we do that by tomorrow,

16   Ms. Derwin?

17              MS. DERWIN:  Yes.

18              THE COURT:  All right.  Then when can we start with

19   the document review and Equivio?

20              MS. DERWIN:  I think immediately.  I mean, there's

21   definitely a little bit of leg work, but we're ready to go.  We

22   just need Equivio to start loading the software, now that we

23   have the Court's Order.

24              THE COURT:  Okay.  So that will be -- let's say

25   Monday.  Do you have any idea, Ms. Derwin, how long it will
```

1    take to do the preliminary steps that we need to get this thing

2    going?

3           **MS. DERWIN:**  My understanding is that it's going to

4    take a couple days for the software to be installed, and then

5    it's going to take some time for the data to be loaded into the

6    system.

7           And, unfortunately, we don't have an exact amount of

8    time, but I understand that it is a lengthy process because of

9    the volume of data, but we can start that as soon as the

10   software is installed.  And we have already started doing kind

11   of the preliminary, like, pre-processing -- if that's the

12   correct word -- to be prepared to do that once -- once the

13   software is ready.

14          **THE COURT:**  All right.  Here's what I would like to

15   do.  I'm sure you're tired of listening to me and hearing me

16   yell at you guys.

17          Why don't we -- how about if next Thursday you send

18   an e-mail to me and Mr. Smyth summarizing where we are.

19          Mr. Smyth, if you have anything you want to add, you

20   can send your own e-mail.

21          And if you need me, I'm here and I'll get on the

22   phone with you.

23          But what I would hope is, is that this process is

24   going to proceed expeditiously and without a hitch, and if

25   there's a problem, then Mr. Crowley and Mr. Cooper can talk.

29

 1    And then if you can't figure it out, we'll try and resolve it.

 2             All right?

 3             **MR. SMYTH:**  Thank you, your Honor.

 4             **THE COURT:**  All right.  Mr. Smyth, you asked that I

 5    impose some deadlines.  Let's wait and see what Ms. Derwin says

 6    next week before I look at that.  All right?

 7             **MR. SMYTH:**  Thank you, your Honor.

 8             **THE COURT:**  Okay.  But, Ms. Derwin, I'm assuming in

 9    the month of July this process is going to be pretty much

10    accomplished, and that the documents are going to be loaded on,

11    and they're going to be ranked, and the training is going to

12    occur.  I don't know if the ranking will be able to be

13    completed by that time.

14             And then -- then, you know, sometime towards the end

15    of the month, the documents, I hope, will get ranked -- or in

16    August -- and the quality assurance will be finished

17    (indiscernible) will happen by the middle of August.

18             That's my hope.

19             All right, Ms. Derwin?

20             **MS. DERWIN:**  Yes, your Honor.  And I'll provide the

21    update next Thursday regarding the status of the uploading.

22             **THE COURT:**  All right.  And are you and Mr. Smyth

23    working out his production for you?

24             **MS. DERWIN:**  I hope so.  We have a follow-up meet and

25    confer scheduled for next -- at the beginning of next week.

1          **THE COURT:**  All right.  Okay.  Counsel, if there's

2    nothing further, I'm going to let everybody go.

3          **MR. SMYTH:**  Nothing further --

4          **MR. CROWLEY:**  Your Honor, Mr. Crowley.  I just wanted

5    to clarify something before we get off the phone so we don't

6    need another call.

7          Your Honor did say that we were going for a 75

8    percent level of recall?

9          **THE COURT:**  Thank you, Mr. Crowley.  Yes.  That's our

10   goal, 75 percent.  I'm hoping it's going to be closer to 85

11   percent.  But that's the minimum is going to be 75 percent.

12         If it's less than 75 percent, we're going to have to

13   figure out what we're going to do.

14         **MR. CROWLEY:**  Thank you, your Honor.

15         **MR. COOPER:**  Your Honor, do you understand that --

16   does the Court understand that 75 percent recall is not the

17   same as 75 percent precision or 75 percent accuracy?

18         **THE COURT:**  I know there's a difference, and I don't

19   quite understand the distinction, Mr. Cooper.  You can tell me

20   what I'm -- what -- how I'm mistaking them.

21         **MR. COOPER:**  What I'd prefer to do is to -- to

22   document that in an e-mail rather than do it impromptu.  I want

23   to make sure I get the definition correct.

24         I also want to make the Court aware -- I know you're

25   talking about expeditiousness and deadlines -- just understand

1    that the QA steps will add to the time line, because it's extra

2    work to be done.

3            I just didn't want the Court to be surprised later

4    about timing.

5            **THE COURT:**  I understand.  I do know that this may

6    add additional time.

7            Mr. Crowley --

8            **MS. DERWIN:**  Your Honor --

9            **THE COURT:**  Go ahead.

10           **MS. DERWIN:**  -- (indiscernible) what I understand.

11   The Court is not changing its original Order that, at this

12   time, we're limiting the production to the 10,000 top-ranked

13   documents, correct?

14           **THE COURT:**  That's right.  That's right.

15           **MS. DERWIN:**  Because my understanding is that this

16   recall -- or level that you're talking about was -- would -- is

17   not necessarily tied to that number of 10,000.  It could

18   dramatically change that number.

19           I just want to make sure that I'm clear that, at this

20   point, we are ordered to produce the top 10,000 highest ranked

21   documents?

22           **THE COURT:**  Yeah.

23           **MS. DERWIN:**  That's what we're asking Equivio to do?

24           **THE COURT:**  It's not going to change the number of

25   documents you're going -- you're going to turn over or the

32

1    rankings, the top 10,000 ranked documents.

2           What it may do is, is let's say that it's -- it's

3    significantly lower than 75 percent.  The Plaintiffs may come

4    back and say the top 10,000 ranked documents are not actually

5    the most important documents -- that they are overlooking

6    something, or there's something being missed.

7           **MS. DERWIN:**  Okay, your Honor.  I just wanted to make

8    sure I understood so that we're proceeding properly.

9           **THE COURT:**  All right.  Mr. Crowley, what's the

10   difference between the level of recall of 75 percent and 75

11   percent accuracy?

12          **MR. CROWLEY:**  Well, two terms, your Honor:  recall

13   and precision.

14          The level of -- the recall percentage is the

15   percentage of the relevant responsive information that was

16   actually retrieved.  The level of precision is, of the

17   information retrieved, what percentage was relevant.

18          **THE COURT:**  Okay.  All right.  Mr. Cooper, you don't

19   have to send me an e-mail at this time.  Let's wait and see if

20   there's any issue, and then you can explain it to me.

21          All right?

22          **MR. COOPER:**  That's fine.  Can I just comment on what

23   Mr. Crowley just said briefly?

24          **THE COURT:**  Sure, you can.

25          **MR. COOPER:**  Thank you.  So he defined the recall as

1    the percentage of relevant responsive documents retrieved.  As

2    Ms. Derwin pointed out, it's -- that's looking for responsive

3    documents.  It's not the ranking.

4              So the -- it will -- the recall number -- I mean, it

5    -- if there are several hundred thousand responsive documents,

6    whatever their ranking, 75 percent would be 150,000 documents

7    that are responsive.  It still goes back to the ranking of

8    what's the top 10,000.

9              **MR. SMYTH:**  No.  Your Honor, I'm restraining myself

10   from re-engaging in the argument.  Are we still -- are we still

11   arguing about whether we're doing Q&A or have we moved past

12   that?

13             **THE COURT:**  We're still doing Q&A.

14             **MR. SMYTH:**  Okay.  I mean --

15             **THE COURT:**  All right?  And --

16             **MR. SMYTH:**  (Indiscernible) --

17             **THE COURT:**  -- so what they're -- here's -- well,

18   what -- here's what I think is going to happen.

19             The computer is going to rank the documents, followed

20   -- which will be followed by the quality assurance.

21             Then the Plaintiff -- let's assume it's 75 percent or

22   greater.  Then I don't think I'm going to hear from either

23   side.

24             If it's 60 percent, then the Plaintiffs may come back

25   and say, "Wait.  Before you turn over those 10,000 documents,

1  it's only -- the level of recall is only 60 percent; therefore,

2  it's not -- it's not good enough, and can we go back and

3  retrain it or something?"

4         Am I right, Mr. Crowley?

5         **MR. CROWLEY:**  Yes, your Honor.

6         **THE COURT:**  Okay.  That's, Mr. Smyth -- that's what I

7  understand we're going to do.  All right?  So that is -- we're

8  not increasing the number of documents that are ultimately

9  going to be produced by the City.

10        What we're trying to do is make sure that we're going

11 to turn over the 10,000 most important documents that the

12 computer finds, and that then those 10,000 documents are going

13 to be the most important -- or within a margin of error.

14        Mr. Cooper, is that the way you understand it?

15        **MR. COOPER:**  Essentially correct.  We'll just work

16 through it, your Honor.

17        **THE COURT:**  All right.  Okay.  Ms. Derwin, anything

18 before I let you go?

19        **MS. DERWIN:**  No.  Thank you, your Honor.

20        **THE COURT:**  So when you finish the process, and then

21 let's delay it a little bit longer before you do the

22 production, and let them do the quality assurance, and make

23 sure that we know what the level of recall number is.

24        **MS. DERWIN:**  Yes, your Honor.

25        **THE COURT:**  All right.  Mr. Smyth, you all right with

35

1    that?

2            **MR. SMYTH:**  Yes, your Honor.

3            **THE COURT:**  Okay.  Folks, I'll talk to you soon.

4    Bye-bye.

5            **MR. SMYTH:**  Thank you.

6            **MS. DERWIN:**  Thank you, Judge.

7        **(This proceeding was adjourned at 12:12 p.m.)**

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    August 18, 2014  _

TONI HUDSON, TRANSCRIBER