1  MICHAEL G. ALLEN, *pro hac vice*
   JENNIFER I. KLAR, *pro hac vice*
2  D. SCOTT CHANG #146403
   LAURA GAZTAMBIDE-ARANDES
3  #298373
   RELMAN, DANE & COLFAX PLLC
4  1225 19th St. NW, Suite 600
   Washington, DC 20036
5  Telephone: (202) 728-1888
   Facsimile: (202) 728-0848
6  schang@relmanlaw.com

7  MARONEL BARAJAS #242044
   DISABILITY RIGHTS LEGAL
8  CENTER
   350 South Grand Ave., Suite 1520
9  Los Angeles, CA 90071
   Telephone: (213) 736-1496
10 Facsimile: (213) 736-1428
   maronel.barajas@drlcenter.org

DAVID GEFFEN #129342
DAVID GEFFEN LAW FIRM
1717 4th Street, 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
geffenlaw@aol.com

DARA SCHUR #98638
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510) 267-1201
dara.schur@disabilityrightsca.org

AUTUMN ELLIOTT #230043
SRIVIDYA S. PANCHALAM #265398
DISABILITY RIGHTS CALIFORNIA
350 South Bixel Street, Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
autumn.elliott@disabilityrightsca.org

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA
(WESTERN DIVISION)

| | |
|---|---|
| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, *et al.*, <br><br>                        Plaintiffs, <br><br> vs. <br><br> CITY OF LOS ANGELES, CALIFORNIA, *et al.*, <br><br>                        Defendants. | Case No.: 12-CV-551 FMO (PJWx) <br><br><br> DECLARATION OF SHAWNA PARKS IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES |

1    I, Shawna Parks, declare as follows:

2    1.    I make this declaration of my own personal knowledge of the facts stated

3    herein.  If called as a witness in this proceeding, I could and would competently testify

4    thereto.

5    2.    I am the principal attorney in the Law Office of Shawna L. Parks, which I

6    founded in 2014.

7    3.    I am a member of the State Bar of California and am admitted to practice

8    before this court.

9    4.    I am a 1999 graduate of U.C. Berkeley School of Law, and a 1995

10   graduate of U.C. Berkeley. From 1999-2000 I was a Fulbright Scholar in Budapest,

11   Hungary, where I researched a recently enacted nondiscrimination statute, worked on

12   developing test litigation, and co-organized a conference of Eastern European

13   disability rights advocates.

14   5.    From early 2012 through late 2013, I was a Director of Litigation at

15   Disability Rights Advocates in Berkeley, California.  From 2005 through early 2012 I

16   was at the Disability Rights Legal Center ("DRLC"), in Los Angeles, California,

17   where I was Legal Director from 2009 through my departure.

18   6.    From 2007 through 2012, I was also an Adjunct Professor at Loyola Law

19   School in Los Angeles, where I supervised DRLC's litigation externship program and

20   co-taught Loyola's Disability Rights and Special Education Law class.

21   7.    Prior to my work at the DRLC I was a staff attorney and Equal Justice

22   Works Fellow at Disability Rights Advocates from 2000 through 2003.  From 2003

23   through 2004, I was an associate at what was then known as Schonbrun DeSimone

24   Seplow Harris & Hoffman, where I worked primarily on race and gender

25   discrimination employment cases.

26   8.    I have extensive expertise in the substantive areas of disability rights,

27   civil rights and education, including special education. I have litigated numerous

28

1  cases, including both class actions and individual cases, in these fields.

2      9.      This year I will be receiving the 2016 "Breaking Education Barriers"

3  award from Learning Rights Law Center. I was named a California Lawyer magazine

4  attorney of the year for 2011 in the area of juvenile law, and in 2013 in the area of

5  disability rights. In 2010 and 2012 I was named one of the Top 100 Women Litigators

6  in California by the Daily Journal. From 2006-2009 I was named a Southern

7  California Rising Star by Superlawyers Magazine.  I was also a Ninth Circuit Judicial

8  Conference Lawyer Representative for the Central District from 2009 through 2012.

9      10.      I currently litigate civil rights, disability rights, education and juvenile

10  justice reform cases. My current education work has a particular emphasis on cases

11  involving youth with disabilities who have behavior issues and/or where there is court

12  or police involvement, with the goal being to ensure these youth remain in supportive

13  education settings and out of juvenile halls, jails and prisons. I also work on a number

14  of cases regarding youth with disabilities in the form of chronic medical conditions,

15  and their entitlement to accommodations and access to programs in schools.

16      11.      In addition to this work, however, I continue to litigate disability rights

17  cases, including cases addressing access to government services, as well as

18  employment cases. I have particular experience litigating complex cases against public

19  entities, most often with the goal of system reform, and those types of cases have

20  represented the vast majority of cases during my career.

21      12.      During my career, I have been class counsel on numerous disability rights

22  and special education cases. Most recently, I was lead trial counsel in *BCID, et al. v.*

23  *Bloomberg*, 980 F.Supp. 2d 588, 644 (S.D.N.Y. 2013), a case that was the first case of

24  its kind to go to trial, addressing the failure of New York City to address the needs of

25  its more than 900,000 people with disabilities in its large scale disaster plans. After a

26  two week trial, the Court found against the City in November of 2013. The Yale Law

27  Journal published an article on this case: Adrien A. Weibgen, The Right to Be

28

*Independent Living Center of Southern California, et al. v. City of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
Declaration of Shawna Parks in Support of Plaintiffs' Motion for Attorneys' Fees

1  Rescued: Disability Justice in the Age of Disaster, 124 Yale L.J. 2406 (2015)

2      13.    I have worked on numerous other class and complex actions addressing

3  disability rights, including: *CALIF, et al., v. City of Los Angeles*, et al., 2011 WL

4  4595993 (C.D. Cal. 2011), Case No. 2:09-cv-00287-CBM-RZ (class action addressing

5  failure to address the needs of people with disabilities in emergency plans of the City

6  and County of Los Angeles; summary judgment granted in favor of plaintiffs against

7  City, successful settlement with County); *Casey A. v. Gundry*, Case No. Case No. CV

8  10-00192 GHK (FMOx) (successfully settled class action addressing failure to

9  provide education and special education to thousands of youth detained in Los

10  Angeles County's largest juvenile detention camp); *Goldkorn v. County of San*

11  *Bernardino*, (successfully settled class action addressing failure to provide physical

12  and programmatic access to all courthouses in the San Bernardino court system);

13  *Sengupta v. City of Monrovia*, et al., Case No. CV 09-0795 ABC (JWJx) (C.D. Cal.)

14  (successfully settled class action addressing failure to provide effective

15  communication for people who are deaf and hard of hearing in field and jail settings

16  by the Monrovia Police Department); *Lauderdale v. Long Beach Police De*partment,

17  Case No. CV 08-979 ABC (JWJx) (successfully settled class action addressing failure

18  to provide effective communication for people who are deaf and hard of hearing in

19  field and jail settings by the Long Beach Police Department); *Jackson, et al. v.*

20  *California State University San Bernardino*, et al., Case No. EDCV 05-1110 VAP

21  (SGLx) (C.D. Cal.) (successfully settled class action on behalf of students with

22  disabilities regarding systemic failure to provide accommodations and physical access

23  on campus); *Valenzuela v. County of Los Angeles*, Case No. CV 02-9092 ABC (JWJx)

24  (C.D. Cal.)  (successfully settled class action addressing failure to provide effective

25  communication for people who are deaf and hard of hearing in field and jail settings

26  by Los Angeles County Sheriff's Department); *Barden v. Sacramento*, 292 F.3d 1073

27  (9th Cir. 2002) (case of first impression regarding physical access to public

28

1    sidewalks); DCARA v. SFO, Case No. C-02-1844 MEJ (EDL) (N.D. Cal.)

2    (communication access at San Francisco International Airport); *Farrell v. Harper*, No.

3    R6 03079344 (Alameda County Sup. Ct.) (provision of services to youth with

4    disabilities in California Youth Authority).

5        14. Additional non-class examples of my cases include, *Woods v. Alexandria*

6    *Housing Partners*, Case No. CV 07-08262 MMM (JWJx) (C.D. Cal.) ($1 million

7    settlement with broad injunctive relief addressing systemic failure to provide

8    reasonable accommodations and habitable living conditions for low income tenants

9    with disabilities in city redevelopment project; preliminary injunction issued ordering

10   defendants to provide accommodations, habitable living conditions and relocation

11   benefits, including for evicted tenants); *McFrazier Coffee v. Los Angeles Metropolitan*

12   *Medical Center*, Los Angeles Sup. Court Case No. BC376737(successfully settled

13   case addressing need for effective communication for people who are deaf or hard of

14   hearing in critical mental health settings); *Park v. Anaheim Union High School*

15   *District*, 464 F.3d 1025 (9th Cir. 2006) (successful petition for rehearing resulting in

16   change of panel decision and determination that plaintiff was prevailing party under

17   Individuals with Disabilities Education Act); and *Keith H. v. Department of Children*

18   *and Family Services*,228 F.R.D. 652 (C.D. Cal. 2005) (successfully settled case of

19   first impression regarding foster child regarded as having a disability and removed

20   from mainstream education); rule making proceeding 01-05-047 at the CPUC during

21   the 2001 energy crisis (representing needs of consumers on medical baseline energy

22   program, and addressing elimination of barriers to that program, focusing on low

23   income and non-English speaking populations).

24       15.    I follow settlements and judgments in accessibility cases.  Based on my

25   knowledge of accessibility cases, I believe the settlement in this action is

26   extraordinary.  First, it is the only accessibility settlement that I am aware of that

27   remedies the accessibility barriers in a city's entire affordable housing portfolio.

28

1  Second, to the best of my knowledge, the settlement requires more housing units

2  (4,000) be made accessible under the Uniform Federal Accessibility Standard (UFAS)

3  than any other settlement or judgment in history.

4      16.    Based on my experience working at DRLC and my background working

5  in the disability rights field in California, DRLC is one of the leading disability rights

6  law firms in California.  I have also worked with many lawyers at Disability Rights

7  California.  I have found that attorneys at DRLC uniformly have deep subject matter

8  expertise in disability rights law, outstanding legal judgment and are highly skilled in

9  litigating disability rights cases.  They routinely produce outstanding results for their

10  clients and for people with disabilities in Los Angeles.  This case is a prime example

11  of the exemplary results of litigation initiated by DRLC attorneys.

12      17.  I have worked directly with Paula Perlman, Michelle Uzeta and Maronel

13  Barajas, and found them all to be exceptional lawyers who are deeply committed to

14  the issues.

15      18. In particular, I worked directly with Paula Pearlman for a number of years

16  and found her to be committed, passionate and very knowledgeable about her work.

17  Ms. Pearlman has a lengthy background in public interest law, having worked as a

18  Supervising Attorney at the California Women's Law Center, among others, before

19  her tenure at DRLC. She is a creative and energetic lawyer who is extremely

20  committed to her cases and to serving the disability and low-income communities. Ms.

21  Pearlman was exceptionally skilled at developing innovative and comprehensive

22  solutions for her clients. She wasd instrumental in settling a number of significant

23  cases, including but not limited to *Rodde v. Bonta,* which kept open Rancho Los

24  Amigos Rehabilitation Hospital after the issuance of a preliminary injunction, and was

25  a major victory for the disability community. Ms. Pearlman was extremely active in

26  the legal community, have served on the California Commission on Access to Justice,

27  Employment Round Table of Southern California (ERTSC), formerly Southern

28

*Independent Living Center of Southern California, et al. v. City of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
Declaration of Shawna Parks in Support of Plaintiffs' Motion for Attorneys' Fees

1  California Employers Roundtable (SCERT), and the board of the Legal Aid

2  Association of California, among many others. After a number of years as DRLC's

3  Executive Director, Ms. Pearlman is now Assistant Chief Counsel at the Department

4  of Fair Employment and Housing.

5       19. I have also worked with Michelle Uzeta. Ms. Uzeta also has extensive

6  experience with respect to disability rights impact litigation, and has a long history of

7  working at public interest organizations and on behalf of the disability community.

8  Before her time at DRLC she worked for a number of years at Disability Rights

9  California and was the Litigation Director at the Housing Rights Center. I have

10  worked directly with Ms. Uzeta on a number of occasions, including on *Zerne, et al. v.*

11  *Los Angeles Homeless Services Authority, et al.*, a case that challenged the refusal to

12  serve homeless individuals with disabilities using service animals. Throughout my

13  time working with her, I found Ms. Uzeta to be a thoughtful and dillegent advocate on

14  behalf of her clients, who was innovative in her legal work. She is an active member

15  of the disability rights legal community, regularly speaking at and organizing

16  conferences on cutting-edge issues.

17       20. I have also worked closely with Maronel Barajas for a number of years. Ms.

18  Barajas is a currently a Managing Attorney at the Disability Rights Legal Center,

19  which she joined in February 2011.  Ms. Barajas has worked in several public interest

20  areas including housing, labor union disputes, employment, and education. Prior to

21  joining the Disability Rights Legal Center, Ms. Barajas was an associate at the civil

22  rights law firm of Traber & Voorhees, where she focused on employment

23  discrimination cases, wage and hour class actions, and educational rights cases. Before

24  that Ms. Barajas was the Director of the Disability Rights Legal Center's Education

25  Advocacy Program. I have worked directly with Ms. Barajas on numerous cases, and

26  continue to consult with her, and know Ms. Barajas to be a thorough, diligent and

27

28

1   zealous in her legal representation. Her legal skills are exceptional, and she is a tireless

2   advocate for the community.

3          I declare under penalty of perjury under the laws of the United States that the

4   foregoing is true and correct to the best of my knowledge, information and belief.

5          Executed this 5th day of October, 2016, in Los Angeles, California.

6

7

8

9   _____

10                  Shawna Parks

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28