**FILED**
CLERK, U.S. DISTRICT COURT

SEPT 7 2017

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ vdr _____ **DEPUTY**

# UNITED STATES DISTRICT COURT

JS-6

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, *et al.* | CASE NO.: CV 12-0551 FMO (PJWx) |
| Plaintiffs, | **[PROPOSED] JUDGMENT PURSUANT TO SETTLEMENT AGREEMENT BY AND BETWEEN CRA/LA, A DESIGNATED LOCAL AUTHORITY, SUCCESSOR AGENCY TO THE COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, AND PLAINTIFFS** |
| vs. | |
| CITY OF LOS ANGELES, CALIFORNIA, *et al.* | |
| Defendants. | |

4821-0731-7070.1      1

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

WHEREAS, the CRA/LA, a Designated Local Authority, a defendant in this action and the successor agency to the Community Redevelopment Agency of the City of Los Angeles (the "CRA"), and the Independent Living Center of Southern California ("ILCSC"), the Fair Housing Council of the San Fernando Valley ("FHC") and Communities Actively Living Independent and Free ("CALIF") (collectively referred to herein as "Plaintiffs") have entered into a Settlement Agreement and Release of Claims, attached as Exhibit A, which fully resolves claims asserted by Plaintiffs against the CRA; and

WHEREAS, the Court has jurisdiction over the subject matter of this action, the Plaintiffs, the CRA, and the Settlement Agreement; and

WHEREAS, upon consideration, the Court finds the Settlement Agreement to be fair, reasonable, and adequate.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1. For the purposes of this Judgment, the Court adopts the terms and definitions set forth in the Settlement Agreement attached as Exhibit A, and all terms of the Settlement Agreement are incorporated herein by reference.

2. This Judgment Pursuant to Settlement completely resolves this civil action between the CRA and Plaintiffs. The claims against the City of Los Angeles were previously resolved by Judgment Pursuant to Settlement Agreement by and between City of Los Angeles and Plaintiffs (Doc. 532, filed August 4, 2016). This does not resolve this action between Plaintiffs and the remaining nominal defendants.

3. In accordance with the terms of the Settlement Agreement, this Court reserves exclusive and continuing jurisdiction to interpret and enforce the terms of the Settlement Agreement during the Settlement Term, and to resolve any disputes that may arise during the Settlement Term.

4821-0731-7070.1                    2

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

4. The court determines that there is no reason to delay entry of this Judgment Pursuant to Settlement Agreement By and Between the CRA and Plaintiffs.

**IT IS SO ORDERED and ADJUDGED**

Dated: Sept. 7, 2017

_____/s/_____
The Hon. Fernando M. Olguin
UNITED STATES DISTRICT JUDGE

Attachment: Exhibit A

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

# Exhibit A

**Settlement Agreement and Release of Claims**

1  MICHAEL G. ALLEN, *pro hac vice*
   JOHN P. RELMAN, *pro hac vice*
2  JENNIFER I. KLAR, *pro hac vice*
   RELMAN, DANE & COLFAX PLLC
3  1225 19th St. NW, Suite 600
   Washington, D.C. 20036
4  Telephone: (202) 728-1888
   Facsimile: (202) 728-0848
5  mallen@relmanlaw.com
6  schang@relmanlaw.com

7  MARONEL BARAJAS #242044
   DISABILITY RIGHTS LEGAL CENTER
8  Loyola Public Interest Law Center
   256 S. Occidental Blvd., Suite B
9  Los Angeles, CA 90057
   Telephone: (213) 736-1496
10 Facsimile: (213) 736-1428
11 Maronel.barajas@drlcenter.org

12

13 *Attorneys for Plaintiffs*

14

15

DAVID GEFFEN #129342
DAVID GEFFEN LAW FIRM
530 Wilshire Blvd., Ste. 205
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
David@Davidgeffenmediation.com

DARA SCHUR #98638
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Ste. 500
Oakland, CA 94612
Telephone: (510) 267-1200
Facsimile: (510)267-1201
Dara.Schur@disabilityrightsca.org

AUTUMN ELLIOTT #230043
SRIVIDYA PANCHALAM #265398
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Street., Ste. 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca.org

16
17 **UNITED STATES DISTRICT COURT FOR THE**
   **CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)**

18 INDEPENDENT LIVING CENTER OF ) Case No.: 12-CV-00551 FMO (PJWx)
19 SOUTHERN CALIFORNIA, *et al.*      )
                                      )
20       Plaintiffs,                  ) **SETTLEMENT AGREEMENT AND**
                                      ) **RELEASE OF CLAIMS BY AND**
21    vs.                             ) **BETWEEN THE CRA/LA AND**
                                      ) **PLAINTIFFS**
22                                    )
                                      )
23 CITY OF LOS ANGELES,               )
   CALIFORNIA, and COMMUNITY          )
24 REDEVELOPMENT AGENCY OF THE        )
   CITY OF LOS ANGELES,               )
25                                    )
                                      )
26       Defendants.                  )
                                      )
27

28

4813-2777-6588.1

# TABLE OF CONTENTS

SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS ................1

I.   RECITALS ...................................................................................1

    1.   Commencement of Litigation .....................................1

    2.   Second Amended Complaint ......................................1

    3.   Allegations in SAC ....................................................1

    4.   CRA ............................................................................2

    5.   Motion to Dismiss .....................................................2

    6.   Claims ........................................................................2

    7.   City Settlement .........................................................2

    8.   Motion for Judgment on the Pleadings .....................3

    9.   Program Access Allegations .....................................3

    10.  CRA's Housing Program ...........................................3

    11.  Judicial Findings ......................................................3

    12.  Federally Assisted Buildings ....................................3

    13.  Cooperation Agreements ...........................................4

    14.  Resolution of Claims ................................................4

    15.  Release of Claims .....................................................4

    16.  Settlement Goals .......................................................4

    17.  Authorization ............................................................5

II.  DEFINITIONS ...........................................................................5

    1.   Accessible. ................................................................5

    2.   Accessible Housing Development. ............................5

    3.   Accessible Housing Units. ........................................5

4813-2777-6588.1

ii

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

4.   Accessibility Laws. ....................................................................5

5.   Accessibility Standards ............................................................5

6.   Alternative Accessibility Standard .........................................6

7.   Auxiliary Aids. ..........................................................................6

8.   Certification of Compliance with Accessibility Standards. .7

9.   CRA Insurers ............................................................................7

10.  Department of Finance. ...........................................................7

11.  Effective Date. ..........................................................................7

12.  Governing Board. .....................................................................7

13.  Housing Development or Development ...................................7

14.  Housing Policies. ......................................................................8

15.  Housing Unit or Unit. ..............................................................8

16.  Housing Unit with Hearing/Vision Features. .......................8

17.  Housing Unit with Mobility Features. ...................................8

18.  Judgment. ..................................................................................9

19.  Operative Date .........................................................................9

20.  Owner. .......................................................................................9

21.  Oversight Board. ......................................................................9

22.  Person with a Disability. .........................................................9

23.  Program Access. .....................................................................10

24.  Reasonable Accommodation. ................................................10

25.  Reasonable Modification. ......................................................10

26.  Recognized Obligation Payment Schedule or ROPS. .........10

27.  Settlement Coordinator or Section 504/ADA Coordinator
     for Accessible Housing. ..........................................................10

4813-2777-6588.1

iii

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

28. Substantial Rehabilitation. ....................................................10

29. Target Number of Accessible Units. ....................................10

30. Uniform Federal Accessibility Standards or UFAS. .........11

III. SCOPE AND TERMS OF THE AGREEMENT .......................11

1. Recitals ...............................................................................11

2. Jurisdiction .........................................................................11

3. Binding Effect .....................................................................11

4. Purpose of Settlement .........................................................11

5. Approval by the District Court ...........................................12

6. Term of Agreement .............................................................12

7. CRA's Commitment to Provide Affordable, Accessible
   Housing ...............................................................................12

8. Housing Accessibility Fund ................................................13

9. Implementation Costs .........................................................13

10. Placement on ROPS ............................................................13

11. Other Actions ......................................................................15

12. CRA's Compliance ..............................................................15

13. Reporting of Activities to Ensure Compliance ...................16

14. Specific Commitments to Achieving Accessibility .............16

    (a) Architectural Accessibility ...........................................16
    (b) Accessible Housing Unit Plan .......................................17
    (c) Qualifications of Experts ..............................................20
    (d) Development of Accessible Housing Unit Plan ............20
    (e) Accessibility in Existing Buildings to be Remediated ..21
    (f) Other Steps to Ensure Accessibility .............................21
    (g) Recorded Accessibility Covenants ...............................22

15. Reporting Requirements ......................................................22

4813-2777-6588.1

iv

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

16.  **Report Contents** ....................................................................22

    (a)  Compliance Efforts ...........................................22
    (b)  Accessible Unit Progress Information .........................23
    (c)  Housing Policy Progress Information .........................23
    (d)  Specific Required Information .................................23
    (e)  Termination of Reporting .....................................24

17.  **Quantitative Data** ................................................................24

18.  **Appointment of Settlement Coordinator ("Settlement Coordinator" or "Coordinator")** .........................................24

19.  **Responsibilities and Authority of the Settlement Coordinator** ...................................................................25

    (a)  Handle Complaints ............................................25
    (b)  Coordinate Compliance Activities. ...........................25

20.  **Plaintiffs' Rights With Respect to Testing** .........................25

**IV.  MONITORING** ...........................................................................**26**

1.  **Court Appointment of Monitor** .............................................26

    (a)  Monitor Qualifications .......................................26
    (b)  Monitor Responsibility and Authority .........................26
    (c)  Records and Other Information Available to Monitor ..28
    (d)  Meetings with Monitor .......................................28
    (e)  Cost of Monitor .............................................29

**V.  RECORD KEEPING AND REPORTING** ...............................................**29**

1.  **Record Keeping and Reporting** ..............................................29

2.  **CRA's Duty to Retain Documents** ..........................................30

**VI.  MUTUAL RELEASE OF CLAIMS** ...................................................**30**

1.  **General Release of CRA Insurers.** ............................................30

2.  **Plaintiffs' Release of Claims Against the CRA Defendants** ...................................................................31

3.  **Defendant's Release of Claims** ..............................................32

4813-2777-6585.1

v

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

VII.  DISPUTE RESOLUTION ..................................................33

     1.    Meet and Confer Obligation ..................................33

     2.    Mediation ..............................................................33

     3.    Resolution by the District Court .........................34

VIII.  COMPENSATION AND FEES .....................................34

     1.    Compensation to Plaintiffs ..................................34

     2.    Attorneys' Fees ....................................................34

     3.    Prospective Monitoring Fees and Costs for Plaintiffs' Counsel ................................................34

IX.  COURT'S RETENTION OF JURISDICTION .............35

X.  MISCELLANEOUS ...........................................................35

     1.    Entire Agreement; Severability ...........................35

     2.    Modification of Settlement Agreement ...............36

     3.    Conditions Precedent ...........................................37

     4.    Notice to the Parties ............................................37

     5.    Opportunity to Consult with Counsel .................39

     6.    CRA/LA Assignment of Obligations. ................39

     7.    Settlement Agreement Binding on Successors and Assigns .........................................................39

     8.    Titles .....................................................................39

     9.    Weekends and Holidays ......................................39

     10.   Counterparts and Facsimiles ...............................39

     11.   Parties Agree to Cooperate .................................40

     12.   Construction ........................................................40

     13.   Signatures ............................................................40

4813-2777-6588.1           vi

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

**EXHIBITS** ............................................................................................................**44**

Exhibit A: Older Properties Excluded from City Settlement

Exhibit B: Federally-Funded CRA Properties

Exhibit C: Regulatory Agreement Between CRA/LA and Owner

Exhibit D: [Proposed] Judgment Pursuant to Settlement Agreement

Exhibit E: Certification of Compliance with Accessibility Standards

4813-2777-6588.1

vii

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is entered into between the Defendant CRA/LA, A Designated Local Authority ("CRA/LA") successor to The Community Redevelopment Agency of the City of Los Angeles (the "CRA"), and Independent Living Center of Southern California ("ILCSC"), Fair Housing Council of San Fernando Valley ("FHC"), and Communities Actively Living Independent and Free ("CALIF") (ILCSC, FHC and CALIF are collectively referred to herein as "Plaintiffs"). The CRA/LA, the CRA, and the Plaintiffs are referred to herein collectively as "the Parties."

### I.    RECITALS

This Agreement is made and entered into with reference to the following facts:

1.    **Commencement of Litigation**. Plaintiffs commenced litigation against the City of Los Angeles ("City") and the ("CRA"), The case is known as *Independent Living Center of Southern California, et al. v. CRA of Los Angeles, et al.*, filed on January 13, 2012, in the U.S. District Court for the Central District of California, Case No. 2:12-cv-00551-FMO-PJW (the "Litigation"). Plaintiffs also joined, for Rule 19 purposes, a total of 61 owners of multifamily properties that had been assisted by the City or the CRA ("Owner Defendants").

2.    **Second Amended Complaint**. The CRA was dissolved on February 1, 2012 as a result of the dissolution of redevelopment in California. On August 20, 2012, the Plaintiffs filed a Second Amended Complaint ("SAC"), which remains the operative complaint in this proceeding. The SAC named as an additional defendant CRA/LA, the successor agency to the CRA, to which any pending litigation is automatically transferred pursuant to Calif. Health & Safety Code § 34173(g). For purposes of this Agreement, the Parties hereafter use the term CRA to refer collectively to the former agency and its statutory successor, unless specifically noted.

3.    **Allegations in SAC**. As relevant to this Settlement Agreement, the

SAC alleges that the CRA engaged in a pattern or practice of discrimination against people with disabilities—in violation of Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; and California Government Code Section 11135, et seq. ("Section 11135")—by failing to ensure that multifamily housing funded, developed or significantly assisted by the CRA is accessible and made meaningfully available to people with disabilities.

4. **CRA**. At all relevant times, the CRA has been a public entity within the meaning of the ADA, a recipient of federal financial assistance within the meaning of Section 504, and a recipient of state financial assistance within the meaning of Section 11135.

5. **Motion to Dismiss**. On November 29, 2012, the Hon. S. James Otero denied the CRA's motion to dismiss with respect to Plaintiffs' claims under Section 504, the ADA and Section 11135. Dkt. 209.

6. **Claims**. Plaintiffs sought by this Litigation to ensure that multifamily housing developments in Los Angeles built or rehabilitated at least in part with public funds or in connection with CRA housing programs are made accessible and meaningfully available to people with disabilities. They also sought to ensure that the CRA comply with its own Program Access and other obligations to people with disabilities with respect to the operation of multifamily housing programs as they relate to people with disabilities, in accordance with the requirements of Section 504, the ADA, and Section 11135.

7. **City Settlement**. Plaintiffs settled their claims with the City, as evidenced by a Judgment Pursuant to Settlement Agreement By and Between the City of Los Angeles and Plaintiffs, having been entered on August 4, 2016, at Dkt. 532 (Judgment) and 530-2 (Settlement Agreement and Release of Claims) (collectively referred to as "City Settlement Agreement"). Most of the Owner Defendants remain parties to the Litigation, and their status is not affected by the

City Settlement Agreement or by this Agreement.

8. **Motion for Judgment on the Pleadings**. By Order of August 31, 2016, the Court denied the CRA's motion for judgment on the pleadings, finding, in part, that the California dissolution statute automatically transferred litigation to the successor agency. Dkt. 535, at 7. The Court also found that, because the CRA's accessibility obligations under Section 11135, and Title II of the ADA and its implementing regulations (which are incorporated into Section 11135 by reference) "were imposed by state law and existed prior to June 28, 2011," they were "enforceable obligations" as that term is defined by dissolution statute. Dkt. 535, at 6, citing to Cal. Health & Safety Code § 34171(d)(1)(C).

9. **Program Access Allegations**. In the SAC, Plaintiffs claim that the CRA failed to comply with the architectural and Program Access obligations imposed by the federal government—pursuant to Section 504 and the ADA and their implementing regulations—and by the State of California, pursuant to Section 11135.

10. **CRA's Housing Program**. Those claims arise out of the CRA's conduct in operating its housing program under the Redevelopment Statutes and its provision of financial and other assistance, between July 1, 1988 and June 28, 2011, to the properties identified in Exhibit A and Exhibit B.

11. **Judicial Findings**. The Court found that the legal liabilities arising under those statutes were not part of the "rights, powers, duties and housing assets" transferred to the City under Calif. Health & Safety Code Secs. 34176(a)(1) and (e). See Dkt. 535, at 7.

12. **Federally Assisted Buildings**. Plaintiffs' federal law claims also specifically address multifamily apartment buildings that received direct Federal financial assistance through the CRA after July 11, 1988, and/or (2) were designed, constructed, altered, operated, administered, or financed, in whole or in part, in connection with a program administered in whole or in part by the CRA

4813-2777-6588.1                                    3

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

1 | since January 26, 1992.

2 | 13. **Cooperation Agreements**. Between 1995 and 2010, the CRA entered
3 | into agreements with the City, pursuant to which the City subsequently loaned or
4 | provided to the CRA certain federal funds from the U.S. Department of Housing and
5 | Urban Development ("HUD") granted or loaned to the City to support the
6 | development of affordable housing units in 22 specified Housing Developments.
7 | Those agreements between the City and the CRA clearly spelled out that the City
8 | was drawing upon federal funds as the source to fund the activities under the
9 | agreements and imposed upon the CRA specific development obligations, imposed
10 | by HUD grants or loans to ensure that each and every such Housing Development
11 | complied with federal Accessibility Standards pursuant to Section 504 and the ADA.
12 | Exhibit B is a list of the 22 Housing Developments governed by the agreements, all
13 | of which were entered into prior to June 28, 2011.

14 | 14. **Resolution of Claims**. The Parties now wish to effect a complete
15 | resolution and settlement of the claims, disputes, and controversies relating to the
16 | Plaintiffs' allegations in the Litigation, and to resolve their differences by settling
17 | such claims, disputes, and controversies under the terms set forth in this
18 | Agreement. Each Party acknowledges that this Agreement affects, among other
19 | things, the settlement of claims which are denied and contested by the other, and
20 | that nothing contained herein shall be construed as an admission of liability or
21 | wrongdoing by or on behalf of any Party, all of which liability is expressly denied.

22 | 15. **Release of Claims**. The Parties intend this Agreement to bind and
23 | apply to the CRA and Plaintiffs. Entry of Judgment pursuant to this Agreement
24 | shall extinguish all Released Claims (as defined below under Section VI) and
25 | constitute final and complete resolution of all issues addressed herein.

26 | 16. **Settlement Goals**. The goal of the Agreement is to significantly
27 | enhance the accessibility of multifamily housing in Los Angeles, the availability of
28 | fair, affordable and accessible housing for individuals with a variety of disabilities,

1  including mobility, visual and hearing disabilities, and the accessibility of the CRA's
2  housing programs, and to ensure compliance with the CRA's obligations under
3  Section 504, the ADA, and Section 11135.

4      17.  **Authorization**. In resolving this matter, the CRA represents that it is
5  acting in accordance with the direction of the Governing Board for the CRA/LA
6  pursuant to Calif. Health & Safety Code Section 34177(c) as part of its duty to meet
7  its Enforceable Obligations during the winding-down of the CRA's business.

## II.  DEFINITIONS

10     1.  **Accessible**. "Accessible," when used with respect to a Housing Unit or
11 a Housing Development, means and refers to full compliance with the requirements
12 of the Accessibility Standards for purposes of Section 504, the ADA, and Section
13 11135.

14     2.  **Accessible Housing Development**. "Accessible Housing
15 Development" means a Housing Development that is Accessible, including
16 Accessible public and common use areas, as required by Section 504 and the
17 ADA, as well as the number and type of Accessible Housing Units that are
18 required to be Accessible by this Agreement.

19     3.  **Accessible Housing Units**. "Accessible Housing Units" refers
20 collectively to Housing Units with Mobility Features and Housing Units with
21 Hearing/Vision Features.

22     4.  **Accessibility Laws**. "Accessibility Laws" means Section 504 of the
23 Rehabilitation Act of 1973, 29 U.S.C. §794 et seq,; the Americans with Disabilities
24 Act, 42 U.S.C. §12131 et seq.; California Government Code Section 11135 et seq.;
25 implementing regulations and design standards for each of the preceding statutes;
26 and the California Building Code.

27     5.  **Accessibility Standards**. For purposes of this Agreement,
28 "Accessibility Standards" means only the following compliance standards:

a. For Housing Developments constructed or substantially altered before March 15, 2012, the new construction requirements of 24 C.F.R. pt. 8, including 24 C.F.R. §§ 8.22 and 8.32 as well as the new construction requirements of UFAS, or their successor standards;

b. For Housing Developments constructed or substantially altered on or after March 15, 2012:

   i. the requirements in 5(a);

   ii. the Alternative Accessibility Standard; or

   iii. any future accessibility standard and other regulatory requirements applicable to newly constructed facilities in federally-assisted programs that may be adopted in a final rule issued by HUD pursuant to notice and comment rulemaking under Section 504 so long as such accessibility standard and regulatory requirements do not provide for less accessibility for persons with disabilities than either (i) or (ii).

6. **Alternative Accessibility Standard**. "Alternative Accessibility Standard" means and refers to the alternative accessibility standard for new construction set out in HUD's notice at 79 Fed. Reg. 29,671 (May 23, 2014), when used in conjunction with the new construction requirements of 24 C.F.R. pt. 8, 24 C.F.R. § 8.22, and the new construction requirements of 28 C.F.R. pt. 35, including the 2010 Standards for Accessible Design as defined in 28 C.F.R. § 35.104 and as applied to public entities (excluding any elevator exceptions).

7. **Auxiliary Aids**. "Auxiliary Aids" means and refers to aids, services, or devices that enable persons with vision, hearing, manual, or speech impairments to have an equal opportunity to participate in, or enjoy the benefits of, programs, services, or activities, including housing and other programs, services, and activities subject to the requirements of Section 504 of the Rehabilitation Act and/or the

1  Americans with Disabilities Act.  Auxiliary aids include but are not limited to the
2  aids, services, and devices set out in the definition of auxiliary aids auxiliary aids in
3  24 C.F.R. § 8.3 and the definition of auxiliary aids and services in 28 C.F.R. §
4  35.104.  *See also* 42 U.S.C. § 12103(1).
5      **8.    Certification of Compliance with Accessibility Standards**.
6  "Certification of Compliance with Accessibility Standards" means and refers to a
7  Certification issued by the CRA, certifying that the Housing Development and
8  accessible Housing Units meet the Accessibility Standards.  Said Certification of
9  Compliance with Accessibility Standards shall be substantially in the form of the
10 attached Exhibit E, as may be modified from time to time by written agreement
11 among the parties.
12     **9.    CRA Insurers**.  "CRA Insurers" means and refers to AIG and National
13 Union and all of their executors, assigns and successors, as well as their
14 administrators, agents and representatives acting in their official capacities.
15     **10.    Department of Finance**.  "Department of Finance" means and refers to
16 the State of California Department of Finance.
17     **11.    Effective Date**.  "Effective Date" means and refers to the effective date
18 of this Agreement, which is the date of the latest signature on this Agreement by any
19 of the Parties.
20     **12.    Governing Board.**  "Governing Board" means and refers to the board
21 created by the Governor of California pursuant to Health and Safety Code section
22 34173(d)(3)(A) to serve as the governing board of CRA/LA.
23     **13.    Housing Development or Development**.  "Housing Development" or
24 "Development" means and refers to the whole of one or more residential structures
25 and appurtenant structures, equipment, roads, walks, and parking lots that (1)
26 received or will receive any Federal financial assistance from or through the CRA
27 and/or (2) were or are designed, constructed, altered, operated, administered, or
28 financed in connection with a program administered by the CRA.

14. **Housing Policies**. "Housing Policies" means housing management policies adopted pursuant to this Agreement to ensure nondiscrimination, disability preferences, and other legally required practices related to people with disabilities, including any of the Housing Policies adopted as part of the City Settlement Agreement.

15. **Housing Unit** or **Unit**. "Housing Unit" or "Unit" means and refers to a single unit of residence that provides spaces for living, bathing, and sleeping, provided such definition shall not be construed to exclude Single Room Occupancy Units. A Housing Unit or Unit is the same as a dwelling unit.

16. **Housing Unit with Hearing/Vision Features**. "Housing Unit with Hearing/Vision Features" means and refers to a Housing Unit that complies with 24 C.F.R. § 8.22 and all applicable provisions of UFAS or the comparable provisions of the Alternative Accessibility Standard, and shall include but not be limited to section 809.5 of the 2010 Standards for Accessible Design. Hearing/Vision Features include but are not limited to visual alarms (UFAS §§ 4.34.10, 4.28.3), auxiliary alarms (UFAS §§ 4.34.10, 4.28.4), telephone volume controls and hearing aid compatibility (UFAS § 4.31.5), protections against protruding objects (UFAS § 4.4), stairway requirements (UFAS §§ 4.9, 4.26.4), protections against exposed pipes and surfaces (UFAS §§ 4.19.4, 4.24.6, 4.34.6.5(8)), audible alarms (UFAS § 4.28.2), signage (UFAS § 4.30), push button controls for telephones (UFAS § 4.31.6), consumer information (UFAS § 4.34.4), and range, cooktop, and oven controls (UFAS §§ 4.34.6.6, 4.34.6.7).

17. **Housing Unit with Mobility Features**. "Housing Unit with Mobility Features" means and refers to a Housing Unit that is located on an accessible route and complies with the requirements of 24 C.F.R. § 8.22 and all applicable provisions of UFAS or the comparable provisions of the Alternative Accessibility Standard including but not limited to sections 809.2 through 809.4 of the 2010 Standards for Accessible Design. A Housing Unit with Mobility Features can be approached,

entered, and used by persons with mobility disabilities, including individuals who use wheelchairs.

18. **Judgment**. "Judgment" means a judgment entered by the District Court in this Litigation, substantially in the form attached to this Agreement as Exhibit D that, among other things, fully approves and incorporates the terms of this Agreement and retains the District Court's jurisdiction to enforce the Agreement throughout the Settlement Term.

19. **Operative Date**. "Operative Date" means January 2, 2018.

20. **Owner**. "Owner" means and refers to an owner of a Housing Development listed in Exhibit A or Exhibit B (and such owner's successors and assigns) that (1) received any Federal financial assistance from the CRA after July 11, 1988, (2) was, is, or will be the Owner of a such a Housing Development designed, constructed, altered, operated, administered, or financed, in whole or in part, in connection with a program administered in whole or in part by the CRA since January 26, 1992, and/or (3) is an Owner of a unit remediated, constructed, or otherwise made accessible pursuant to this Agreement.

21. **Oversight Board**. "Oversight Board" means the Oversight Board established pursuant to California Health & Safety Code §§ 34179, *et seq.*, to approve and/or direct specified activities of the CRA.

22. **Person with a Disability**. "Person with a Disability" means and refers to a person who has a physical or mental impairment that substantially limits one or more major life activities such as caring for oneself, manual tasks, walking, seeing, hearing, speaking, breathing, or learning; has a record of such impairment; or is regarded as having such an impairment. *See* 24 C.F.R. § 8.3, as modified by the ADA Amendments Act of 2008, Pub. L. 110-325, §7(2), 122 Stat. 3558 (September 25, 2008), amending 29 U.S.C. §705(20). This definition includes people with disabilities as defined in Cal. Gov. Code Sec. 12926 to the extent that provision is more inclusive than federal law.

23. **Program Access**. "Program Access" means applicable Accessibility Laws directing a public entity to operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by Persons with Disabilities.

24. **Reasonable Accommodation**. "Reasonable Accommodation" means a change in rules, policies, practices, or procedures that is necessary, pursuant to the Fair Housing Act, to provide a person with a disability an equal opportunity to use and enjoy a Housing Unit.

25. **Reasonable Modification**. "Reasonable Modification" means a change in rules, policies, practices, or procedures that is necessary, pursuant to Section 504 or the ADA, to provide a person with a disability an equal opportunity to use and enjoy a Housing Unit. Pursuant to the Fair Housing Act, "Reasonable Modification" means any reasonable physical or structural change to a Housing Unit or a public or common use area.

26. **Recognized Obligation Payment Schedule or ROPS**. "Recognized Obligation Payment Schedule" or "ROPS" means a Recognized Obligation Payment Schedule prepared by the CRA under Calif. Health & Safety Code Section § 34177.

27. **Settlement Coordinator or Section 504/ADA Coordinator for Accessible Housing**. "Settlement Coordinator" or "Section 504/ADA Coordinator for Accessible Housing" means the individual designated by the CRA pursuant to and in accordance with Paragraph III.18, below.

28. **Substantial Rehabilitation**. "Substantial Rehabilitation" has the same meaning as in 24 C.F.R. § 8.23.

29. **Target Number of Accessible Units**. "Target Number of Accessible Units" means the Two Hundred Fifty (250) apartment units the CRA will cause to be Accessible to meet its obligations under this Agreement and federal and state law within three (3) years of the Operative Date.

1    30.    **Uniform Federal Accessibility Standards** or **UFAS**. "Uniform

2 Federal Accessibility Standards" or "UFAS" means and refers to a set of scoping

3 requirements and standards for the design and construction of buildings and facilities

4 to ensure that they are readily accessible to and usable by persons with disabilities.

5 *See* Appendix A to 24 C.F.R. subpart 40 for residential structures and Appendix A to

6 41 C.F.R. subpart 101-19.6 for general-type. Pursuant to 24 C.F.R. § 8.32(a),

7 effective July 11, 1988, the design, construction, or alteration of buildings in

8 conformance with sections 3-8 of UFAS shall be deemed to comply, *inter alia*, with

9 the requirements of 24 C.F.R. § 8.22.

10

11                     **III.  SCOPE AND TERMS OF THE AGREEMENT**

12          NOW, THEREFORE, for good and valuable consideration, the sufficiency and

13 receipt of which is hereby acknowledged, the Parties stipulate, and intend that the

14 District Court will make the following findings as part of the Final Judgment:

15    1.    **Recitals**. The recitals set forth above are incorporated by reference in

16 this Section and made a part of this Agreement.

17    2.    **Jurisdiction**. The Court has personal jurisdiction over Plaintiffs and

18 the CRA for purposes of this Litigation and jurisdiction over this Litigation pursuant

19 to 28 U.S.C. §§ 1331 and 1367, and 28 U.S.C. §§ 2201 and 2202. Relief may be

20 granted pursuant to 29 U.S.C. § 794a and 42 U.S.C. § 12132 et seq. Venue is proper

21 in this District.

22    3.    **Binding Effect**. The provisions of this Agreement shall be binding

23 upon the Parties, and shall become effective on the Effective Date.

24    4.    **Purpose of Settlement**. To avoid the cost, expense, and uncertainty of

25 protracted litigation, the CRA and Plaintiffs enter into this Agreement, which shall

26 be binding upon the CRA and Plaintiffs and extinguish all Released Claims and shall

27 constitute the final and compete resolution of all issues addressed herein. Pursuant

28 to the terms of this Agreement, the CRA will undertake the actions described below

1  for the purpose of ensuring that CRA-assisted housing programs, services, and
2  activities are in compliance with the accessibility requirements of Section 504, the
3  ADA, and Section 11135.

4      5.  **Approval by the District Court**. The Parties intend that this
5  Agreement be approved by the District Court, and that the District Court retain
6  jurisdiction for the Term of this Agreement to resolve any dispute regarding
7  compliance with the Agreement that cannot be resolved through the process
8  described in Section VII, below. Furthermore, upon such approval, the District
9  Court shall enter the Judgment under Rule 54(b) of the Federal Rules of Civil
10  Procedure (substantially in the form attached to this Agreement as Exhibit D.)

11      6.  **Term of Agreement**. The District Court shall have continuing
12  jurisdiction over this Agreement throughout the Settlement Term. This Agreement
13  shall expire when the parties submit a stipulation to the Court acknowledging that
14  CRA has achieved the Target Number of Accessible Units and the Accessibility
15  Covenants required by Section III.14.(f) and (g) of this Agreement have been
16  recorded on each such unit, or at such other date as the Court shall determine. CRA
17  shall undertake good faith efforts to reach the Target Number of Accessible Units
18  within three (3) years of the Operative Date. Nothing in this Paragraph shall bar any
19  Party from moving for an extension of the Agreement to enforce any obligations
20  herein.

21      7.  **CRA's Commitment to Provide Affordable, Accessible Housing**.
22  The CRA shall take the actions set forth in this Agreement to provide accessibility
23  for persons with disabilities in its housing-related programs. Among other things,
24  the CRA shall expend such funds as may be necessary over the Settlement Term to
25  ensure the production of the Target Number of Accessible Units by means of
26  inspecting existing Housing Developments to determine compliance with this
27  Agreement, and taking all other actions necessary to provide for Two Hundred Fifty
28  (250) Accessible Housing Units in Accessible Housing Developments as required by

this Agreement by no later than three (3) years after the Operative Date. The failure
of the CRA to secure the cooperation of any Owner with efforts to remedy non-
compliance with requirements set out in this Agreement shall not excuse the CRA's
obligation to achieve the Target Number of Accessible Units but shall not constitute
a breach of this Agreement as long as CRA is acting in good faith to achieve the
Target Number of Accessible Units. The CRA shall notify the Plaintiffs, within a
reasonable timeframe, of non-cooperation by an Owner.

8. **Housing Accessibility Fund**. The CRA shall establish a Housing
Accessibility Fund to be paid for with funds from the Redevelopment Property Tax
Trust Fund or other funds available to the CRA/LA in the following amounts:

    a.     Eight Million, Seven Hundred Fifty Thousand Dollars ($8,750,000)
for accessibility enhancements, as identified in the Accessible
Housing Unit Plan, of 250 housing units, or so much as required to
retrofit the agreed upon 250 housing units and common areas, and to
cover incidental costs such as relocation and implementation of
accessibility policies;

    b.     One Hundred Sixty Thousand Dollars ($160,000) for the Court-
appointed Monitor described in Section IV, below.

9. **Implementation Costs**. In addition to the funds deposited in the
Accessible Housing Fund, the CRA shall be responsible for all costs of
implementation of this Agreement, including costs of experts, consultants, necessary
temporary relocation costs for tenants needed to move during remediation of units,
and other expenses.

10. **Placement on ROPS**. The parties believe that the obligations herein
constitute enforceable obligations within the meaning of Cal. Health & Safety Code
§ 34171 et seq. On June 1, 2017, the Governing Board authorized CRA's Chief
Executive Officer and counsel to execute this Settlement Agreement. In order to
further comply with the provisions of Paragraph III.7, above, the CRA shall

1    undertake the following:

2        a. No later than June 30, 2017, the Chief Executive Officer and

3          counsel for CRA shall execute and return to counsel for the

4          Plaintiffs this Agreement and a joint stipulation for entry of

5          judgment on this Agreement for immediate submission to the

6          Court.

7        b. Following the entry of judgment on this Agreement, present to

8          its Governing Board for its consideration and approval an

9          amendment of ROPS 17-18, Line No. 38, to reflect the entry of

10          Judgment and to fully reflect the obligations in ¶¶ III.7 and

11          III.8, above, as an obligation of the CRA/LA, to be paid for

12          with funds from the Redevelopment Property Tax Trust Fund or

13          other funds available to the CRA/LA, in which CRA/LA lists

14          the total obligation for that item as no less than Eight Million

15          Nine Hundred Ten Thousand Dollars ($8,910,000.00). The

16          CRA/LA will undertake all reasonable efforts to present the

17          above-reference amendment to the Governing Board by

18          September 7, 2017.

19        c. When the CRA/LA Governing Board approves the above

20          described amendment to the ROPS, present the approved ROPS

21          17-18, Line 38 amendment to the CRA/LA Oversight Board for

22          its consideration and approval at the next Oversight Board

23          meeting in accordance with Health & Safety Code Sec 34177 et

24          seq.

25        d. Within two (2) calendar days of approval of the ROPS 17-18,

26          Line 38 amendment by the Oversight Board, transmit the

27          approved Oversight Board resolution and ROPS amendment to

28          the Department of Finance in accordance with Health & Safety

4813-2777-6588.1        14
*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

Code Secs 34177 et seq., for its review.

e. No later than September 30, 2017, submit the ROPS 17-18, Line 38 amendment to the Department of Finance.

f. If the Department of Finance raises questions or concerns or seeks additional information about the amended Line Item 38 on ROPS17-18, CRA shall promptly notify Plaintiffs' counsel. If the Department of Finance denies the amended Line Item 38 on ROPS17-18, CRA shall promptly request an opportunity to meet and confer with the Department of Finance pursuant to Cal. Health & Safety Code §§ 34177, notify Plaintiffs, provide Plaintiffs with copies of all related correspondence and emails, invite Plaintiff's participation in the meet and confer process, and take all appropriate steps to provide all necessary information to the Department of Finance to establish that this Settlement, Subsequent Judgment and the obligations in this Agreement arise from and are enforceable obligations under the Dissolution Law.

g. Continue to list the annual payments to be expended in each 12 month period as required to perform its obligations under this Agreement and Judgment on the ROPS annually, in compliance with paragraphs (a) through (d) above, until such time as the obligations under this Agreement and Judgment are met.

11. **Other Actions**. The CRA shall also take the actions set forth in this Agreement and such other actions as may be necessary to ensure that the CRA complies with its obligations under this Agreement, including its obligations with respect to Owner compliance with Housing Policies, to ensure that assisted Housing Developments operate in accordance with Federal and California law.

12. **CRA's Compliance**. The CRA shall comply with the requirements of

Section 504, the ADA, Section 11135, and other applicable nondiscrimination laws with respect to all aspects of its own housing-related programs, services, and activities, including administration and financing.

13. **Reporting of Activities to Ensure Compliance**. Pursuant to its reporting obligations set out in Paragraph III.15, below, and elsewhere in this Agreement, the CRA shall report on the actions it takes to ensure its own compliance and to require and ensure Owners' compliance with Section 504, the ADA, Section 11135, and the terms of this Agreement.

14. **Specific Commitments to Achieving Accessibility**. This Agreement provides for the following:

(a) **Architectural Accessibility**. The CRA shall cause Two Hundred Fifty (250) Housing Units ("Target Number of Accessible Units") to come into compliance with the architectural accessibility standards under Section 504, the ADA, and Section 11135 within three (3) years of the Operative Date.

    1. At least 163 Accessible Units (111 of which will be Accessible Units with Mobility Features and 52 of which will be Accessible Units with Hearing/Vision Features) shall be located in the Developments specified in Exhibit B, according to the distribution specified in Exhibit B.

    2. The balance of 87 Accessible Units (67 of which will be Accessible Units with Mobility Features and 20 of which will be Accessible Units with Hearing/Vision Features) may be accomplished through a combination of new construction, substantial rehabilitation, the remediation of existing housing units or certification that existing housing units meet federal and state accessibility standards, pursuant to the Accessible Housing Unit Plan

described in Paragraph III.14(b), below. Nothing in this Agreement shall be construed to limit the location of the 87 Accessible Units to Housing Developments listed in Appendix A.

3. In order to count a Housing Unit toward the Target Number of Accessible Units, the CRA must provide a Certification of Compliance with Accessibility Standards (substantially in the form of the attached Exhibit E, as may be modified from time to time by written agreement among the parties) to the Monitor that the Housing Unit and the Housing Development meet the requirements of Accessibility Standards. Unless approved in advance and in writing by the Plaintiffs, the CRA shall not receive credit toward the Target Number of Accessible Units for any unit if the City is claiming credit for such unit under the City Settlement Agreement.

4. In the event CRA is unable to successfully place all of the 163 Accessible Units as contemplated in Exhibit B, or the additional 87 Accessible Units contemplated by Paragraph III.14(a)(2), above, the Parties shall meet and confer in good faith regarding alternative locations for such Accessible Units, pursuant to the criteria in the Accessible Housing Unit Plan and the Affordability Strategy.

(b) **Accessible Housing Unit Plan**. Annual production schedules will be established pursuant to an Accessible Housing Unit Plan ("Plan"), recommending locations of accessible housing units, which will be agreed to by the Parties no later than July 1, 2018.

4813-2777-6588.1      17

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

i.  The Plan shall be developed in consultation with one or more experts, agreed to by the Parties and compensated by the CRA, who will conduct accessibility surveys and otherwise advise the Parties on compliance with federal and state accessibility requirements, as set forth in Paragraph III.10(d), below. The Plaintiffs agree that Carde Ten may serve as an expert if requested by CRA, provided that, for each building CRA proposes to remediate, CRA provides Plaintiffs the accessibility survey and proposed remediation plan conducted by its expert, gives Plaintiffs a period of fifteen (15) days to review them before undertaking or requiring the undertaking of any accessibility remediations and requests that each Owner provide Plaintiffs' experts a timely right of entry to assess whether as-built remediations conform to the relevant remediation plan.

ii.  The Plan shall prioritize placement of Accessible Units in units with affordability covenants or commitments, in buildings with relatively longer remaining useful lives, with access to public transportation and other amenities, in locations where public paths of travel are accessible, and with attention to a balance of geographic locations and units sizes pursuant to 24 C.F.R. §8.26.

iii.  No later than March 31, 2018, CRA will develop a plan, in consultation with Plaintiffs, to maximize the affordability of the Target Number of Accessible Units (the "Affordability Plan"). To the extent covenants or other affordability commitments exist at the appropriate income levels, and CRA encounters no third party-created impediments that CRA cannot overcome with good faith efforts, CRA will work with project owners and Plaintiffs to cause retrofits to be accomplished so as to ensure that at least 25% of Accessible Units will be affordable to and reserved for households at or below 50% of

Area Median Income for the County of Los Angeles as determined by HUD ("AMI"), and at least 25% of units will be affordable to and reserved for households at 35% of AMI; and, with respect to properties listed in Exhibit B that are located in the North Hollywood Redevelopment area, at least 13 Accessible Units are affordable to and reserved for households at or below 50% of AMI and at least 14 Accessible Units are affordable to and reserved for households at or below 60% of AMI.

    iv.    The Affordability Strategy shall:

        (1)    With respect to each Housing Development listed in Exhibit B, identify methods for maximizing the assigned number of Housing Units with Mobility Features and Housing Units with Hearing/Vision Features in existing apartment units subject to affordability covenants or commitments.

                i.    Should CRA be unable to place the requisite number of Accessible Units into units with affordability covenants in any Housing Development listed in Exhibit B, CRA shall provide notice to Plaintiffs and shall develop, in consultation with Plaintiffs, alternative approaches to achieving affordability in such units or in other areas.

        (2)    With respect to the balance of 87 Accessible Units, take reasonable steps to conduct new construction or remediation activities so that Accessible Units are developed in units or buildings that have covenants

4813-2777-6588.1          19

*ILC, et al v. CRA of Los Angeles, et al., Case No 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

making such units affordable to households that earn at or below Fifty Percent (50%) of the Area Median Income for the County of Los Angeles, as determined by HUD.

v.     Consistent with the federal Uniform Relocation Act, California relocation law (California Government Code § 7260.5 et seq., and federal and state reasonable accommodation and reasonable modification requirements, the Plan shall provide that the CRA, when appropriate, temporarily relocate, or require Owners to temporarily relocate, existing tenants occupying units to be retrofitted, at Owner or CRA expense, and shall address potential temporary displacements of tenants.

vi.     The Parties agree that Plaintiffs shall be consulted in the event that changes must be made to the Accessible Housing Unit Plan.

(c)     **Qualifications of Experts**. Each expert hired by the CRA to implement Paragraph III.14(b), above, shall: (1) be an architect; (2) have substantial experience in evaluating or assisting public entities in evaluating the accessibility of facilities under Section 504, the ADA, and California Building Code; (3) be knowledgeable in current federal and California accessibility standards; and (4) have a minimum of three (3) years' experience in providing Section 504 and/or ADA services related to accessible facilities.

(d)     **Development of Accessible Housing Unit Plan**. The expert(s) identified in Paragraph III.14(b), above, shall assist the CRA in the following:

i.     Identifying which existing Housing Developments are most suitable for placement of Accessible Units.

ii.     Reviewing existing accessibility surveys and conducting

additional such surveys to inform the development of the Accessible Housing Unit Plan, and remediation plans for individual Developments.

iii.    Assisting the CRA in developing protocols, assessment tools, checklists, and standards for ensuring accessibility and for issuance of Certifications of Compliance with Accessibility Standards.

iv.    Providing training to the CRA staff and agents who will implement the accessibility provisions of this Agreement regarding the interpretation and application of the Accessibility Standards.

(e)    **Accessibility in Existing Buildings to be Remediated**. For purposes of meeting the Target Number of Accessible Units, the CRA may count a remediated unit to the extent the unit and the project's common areas meet the Accessibility Standards, and the unit and common areas are located on accessible routes.

(f)    **Other Steps to Ensure Accessibility**. CRA shall, by recorded Accessibility Covenants substantially in the form of the attached Exhibit C, as may be modified from time to time by written agreement among the parties, require Owners of the Target Number of Accessible Units to follow the Housing Policies developed by the City of Los Angeles pursuant to Exhibits C-1 and C-2 of the City Settlement Agreement, as amended from time to time, and undertake other good faith measures to ensure that Owners are aware of and adopt and comply with Housing Policies consistent with Section 504, including Section 504's implementing regulations at 24 CFR Part 8, and the ADA, including outreach to people with disabilities to market the accessible units, maintenance of accessible features, priorities for people who need the accessible features to obtain the accessible units, non-discrimination policies, reasonable accommodation and modification policies, and effective communication policies. To

effectuate those goals: 1) The CRA shall undertake good faith efforts to ensure that the Owners comply with the Housing Policies adopted pursuant to Exhibits C-1 and C-2 of the City Settlement Agreement, or similar Housing Policies approved by Plaintiffs; 2) The CRA shall offer Owners training on the relevant policies, and 3) The CRA shall instruct Owners to provide up-to-date information regarding such Accessible Units on the Internet-based Accessible Housing Registry ("Registry") created pursuant to the City Settlement Agreement.

(g) **Recorded Accessibility Covenants**. To effectuate compliance with Section 504, including Section 504's implementing regulations at 24 CFR Part 8, and the ADA, CRA agrees to require those Owners who receive CRA assistance in the development or remediation of Accessible Units to enter into recorded Accessibility Covenants substantially in the form of the attached Exhibit C, as may be modified from time to time by written agreement among the parties, requiring them to adopt and comply with the Housing Policies developed by the City of Los Angeles pursuant to Exhibits C-1 and C-2 of the City Settlement Agreement.

15. **Reporting Requirements**. The Settlement Coordinator shall prepare twice-yearly reports containing qualitative and quantitative data detailing the activities carried out under this Agreement for the preceding reporting period pursuant to Paragraphs III.16 and III.17., below, to be provided to Plaintiffs' Counsel (as provided for in ¶X.4., below) and the Monitor on or before June 30 and December 31 of each year beginning December 31, 2018.

16. **Report Contents**. Reports referenced in Paragraph III.15, above, shall include, at a minimum, a detailed description of the following:

(a) **Compliance Efforts**. Compliance efforts which have been made since the last report with respect to each of the substantive terms of this

Agreement, and the actions taken to ensure the CRA's own compliance and to require and ensure Owners' compliance with Section 504, the ADA, Section 11135, and the terms of this Agreement.

 (b) **Accessible Unit Progress Information**. Progress in achieving the Target Number of Accessible Units and annual production schedules under the Accessible Housing Unit Plan, including information regarding geographic distribution of accessible units in a range of unit sizes; affordability and access to public transportation and other amenities; and the provision of temporary replacement housing for tenants displaced by remediation efforts, sufficient to evaluate compliance with the requirements of this Agreement and the Accessible Housing Plan in those areas.

 (c) **Housing Policy Progress Information**. Progress in ensuring that Housing Developments adopt the Housing Policies, and of monitoring and enforcement efforts to ensure compliance with the Housing Policies, including a list of Housing Developments indicating the status of compliance of each Housing Development with policy obligations.

 (d) **Specific Required Information**. The Report shall also include:

  i. A list by address and unit number of all Housing Developments and Housing Units which have received Certifications of Compliance with Accessibility Standards and Certifications of Adoption of Housing Policies since the last report.

  ii. Specific quantitative data as identified in Paragraph III.17, below.

  iii. The amount and sources of funds expended to comply with this Agreement since the last report.

4813-2777-6588.1     23
*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

(e) **Termination of Reporting**. Provided that CRA has required Owners who receive CRA assistance in the development or remediation of Accessible Units to enter into recorded Accessibility Covenants substantially in the form of the attached Exhibit C, as may be modified from time to time by written agreement among the parties, CRA's reporting obligations under this Agreement shall cease upon CRA's completion of the 250 housing units.

17. **Quantitative Data**. Quantitative data referenced in Paragraphs III.15 and III.16., above, shall include the number of properties inspected; numbers/types of units under construction; number/types of Accessible Units completed; number and addresses of properties with recorded Accessibility Covenants; number/types of Accessible Units occupied by persons with disabilities who need the accessibility features; and number/types of Accessible Units occupied by persons who do not need the accessibility features. The report shall be submitted to the Monitor pursuant to Paragraph III.15, above.

18. **Appointment of Settlement Coordinator ("Settlement Coordinator" or "Coordinator")**. Within 90 days of the Operative Date, the CRA shall appoint a Settlement Coordinator and provide the individual's name and contact information to Plaintiffs' Counsel and the Monitor. The individual initially appointed as Settlement Coordinator may be replaced with another individual with notice to Plaintiffs. A Settlement Coordinator will coordinate effective implementation of this Agreement, shall be retained throughout the term of this Agreement, and shall be directed and compensated by the CRA. The Settlement Coordinator will report directly to the Chief Executive Officer of the CRA concerning matters relating to this Agreement. The CRA shall commit sufficient resources, authority, and independence so that the Settlement Coordinator can successfully accomplish his or her responsibilities under this Agreement.

19. **Responsibilities and Authority of the Settlement Coordinator**. At all times during the term of the Agreement, the Settlement Coordinator shall have responsibility and authority to:

(a) **Handle Complaints**. Receive and respond to reasonable inquiries and complaints from Plaintiffs and others concerning accessibility barriers affecting Housing Developments and the CRA's Housing Programs.

(b) **Coordinate Compliance Activities.** Coordinate all compliance activities under this Agreement, including:

i. Issue, or oversee the issuance of, Certifications of Compliance with Accessibility Standards for Housing Units and Housing Developments pursuant to Paragraph III.14(d)(iii).

ii. Review, contribute to, and timely submit all reports required by this Agreement, as well as any underlying documentation.

iii. Consult, as the Settlement Coordinator deems appropriate, with CRA personnel, contractors, or representatives to obtain information concerning the CRA's compliance with the terms of this Agreement.

iv. Provide or oversee training identified in Paragraph III.10(d).

v. Receive and respond to inquiries regarding the implementation of this Agreement by the CRA and Owners

vi. Respond to Plaintiffs' or Plaintiffs' Counsel's requests for information and documents relating to any provisions of this Agreement.

20. **Plaintiffs' Rights With Respect to Testing**. Nothing in this Agreement shall be construed to diminish Plaintiffs' rights to conduct tests **and monitoring** to determine that Owners of Housing Developments are complying with federal and state law.

# IV. MONITORING

1.  **Court Appointment of Monitor**. Within thirty (30) days of Operative Date, the Parties will ask the District Court to appoint a Monitor to ensure that this Agreement is implemented effectively and to assist the Court in monitoring the CRA's compliance with this Agreement. The Parties shall jointly propose to the District Court one or more candidates to serve as a court-appointed Monitor. The Monitor will assess the CRA's progress toward achieving the Target Number of Accessible Units and implementation of policies and procedures by reviewing plans, policies, procedures, expenditures, staffing, and production of accessible units, among other things. The Monitor shall serve throughout the Settlement Term and shall report to the Court. For the purposes of this Settlement Agreement, the Monitor's authority shall derive from the Court, not the Parties.

    (a)  **Monitor Qualifications**. The Monitor's qualifications shall include, but not be limited to the following: (1) familiarity with and experience in the monitoring and enforcement of disability rights laws; and (2) familiarity with and experience in the education and training of employees in (a) disability rights laws, and (b) the requirements of compliance with settlement agreements or court orders. Preference shall be given to an individual who is familiar with compliance with disability housing accessibility laws.

    (b)  **Monitor Responsibility and Authority**. The Monitor shall evaluate the CRA's compliance with the provisions of this Agreement to ensure full compliance with all of its terms. The Monitor shall have the obligation and authority to take steps to carry out this responsibility including but not limited to the obligation and authority to:

         i.  Monitor, review, collect, evaluate, and verify written and electronic data and information on progress and completion of the Accessible Unit Housing Plan, accessibility of Housing Units and

Housing Developments, CRA Housing Program Accessibility, CRA monitoring of Owner compliance, and all other components of the Agreement.

ii. Enter into any Housing Units or Housing Developments to conduct inspections, with appropriate notice to affected individuals, of selected Housing Units and Housing Developments as the Monitor deems appropriate, and measure, photograph, or otherwise document accessibility compliance.

iii. Interview CRA staff, consultants, contractors, and agents as the Monitor deems appropriate.

iv. Hire experts or staff as needed, within the budgetary limits in Paragraph IV.1.(e), below, to assist in carrying out these responsibilities.

v. Review and assess all reports prepared by the CRA as required by the terms and provisions of this Agreement, and prepare recommendations for additional action as needed.

vi. Provide Counsel for Plaintiffs and the CRA any relevant information known to or available to the Monitor under any provision of this Agreement upon reasonable request.

vii. Prepare a written semi-annual report for submission to Counsel for Plaintiffs and the CRA on or before March 31 and September 30 of each year, beginning March 31, 2018, which shall describe, at a minimum, the Monitor's assessment of the CRA's progress in complying with all of the provisions of this Agreement, and the Monitor's comments on Reports submitted by the CRA. A copy will be filed with the Court. The parties shall meet and confer among themselves or with the Monitor to resolve any problems identified by the Monitor or any of the parties. If the parties cannot reach agreement,

either party may request that the Monitor submit an additional report to the Court with recommendations for action, and shall file a motion with the Court for consideration of such recommendations or other requested relief.

viii.    Meet and confer with Plaintiffs and the CRA, to consider suggestions for implementing the spirit and letter of the Agreement, and to clarify information contained in the Monitor's reports.

(c)    **Records and Other Information Available to Monitor**.  For the duration of this Agreement, except to the extent that disclosure of information is prohibited by law or applicable privileges, the CRA shall provide the Monitor upon request information and records (or other computerized counterparts) reasonably available to the CRA, and which are sufficient to adequately monitor the CRA's compliance with all provisions of this Agreement and to complete the reporting described in Paragraphs III.15 and III.16, above, including but not limited to all records relating to implementation of the Accessible Housing Unit Plan, architectural accessibility compliance for existing and new Housing Developments (including surveys, plans, and architectural drawings), issuance of Certifications of Compliance with Accessibility Standards, progress in meeting Target Number, training materials, waiting lists, and annual funding devoted to the program. The CRA must make available to the Monitor and to Plaintiff' Counsel any records relating to the implementation of any provision of this Agreement, including records submitted by Owners that are in the custody and control of CRA.

(d)    **Meetings with Monitor**.

i.    <u>Preliminary Meeting</u>.  No later than ninety (90) days following the commencement of employment by the Monitor, the

Monitor, and Counsel for all Parties shall attend a preliminary meeting at a location designated by the Monitor. The purpose of the meeting shall be for the CRA to describe the activities that have been and will be taken with respect to the implementation of the Agreement and for the parties Counsel to discuss any relevant issues concerning the implementation of the Agreement.

  ii. Additional Meetings. In addition to the preliminary meeting, the Monitor shall hold at least one annual meeting with the CRA and Plaintiffs to review progress. The Monitor may, as he or she deems appropriate, schedule other meetings and/or conference calls with the Parties Counsel to discuss any relevant issues concerning the implementation and enforcement of the Agreement.

(e) **Cost of Monitor**. The CRA shall bear the cost of the Monitor during the Settlement Term, which costs shall be capped at One Hundred Sixty Thousand Dollars ($160,000).

## V. RECORD KEEPING AND REPORTING

1. **Record Keeping and Reporting**.

(a) During the Settlement Term, the CRA shall maintain all records necessary to verify compliance with the terms of this Agreement. The CRA shall instruct Owners to maintain all records regarding compliance with the terms of the Agreement.

(b) Subject to the limitations cited in Paragraph IV.1.(c)., the CRA shall, upon reasonable request by Plaintiffs' Counsel or the Monitor, provide a copy of any data and reports, whether maintained electronically or otherwise, in its possession, custody or control, and take all reasonable steps short of litigation against an Owner to obtain any records in the possession of Owners to the extent such records are available to the CRA by virtue of any Accessibility Covenant or other

4813-2777-6588.1    29

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

1  contractual agreement that support the Reports and obligations
2  required by this Agreement, to the Monitor or Plaintiffs' Counsel.

3  2.  **CRA's Duty to Retain Documents**.  The CRA shall maintain all
4  documents and records provided to the Monitor as well as all documents and
5  records maintained and/or generated by the CRA that pertain to the Agreement for
6  a period of five (5) years.  For a period not to exceed six (6) months beyond the
7  expiration of this Agreement, Plaintiffs' Counsel shall, upon request, be provided
8  access to any of the records described in the Record-Keeping provisions of this
9  Agreement.

10

11  **VI.  MUTUAL RELEASE OF CLAIMS**

12  1.  **General Release of CRA Insurers**.  Upon payment of the Settlement
13  Sum and Attorney's Fees Payments to be paid by CRA's Insurer as set forth below
14  under Section VIII(1) and (2),  Plaintiffs, for themselves (and for their executors,
15  assigns, and successors, as well as their administrators, agents and representatives
16  acting in their official capacities on behalf of the Plaintiff Releasing Parties, do
17  hereby fully and finally remise, release, acquit, and forever discharge any and all
18  CRA Insurers and their respective successors, directors, officers, employees, agents,
19  past, present and future departments, boards, commissions, predecessors, and
20  successors-in-interest, from any and all claims and demands of any and every kind,
21  name, nature, or description, and from any rights, disputes, complaints, charges,
22  actions and causes of action, including, without limitation, a cause of action under
23  California Insurance Code Section 11580, suits, debts, injuries, reimbursements,
24  contracts, covenants, liens, liabilities, losses, costs, expenses, obligations, and
25  damages of any nature, kind, and description, whether asserted or unasserted, known
26  or unknown, anticipated or unanticipated, suspected or unsuspected, or actual or
27  contingent, in law or in equity, which the Plaintiff Releasing Parties, did have, now
28  have, or may have in the future, against the CRA Insurers, whether or not the same

be now existent or known to the Plaintiff Releasing Parties by reason of or arising
out of the claims as more particularly alleged in this Litigation and arising up until
the date of Judgment, including but not limited to any claim or cause of action,
including but not limited to injunctive, declaratory, or other non-monetary relief,
however described, that the Plaintiff Releasing Parties asserted or could have
asserted in this Litigation against the Defendant Released Entities, pertaining to
accessibility under Section 504, the ADA, and Section 11135, and availability to
people with disabilities of any and all of the multifamily housing funded, developed,
or significantly assisted by the CRA at any time prior to this Agreement ("Released
Claims"). Such Released Claims shall include any claims to enforce the terms of
this Agreement, except for provisions in VIII.1. and VIII.2., below, requiring CRA
Insurers to make certain payments.

2.   **Plaintiffs' Release of Claims Against the CRA Defendants**.
Plaintiffs, for and in consideration of this Agreement, including any and all recitals,
promises, covenants, and terms herein, for themselves (and for their executors,
assigns, and successors, as well as their administrators, agents, and representatives
acting in their official capacities on behalf of Plaintiffs) (collectively "Plaintiff
Releasing Parties"), do hereby fully and finally remise, release, acquit, and forever
discharge the CRA and, in their official capacities, its respective successors,
directors, officers, employees, agents, its past, present and future departments,
boards, commissions, predecessors, and successors-in-interest, and Governing Board
(collectively "Defendant Released Entities") from any and all claims and demands of
any and every kind, name, nature, or description, and from any rights, disputes,
complaints, charges, actions and causes of action, suits, debts, injuries,
reimbursements, contracts, covenants, liens, liabilities, losses, costs, expenses,
obligations, and damages of any nature, kind, and description, whether asserted or
unasserted, known or unknown, anticipated or unanticipated, suspected or
unsuspected, or actual or contingent, in law or in equity, which the Plaintiff

1   Releasing Parties now have against the Defendant Released Entities or any of the
2   Defendant Released Entities, whether or not the same be now existent or known to
3   the Plaintiff Releasing Parties, by reason of or arising out of the claims as more
4   particularly alleged in this Litigation and arising up until the date of Judgment,
5   including but not limited to any claim or cause of action, including but not limited to
6   injunctive, declaratory, or other non-monetary relief, however described, that the
7   Plaintiff Releasing Parties asserted or could have asserted in this Litigation against
8   the Defendant Released Entities, pertaining to accessibility under Section 504, the
9   ADA, and Section 11135, and availability to people with disabilities of any and all
10  of the multifamily housing funded, developed, or significantly assisted by the CRA
11  at any time prior to this Agreement ("Released Claims"). Such Released Claims,
12  however, shall not include any claims to enforce the terms of this Agreement. Such
13  Released Claims also shall not include claims set forth in the case captioned United
14  States of America, ex rel. Ling, et al. v. City of Los Angeles, et al., Case No. 2:11-
15  00974-PSG-(JCx). This Agreement does not extinguish or affect the rights of any
16  third party to pursue his or her individual claims against the CRA.

17          3.      **Defendant's Release of Claims**. The CRA, for itself and its respective
18  successors, directors, officers, employees, agents, their past, present and future
19  departments, boards, commissions, predecessors, and successors-in-interest,
20  (collectively "Defendant Releasing Parties"), for and in consideration of this
21  Agreement including any and all recitals, promises, covenants, and terms herein,
22  does hereby fully and finally remise, release, acquit, and forever discharge Plaintiffs
23  (and their assigns, and successors, as well as their administrators, agents, and
24  representatives acting in their official capacities on behalf of Plaintiffs) (collectively
25  "Plaintiff Released Entities") from any and all claims and demands of any and every
26  kind, name, nature, or description, and from any rights, disputes, complaints,
27  charges, actions and causes of action, suits, debts, injuries, reimbursements,
28  contracts, covenants, liens, liabilities, losses, costs, expenses, obligations, and

1  damages of any nature, kind, and description, whether asserted or unasserted, known
2  or unknown, anticipated or unanticipated, suspected or unsuspected, or actual or
3  contingent, in law or in equity, which the CRA now has against the Plaintiff
4  Released Entities, whether or not the same be now existent or known to the CRA, by
5  reason of or arising out of the claims as more particularly alleged in this Litigation
6  and arising up until the date of Judgment, including but not limited to any claim or
7  cause of action, including but not limited to injunctive, declaratory, or other non-
8  monetary relief, however described, that the CRA asserted or could have asserted in
9  the Action, pertaining to the accessibility under Section 504, the ADA, and Section
10  11135, and availability to people with disabilities of any and all of the multifamily
11  housing funded, developed, or significantly assisted by the CRA at any time prior to
12  this Agreement ("Released Claims"). Such Released Claims, however, shall not
13  include any claims to enforce the terms of this Agreement.

14                    **VII. DISPUTE RESOLUTION**

15      1.    **Meet and Confer Obligation**. If any Party believes that a dispute exists
16  relating to any violation of or failure to perform any of the provisions of this
17  Settlement Agreement, it shall notify the other Party in writing and describe the
18  alleged violation or failure to perform with particularity. The Parties shall meet and
19  confer within ten (10) business days of receipt of such notice. If they are unable to
20  resolve their differences, they shall resort to mediation as described below.

21      2.    **Mediation**. If the Parties are unable to resolve a dispute through the
22  meet and confer process described above, the Parties shall mediate the dispute. The
23  Parties shall have fifteen (15) business days to jointly select a mediator. If the Parties
24  are unable to reach agreement on a mediator, each side may submit three (3) names
25  of proposed mediators to the District Court and the District Court shall select the
26  mediator. The mediation shall be conducted within thirty (30) days of the selection of
27  the mediator, in the manner determined by the mediator, and the Parties shall engage
28  in good faith efforts to resolve the dispute through such mediation.

1    3.   **Resolution by the District Court**. If the Parties are unable to resolve a
2    dispute through the mediation process described above, any Party may make a
3    motion to the District Court to enforce the Agreement in order to resolve the dispute.

4                   **VIII. COMPENSATION AND FEES**

5    1.   **Compensation to Plaintiffs**. The CRA/LA, by and through the CRA
6    Insurers, agrees to pay each Plaintiff organization One Million Dollars ($1,000,000),
7    or a total of Three Million Dollars ($3,000,000) (the "Settlement Sum"), to resolve
8    in full all claims for monetary damages. The Settlement Sum shall be paid within
9    ten (10) business days after the Judgment entered on the Settlement Agreement
10   becomes final and non-appealable. Payment shall be made by wire transfer to
11   Plaintiffs' Counsel, Relman, Dane & Colfax, PLLC, 1225 19th Street N.W., Suite
12   600, Washington, D.C. 20036-2456, for distribution to Plaintiffs.

13   2.   **Attorneys' Fees**. The CRA, by and through the CRA Insurers,
14   agrees to pay the undersigned Plaintiffs' counsel a total of Two Million One
15   Hundred Twenty Five Thousand Dollars ($2,125,000) and CRA/LA shall pay
16   directly One Hundred Twenty Five Thousand Dollars ($125,000) to resolve in full
17   all claims for the attorneys' fees, costs and expenses attributable to the CRA in the
18   Litigation. Payment shall be made no later than ten (10) business days after the
19   Judgment entered on the Settlement Agreement becomes final and non-
20   appealable. Payment by CRA Insurers shall be made by wire transfer to
21   Plaintiffs' Counsel, Relman, Dane & Colfax, PLLC, 1225 19th Street N.W., Suite
22   600, Washington, D.C. 20036-2456, for distribution among counsel. Payment by
23   CRA may be made by check.

24   3.   **Prospective Monitoring Fees and Costs for Plaintiffs' Counsel**. In
25   addition to the fees described in Paragraph VIII.2, the CRA shall pay directly to
26   Plaintiffs' Counsel their reasonable and necessary monitoring fees and expenses
27   during the Settlement Term not to exceed a total amount of Fifty Thousand
28   Dollars ($50,000). Payment shall be made no later than ten (10) business days

after the Judgment entered on the Settlement Agreement becomes final and non-appealable. Payment shall be made by check to Plaintiffs' Counsel, Relman, Dane & Colfax, PLLC, 1225 19th Street N.W., Suite 600, Washington, D.C. 20036-2456, for distribution among counsel.

## IX. COURT'S RETENTION OF JURISDICTION

1. The Parties agree and intend that the Judgment will provide that the District Court shall retain continuing jurisdiction to interpret and enforce the terms of this Agreement during the Settlement Term, and that the Judgment will incorporate the terms of this Settlement Agreement by reference. The Court thereafter shall retain jurisdiction to resolve any disputes that may arise during the Settlement Term. Only the Parties may seek to enforce the terms of the Agreement through the dispute resolution process provided for in Section VII, above. Three (3) months before the end of the Settlement Term, the CRA shall prepare a final report to the Monitor and Plaintiffs showing that it has fully complied with the provisions of this Settlement Agreement, and may move the Court for an Order terminating its jurisdiction of this matter as of a date following the Settlement Term, on the basis that all of its obligations under the Settlement Agreement have been fully discharged.

## X. MISCELLANEOUS

1. **Entire Agreement; Severability.** This Agreement constitutes the entire agreement between the CRA and Plaintiffs and supersedes all prior agreements, written or oral. Each provision and term of this Agreement shall be interpreted in such manner as to be valid and enforceable. In the event any provision or term of this Agreement is determined to be or is rendered invalid or unenforceable, all other provisions and terms of this Agreement shall remain unaffected to the extent permitted by law.