2.  **Modification of Settlement Agreement**.

(a)  This Settlement Agreement may only be modified or amended in writing, signed by all parties, that specifically states that its purpose is to amend or modify this Settlement Agreement provided that no modification of the agreement shall change National Union's obligations with respect to this Agreement.

(b)  All deadlines and dates for performance by the CRA under this Settlement Agreement may be extended or modified by written agreement between Plaintiffs and the CRA.

(c)  If the CRA should be delayed, interrupted, or prevented from performing any of its obligations under this Settlement Agreement and such delay, interruption, or prevention is due to fire, act of God, or other unforeseeable events, or is due to any cause outside the reasonable control of the CRA, then the time for performance of the affected obligation of CRA may be extended, by written agreement of the Parties, for a period equivalent to the period of such delay, interruption, or prevention.  Furthermore, under appropriate circumstances, including the CRA's inability to perform its obligations under this Agreement, the Court may exercise its inherent authority to modify, amend or rescind the Judgment to promote the ends of justice.

(d)  Any Party may file a written motion with the District Court for the purpose of modifying a term or provision of the Settlement Agreement.  Before filing a motion with the District Court, the moving Party must discuss the reasons for the proposed modification with all Parties for the purpose of determining whether there is agreement on the need for the modification.

3.   **Conditions Precedent**. The Parties agree that this Settlement Agreement shall be conditioned upon, and shall become operative only upon, the occurrence of each and every one of the following events:

(a)   The Settlement Agreement has been approved by the CRA's Governing Board prior to execution of the Agreement and submission to the Court.

(b)   The Settlement Agreement has been fully executed by the Parties.

(c)   The Court has entered a Final Judgment substantially in the form attached as Exhibit D which Final Judgment has become non-appealable.

4.   **Notice to the Parties**. All notices required or permitted hereunder shall be in writing and shall be served on the Parties at the addresses set forth below. Any such notices shall be:

(a)   Sent by overnight delivery using a nationally recognized overnight courier, in which case notice shall be deemed delivered one (1) business day after deposit with such courier; or

(b)   Personally delivered, in which case notice shall be deemed delivered upon receipt by the Party to whom the notice was delivered. As a courtesy only, email may be used to provide a Party with notification that a notice has been sent and may include a copy of the notice. A Party's address may be changed by written notice to the other Party; provided that no notice of a change of address shall be effective until receipt of such notice as provided for above.

To Plaintiffs:   Independent Living Center of Southern California
c/o Norma Jean Vescovo, Chief Executive Officer
14407 Gilmore Street, #101
Van Nuys, CA 91401
nvescovo@ilcsc.org

4813-2777-6588.1

37

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

Fair Housing Council of San Fernando Valley
c/o Sharon Kinlaw, Executive Director
14621 Titus Street, Suite 100
Panorama CRA, CA  91402
skinlaw@gmail.com

Communities Actively Living Independent and Free
c/o Lillibeth Navarro, Executive Director
634 South Spring Street, Second Floor
Los Angeles, CA  90014
lnavarro@calif-ilc.org

With a copy to:

Michael Allen, Esq.
Relman, Dane & Colfax, PLLC
1225 19th Street NW, Suite 600
Washington, DC 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
Email:  mallen@relmanlaw.com

Autumn Elliott, Esq.
Disability Rights California
350  S. Bixel Ave., Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca.org

Odion L. Okojie
LAW OFFICES OF ODION L. OKOJIE
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: Okojiclaw@aol.com
Counsel for Fair Housing Council of San Fernando Valley

David Iyalomhe
DAVID IYALOMHE & ASSOCIATES
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: david@doialaw.com
Counsel for Fair Housing Council of San Fernando Valley

To CRA:

Steve Valenzuela
Chief Executive Officer
CRA/LA, A Designated Local Authority, Successor to Community Redevelopment Agency of the City of Los Angeles
448 South Hill Street, Suite 1200
Los Angeles, CA  90013
Telephone: (213) 977-1600
svalenzuela@crala.org

With a copy to:

Melissa Daugherty
Robert M. Collins
LEWIS BRISBOIS BISGAARD & SMITH, LLP
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071
Telephone: (213) 250-1800
Facsimile: (213) 250-7900
Melissa.daugherty@lewisbrisbois.com
robert.collins@lewisbrisbois.com

5.    **Opportunity to Consult with Counsel**.  The Parties represent that prior to signing this Settlement Agreement, they have read it, consulted with counsel of their choice, and each understood its terms and conditions. The Parties hereto accept this Settlement Agreement as their own free and voluntary act, without duress, and intend to be legally bound by it. This Settlement Agreement is made without reliance upon any statements or representations by the Parties or their representatives that are not contained herein.

6.    **CRA/LA Assignment of Obligations.**   The Parties agree that the CRA/LA may subcontract with the City of Los Angeles to carry out any of the obligations of the CRA/LA under this Agreement.

7.    **Settlement Agreement Binding on Successors and Assigns**.  This Agreement shall be binding on, and enforceable by, the Parties, their employees, and their successors and assigns.

8.    **Titles**.  The titles used in this Settlement Agreement are non-substantive descriptions included solely for the Parties' ease of reference and shall not be construed to alter the substantive provisions of this Settlement Agreement.

9.    **Weekends and Holidays**.  If a reporting day or other deadline under this Agreement falls on a weekend or state or federal holiday, the report or other required action will be due on the first business day after the weekend or holiday.

10.    **Counterparts and Facsimiles**.  This Settlement Agreement may be executed in counterparts and facsimiles, all of which when taken together shall constitute a single instrument.

1      11.   **Parties Agree to Cooperate**.  The Parties agree to cooperate in

2   submitting this Settlement Agreement to the Court for execution, and to cooperate

3   and execute additional documents or take other actions necessary to perform their

4   respective obligations under this Settlement Agreement.

5      12.   **Construction**.  This Settlement Agreement is the result of negotiations

6   and joint drafting, undertaken in good faith and in that regard the rule of contractual

7   construction that an ambiguous term shall be construed against the drafter shall not

8   be employed.

9      13.   **Signatures**.  The Parties represent that the Signators on this Agreement

10  are fully authorized by their respective organizations to sign the Agreement on

11  behalf of their organizations.

12

13  Agreed to by the Parties, as evidenced by signatures below.

14  Dated:  9/5/17

15                              Norma Vesovo, Chief Executive Officer
                                Independent Living Center of Southern
16                              California

17  Dated:  9/5/17

                                Sharon Kinlaw, Executive Director
18                              Fair Housing Council of San Fernando Valley

19  Dated:  9/5/17

                                Lillibeth Navarro, Executive Director
20                              Communities Actively Living Independent and
                                Free

21  Approved as to Form:

22  Dated:  9/5/17

23                              John P. Relman
                                Michael G. Allen
24                              RELMAN, DANE & COLFAX PLLC
                                1225 19th St. NW, Suite 600
25                              Washington, D.C. 20036

26                              Telephone: (202) 728-1888
                                Facsimile: (202) 728-0848
27                              mallen@relmanlaw.com

28

Autumn Elliott
DISABILITY RIGHTS CALIFORNIA
350 S. Bixel Ave., Suite 290
Los Angeles, CA 90017
Telephone: (213) 213-8000
Facsimile: (213) 213-8001
Autumn.Elliott@disabilityrightsca.org


Dara Schur
DISABILITY RIGHTS CALIFORNIA
1330 Broadway, Suite 500
Oakland, CA 94612
Telephone:  (510) 267-1200
Facsimile:  (510) 267-1201
Dara.Schur@disabilityrightsca.org

Maronel Barajas
DISABILITY RIGHTS LEGAL CENTER
Loyola Public Interest Law Center
256 S. Occidental Blvd., Suite B
Los Angeles, CA 90057
Telephone: (213) 736-1496
Facsimile: (213) 736-1428
Maronel.barajas@drlcenter.org

David Geffen
DAVID GEFFEN LAW FIRM
530 Wilshire Blvd., Ste. 205
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
Geffenlaw@aol.com

*Counsel for Plaintiffs*

4813-2777-6588.1                      41

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

Odion L. Okojie
LAW OFFICES OF ODION L. OKOJIE
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: Okojielaw@aol.com
*Counsel for Fair Housing Council of San Fernando Valley*

David Iyalomhe
DAVID IYALOMHE & ASSOCIATES
880 West First Street, Suite 313
Los Angeles, CA 90012
Telephone: (213) 626-4100
Telefax: (213) 626-6900
Email: david@doialaw.com
*Counsel for Fair Housing Council of San Fernando Valley*

Stanley L. Friedman
Law Offices of Stanley L. Friedman
445 S. Figueroa Street, 31st Floor
Los Angeles, CA 90071-1631
Telephone: (213) 629-1500
Facsimile: (213) 232-4071
E-mail: friedman@friedmanlaw.org
*Counsel for Independent Living Center of Southern California and Communities Actively Living Independent and Free*

Dated: 9/5/17

Steve Valenzuela
Chief Executive Officer
CRA/LA, A Designated Local Authority,
Successor to Community Redevelopment
Agency of the City of Los Angeles

*ILC, et al v. CRA of Los Angeles, et al., Case No. 12-CV-551 FMO (PJWx)*
SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS BY AND BETWEEN THE CRA/LA AND PLAINTIFFS

1

Approved as to Form:

2

Dated: _September 5, 2017_

3

Robert M. Collins
LEWIS BRISBOIS BISGAARD & SMITH
633 West Fifth Street, Suite 4000
Los Angeles, CA  90071
Telephone: (213) 250-1800
Facsimile: (213) 250-7900
robert.collins@lewisbrisbois.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBITS

**Exhibit A**:  Older Properties Excluded from City Settlement

**Exhibit B**:  Federally-Funded CRA Properties

**Exhibit C**:  Regulatory Agreement Between CRA/LA and Owner

**Exhibit D**: [Proposed] Judgment Pursuant to Settlement Agreement

**Exhibit E**: Certification of Compliance with Accessibility Standards

# Exhibit A

## Older Properties Excluded from City Settlement

| Project | Address | Zip Code | City | Constr. Date | State | No of Units |
|---|---|---|---|---|---|---|
| 3839 Wisconsin Apts. II (Robinson Villas) | 3839-45 Wisconsin St. | 90037 | Los Angeles | 1/11/1991 | | 12 |
| Academy Village | 5225 Blakeslee Ave. | 91601 | North Hollywood | 10/10/89- 7/1/91 - 10/10/89 Council Approval of | | 248 |
| Carlton Hotel | 534 Wall St. | 90013 | Los Angeles | 6/17/1991 | | 45 |
| Casa Del Sol | 1308 Lyman Pl./4563 Fountain Ave. | 90044 | Los Angeles | 7/1/1991 | | 8 |
| Casa Esperanza | 206 E. 23rd St. | 90013 | Los Angeles | 6/30/1991 | | 10 |
| Casa Guadalupe | 3910 Guardia Ave. | 90032 | Los Angeles | 11/21/1988 | | 22 |
| Central Ave. Villas | 4051 Central Ave. | 90011 | Los Angeles | 8/10/1991 | | 20 |
| Clark Residence Ltd. Partnership | 306 S. Loma Drive | 90017 | Los Angeles | 3/1/1990 | | 153 |
| Cochran Villa | 2921 Redondo Blvd. | 90016 | Los Angeles | 6/30/1991 | | 10 |
| Columbia House (Coronado Place) | 671 S. Coronado St. | 90057 | Los Angeles | 6/1/1990 | | 41 |
| Crescent Hotel | 617 E. 5th St. | 90013 | Los Angeles | 6/25/1991 | | 55 |
| Dunning Apts. | 5552 Carlton Way | 90028 | Los Angeles | 7/25/1991 | | 25 |
| Gilbert Lindsay Manor (Coliseo) | 601 W. 40th Place | 90037 | Los Angeles | 1989 | | 137 |
| Harmony Gate | 5218, 5220 & 5234 Harmony Ave. | 91601 | North Hollywood | 12/1/1990 | | 70 |
| Harmony Place Apts. (Harmony Plaza) | 5321 Harmony Ave. | 91601 | North Hollywood | 9/30/1991 | | 18 |
| Hart Hotel | 508 E. 4th St. | 90013 | Los Angeles | 6/18/1991 | | 39 |
| Haskell Hotel | 528 S. Wall St. | 90015 | Los Angeles | 12/30/1990 | | 38 |
| La Jolla Hotel | 721 E. 6th St. | 90013 | Los Angeles | 1/1/1989 | | 51 |
| Las Americas Hotel | 1205-07 E. 6th St. | 90021 | Los Angeles | 7/1/1991 | | 60 |
| Leonide Hotel | 512-16 S. Main St. | 90013 | Los Angeles | 1/1/1989 | | 46 |
| Lorne Park | 11040 Lorne Ave. | 91352 | Los Angeles | 4/7/1990 | | 72 |
| Magnolia Villas S. | 5250 Harmony Ave. | 91601 | Los Angeles | Oct-89 | | 65 |
| Martin Luther King Jr. Village | 801 W. 40th Place | 90037 | Los Angeles | 5/1/1990 | | 7 |
| New Hampshire Apts. | 625 N. New Hampshire Ave. | 90004 | Los Angeles | 7/25/1991 | | 18 |
| Olympia Hotel | 1201 E. 7th St. | 90021 | Los Angeles | 6/6/1991 | | 48 |
| Pico Union Plaza | 1111-1141 W. 17th St. | 90015 | Los Angeles | 1/1/1990 | | 38 |
| Prentice Hotel | 1014 E. 7th St. | 90021 | Los Angeles | 6/27/1989 | | 46 |
| Ridgeview Manor | 14610-14620 Gledhill St. | 91402 | Panorama City | 11/19/1991 | | 40 |
| San Pedro Firm Building | 108-116 N. San Pedro St. | 90012 | Los Angeles | 11/6/1990 | | 42 |
| Sanborn Building (Sanborn Hotel) | 526-528 Main St. | 90013 | Los Angeles | 1/15/1991 | | 64 |

## Older Properties Excluded from City Settlement

| Project | Address | Zip Code | City | Constr. Date | State | No of Units |
|---------|---------|----------|------|--------------|-------|-------------|
| Selby Hotel | 1740-1752 N. Hudson | 90028 | Los Angeles | 6/21/1990 | | 29 |
| Simone Hotel (a.k.a. San Julian Hotel) | 520 S. San Julian St. | 90013 | Los Angeles | Jun-91 | | 123 |
| St. James Square | 1833 W. 5th St. | 90057 | Los Angeles | 12/19/1991 | | 70 |
| St. Mark's Hotel | 609-11 E. 5th St. | 90013 | Los Angeles | 6/30/1991 | | 91 |
| Strathern Park | 11111 Strathern St. | 91352 | Los Angeles | 4/7/1990 | | 169 |
| Strong Residence | 826 S. Coronado St. | 90057 | Los Angeles | 10/5/1990 | | 6 |
| Sunflower Norton Apts. | 1242 S. Norton Ave. | 90019 | Los Angeles | 4/2/1989 | | 10 |
| Telacu Senior Manor L.A. | 1033 S. Hope St. | 90015 | Los Angeles | 9/30/1991 | | 40 |
| Ward Villas | 1177 W. Adams Blvd. | 90007 | Los Angeles | 12/29/1990 | | 120 |
| Westminster Park Plaza | 9400 Maie St. | 90002 | Los Angeles | 2/1/1989 | | 130 |

# Exhibit B

## Federally-Funded CRA Properties

| Project | Address | Constr. State Date | No. of Units | UFAS 5% Requirement | UFAS 2% Requirement |
|---------|---------|--------------------|--------------|---------------------|---------------------|
| Amistad Plaza | 6050-6120 S. Western Ave. | 3/1/2003 | 56 | 3 | 2 |
| Buckingham Place Senior Housing (Buckingham Senior Apts.) | 4020-70 Buckingham Rd. | 2/19/2003 | 70 | 4 | 2 |
| Casa Verde | 1552 Schrader Blvd | 8/15/98 | 30 | 2 | 1 |
| Don Hotel (Don Senior Apartments; Don Carlos Apartments | 105 E. 1 St. | 1999 | 58 | 3 | 2 |
| Eastside Village (Lillian Mobley) | 2250 E. 111st St. | 8/3/2000 | 78 | 4 | 2 |
| Encore Hall (Triangle Square) | 1602 Ivar Ave. | 8/5/2005 | 104 | 6 | 3 |
| Ford Apts. (Ford Hotel) | 1000 E. 7th St. | 5/28/10 | 122 | 7 | 3 |
| Gallery at NoHo Commons | 5416 Fair Ave. | 6/1/2004 | 438 | 23 | 9 |
| Grandview 9 | 916-920 S. Park View St. | 11/3/2000 | 62 | 4 | 2 |
| Heavenly Vision Seniors | 9426 S. Broadway (9500 S. Broadway) | 7/12/1998 | 46 | 3 | 1 |
| Hope Manor | 1332 S. Hope St. | 12/20/1998 | 75 | 4 | 2 |
| Imani Fe East & West | 10424 S. Central Ave. | 8/2/07 City | 92 | 5 | 2 |
| La Estrella | 1979 Estrella Ave. | 7/25/2000 | 11 | 1 | 1 |
| Lofts @ NoHo Commons (a.k.a. NoHo Commons Phase II) | 11136 Chandler Blvd. | 9/1/2005 | 292 | 15 | 6 |

| Project | Address | Constr. State Date | No. of Units | UFAS 5% Requirement | UFAS 2% Requirement |
|---|---|---|---|---|---|
| Metro Hollywood Apts (a.k.a. Hollywood Western Apts./Western Carlton Phase II) | 5450 Hollywood Blvd. | 4/1//02 | 60 | 3 | 2 |
| Palomar Apts. | 5473 Santa Monica Blvd. | 6/27/2003 | 26 | 2 | 1 |
| Paseo del Sol | 417 N. Soto St. | 9/20/2001 | 7 | 1 | 1 |
| Vermont Seniors | 3901-3925 S. Vermont Ave./ 1015 W. 39th Place | 10/1/2005 | 140 | 7 | 3 |
| Villas at Gower | 1720/1726 N. Gower St. | 4/27/10 City | 70 | 4 | 2 |
| Vista Monterey Senior Housing | 4647 Huntington Dr. N. | 9/16/05 CRA; 10/21/2005 | 48 | 3 | 1 |
| Western Carlton Apartments; Carlton Court Apartments | 5443 Carlton Way | 4/15/1999 | 61 | 4 | 2 |
| Yale Terrace Apartments | 716-734 S. Yale St. | 3/17/2005 | 55 | 3 | 2 |
| | | | **2001** | 111 | 52 |

2

Plaintiffs _____

CRA _____

# Exhibit C

# ACCESSIBILITY COVENANT AGREEMENT

### Between

### CRA/LA, A Designated Local Authority, Successor to Community Redevelopment Agency of the City of Los Angeles

### and

### [OWNER]

relating to

### (NAME OF HOUSING DEVELOPMENT)

Dated as of _____

## ACCESSIBILITY COVENANT AGREEMENT

THIS ACCESSIBILITY COVENANT AGREEMENT ("Accessibility Covenant Agreement" or "Agreement") is made, entered into and dated as of [DATE] by and between the CRA/LA, A Designated Local Authority ("CRA/LA") and [NAME OF OWNER] ("Owner").

## RECITALS

WHEREAS, Owner is the owner of that certain [# OF UNITS]-unit multifamily rental housing project commonly referred to as [NAME OF HOUSING DEVELOPMENT] and located at [ADDRESS AND LEGAL DESCRIPTION] (the "Project"); and

WHEREAS, CRA/LA is providing financial assistance to [OWNER] in the amount of [AMOUNT OF ASSISTANCE] for purposes of financing costs of any necessary improvements and equipment to bring the Project into compliance with the Accessibility Requirements, as defined below; and

WHEREAS, Owner has agreed to comply with the terms and provisions of this Accessibility Covenant Agreement upon the date this Agreement is recorded in the Official Records of the County of Los Angeles (the "Effective Date"); and

WHEREAS, the CRA/LA is subject to Federal and state civil rights laws and regulations, including but not limited to Section 504 of the Rehabilitation Act of 1973, 29 U.S.C §794, and implementing regulations at 24 C.F.R. Part 8 (Section 504); Title II of the Americans with Disabilities Act, 42 U.S.C. §§12131-12134, and implementing regulations at 28 C.F.R. pt. 35 ("ADA"); and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§3601-3620, and implementing regulations at 24 C.F.R. Parts 100, 103, 108, 110, and 121; and Chapter 11A and 11B of the California Building Code; and

WHEREAS, the CRA/LA as a "public entity" within the meaning of Title II regulations, must ensure that its programs, services and activities, comply with the ADA; and

WHEREAS, the CRA/LA has agreed to provide the financial assistance upon the condition that Owner agrees to enter into this Agreement to comply with theAccessibility Requirements.

NOW, THEREFORE, in consideration of the mutual covenants and undertakings set forth herein, and other good and valuable consideration, the receipt and sufficiency of which hereby are acknowledged, the CRA/LA and Owner hereby agree as follows:

Section 1. Definitions.

"Accessibility Requirements" refers to the accessibility requirements that must be followed in the design, construction or alteration of the Project or an individual housing Unit of the Project (including common use elements), based on all the applicable laws and regulations, including: (1) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, et seq. and the implementing standards ("2010 ADA Standards") at 28 C.F.R. Part 35 and the 2004 ADA Accessibility Guidelines ("ADAAG"); (2) Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. §794, the implementing regulations at 24 C.F.R. Part 8, as well as the requirements of the Uniform Federal Accessibility Standards ("UFAS");  (3) the Alternative Accessibility Standard; (4) the Fair Housing Act of 1968, as amended ("FHA"), 42 U.S.C. §§3601-3620; and its implementing regulations at 24 C.F.R. Parts 100, 103, 108, 110, and 121; and (5) the California Building Code, Chapters 11A and 11B.

"Accessible" means when used with respect to a Housing Unit or Housing Development, full compliance with the Accessibility Requirements.

"Accessible Housing Development" means a Housing Development that is Accessible, including Accessible public and common use areas.

"Accessible Housing Units" means, collectively, Housing Units that are on an Accessible Route, are Accessible, and are located in an Accessible Housing Development. The term Accessible Housing Units refers collectively to Housing Units with Mobility Features and Housing Units with Hearing/Vision Features.

"Alternative Accessibility Standard" means and refers to the alternative accessibility standard for new construction set out in a U.S. Department of Housing and Urban Development notice at 79 Fed. Reg. 29,671 (May 23, 2014), when used in conjunction with the new construction requirements of 24 C.F.R. pt. 8, 24 C.F.R. § 8.22, and the new construction requirements of 28 C.F.R. pt. 35, including the 2010 Standards for Accessible Design as defined in 28 C.F.R. § 35.104 and as applied to public entities (excluding any elevator exceptions).

"Fair Housing Policy in Regard to Disability" means the document containing the policy of the City of Los Angeles, as amended periodically, that all City- and CRA-assisted affordable housing developments be constructed and operated in accordance with all applicable disability and fair housing laws and under which the Owner is required to create a Property Management Plan ("Property Management Plan" or "PMP") as described in Section 4 that must comply with the requirements and guidance in the Fair Housing Policy in Regard to Disability. The PMP must be consistent with the Property Management Plan template of the City of Los Angeles Housing + Community Investment Department ("HCID") and must be approved by CRA/LA or its designee.

"Housing Development" means the whole of one or more residential structures and appurtenant structures in the Project, including common walkways and parking lots that were or are designed, constructed, altered, operated, administered or financed in whole or in part in connection with the issuance of CRA/LA assistance.

"Housing Unit" means a single unit of residence in the Housing Development that provides spaces for living, bathing, cooking and sleeping.

"Housing Unit with Hearing/Vision Features" means a Housing Unit that complies with 24 C.F.R. §8.22 and all applicable provisions of UFAS or the comparable provisions of the Alternative Accessibility Standard, and shall include but not be limited to section 809.5 of the 2010 Standards for Accessible Design.

"Housing Unit with Mobility Features" means a Housing Unit that is located on an accessible route and complies with the requirements of 24 C.F.R. § 8.22 and all applicable provisions of UFAS or the comparable provisions of the Alternative Accessibility Standard including but not limited to sections 809.2 through 809.4 of the 2010 Standards for Accessible Design.

"UFAS" means the Uniform Federal Accessibility Standards for the design, construction or alteration of buildings and facilities to ensure that they are readily accessible to and usable by individuals with disabilities, 24 C.F.R §40, Appendix A

**Section 2. Requirements of the CRA/LA**. As of the Effective Date, the Owner represents, warrants, covenants and agrees as follows:

    a.    Accessible Housing Units. The Housing Development shall be retrofit or constructed in accordance with the Accessibility Requirements to ensure accessibility for persons with disabilities. The following types of Accessible Housing Units shall be prioritized for persons with disabilities who have a disability-related need for the accessibility features of the unit.

        (i)    At least <u>five percent</u> (5%) of the total Housing Units in the Housing Development shall be constructed and maintained by the Owner as Housing Units with Mobility Features.

        (ii)    At least <u>two percent</u> (2%) of the total Housing Units in the Housing Development shall be constructed and maintained by the Owner as Housing Units with Hearing/Vision Features.

        (iii)    In determining the number of required Accessible Housing Units any fractions of Units shall be rounded up to the next whole number.

(iv)     The Accessible Housing Units shall, to the maximum extent feasible, be geographically distributed and dispersed in terms of location within the Housing Development, and shall be provided in a range of unit sizes and types.

(v)     Following reasonable notice to Owner, Owner shall allow the CRA/LA or its agent to conduct annual on-site inspections of the Housing Development and the Housing Units in order to verify compliance with the Accessibility Standards.

b.  The Housing Development as a whole and all Housing Units shall meet the requirements of the FHA and California Building Code as defined above.

**Section 3. Occupancy of Accessible Units.**  Owner shall use suitable means to assure that information regarding the availability of Accessible Units reaches eligible individuals with disabilities, and will take reasonable, nondiscriminatory steps to maximize the utilization of such units by eligible individuals whose disability requires the accessibility features of the particular unit. To this end, Owner will take the following steps when an Accessible Unit becomes vacant:

a.     First, Owner will offer the unit to a current occupant of the Housing Development who has requested and needs the features of an Accessible Unit;

b.     Second, Owner will offer the unit to a current occupant of a Housing Development under common control who has requested and needs the features of an Accessible Unit;

c.     Third, Owner will offer the unit to an eligible, qualified applicant on the waiting list for Accessible Units who needs the features of an Accessible Unit;

d.     Fourth, Owner will make reasonable efforts to advertise the unit to qualified individuals who need the accessible features, including listing it as available to individuals who need the accessible features at http://www.Housing.LACity.org, distributing the information about the accessible vacancy in accord with the Owner's-approved Property Management Plan, distributing it to the most recent list from HCID of organizations that serve people with disabilities, and sending an e-blast to parties on the Housing.LACity.org website Outreach List.  In the event that more than one household has requested an Accessible Unit, Owner will offer the Unit to households in order on the Waiting Lists within each category.

If, after using the process identified above, there are no households who need the features of that Accessible Unit, then Owner may offer the unit to the next household on the conventional unit waiting list. Should that household choose not to occupy the Accessible Unit, it will remain at the same position on the conventional waiting list. If the household chooses to occupy the Accessible Unit, the tenant must sign a Lease Addendum substantially in the form of the Lease Addendum used by HCID, that requires the household to move to the next available, conventional unit of comparable bedroom size

and rent obligation, when given legal notice by the Owner that there is an eligible applicant or existing resident with a disability who requires the accessibility features of that Unit.

For individuals who are required to vacate an Accessible Unit because it is needed by an individual with a disability, Owners will pay the costs of transferring tenants to a comparable conventional unit, including new utility deposit(s), if required, and reasonable moving expenses.

**Section 4. Rental Policies.** The Owner shall adopt rental policies that meet the requirements of the ADA, other federal regulations as applicable, and the Fair Housing Policy in Regard to Disability of the City, as amended. A copy of the Policy is available from CRA/LA upon request. To that end, Owner shall adopt rental occupancy policies provided by the CRA/LA. Owner shall develop and utilize a PMP approved by the CRA/LA, which describes affirmative marketing, tenanting, and other procedures to ensure that the Housing Development meets all of the fair housing requirements for individuals with disabilities. Within 90 days of the issuance of CRA/LA assistance, the Housing Development must have a PMP approved by CRA/LA or its designee.

Rental applications will include a section to be filled out by applicants requesting a reasonable accommodation or modification. Unless it is an eligibility requirement for a particular Housing Development, applicants will not be required to disclose a disability under any circumstances unless requesting an accommodation or modification and that disclosure shall pertain only to the accommodation being requested. Outreach efforts to the disability community shall include, but not be limited to, notices and other communications describing the availability of such units, specific information regarding the features of accessible units, eligibility criteria, and application procedures. These, and additional procedures, are incorporated into the HCID Fair Housing Policy in Regards to Disability, dated May 12, 2016, as amended over time.

**Section 5. Residential Rental Property**. The Owner hereby represents, covenants, warrants and agrees as follows:

    a.    Each of the Accessible Housing Units in the Project will contain complete separate and distinct facilities for living, sleeping, eating, cooking and sanitation for a single person or a family, including a sleeping area, bathing and sanitation facilities and cooking facilities equipped with a cooking range and oven, a sink and a refrigerator. Notwithstanding the foregoing, a unit shall not fail to be treated as an Accessible Housing Unit merely because such unit is a single room occupancy unit within the meaning of Section 42(i)(3)(B)(iv) of the Code even though such housing may provide eating, cooking and sanitation facilities on a shared basis.

    b.    Each of the Accessible Housing Units (which shall not include any manager units) will be available for rental on a continuous basis to members of the general public, and the Owner shall give a preference to the Accessible Housing Units to persons with disabilities as provided herein. The owner will not give any other preference to any particular class or group in renting the Accessible Housing units, except for the following

additional preferences that may be applied in conjunction with the preference for persons with disabilities who meet the additional preferences: (l) any dwelling units that are required to be leased or rented to low income tenants and persons [62] years of age and older, (2) the requirements of any regulatory agreement executed between the Owner and HUD or between the Owner and a subordinate lender (including the City), (3) the requirements of any Section 8 Housing Assistance Payments Contract with respect to the Project, and (4) any preference Owner gives to a class of persons permitted to be given preference pursuant to the Code, State law and other applicable federal law.

**Section 6. Monitoring Requirements**. CRA/LA will monitor, or cause to be monitored, the the compliance of each Housing Development with the requirements of this Agreement.  In order to determine compliance with the Accessibility Requirements, Owner shall submit and CRA/LA shall review and approve a certification report for the Housing Development, conducted by an architect other than the one who designed the project, that identifies the necessary and required design elements to make the units and site accessible for individuals with disabilities.  CRA/LA shall inspect the construction/rehabilitation to verify production of the correct number of Accessible Housing Units and appropriate site improvements, in compliance with the Accessibility Standards and Section 2 and supported by an independent-consultant's report.

From the date of this Agreement to the end of the Accessibility Covenant Agreement as set forth in Section 7, CRA/LA will utilize the Housing Development's approved Property Management Plan and the Fair Housing Policy in Regards to Disability, to monitor ongoing occupancy compliance of the Accessible Housing Units and nondiscrimination in regards to individuals with disabilities. Compliance with the Accessibility Requirements shall include, but not be limited to, maintenance of accessibility features, target marketing, establishing and monitoring the waiting list specific to the Accessible Housing Units, reasonable accommodations and modifications, a service animal policy, an effective communication policy, a policy for re-leasing empty Accessible Housing Units and all elements contained in the Fair Housing Policy in Regard to Disability, as amended over time.

**Section 7. Term of the Accessibility Covenant Agreement**. This Accessibility Covenant Agreement shall become effective upon the Effective Date and shall terminate Twenty-Five Years following the Effective Date, or at the termination of other affordability or other covenants applying to the Accessible Housing Units, whichever comes later..

**Section 8. Covenant To Run With the Land**. The Owner hereby subjects the Project to the covenants, reservations and restrictions set forth in this Accessibility Covenant Agreement. CRA/LA and the Owner hereby declare their express intent that the covenants, reservations and restrictions set forth herein shall be deemed covenants running with the land and shall pass to and be binding upon the Owner's successors in title to the Project, provided, however, that on the termination of this Agreement said covenants, reservations and restrictions shall expire. Each and every contract, deed or other instrument hereafter executed covering or conveying the Project or any portion thereof shall conclusively be held to have been executed, delivered and accepted subject to such covenants, reservations and restrictions, regardless of whether such covenants, reservations and restrictions are set forth in such contract, deed or other instruments.

**Section 9. Default; Enforcement**. As part of ensuring compliance with the Accessibility Requirements, CRA/LA or its agent, may conduct annual on-site visits inspecting the Housing Development, which inspection may include inspecting the Housing Units and common areas, tenant files, logs and other records. Should the Owner fail to comply with the Accessibility Requirements, the CRA/LA or its agent will first issue an Order to Comply ("Order") stating the element of the Housing Development that is out of compliance, and providing a date by which the Owner must comply. The Order shall give the Owner not more than 30 days to correct the violation, or such additional time as the CRA/LA or its agent may grant if the Owner is taking steps to correct the violation ("Compliance Date"), and diligently pursues such action until the default is corrected, which extension is in the sole discretion of the CRA/LA or its agent. The CRA/LA or its agent may reinspect the Housing Development within 10 days of the Compliance Date specified in the Order or any extension, however failure to inspect or reinspect within that time frame does not remove the obligation of the Owner to comply with the Order. If the Order is issued and the violation continues to exist after the Compliance Date, the CRA/LA or its agent may take any one or more of the following steps:

a.      Inspection Fee for Non-Compliance. In the event the Owner fails to comply with the Order within the Compliance Date, the Owner shall be liable for subsequent inspection fees in the amount of $250 for each hour involved in inspecting the Housing Development until compliance has been achieved. Failure to pay the assessed inspection fee within 30 days of the date of invoice, will result in a late charge equal to two times the fees and a collection fee equal to 50 percent of the original fee shall be imposed if any fee imposed is not paid within 30 days of service of notice of the imposition of the fee. The late fee may be imposed without a hearing but may be appealed to the Chief Executive Officer of the CRA/LA. The appeal shall be made in writing, and shall specify the grounds for the appeal. The appeal shall be filed with CRA/LA within ten calendar days of the issuance of the imposition of the late fees and costs. The Chief Executive Officer or his designee shall issue a decision within ten calendar days of the filing of the appeal. A copy of the decision shall be served on the person or entity subject to the Order or fee by first class United States mail, postage prepaid, or in person. The CRA/LA shall have the right to bring legal action in any court to enforce the Order and collect the amount of outstanding fees and penalties. The CRA/LA may waive the penalty imposed pursuant to this section if CRA/LA determines that good causes exists for the Owner's failure to pay in a timely manner.

b.      By mandamus or other suit, action or proceeding at law or in equity, including injunctive relief, require the Owner to perform its obligations and covenants hereunder or enjoin any acts or things which may be unlawful or in violation of the rights of the CRA/LA hereunder; and

c.      Have access to and inspect, examine and make copies of all or a portion of the records of the owner pertaining to compliance with all provisions of this Accessibility Covenant, including records relating to the accessibility of the Accessible Housing Units; Certification Reports and underlying documents; the marketing, leasing and occupancy of Accessible Housing Units by people with disabilities who need the accessible features; compliance with the Housing Development's approved Property Management Plan and the Fair Housing Policy in Regards to Disability; tenant waiting lists, applications, records and logs; and the implementation of the Rental Policies described in Section 4 above.

d.      Take such other action at law or in equity as may appear necessary or desirable to

enforce the obligations, covenants and agreements of the Owner hereunder.

Any other person or entity injured by the Owner's failure to comply with the Accessibility Requirements may bring an action in an appropriate forum to vindicate the rights secured under this Agreement.

**Section 10. Americans with Disabilities Act, the Fair Housing Act, and California Law.** The Owner hereby certifies that it and its property manager and any subcontractor will comply with the Accessibility Requirements. The Owner and any contractor and subcontractor will provide reasonable accommodations to allow qualified individuals with disabilities to have access to and to participate in its programs, services, and activities in accordance with the applicable provisions of the ADA, the ADAAA, Section 504, the UFAS, the FHA, the California Fair Employment and Housing Act, the California Building Code and all subsequent amendments, and all other applicable state and federal fair housing laws. The Owner and any contractor and subcontractor will not discriminate against persons with disabilities or against persons due to their relationship to or association with a person with a disability. Any contract and subcontract entered into by the Owner, relating to this Accessibility Covenant Agreement and the Project, to the extent allowed hereunder, shall be subject to the provisions of this paragraph.

**Section 11.  Governing Law.**  This Accessibility Covenant Agreement shall be governed by the laws of the State of California.

**Section 12. Counterparts**. This Accessibility Covenant Agreement may be executed in counterparts, each of which, when the parties hereto have signed the Agreement, shall be one and the same instrument.

**Section 13. Recording and Filing**. The Owner shall cause this Accessibility Covenant Agreement to be recorded and filed in the real property records of the County of Los Angeles and in such other places as the City may reasonably request.

**Section 14.  Entire Agreement**. The provisions herein constitute the entire agreement between the parties hereto. Each party to this Agreement acknowledges that no representations, inducements, promises or agreements, orally or otherwise, have been made by any party or anyone acting on behalf of any party, which are not embodied herein. This Accessibility Covenant Agreement shall be amended only by a written instrument executed by the parties hereto or their successors in title, and duly recorded in the real property records of the County of Los Angeles, California.


IN WITNESS WHEREOF, the CRA/LA and the Owner have executed this Accessibility Covenant Agreement by their duly authorized representatives, all as set forth as of the date below.

# Exhibit D

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, *et al.*

                Plaintiffs,

vs.

CITY OF LOS ANGELES, CALIFORNIA, *et al.*

                Defendants.

_____

CASE NO.:  CV 12-0551  FMO (PJWx)

**[PROPOSED] JUDGMENT PURSUANT TO  SETTLEMENT AGREEMENT BY AND BETWEEN CRA/LA, A DESIGNATED LOCAL AUTHORITY, SUCCESSOR AGENCY TO THE COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES, AND PLAINTIFFS**

4821-0731-7070.1

1

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

WHEREAS, the CRA/LA, a Designated Local Authority, a defendant in this action and the successor agency to the Community Redevelopment Agency of the City of Los Angeles (the "CRA"), and the Independent Living Center of Southern California ("ILCSC"), the Fair Housing Council of the San Fernando Valley ("FHC") and Communities Actively Living Independent and Free ("CALIF") (collectively referred to herein as "Plaintiffs") have entered into a Settlement Agreement and Release of Claims, attached as Exhibit 1, which fully resolves claims asserted by Plaintiffs against the CRA; and

WHEREAS, the Court has jurisdiction over the subject matter of this action, the Plaintiffs, the CRA, and the Settlement Agreement; and

WHEREAS, upon consideration, the Court finds the Settlement Agreement to be fair, reasonable, and adequate.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:

1.      For the purposes of this Judgment, the Court adopts the terms and definitions set forth in the Settlement Agreement attached as Exhibit 1, and all terms of the Settlement Agreement are incorporated herein by reference.

2.      This Judgment Pursuant to Settlement completely resolves this civil action between the CRA and Plaintiffs.  The claims against the City of Los Angeles were previously resolved by Judgment Pursuant to Settlement Agreement by and between City of Los Angeles and Plaintiffs (Doc. 532, filed August 4, 2016).  This does not resolve this action between Plaintiffs and the remaining nominal defendants.

3.      In accordance with the terms of the Settlement Agreement, this Court reserves exclusive and continuing jurisdiction to interpret and enforce the terms of the Settlement Agreement during the Settlement Term, and to resolve any disputes that may arise during the Settlement Term.

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

4.      The court determines that there is no reason to delay entry of this Judgment Pursuant to Settlement Agreement By and Between the CRA and Plaintiffs.

### IT IS SO ORDERED and ADJUDGED

Dated: _____          _____

The Hon. Fernando M. Olguin
UNITED STATES DISTRICT JUDGE

Attachment:  Exhibit 1

*Independent Living Center of Southern California, et al v. City of Los Angeles, et al., Case No. CV 12-0551 SJO (PJWx)*

[PROPOSED] JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Exhibit 1

**Settlement Agreement and Release of Claims**

Exhibit
E

## Certification of Compliance with Accessibility Standards

In my capacity as independent licensed architect and California Certified Accessibility Specialist ("CASp"), and having reviewed the Accessibility Laws and Accessibility Standards, as those terms are defined in the Settlement Agreement between the CRA/LA and Plaintiffs in *Independent Living Center of Southern California et al. v. City of Los Angeles and CRA/LA*, I [INSERT NAME] hereby certify, based on an on-site accessibility survey that I personally conducted, to the best of my professional knowledge, information and belief, that the Housing Development identified below, including the Housing Units and public and common use areas, complies with the Accessibility Laws and Accessibility Standards, including the Uniform Federal Accessibility Standards, the 2010 Americans with Disabilities Act Accessibility Guidelines and Chapters 11A and 11B of the California Building Code.

A copy of the completed survey instrument, report, documentation, and other supporting information is attached to this certification.

**Name, Street Address, and Description of Housing Development Surveyed:**

**Description of Features and Amenities (e.g., community room, playground equipment, computer lab, fitness center, transportation services, swimming pool, on-site laundry, library, barbeque and picnic areas):**

**Total No. of Units in Housing Development:**

**List of Accessible Units by Address, Unit No., No. of Bedrooms, and Type (Mobility or Hearing/Vision):**

**Name and Professional Qualifications Person Providing Certification:**

**Date(s) Accessibility Survey Conducted:**

**Date of Certification:**

_____

[Name]
[Company]
[Address]
[Telephone Number]
[E-mail Address]
