MICHAEL G. ALLEN, *pro hac vice*
JENNIFER I. KLAR, *pro hac vice*
ASHLEY BRICKHOUSE, *pro hac vice*
RELMAN COLFAX PLLC
1225 19th St. NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
mallen@relmanlaw.com

Corrigan L. Lewis
DISABILITY RIGHTS LEGAL CENTER
1001 Wilshire Boulevard Suite 100
Los Angeles, CA 90017
Telephone: 213-736-1031
Facsimile: 213-736-1428
Email: cll@thedrlc.org

*Counsel for Plaintiffs Independent Living Center of Southern California and Communities Actively Living Independent and Free*

DAVID GEFFEN #129342
DAVID GEFFEN LAW FIRM
1717 4th Street 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
david@davidgeffenmediation.com

DARA SCHUR #98638
DISABILITY RIGHTS CALIFORNIA
1831 K Street
Sacramento, CA 95811
Telephone: (510) 267-1200
Facsimile: (510)267-1201
Dara.Schur@disabilityrightsca.org

AUTUMN ELLIOTT #230043
LAW OFFICE OF AUTUMN ELLIOTT
325 North Larchmont Blvd., Suite 307
Los Angeles, CA 90004
Telephone: 213-500-9454
Email: autumn@elliottimpact.com

**UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF CALIFORNIA (WESTERN DIVISION)**

| | |
|---|---|
| INDEPENDENT LIVING CENTER OF SOUTHERN CALIFORNIA, *et al.*<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, CALIFORNIA, and COMMUNITY REDEVELOPMENT AGENCY OF THE CITY OF LOS ANGELES,<br><br>Defendants. | Case No.: 12-CV-00551 FMO (PJWx)<br><br>**PLAINTIFFS ILCSC AND CALIF'S STATUS CONFERENCE REPORT**<br><br>Judge: Hon. Fernando M. Olguin<br>Date: December 4, 2025<br>Time: 10:00 a.m.<br>Courtroom: Number 1, 2nd Floor |

## A. INTRODUCTION

In advance of the December 4, 2025, status conference and the hearing on their motion, Dkt. 800, seeking the Court's approval of the Monitor's Order of July 29, 2025, Dkt. 799, Plaintiffs Independent Living Center of Southern California ("ILCSC") and Communities Actively Living Independent and Free ("CALIF") submit this Status Conference Report to advise the Court of remaining disputes between the Parties and to highlight items that require action by the Court at this time in order to effectuate the Consent Decree regarding the accessibility of the City's affordable housing portfolio.

## B. PROCEDURAL HISTORY AND OUTLINE OF REPORT

The Status Conference will be held pursuant to the Court's Order of March 31, 2025, Dkt. 778.[1] The March 31 Order also stated that, given that the City had only certified 1,330 out of a required 4,000 accessible units, "the City's failure to provide accessible housing in a timely manner appears to be so extreme as to render the First Amended Consent Decree significantly, if not largely, ineffectual." *Id.* at 8–9.

In response to the March 31 Order, the Monitor asked the parties to brief (1) the burden of proof applicable to claims by ILCSC and CALIF that the City had violated the Consent Decree; (2) the specific violations and supporting evidence; and (3) any other issue relating to the extension of Consent Decree deadlines. Monitor's Memorandum of April 12, 2025, at 2. The parties did so. Dkt. 793-1, 791, 794. The Monitor rendered his Findings, Recommendations and Orders ("Monitor's Order") on July 29, 2025. Dkt. 799.

ILCSC and CALIF ask the Court to take action on the Monitor recommendations in Section C below, which require action or resolution by the Court at this time.

In the remaining sections below, we report on matters that do not require resolution by the Court at this time and simply provide an update for the Court's information. In Section D, we report on a number of disputes between the Parties that

---

[1] The Court initially set a status conference for June 5, 2025. The conference has been continued several times, at the request of the Monitor (Dkt. 787) the Parties (Dkt. 802, 803) and on the Court's own motion (Dkt. 811, 814).

were either resolved by the Monitor's Order or are under discussion by the Parties as ordered by the Monitor. In Section E, we report on additional issues for which the Monitor determined that additional fact-finding may be appropriate before he makes further decisions within his authority. We propose that the Court await a further request from any of the Parties before taking formal action on them.

### C.  MATTERS REQUIRING THE COURT'S ACTION AT THIS TIME

Because the City is unable to meet Consent Decree deadlines, ILCSC and CALIF requested—and the Monitor has recommended—that the Consent Decree be revised to reflect additional terms necessary to ensure the City's compliance. As outlined in the attached Revised [Proposed] Order, meant to accompany their Motion to Approve Monitor's Findings and Orders, Dkt. 800, ILCSC and CALIF ask that the Court order the Parties to "work with the Monitor to prepare a proposed revised Consent Decree that complies with this ruling and the Monitor's Order," and to submit a "proposed revised Consent Decree . . . to this Court no later than sixty (60) days following the date of entry of this Order." Dkt. 817-1, at 4. While the City has agreed to discuss revision of the Consent Decree with Plaintiffs, a concrete deadline—as recommended by the Monitor—will ensure that this important step is timely completed.

With respect to the following additional issues, ILCSC and CALIF move the Court to adopt and affirm the Monitor's findings of fact, conclusions of law, and recommendations, pursuant to Fed. R. Civ. P. 60(b), and to "take actions and issue orders consistent with the Monitor's recommendations, as set out in the Revised [Proposed] Order submitted herewith." Dkt. 817-1:

1.  **Deadline to Provide Accessible Units**: All Parties recognize that the City will not meet the September 5, 2026, deadline to provide 4,000 Accessible Units (the "Target Number") as required by the operative Consent Decree, Dkt. 714-3, at 15 ¶ 10.a. After reviewing extensive briefing by the Parties, the Monitor recommended that the Court: (a) extend the Settlement Term and order the City to meet the Target Number by September 5, 2031; and (2) order the City to ensure that it budgets sufficient funding,

year by year, to meet the September 5, 2031, deadline through new construction or retrofits. Dkt. 799, at 63 ¶ V.A. ILCSC and CALIF ask that the Court order this relief.

       2.     **Sanctions**: The Monitor recommended that the Court issue specific orders concerning monetary sanctions should the City fail to meet the Target Number by September 5, 2031. Pursuant to that recommendation: (a) on September 5, 2031—and every six months thereafter—the City would be required to pay a fine "in an amount equal to the average cost to retrofit an existing units" multiplied by the shortfall in production; and (b) additional "fines may be assessed for violations of other deadlines in the Consent Decree and Court Orders in an amount to be determined at the time." Dkt. 799, at 68–69. ILCSC and CALIF ask the Court to issue the recommended orders.

       3.     **Staffing**: The Monitor found that "lack of sufficient staffing has been a consistent challenge for the City's implementation of the Consent Decree in a timely fashion," Dkt. 799, at 52, and—pursuant to the Monitor's authority—ordered the City "by September 30, 2025, to prepare, and submit to the parties and the Monitor, a detailed staffing and resource analysis, showing with specificity any Consent Decree requirements—including those set forth in this order/recommendation as well as any subsequent order by the Court—for which the City lacks sufficient staffing or other resources. To the extent that this analysis identifies deficiencies in staffing or resources, the City should describe how it intends to address those deficiencies." *Id.* at 54.

The City submitted a "Staffing Plan" on September 30, 2025, but the Monitor found that it "does not specifically identify any tasks or responsibilities, or the resources and staff available to complete those tasks and responsibilities . . . Because the City did not provide a detailed analysis of the tasks and responsibilities necessary to implement the [Consent Decree], and the staff and resources available to complete those tasks and responsibilities, it is impossible to evaluate its assertion that it has sufficient staff positions." Monitor's E-Mail of October 17, 2025. ILCSC and CALIF ask the Court to enter an order to ensure that the City has sufficient staffing to complete the tasks required by the Consent Decree. ILCSC and CALIF propose that the Court order the

City to retain an independent staffing expert to analyze staffing levels and report to the Monitor if the City does not produce a staffing plan that the Monitor determines is adequate by January 15, 2026.

    4.    **<u>Monitoring Fees:</u>** The Monitor found that "[c]ounsel for CALIF and ILCSC have played a crucial role in the monitoring and implementation of the Consent Decree. Among other things, they have led and participated in working groups, helped draft policies, and identified potential experts. The Monitor anticipates that, going forward, their continued participation will be instrumental in ensuring proper implementation of the Consent Decree, and the Monitor recommends that the Court grant their request for prospective fees." Dkt. 799, at 58–59. Specifically, the Monitor recommended that the Court grant prospective monitoring fees for ILCSC and CALIF counsel collectively, "capped at $700,000 for the year beginning July 1, 2025, and reduced by an appropriate amount for each remaining year until the City completes its obligations under the Consent Decree." *Id.* at 73.

ILCSC and CALIF ask that the strike in its entirety Paragraph VIII.6 of the Consent Decree, at ECF page 65:22–67:2, and revise Paragraph VIII.3 of the Consent Decree, at ECF page 63:26–64:18, to read as follows:

> "The City shall pay to Counsel for ILCSC and CALIF their reasonable and necessary monitoring fees and expenses during the Extended Settlement Term not to exceed the following amounts, exclusive of any disputes resolved by the District Court. The amounts shall be equally attributed to between ILCSC and CALIF.
> - For the year beginning July 1, 2025, $700,000
> - For the year beginning July 1, 2026: $625,000
> - For the year beginning July 1, 2027: $550,000
> - For the year beginning July 1, 2028: $475,000
> - For the year beginning July 1, 2029: $400,000
> - For the period July 1, 2030 to September 5, 2031: $400,000:

- For any period thereafter until the City provides the Target Number of Accessible Units, Counsel for ILCSC and CALIF shall be awarded appropriate monitoring fees, in amounts to be established by the Court at a future time."

5. **Comprehensive Database**: The Monitor recommended that the Court extend the City's deadline to provide the comprehensive database to December 31, 2027. ILCSC and CALIF ask that the Court to adopt this recommendation and order the City to meet that deadline.

6. **Registry**: The Monitor found that the City had made some but not all of the improvements to the Registry that had been required by previous Monitor orders. Because the City has entered into a contract to accomplish other improvements, the Monitor recommended that the Court modify the Consent Decree to "require the City—working with Exygy—[to] ensure that, by June 1, 2027, the City improve the Registry" in three specific ways, and "improve the ability of Registry users to take as many steps as possible in the full application process online." Dkt. 799, at 63. ILCSC and CALIF ask that the Court adopt and enforce that deadline.

D.   **MATTERS RESOLVED UNDER MONITOR'S AUTHORITY**

The Monitor and Parties worked together to resolve a number of disputes as described below. ILCSC and CALIF ask that the Court affirm the Monitor's findings and recommendations and enter appropriate orders to ensure compliance.

1. **Audits**: The Monitor ordered the City to extend the contract with Abt Global. The Monitor worked with the Parties to ensure that a contract with Abt Global to conduct third-party audits of compliance by owners and managers of Covered Housing Developments was extended through October 30, 2027.

2. **Deficiencies in Monitoring, Compliance, and Enforcement (MCE) Plan**: Through a meet-and-confer process ordered by the Monitor, the Parties resolved the following disputes:

a. <u>Developing educational videos concerning accessibility issues</u>: The Monitor ordered the production of these videos by a date certain. Because the Parties have now resolved this matter, ILCSC and CALIF ask that the Court not find the City in contempt and not impose sanctions.

b. <u>Reporting on City follow-up concerning Abt Global findings of non-compliance</u>: The Monitor ordered the City to implement a system for reporting back. Because the Parties resolved this matter, ILCSC and CALIF ask that the Court not find the City in contempt and not impose sanctions.

c. <u>Enforcing 14 Orders to Comply</u>: The Monitor ordered the City Attorney to provide specific information by a date certain. Because the Parties resolved this matter, ILCSC and CALIF ask that the Court not find the City in contempt and not impose sanctions.

E.  **ISSUES RESERVED FOR FUTURE MONITOR RESOLUTION**

1.  **Self-Evaluation/Transition Plan**: After finding "the City is out of compliance with the requirement that it complete self-evaluations and develop transition plans for [the Los Angeles Housing Department [LAHD] and the Los Angeles Department of Building and Safety [LADBS]," Dkt. 799, at 51, the Monitor ordered the City to share completed documents and drafts for both LAHD and LADBS, and to hold public meetings and submit budget resolutions by specified dates. The City circulated an initial draft of an LAHD self-evaluation on October 31, 2025. There is no public hearing schedule in compliance with the Monitor's order, and nothing has been submitted in regard to LADBS. ILCSC and CALIF will work with the Monitor to ensure that the City complies with the Monitor Order for LAHD and LADBS. ILCSC and CALIF do not seek sanctions at this time.

2.  **Relocation**. The Monitor ordered the City to identify and retain a Tenant Advocate and to report monthly on the status. The City reports that it has received and vetted an application for the Tenant Advocacy RFP and hopes to have the Tenant

Advocate on board soon. ILCSC and CALIF will work with the Monitor to ensure the City complies with the Monitor Order.

      3.    **Future Monitor Proceedings**: Pursuant to the authority granted to him by the Court, the Monitor has received the Parties' briefing on a number of additional issues and will be conducting Monitor hearings in early 2026, with the objective of issuing further Monitor orders:

      a. Compiling an inventory of accessibility features

      b. Resolving confusion concerning units that are "purportedly" accessible

      c. Production of Standard Reports: The Monitor ordered the City to produce certain reports by a date certain. Certain details concerning the design and content of standard reports to be provided by the City have been briefed to the Monitor and will be resolved by him.

      d. Deficiencies related to the marketing and tenanting of Accessible Units in the Coordinated Entry System operated by the Los Angeles Homeless Services Authority

E. **CONCLUSION**

For the foregoing reasons, ILCSC and CALIF request that the Court affirm the Monitor's legal conclusions, findings, and ask that the Court take actions and issue orders consistent with the Monitor's recommendations, as set out in the Revised [Proposed] Order submitted with their motion. Dkt. 817-1.

Respectfully submitted,

Dated: November 24, 2025

/s/ Michael G. Allen
Michael G. Allen, *pro hac vice*
Jennifer I. Klar, *pro hac vice*
Ashley Brickhouse, *pro hac vice*
RELMAN COLFAX PLLC
1225 19th St. NW, Suite 600
Washington, D.C. 20036
Telephone: (202) 728-1888
Facsimile: (202) 728-0848
mallen@relmanlaw.com

Dara Schur
DISABILITY RIGHTS CALIFORNIA
1831 K Street
Sacramento, CA 95811
Telephone: (510) 267-1200
Facsimile: (510) 267-1201
Dara.Schur@disabilityrightsca.org

Autumn Elliott #230043
LAW OFFICE OF AUTUMN ELLIOTT
325 North Larchmont Blvd., Suite 307
Los Angeles, CA 90004
Telephone: 213-500-9454
Email: autumn@elliottimpact.com

Corrigan L. Lewis
DISABILITY RIGHTS LEGAL CENTER
1001 Wilshire Boulevard Suite 100
Los Angeles, CA 90017
213-736-1031
Fax: 213-736-1428
Email: cll@thedrlc.org

David Geffen
DAVID GEFFEN LAW FIRM
1717 4th Street 3rd Floor
Santa Monica, CA 90401
Telephone: (310) 434-1111
Facsimile: (310) 434-1115
david@davidgeffenmediation.com

*Counsel for Plaintiffs Independent Living Center of Southern California and Communities Actively Living Independent and Free*

# CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of November 2025, I filed the foregoing document using the court's CM/ECF system, which will cause all counsel of record to be served.

*/s/ Michael Allen*
Michael Allen